FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

☆   JAN 0 4 2016   ☆

LONG ISLAND OFFICE

RECEIVED

JAN 4 - 2015

PRO SE OFFICE

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

VINCENT CURTIS CONYERS

       Plaintiff

   v.

**UNITED STATES DEPARTMENT
OF VETERANS AFFAIRS**

       Defendant

Case Number

CV 16 - 00013

FEUERSTEIN, J.

LOCKE, M.J.

## COMPLAINT

### PRELIMINARY SUMMARY

1.   On 12 August 2013, Plaintiff submitted to the United States Department of Veterans Affairs (DVA), an application for the vocational rehabilitation benefits and services available for disabled Veterans as provided by Chapter 31 in Title 38 of the United States Code (hereinafter, "Chapter 31 benefits and services") in attaining a program of services and assistance under the *Self-Employment Track* pursuant to §21.257 in Title 38 of the Code of Federal Regulations.

2.   On 13 November 2013, Dr. Wanda E. **RICHARDS-CLARKE**, a DVA Counseling Psychologist (CP) and Certified Rehabilitation Counselor (CRC), conducted a vocational rehabilitation Initial Evaluation interview of Plaintiff in assessing and evaluating, *inter alia*, Plaintiff's personal and medical history, Plaintiff's educational and professional backgrounds, and the vocational impairments resulting from Plaintiff's service-connected disabilities.

3.   At the conclusion of the interview, Dr. **RICHARDS-CLARKE** verbally informed Plaintiff of determining Plaintiff eligible and entitled to receive Chapter 31 benefits and services and, unbeknownst to Plaintiff at that time, documented within Plaintiff's vocational rehabilitation claim record a detailed narrative report of her findings and conclusions in determining that, *inter alia*, Plaintiff's history, background, and disabilities evidenced multiple serious employment handicaps that precluded direct job placement.

4.     Plaintiff thereafter received a 14 November 2013 letter from Dr. **RICHARDS-CLARKE** confirming Plaintiff's eligibility and entitlement for Chapter 31 benefits and services however she did not provide any specific information of her findings, conclusions or determinations regarding the severity of Plaintiff's vocational impairments.

5.     On 17 December 2013, Plaintiff participated in a vocational rehabilitation planning meeting with Christopher M. **HOLDER**, a Licensed Professional Mental Health Counselor (LPMHC) and CRC, in his capacity as a DVA vocational rehabilitation counselor.

6.     Without referring to, or providing Plaintiff with, any information of Dr. **RICHARDS-CLARKE**'s findings, conclusions, and determinations, Mr. **HOLDER** proclaimed Plaintiff as being "ineligible"/"unqualified" for a program of Chapter 31 services and assistance under the *Self-Employment Track* and is only eligible for direct job placement, asserting his "professional opinion[s]" that Plaintiff is "employable in Governmental as well as private industry" as Plaintiff's vocational "barriers and handicaps" were not serious employment handicaps.

7.     After Plaintiff expressed disagreement with Mr. **HOLDER**'s opinions and decisions regarding the severity of the vocational impairments resulting from Plaintiff's multiple disabilities and Plaintiff's supposedly ineligibility and incapacity for Chapter 31 services and assistance under the *Self Employment Track*, Mr. **HOLDER** immediately proposed discontinuing any further consideration of Plaintiff's claim for Chapter 31 benefits and services.

8.     On 07 January 2014, Plaintiff attended a meeting with Steven M. **SRIBNIK**, a LPMHC-CRC who, in his capacity as the DVA regional supervisor of the vocational rehabilitation and employment program, not only upheld Mr. **HOLDER**'s 17 December 2013 opinions and decisions but Mr. **SRIBNIK** too also omitted referring to, or providing Plaintiff with, any information of Dr. **RICHARDS-CLARKE**'s findings, conclusions, and determinations.

2

9.      Unbeknownst to Plaintiff at that time, Mr. **HOLDER** prepared and placed in Plaintiff's DVA vocational rehabilitation claim record a narrative report dated 07 January 2014 wherein he plagiarized Dr. **RICHARDS-CLARKE**'s findings, conclusions, and determinations *ad verbum* in documenting, *inter alia*, opinions and decisions that Plaintiff's history, background, and disabilities demonstrated and evidenced the presence of multiple serious employment handicaps, which materially contradicted his previously reported 17 December 2013 opinions and decisions.

10.     At all times relevant, the DVA never timely informed Plaintiff of Dr. **RICHARDS-CLARKE**'s findings, conclusions, and determinations as required by several apposite statutes, regulations, laws, and procedural guidelines.

11.     At all times relevant, the DVA never timely informed Plaintiff of the discrepancies documented by Mr. **HOLDER** between his reported 17 December 2013 explicit "professional opinion[s]" and decisions versus his inconsistent and irreconcilable opinions and decisions annotated in the 07 January 2014 narrative report.

12.     At all times relevant, the DVA steadfastly maintained and upheld Mr. **HOLDER**'s 17 December 2013 opinions and decisions while omitting to provide any timely information either of Dr. **RICHARDS-CLARKE**'s findings, conclusions, and determinations or of Mr. **HOLDER**'s inconsistent and irreconcilable 07 January 2014 narrative report while responding to all communications and inquiries submitted by or on the behalf of Plaintiff.

13.     While still omitting to provide any timely information of Dr. **RICHARDS-CLARKE**'s findings, conclusions, and determinations and of Mr. **HOLDER**'s 07 January 2014 narrative report, the DVA utilized Mr. **HOLDER**'s 17 December 2013 opinions and decisions as the principle reasoning and bases for the discrete acts of interrupting, discontinuing, and disallowing Plaintiff's claim for Chapter 31 benefits and services.

14.     Plaintiff became aware of Dr. **RICHARDS-CLARKE**'s specific findings, conclusions, and determinations and of the discrepancies between Mr. **HOLDER**'s 17 December 2013 "professional opinion[s]" and decisions versus his opinions and decisions annotated in the 07 January 2014 narrative report only after the DVA finally provided on 17 February 2015 an extremely belated response to an 03 July 2014 Privacy Act request for a copy of all information the DVA maintains within Plaintiff's vocational rehabilitation claim record.

15.     The information and records provided in the dilatory Privacy Act response clearly documents various instances of the improper collection, maintenance, utilization, and dissemination of Plaintiff's personally identifiable information.

16.     The aforesaid acts and omissions establishes circumstances where the DVA failed to comply with the code of fair information practices mandated by the requirements of the Privacy Act of 1974 (hereinafter, "the PA") as codified and amended at 5 USC §552a.

### JURISDICTION

17.     This action arises under:

(a) 5 USC §552a(g)(1)(C) (Federal agency's failure to maintain accurate, relevant, timely, and complete records concerning an individual); and,

(b) 5 USC §552a(g)(1)(D) (Federal agency's failure to comply with the requirements of the PA).

18.     Jurisdiction is conferred upon this Court pursuant to 5 USC §552a(g) and 28 USC §1331.

### VENUE

19.     Venue in this Court is proper under 5 USC §552a(g)(5) and 28 USC §1391(e) as Plaintiff resides within the judicial district in Nassau County at 533 Mitchell Street, Uniondale, New York 11553-3014.

## PARTIES

20.     Plaintiff is a retired Veteran of the United States Army adjudicated by the DVA as having

multiple Service-Connected Disabilities (SCD) at a disability rating of 60 percent effective as of

13 January 2012, which was increased to 80 percent effective as of 07 January 2014.

21.     The DVA, a Federal agency within the meaning set forth in 5 USC §552a(a)(1):

      (a) operated a subordinate administration, the Veterans Benefits Administration
in providing Veterans, Servicemembers, and their dependents and survivors
with nonmedical benefits, *i.e.*, compensation and pension benefits, Vocational
Rehabilitation and Employment (VR&E), educational assistance, home loans,
life insurance benefits, and fiduciary services (hereinafter, "the VBA");

      (b) operated through the VBA the subordinate organizational element, Vocational
Rehabilitation and Employment Services, as the central program coordinator
in planning, organizing, and administrating the Vocational Rehabilitation and
Employment (VR&E) benefits, services, and assistance necessary in enabling
Veterans with service-connected disability(ies) to become employable, obtain
and maintain suitable employment, and to the maximum extent possible,
achieve independence in daily living (hereinafter, "VR&E Services");

      (c) operated through the VBA the subordinate organizational element, the New
York Regional Benefits Office, as the functional operational entity responsible
for processing and directly providing VBA benefits, services, and assistance
in a timely, objective manner to Veterans, Servicemembers, and their
dependents and survivors residing within its apposite jurisdiction (hereinafter,
"the NYRO");

(d) operated within the NYRO a Vocational Rehabilitation and Employment Division as the operational element responsible for processing and directly providing VR&E benefits, services, and assistance to Veterans, Servicemembers, their dependents and survivors residing within its jurisdiction (hereinafter, "the NYRO VR&E Division");

(e) employed Steven M. **SRIBNIK** as a LPMHC-CRC fulfilling duties as the Vocational Rehabilitation and Employment Officer responsible for supervising, directing, managing, and overseeing all VR&E activities and operations conducted by the NYRO (hereinafter, "the VREO");

(f) employed Christopher M. **HOLDER** as a LPMHC-CRC fulfilling duties as a Vocational Rehabilitation and Employment Counselor responsible for providing VR&E services and assistance such as vocational assessments, vocational counseling, job placement, and case management at the NYRO (hereinafter, "the VRC"); and,

(g) employed Wanda E. **RICHARDS-CLARKE** as a CP-CRC fulfilling duties as a Counseling Psychologist responsible for providing VR&E services and assistance such as comprehensive evaluations, entitlement determinations, vocational counseling, vocational counseling, rehabilitation planning, job placement, and case management at the NYRO (hereinafter, "the CP").

22.    The DVA is the proper Defendant party as the officers, employees, agents, and staff of the various elements of the DVA specified *supra* in ¶21 were acting within the scope of his/her office or employment while collecting, maintaining, utilizing, and disseminating personally identifiable information pertaining to Plaintiff.

## STATEMENTS OF FACT

*Apposite Governing Standards*

23. Pursuant to the PA, a Federal agency maintaining a system of records shall, *inter alia*:

    (a) "maintain in its records only such information about an individual as is relevant and necessary to accomplish a purpose of the agency required to be accomplished by statute", *see* 5 USC §552a(e)(1);

    (b) collect information to the greatest extent practicable directly from the subject individual when the information may result in adverse determinations about his or hers rights, benefits, and privileges under Federal programs, *see* 5 USC §552a(e)(2);

    (c) "maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination", *see* 5 USC §552a(e)(5);

    (d) "prior to disseminating any record about an individual to any person other than an agency[…] make reasonable efforts to assure that such records are accurate, complete, timely, and relevant for agency purposes", *see* 5 USC §552a(e)(6);

    (e) "establish rules of conduct for persons involved in the design, development, operations, or maintenance of any system of records, or in maintaining any record, and instruct each such person with respect to such rules and the requirements of this section, including any other rules and procedures adopted pursuant to [the PA]", *see* 5 USC §552a(e)(9); and,

(f) comply with the prescribed guidelines, regulations, assistance, and oversight of the Office of Management and Budget (OMB) regarding implementing the provisions of the PA, *see* 5 USC §552a(v).

24.    In compliance with the mandates of the PA, the DVA prescribes the regulatory rules of conduct within the provisions of 38 CFR §1.575 through §1.584 which implements the requirements of 5 USC §552a.

25.    The DVA further prescribes additional pertinent regulatory rules of conduct within:

(a) 38 CFR §1.550 through §1.559 implementing the statutory requirements of 5 USC §552 (the Freedom of Information Act (FOIA));

(b) 38 CFR §1.500 through §1.527 implementing the statutory requirements of 38 USC §5701 (Confidential Nature of Claims) and 38 USC §5702 (Furnishing of Records); and,

(c) 38 CFR §1.460 through §1.499 implementing the statutory requirements of 5 USC §§7331-7334 (Protection of Patient Rights).

26.    The DVA prescribes within 38 CFR §1.460(1) that information related to drug abuse, alcoholism, or alcohol abuse are covered by the provisions of 38 CFR §1.460 through §499 in situations where a Veteran discusses his/her history, treatment, or diagnosis of the use or abuse of alcohol or drugs while undergoing treatment for an unrelated medical condition.

27.    The DVA prescribes within 38 CFR §1.475:

(a) the required elements necessary for a written consent authorizing the release of records or information under 38 CFR §§1.460-1.499, *see* §1.475(a);

(b) that "special consent is required" in order to release records or information related to drug abuse, alcoholism, or alcohol abuse, *see* §1.475(c); and,

(c) that in the event a person or entity presents insufficient written consent for the disclosure of information protected by 38 USC §7332, legally sufficient consent for any such disclosure must be obtained while corresponding only with the involved Veteran, *see ibid.*.

28. The DVA prescribes within 38 CFR §1.550:

(a) that the rules of conduct set forth within the provisions of 38 CFR §1.550 through §1.562 implements the requirements of the FOIA, *see* §1.550(a);

(b) that requests for records or information protected by the PA will be processed under the FOIA and PA, *see* §1.550(b);

(c) that requests for records or information relating to a claim administered by DVA will be processed under the FOIA and 38 USC §5701 (Confidential Nature of Claims) pursuant to the provisions set forth within 38 CFR §1.500 through §1.527, *see* §1.550(c); and,

(d) that requests for records or information relating to a Veteran's use or abuse of drugs or alcohol will be processed under the FOIA and 38 USC §7332 (Confidentiality of Certain Medical Records) pursuant to the provisions set forth within 38 CFR §1.460 through §1.499, *see* §1.550(e).

29. In compliance with 5 USC §552(a)(6)(A) mandated time limitations for responding to a FOIA request for records or information, the DVA prescribes that:

(a) upon receiving a FOIA/PA request for records or information, a DVA component will have 20-business days to make a determination whether to grant the request in its entirety, grant the request in part, or deny the request in its entirety, *see* 38 CFR §1.557(c);

(b) in the event "unusual circumstances" are encountered where it is not possible to meet the statutory time limits for processing the request, the FOIA Officer will extend the 20-business day time for 10 more business days and notify the requestor in writing of the unusual circumstances and of the date processing of the request is expected to be completed, *see* 38 CFR §1.556(c); and,

(c) in the event the extension is for more than 10-business days, the FOIA Officer will provide the requester with an opportunity to either (1) modify the request so that it may be processed within the statutory time limits or (2) to arrange an alternative time period for processing the request or a modified request, *see ibid.*.

30.    The DVA prescribes the agency-wide policies and responsibilities "relating to the creation, collection, maintenance, use, disposition, protection, and release and exchange of record information" in VA Directive 6300 – *Records and Information Management* (26 February 2009) (hereinafter, "VA Directive 6300").

31.    The DVA prescribes the agency-wide procedures for carrying out the agency's records management program in VA Handbook 6300.1 – *Records Management Procedures* (24 March 2010) (hereinafter, "VA Handbook 6300.1").

32.    The DVA prescribes the agency-wide procedures for processing requests for records and information under the FOIA in VA Handbook 6300.3 – *Procedures for Implementing the Freedom Of Information Act* (12 January 1998) (hereinafter, "VA Handbook 6300.3").

33.    The DVA prescribes the agency-wide procedures for processing requests for records and information subject to the PA in VA Handbook 6300.4 – *Procedures for Processing Requests for Records Subject to the Privacy Act* (19 August 2013) (hereinafter, "VA Handbook 6300.4").

34.     The DVA prescribes the agency-wide procedures for establishing and managing systems of records under the PA in VA Handbook 6300.5 – *Procedures for Establishing and Managing Privacy Act Systems of Records* (10 June 2010) (hereinafter, "VA Handbook 6300.5").

35.     The DVA specifies in VA Directive 6300 rules directing, *inter alia*, that:

(a)  all DVA records will be maintained, protected, and released in accordance with applicable laws, *see* ¶2(g);

(b)  information will be collected only when legally authorized, *ibid.*; and,

(c)  collected information will be protected from unauthorized disclosure, *ibid.*.

36.     The DVA specifies in Chapter 4 of VA Handbook 6300.1 rules directing, *inter alia*, that:

(a)  the requirements of VA Directive 6300, VA Handbook 6300.3, and 38 CFR §1.500 *et. seq.* are applicable in the event records or information proposed for collection or creation pertain to individuals, *see* ¶2(c);

(b)  DVA records "must be protected and used, or disseminated or released only in accordance with applicable Federal laws and regulations", *see* ¶2(h); and,

(c)  "[t]he dissemination or release of any records and information within and outside [DVA] must be in accordance with Federal statutes and [DVA] policy", *see* ¶2(k).

37.     The DVA specifies in VA Handbook 6300.4 rules directing, *inter alia*, that:

(a)  a Veteran may consent to the release of information using any form of written communication so long as there is a clearly legible signature, *see* §4(c);

(b)  records and information involving matters covered by 38 USC §7332 are restricted from release and that a special written consent for release of information must be obtained, *see ibid.*;

(c) disclosures may be made to a congressional office from a Veteran's record in response to an congressional inquiry made at the Veteran's request, *see* §4(d); and,

(d) prohibits the release of records and information involving matters such as the use and abuse of alcohol and drugs to a congressional office in absence of a Veteran specifically addressing such matters within his or her request for congressional assistance, *see ibid.*.

38.    In compliance with 38 USC §3101(9), 38 USC §3102, and 38 USC §3106, the DVA prescribes within 38 CFR §21.40 that a VR&E Division must, *inter alia*, provide a comprehensive Initial Evaluation to a Veteran applying for Chapter 31 benefits and services in the event he/she:

(a) is afflicted with service-connected disability(ies) rated at least 20 percent and vocational rehabilitation services and assistance are deemed necessary due to determining that the impairments resulting from such disability(ies) establishes the presence of an Employment Handicap (EH); or,

(b) is afflicted with service-connected disability(ies) rated less than 20 percent and vocational rehabilitation services and assistance are deemed necessary due to determining that the impairments resulting from such disability(ies) establishes the presence of a Serious Employment Handicap (SEH).

39.    In compliance with 38 USC §3101(1), the DVA defines within 38 CFR §21.35(a) the term, "Employment Handicap", as meaning a vocational impairment of a Veteran's ability to prepare for, obtain, or retain suitable employment consistent with his/her abilities, aptitudes, and interests.

40. Though the DVA defines within 38 CFR §21.35(g) that the term, "Serious Employment Handicap", means:

> "a significant impairment of a Veteran's ability to prepare for, obtain, or retain
>
> employment consistent with such Veteran's abilities, aptitudes, and interests",

such definition omits the portion of the statutory language set forth within 38 USC §3101(7) qualifying that any such impairment must "result[] in substantial part from a service-connected disability rated at 10 percent or more".

41. In compliance with 38 USC §3106(a), the DVA prescribes within 38 USC §21.50(b) that a VR&E Division must determine during an Initial Evaluation:

> (a) whether the Veteran is afflicted with impairments demonstrating and evidencing the presence of an EH;
>
> (b) whether the presence of any such EH also further demonstrates and evidences the presence of impairments establishing that the Veteran has a SEH; and,
>
> (c) whether it is currently reasonably feasible for the Veteran to achieve a vocational goal.

42. In compliance with 38 USC §3101(8), the DVA defines the term, "vocational goal", as a gainful employment status consistent with a Veteran's abilities, aptitudes, and interests, *see* 38 CFR §21.35(h)(1) and 38 CFR §21.53(b).

43. As required by 38 USC §3106(a) and 38 USC §3106(b), the DVA prescribes that a VR&E Division will deem that the achievement of a vocational goal is reasonably feasible for a Veteran impaired with either an EH or a SEH in the event:

> (a) vocational goal(s) for the Veteran has (have) been identified, *see* 38 CFR §21.53(d)(1);

(b) his/her physical and mental condition(s) permit training for the vocational goal(s) to begin within a reasonable period, *see* 38 CFR §21.53(d)(2); and,

(c) he/she either possesses the necessary educational skills and background to pursue the vocational goal(s) or he/she will be provided the requisite services and assistance by the DVA in developing such necessary educational skills as part of a program of Chapter 31 benefits and services, *see* 38 CFR §21.53(d)(3).

44.    The DVA prescribes in 38 CFR §21.35 that:

(a) the term, "Counseling Psychologist", specifically refers to a counseling psychologist in a VR&E Division, *see* 38 CFR §21.35(k)(1);

(b) the term, "vocational rehabilitation specialist", refers to a vocational rehabilitation specialist in a VR&E Division or to a non-VR&E Division DVA counseling psychologist performing the duties of a vocational rehabilitation specialist, *see* 38 CFR §21.35(k)(2); and,

(c) the term, "Vocational Rehabilitation Counselor", specifically refers to a vocational rehabilitation counselor in a VR&E Division, *see* 38 CFR §21.35(k)(7).

45.    The DVA prescribes within 38 CFR §21.100 the requisite criteria governing the manner in which a VR&E Division provides counseling services to a Veteran who requests or is being furnished Chapter 31 benefits and services.

46.    The DVA prescribes within 38 CFR §21.100(a) that a VR&E Division is, *inter alia*, required to provide a Veteran applying for, requesting, or being furnished Chapter 31 benefits and services with professional counseling services to:

14

(a) carry out an Initial Evaluation in each case in which Veteran applies or requests for Chapter 31 benefits and services;

(b) develop a rehabilitation plan or plan for employment services in each case in which a Veteran is found during the Initial Evaluation to be eligible and entitled to Chapter 31 benefits and services; and,

(c) provide Veterans ineligible for Chapter 31 benefits and services with the employment services and assistance delineated within 38 CFR §21.82.

47.    The DVA prescribes within 38 CFR §21.100(d)(1) that:

"[i]f a Veteran resides within a State, counseling services necessary to carry out the Initial Evaluation and the development of a rehabilitation plan or a program of employment services will be furnished by Counseling Psychologists in the Vocational Rehabilitation and Employment (VR&E) Division".

48.    The DVA further prescribes within 38 CFR §21.100(d)(2) that:

"[i]f a Veteran does not reside in a State[,] the counseling services necessary to carry out an Initial Evaluation may be accomplished in the same manner as for a Veteran residing in a State or through other arrangements when deemed appropriate by the VR&E Division,"

however such discretion is qualified by the explicit requirement that "[a]ll determinations of eligibility, entitlement, and development of a rehabilitation plan" are to still be made by a VR&E Division Counseling Psychologist, _see_ 38 CFR §21.100(d)(3)(ii).

49.    The DVA defines the term, "State", as utilized in 38 CFR §21.100(d), as meaning "each of the several States, the District of Columbia, and the Commonwealth of Puerto Rico". _See_ 38 CFR §21.100(e).

15

50.     In promulgating the current version of 38 CFR §21.257, the VBA expressed that the intent for amending the regulation was to facilitate enlarging the number of Veterans eligible for a program of Chapter 31 services and assistance under the *Self-Employment Track*:

> (a) *see* 74 Fed. Reg. 19,165 (28 April 2009) (proposing amending 38 CFR §21.257 with less restrictive criteria explaining, "[s]elf-employment as a mode of employment is authorized for all program participants for whom it is determined to be appropriate for achieving rehabilitation"); *and,*

> (b) *see* 75 Fed. Reg. 3168 (20 January 2010) (announcing approval of the proposed rule while reiterating the same previously stated intent and explanation).

51.     The VBA provides VR&E Services with the apposite criteria governing the provision of a program of Chapter 31 services and assistance under the *Self-Employment Track* within 38 CFR §21.257 wherein which the VBA:

> (a) affords a program of Chapter 31 services and assistance under the *Self-Employment Track* for all Veterans for whom Self-Employment is deemed a suitable vocational goal, *see* 38 CFR §21.257(a);

> (b) expresses an explicit intent in providing a definitive definition of the term, "individuals with the most severe service-connected disability(ies) who require self-employment", as such term is utilized within §21.257, *see* 38 CFR §21.257(b);

> (c) provides for a program of Chapter 31 services and assistance as delineated in 38 CFR §21.257(d) for Veterans who are pursuing the vocational goal of Self-Employment, *see* 38 CFR §21.257(c)(1);

16

(d) provides for a program of Chapter 31 services and assistance as delineated in 38 CFR §21.257(e) for "individuals with the most severe service-connected disability(ies) who require self-employment", *see* 38 CFR §21.257(c)(2);

(e) outlines the Chapter 31 services and assistance provided to any individual for whom Self-Employment is determined to be a suitable vocational goal, *see* 38 CFR §21.257(d); and,

(f) outlines the special Chapter 31 services and assistance provided to "individuals with the most severe service-connected disability(ies) who require self-employment", *see* 38 CFR §21.257(e).

52.    The VR&E Services provides the VR&E Divisions with the applicable policies, procedures, and guidelines for administering and managing programs of Chapter 31 services and assistance under the *Self-Employment Track* within the M28R Vocational Rehabilitation & Employment Manual (hereinafter, the "M28R Manual"), *e.g.*,:

(a) Part III, Section C, Chapter 1 – *Overview of Rights and Responsibilities* (hereinafter, "M28R.III.C.1.");

(b) Part III, Section C, Chapter 2 – *Veteran's Rights, Responsibilities, and Due Process* (hereinafter, "M28R.III.C.2.");

(c) Part III, Section C, Chapter 3 – *Administrative Reviews, Advisory Opinions, Appeals, and Equitable Relief* (hereinafter, "M28R.III.C.3.");

(d) Part IV, Section B, Chapter 1 – *Initial Evaluation Overview* (hereinafter, "M28R.IV.B.1.");

(e) Part IV, Section B, Chapter 2 – *Evaluation and Planning Determinations* (hereinafter, "M28R.IV.B.2.");

(f) Part IV, Section B, Chapter 5 – *Outcome of Initial Evaluation* (hereinafter, "M28R.IV.B.5.");

(g) Part IV, Section C, Chapter 2 – *Considerations for the Development and Administration of the Rehabilitation Plan* (hereinafter, "M28R.IV.C.2.");

(h) Part IV, Section C, Chapter 4 – *Five Tracks to Employment* (hereinafter, "M28R.IV.C.4.");

(i) Part IV, Section C, Chapter 8 – *Guidelines for the Development and Administration of a Self-Employment Plan* (hereinafter, "M28R.IV.C.8."); and,

(j) Part VI, Section A, Chapter 9 – *Self-Employment* (hereinafter, "M28R.VI.A.9.").

53.    The DVA prescribes within 38 CFR §21.420 that when a Veteran submits a claim for Chapter 31 benefits and services, the principle of *Duty to Inform* obligates a VR&E Division to notify the Veteran in writing of any adverse actions affecting the receipt of such benefits and services by informing him/her of:

(a) the specific decision or finding;

(b) the reasons, including fact and law, for said decision;

(c) the effective date of said decision or finding;

(d) the Veteran's appeal rights, if any; and,

(e) the 30-day due process period afforded a Veteran before implementing any contemplated adverse action.

54.    The DVA specifies within 38 CFR §21.420(c) that an "adverse action" is an action which:

(a) denies Chapter 31 benefits and services to a Veteran when he/she submits a claim requesting such benefits and services;

18

(b) reduces or otherwise diminishes any Chapter 31 benefits and services the Veteran is receiving; or,

(c) terminates receipt of Chapter 31 benefits and services for reasons other than scheduled interruptions that are part of a Veteran's vocational rehabilitation plan.

55.     The DVA prescribes within 38 CFR §21.420(d) that a **THIRTY (30)**-day due process period will be afforded to a Veteran so that, prior to him/her filing an appeal of a contested adverse action as provided within 38 CFR §21.59, said Veteran will have an reasonable opportunity to:

(a) indicate his/her disagreement with an adverse action;

(b) meet informally with a VR&E Division representative;

(c) review the bases for the contested decision, including any relevant written document or material; and,

(d) submit to the VR&E Division any material that he/she may have that is relevant to the decision.

56.     The DVA affords a Veteran through the provisions of 38 CFR §21.59 with an opportunity wherein the Veteran:

(a) may administratively appeal decisions rendered by VR&E Division staff members on his/her eligibility and entitlement to Chapter 31 benefits and services to the DVA through its subordinate entity, the Board of Veterans' Appeals (BVA); and,

(b) may "request [for an] administrative review by [VR&E Services at the] Central Office prior to filing an appeal to BVA".

19

*Relevant History*

57.     *Sunday 12 August 2013*          *Application.*   Plaintiff initiated a claim requesting for Chapter 31 benefits and services by submitting VA Form 21-1900 – *Disabled Veterans Application for Vocational Rehabilitation* to the DVA.

58.     *Wednesday 13 November 2013*          *Group Orientation Briefing / Initial Evaluation.* Plaintiff attended a scheduled Group Orientation Briefing and an individual Initial Evaluation interview conducted by the NYRO VR&E Division during which:

(a) Plaintiff submitted VA Form 28-1902w – *Rehabilitation Needs Inventory (RNI)* specifying an intent of electing to pursue a program of Chapter 31 services and assistance under the *Self-Employment Track* by requesting assistance "in the assessment, preparation, development, and implementation of a feasible SELF-EMPLOYMENT PLAN" and advancing the intended vocational goal of "[a]chieving self-employability as an ENTREPRENEUR of a self-sustaining private sector business";

(b) Veterans including Plaintiff attending the Group Orientation Briefing watched a video utilizing vignettes describing the various programs of Chapter 31 services and assistance available through the "*5 Tracks to Employment*" and participated in a briefing provided by a representative from the United States Small Business Administration (SBA) describing the resources and assistance available through SBA for Veterans desiring to pursue Self-Employment;

(c) Plaintiff underwent an Initial Evaluation interview with the CP after the orientation briefing discussing, *inter alia*, (1) the scope and severity of the impairments resulting from Plaintiff's multiple Service-Connected Disabilities

20

(SCD), (2) Plaintiff's physical and mental inability to continue working as an EMT-Paramedic, (3) Plaintiff's reluctance and aversion in pursuing a similar or compatible career within the medical field; (4) Plaintiff's military and civilian professional background, (5) Plaintiff's educational background, (6) Plaintiff's previous unsuccessful attempts over the previous two years in obtaining employment while utilizing the resources, assistance, and employment referrals provided by (i) the Transition Assistance Program (TAP) Center while assigned to the Warrior Transition Unit (WTU) of Keller Army Community Hospital (KACH) at United States Army Garrison West Point, (ii) the New York State Department of Labor (NYSDOL) Unemployment Career Center (UCC), and (iii) the Compensated Work Therapy Program (CWTP) at Northport Veterans Affairs Medical Center (Northport VAMC), (7) Plaintiff's vocational interests, aptitudes, and abilities, (8) Plaintiff's reluctance and aversion in returning to college due to a serious physical altercation with other students while previously attending Nassau Community College (NCC), (9) Plaintiff's family history and social interactions, and (10) Plaintiff's vocational goal of Entrepreneurship and contemplated vocational objective(s);

(d) when Plaintiff attempted to obtain more detailed information regarding Chapter 31 benefits and services under the *Self-Employment Track* than was provided during the Group Orientation briefing, the CP stated that Plaintiff would receive further information during a follow-up appointment with a vocational rehabilitation counselor;

21

(e) the CP verbally informed Plaintiff at the conclusion of the said Initial Evaluation interview of determining that Plaintiff is entitled to Chapter 31 benefits and services; and,

(f) Plaintiff participated in a computer-based, vocational-orientated *CareerScope*® Assessment Profile Testing after the Initial Evaluation interview with the CP.

59.     *Saturday 16 November 2013          Notice of Entitlement.*  Plaintiff received from the NYRO VR&E Division a Notice of Entitlement to Chapter 31 benefits and services dated 14 November 2013 (hereinafter, the "NOE"), *see* Exhibit 1, wherein the CP provided notice:

(a) confirming Plaintiff's entitlement to Chapter 31 benefits and services;

(b) specifying that "[t]he next step will be to develop a vocational rehabilitation plan" for an occupation that does not aggravate Plaintiff's multiple SCD; and,

(c) that Plaintiff will receive a follow-up letter from the NYRO VR&E Division providing information of the assigned vocational rehabilitation counselor.

60.     *Thursday 21 November 2013          Assignment Letter.*  Plaintiff received a letter dated 17 November 2013 from the NYRO VR&E Division (hereinafter, the "Assignment Letter"), *see* Exhibit 2, wherein the VRC provided notice:

(a) that Plaintiff's case "was recently transferred" to him; and,

(b) of the necessity for Plaintiff "to schedule an appointment [with the VRC] to discuss [Plaintiff's] vocational rehabilitation program",

resulting in the scheduling of an 17 December 2013 initial appointment with the VRC.

61.     *Tuesday 17 December 2013          Initial Appointment with VRC.*  During the initial appointment between Plaintiff and the VRC:

(a) Plaintiff expressed the intent in electing to pursue a program of Chapter 31 services and assistance under the *Self-Employment Track* in attaining the vocational goal of Entrepreneurship as an Owner-Operator of a Bar/Restaurant;

(b) the VRC immediately stated that Chapter 31 services and assistance under the *Self-Employment Track* were "not available";

(c) the VRC explicitly asserted that Plaintiff was "ineligible"/"unqualified" for a program of Chapter 31 services and assistance under the *Self-Employment Track*;

(d) in response to Plaintiff attempts in questioning the supposedly unavailability of and asserted ineligibility for a program of Chapter 31 benefits and services under the Self-*Employment Track*, the VRC questioned Plaintiff's reasoning for not pursuing direct job placement in the medical field given Plaintiff's nearly 30-year extensive civilian and military experiences as an Emergency Medical Technician-Paramedic (EMT-Paramedic), Flight EMT-Paramedic, and Senior Independent Duty Combat Medical Noncommissioned Officer;

(e) the VRC attempted to persuade Plaintiff to elect a program of Chapter 31 services and assistance under the *Employment through Long-Term Services Track* in obtaining a degree in another profession or career field after Plaintiff explicitly declined remaining within the medical field;

(f) the VRC repeated attempts to convince Plaintiff to elect a program of Chapter 31 services and assistance under the *Rapid Access to Employment Track* after Plaintiff declined going back to college to pursue a degree due to the physical

23

altercation while attending NCC as previously recounted to the CP on 13 November 2013;

(g) the VRC questioned Plaintiff's vocational objective of being a Owner-Operator of a Bar/Restaurant give "the high failure rate" and the "high costs and expenses" involved in such a venture after Plaintiff affirmed the intent and preference for electing and pursuing the stated vocational goal of Entrepreneurship;

(h) the VRC opined Plaintiff's financial situation due to a then-pending divorce proceedings, extended unemployment status, and meager savings precluded such vocational goal;

(i) the VRC asserted that the impairments resulting from Plaintiff's multiple SCD were not "severe" enough to "justify" a program of Chapter 31 services and assistance under the *Self-Employment Track*;

(j) the VRC also asserted that the literature and information describing the VR&E services and assistance available pursuant to Chapter 31 that Plaintiff received from a DVA representative while assigned to the KACH WTU was "outdated" notwithstanding the fact that Plaintiff also relied upon the apposite governing regulation, 38 CFR §21.257;

(k) the VRC opined that Plaintiff needed a Business Management or Business Administration degree in order to pursue Self-Employment notwithstanding Plaintiff's background and experience in assisting extended family members operate their small businesses and in managing and supervising military unit-morale bars;

(l) the VRC overly emphasized and professed a high probability of success in attaining employment through a program of VR&E services and assistance under the *Rapid Access to Employment Track* given Plaintiff's educational and professional background and experiences;

(m) the VRC expressed a possibility of a program of Chapter 31 services and assistance under the *Employment through Long-Term Services Track* in obtaining a degree in Hotel & Restaurant Management; and,

(n) notwithstanding the VRC's continued emphases of the programs of Chapter 31 services and assistance available under the *Rapid Access to Employment* and the *Employment through Long-Term Services Tracks*, Plaintiff steadfastly maintained an intent in pursuing the original advanced vocational goal of Entrepreneurship by electing a program of Chapter 31 services and assistance under the *Self-Employment Track* as premised upon Plaintiff's reading and understanding of the apposite criteria set forth within 38 CFR §21.257.

62.   *Thursday 19 December 2013*          *Notice of Proposed Adverse Action.*   Plaintiff received from the NYRO VR&E Division a 17 December 2013 Notice of Proposed Adverse Action (hereinafter, the "NPA") dated as of the same day of the initial appointment with the VRC, *see* Exhibit 3, wherein the VRC, *inter alia*,:

(a) provided notice of his intent to propose the discontinuance of Plaintiff's claim for Chapter 31 benefits and services for allegedly "fail[ing] to cooperate in any plan that does not fall within the Self-Employment Plan";

(b) asserted he "explained the eligibility and procedural requirements to pursue a Self-Employment plan[] through VR&E [Chapter 31 benefits and services]";

(c) reiterated his opinion that Plaintiff was financially incapable of achieving the advanced vocational goal, stating Plaintiff "do[es] not have the capital for such a venture";

(d) recounted his suggestions for Plaintiff to pursue a degree in Hotel & Restaurant Management or Business Management "which could lead to a better understanding and greater business abilities";

(e) unequivocally asserted that, in his "professional opinion as a Certified Rehabilitation Counselor, [Plaintiff's multiple SCD] are not of the most severe natural that self employment is [Plaintiff's] only feasible opportunity for employment";

(f) also asserted his decision that Plaintiff is "ineligible" to receive a program of Chapter 31 services and assistance under the *Self-Employment Track* premised on the VRC's "professional opinion" that Plaintiff is "employable in Governmental as well as private industry"; and,

(g) further opined that while Plaintiff "do[es] have barriers and handicaps" to employment, they are allegedly "not to the degree of being designated with having a Serious Employment Handicap" therefore there were other "legitimate options for suitable employment".

63.    *Monday 30 December 2013*       *Request for an Informal Hearing.*    Plaintiff scheduled a follow-up 07 January 2014 appointment with the VREO as afforded by 38 CFR §21.420 in order to review the reasoning and bases for the contested opinions and decisions rendered by the VRC regarding Plaintiff's eligibility and qualifications for a program of Chapter 31 services and assistance under the *Self-Employment Track.*

64.   *Tuesday 07 January 2014      Meeting with VREO.*  During the meeting between Plaintiff and the VREO:

(a) in response to Plaintiff's question as to why the VRC contradicted the criteria set forth within 38 CFR §21.257 regarding the availability for a program of Chapter 31 services and assistance under the *Self-Employment Track*, the VREO asserted that a program of Chapter 31 services and assistance under the *Self-Employment Track* was only available for "severely injured" Veterans;

(b) after Plaintiff described the impairments resulting from Plaintiff's multiple SCD, the VREO verbally expressed his understanding and agreement with Plaintiff's contentions that such impairments demonstrates and evidences the presence of multiple Serious Employment Handicaps (SEH) and that such SEH would benefit from both an accommodating work environment and a flexible work schedule;

(c) Plaintiff recounted his (1) educational background in attaining an Associate of Applied Sciences and a Bachelors of Arts degrees, (2) professional military and civilian qualifications and occupational history, (3) previous experiences in assisting in operating and managing small businesses owned by extended family members, and (4) previous experiences in supervising and managing military unit morale bars while stationed overseas in Korea and Honduras;

(d) Plaintiff's aversion and reluctance to pursue another college degree due to the aforementioned physical altercation while attending NCC was discussed;

(e) Plaintiff recounted previous unsuccessful attempts in finding suitable employment notwithstanding utilizing the resources, assistance, jobs fairs, and

employment referrals facilitated by (1) TAP while assigned to the KACH WTU, (2) NYSDOL UCC both during and after Plaintiff's WTU assignment, and (3) the CWTP at Northport VAMC;

(f) though the VREO heavily emphasized a program of Chapter 31 services and assistance under the *Rapid Access to Employment Track* would be successful, Plaintiff recounted being previously informed by Northport VAMC staff (*e.g.*, patient advocate, social worker, vocational rehabilitation counselors) that the employment services and assistance available through CWTP and VR&E Division were the same in either program;

(g) when Plaintiff steadfastly affirmed and maintained the intent in electing to pursue the originally advanced vocational goal of Entrepreneurship as afforded by 38 CFR §21.257, the VREO asserted that the M28R Manual restricted a program of Chapter 31 benefits and services under the *Self-Employment Track* solely to "severely disabled Veterans";

(h) the VREO also stated his opposition to afford Plaintiff with a program of Chapter 31 services and assistance under the *Self-Employment Track* due to the amount of money necessary in obtaining the requisite licenses, fees, equipment, *etc.*, for the advanced vocational objective of being an Owner-Operator of a Bar/Restaurant; and,

(i) the VREO further stated that Plaintiff needed to pursue employment opportunities utilizing a program of Chapter 31 services and assistance under the *Rapid Access to Employment Track* or possibly under the *Employment through Long-Term Services Track*, asserting that a program of Chapter 31

28

services and assistance under the *Self-Employment Track* would only be available as a "last option".

65.  *Friday 17 January 2014    Request for Administrative Review.*  Plaintiff submitted pursuant to 38 USC §3107(c) and 38 CFR §21.59 a request to VR&E Services for an Administrative Review of the contested eligibility determinations rendered by the NYRO VR&E Division in denying Plaintiff's claim for a program of Chapter 31 services and assistance under the *Self-Employment Track* (hereinafter, the "AR Request") via the United States Postal Service's First Class Certified Mail Service with Return Receipt Requested.

66.  *Saturday 18 January 2014    Requests for Congressional Assistance.*  Plaintiff submitted written requests for congressional assistance regarding the NYRO VR&E Division's denial of Plaintiff's claim for a program of Chapter 31 services and assistance under the *Self-Employment Track* to:

(a) Senator Charles **SCHUMER**;

(b) Senator Kristen **GILLIBRAND**; and,

(c) then-Representative Carolyn **McCARTHY**,

via the United States Postal Service's Priority Mail Service with Signature Confirmation.

67.  *Monday 20 January 2014    Notice of Interruption.*  Plaintiff received from the NYRO VR&E Division a Notice of Interruption dated 17 January 2014 (hereinafter, the "NOI"), *see* Exhibit 4, wherein the VRC announced effectuating the immediate interruption of Plaintiff's claim for Chapter 31 benefits and services premised on the VRC's opinions and decisions asserting, *inter alia*, that:

(a) Plaintiff "do[es] not qualify" for a program of Chapter 31 services and assistance under the *Self-Employment Track*;

(b) Plaintiff "refuses to entertain any other plan under VR&E" other than a plan under the *Self-Employment Track*; and,

(c) Plaintiff's persistence in pursuing Self-Employment allegedly demonstrates a "Refusal to Participate".

68.    *Monday 10 March 2014        Freedom of Information Act Request.*  Plaintiff submitted to VR&E Services via the United States Postal Service's First Class Priority Mail Service with Signature Confirmation a FOIA request for statistical data regarding the DVA's provisioning of programs of Chapter 31 services and assistance under the *Self-Employment Track* to Veterans during Fiscal Years 2010 through 2015.

69.    *Wednesday 19 March 2014        Notice of Second Submitted Congressional Inquiry.* Plaintiff received from Senator **SCHUMER** a copy of the 14 March 2014 letter the Senator sent to the NYRO inquiring into the denial of Plaintiff's claim for Chapter 31 benefits and services. *See* Exhibit 5.

70.    *Friday 21 March 2014        Response to First Congressional Inquiry.*  Plaintiff received from then-Representative **McCARTHY** a copy of a 19 March 2014 letter the NYRO VR&E Division provided in response to the 12 March 2014 congressional inquiry from Ms. **McCARTHY**'s (hereinafter, the "Inquiry Response"), *see* Exhibit 6, wherein the VREO, *inter alia*:

(a) noted that the Northport VAMC provided medical care and treatment to Plaintiff;

(b) recounted a partial listing of Plaintiff's multiple SCD;

(c) pointedly expressed that Plaintiff "has recent issues with alcohol and substance abuse";

(d) stated that Plaintiff's educational background and "significant administrative skills from the Army" is the reason why VR&E [Division] offered job placement assistance "as an initial service";

(e) referenced the unsuccessful employment services and assistance the CWTP at Northport VAMC previously provided to Plaintiff;

(f) asserted that "VR&E has many contacts available to [Plaintiff] for the possibility of obtaining suitable employment" and noted that VR&E provides "incentives for employers to hire skilled disabled Veterans";

(g) asserted 38 CFR §21.257 as specifying "that self-employment is the option for veterans whose 'limitations affecting employability arising from the effects of the service connected disability are so severe as to necessitate selection of self-employment as the only reasonably feasible vocational goal for this veteran'";

(h) expressly opined that "the choice of assisting" Plaintiff is "questionable based upon [his] service connected and non-service connected disabilities"; and,

(i) further opined, "it has not been established that self-employment is the only feasible goal" for Plaintiff.

71.    *Monday 24 March 2014        Response to Request for an Administrative Review*.  Despite delivering the AR Request to VR&E Services in accordance with 38 USC §3107(c) and 38 CFR §21.59, Plaintiff received a 20 March 2014 Memorandum Response to the AR Request (hereinafter, the "AR Memorandum") from the NYRO VR&E Division, *see* Exhibit 7, wherein the VREO, *inter alia*,:

(a) acknowledged that Plaintiff submitted the AR Request, *ibid.* at 1;

31

(b) inferred that VR&E Services forwarded the subject AR Request to the NYRO VR&E Division to provide a response, *ibid.*;

(c) upheld "the determination that you are entitled to receive a program of services under Chapter 31 Vocational Rehabilitation and Employment, however self-employment services are not supported at this time", *ibid.*;

(d) noted Plaintiff's disability rating of **SIXTY (60)** percent while reciting a partial listing of Plaintiff's multiple SCD, *ibid.* at 2;

(e) stated that Plaintiff "was determined entitled to VR&E Services" on 13 November 2013, *ibid.*;

(f) generally recounted some of the impairments resulting from Plaintiff's multiple SCD, *ibid.*;

(g) noted that Plaintiff "is seen for pain management at the Northport VAMC", *ibid.*;

(h) noted that Plaintiff "is also being seen by the Compensated Work Therapy Program at Northport VAMC" for employment services, *ibid.*;

(i) recounted Plaintiff's educational background, *ibid.*;

(j) recounted Plaintiff's 26 years of military service, *ibid.* at 3;

(k) stated that the NYRO VR&E Division offer of "direct job placement services" to Plaintiff is premised upon Plaintiff's "extensive education and transferable skills", *ibid.*;

(l) asserted M28R.IV.C.4.04 and 38 CFR §21.257 as both specifying that only severely injured Veterans are eligible for a program of Chapter 31 benefits and services under the *Self-Employment Track*, *ibid.*;

(m) recounted one of several unsuccessful job leads/interviews Plaintiff experienced while utilizing CWTP, *ibid.* at 4;

(n) recounted describing during the 07 January 2014 meeting "how VR&E could assist [Plaintiff] with more suitable employment leads and supports", *ibid.*;

(o) recounted observing that throughout the 07 January 2014 meeting, Plaintiff "had to stand and then sit down, due to back pain", *ibid.*;

(p) noted Plaintiff's treatment at Northport VAMC for pain management, *ibid.*;

(q) asserted that 38 CFR §21.257(b) restricted the availability of a program of Chapter 31 services and assistance under the *Self-Employment Track* solely to Veterans afflicted with "service-connected disability(ies) which are so severe as to necessitate selection of self-employment as the only reasonably feasible vocational goal", *ibid.*;

(r) declared that "selection of self-employment has not been determined to be the only feasible goal" for Plaintiff, *ibid.*;

(s) opined that Plaintiff's objective of being an Owner-Operator of a Bar/Restaurant "is also an issue[] based on [Plaintiff's] service connected and non-service connected disabilities", *ibid.*;

(t) stated that "VR&E would gladly work with [Plaintiff] towards competitive job placement", *ibid.*; and,

(u) commented on Plaintiff "ha[ving] excellent credentials, transferable skills and makes a very good impression", *ibid.*.

72.  *Tuesday 29 April 2014        Notice of Third Submitted Congressional Inquiry.*  Plaintiff received a letter dated 25 April 2014 from Senator **GILLIBRAND** informing Plaintiff that the

Senator submitted an inquiry to the NYRO regarding the denial of Plaintiff's claim for Chapter 31 benefits and services. *See* Exhibit 8.

73.  *Monday 12 May 2014*  *Notice of Final Action*.  Plaintiff received from the NYRO VR&E Division a Notice of Final Action dated 09 May 2014 (hereinafter, the "NFA"), *see* Exhibit 9, wherein the VRC, *inter alia*:

  (a) announced the disallowance of Plaintiff's claim for Chapter 31 benefits and services, effective as of 09 May 2014;

  (b) specified that the decision to disallow Plaintiff's claim is premised upon determining that Plaintiff "refused to participate in any plan that did not fall under self-employment as the owner of a cabaret";

  (c) informed Plaintiff that said claim may be reopened within **ONE (1)** year from the date of the NFA; and,

  (d) provided notice that in the event Plaintiff reopens said claim after one year from the date of the NFA, a new VA Form 28-1900 must be submitted.

74.  *Monday 02 June 2014*  *Notice of Disagreement*

  (a) Plaintiff submitted to the NYRO a Notice of Disagreement (NOD), *see* Exhibit 10, expressing Plaintiff's contentions and assertions with the reasoning and bases cited in the NPA, the NOI, the Inquiry Response, the AR Memorandum, and the NFA as justifying:

  (1) the determination that Plaintiff is supposedly "ineligible"/"unqualified" for a program of Chapter 31 services and assistance under the *Self-Employment Track*;

  (2) the determination that Plaintiff's stated vocational goal of Entrepreneurship "is not a feasible course at this time" as premised on opining that Plaintiff

"do[es] not have the capital" to achieve the vocational objective of being an Owner-Operator of a Bar/Restaurant;

(3) the VRC's determination that although the impairments resulting from Plaintiff's multiple SCD are "barriers and handicaps" to employment, said impairments were not "to the degree of being designated with having a Serious Employment Handicap";

(4) the determination that a program of Chapter 31 services and assistance under the *Self-Employment Track* is "unwarranted" premised upon the VRC's "professional opinion" that Plaintiff is "employable in Governmental as well as the private industry";

(5) the denial of Plaintiff's claim for a program of Chapter 31 services and assistance under the *Self-Employment Track* based on opining that the impairments resulting from Plaintiff's multiple SCD are not "of the most severe nature that self-employment is [the] only feasible opportunity for employment";

(6) the determination to restrict the scope of Chapter 31 benefits and services available to Plaintiff to a program of Chapter 31 services and assistance primarily under the *Rapid Access to Employment Track* or possibly under the *Employment through Long-Term Services Track*;

(7) the proposal to disallow Plaintiff's claim for Chapter 31 benefits and services by classifying Plaintiff's persistence in pursuing a program of Chapter 31 services and assistance under the *Self-Employment Track* as allegedly demonstrating a "Failure to Cooperate";

35

(8) the determination to effectuate the interruption of Plaintiff's claim for Chapter 31 benefits and services by classifying Plaintiff's persistence in pursuing a program of Chapter 31 services and assistance under the *Self-Employment Track* as allegedly demonstrating a "Failure to Cooperate";

(9) the determination to uphold and maintain that Plaintiff is supposedly "ineligible"/"unqualified" for a program of Chapter 31 services and assistance under the *Self-Employment Track*; and,

(10)   the determination to disallow Plaintiff's claim for Chapter 31 benefits and services by classifying Plaintiff's persistence in pursuing a program of Chapter 31 services and assistance under the *Self-Employment Track* as allegedly demonstrating a "Refusal to Participate".

(b) Moreover the NOD delineated Plaintiff's assertions and contentions that the reasoning and bases for denying Plaintiff's claim for a program of Chapter 31 services and assistance under the *Self-Employment Track* presented **SEVEN (7)** distinct issues, *i.e.*,:

(1) whether the NYRO VR&E Division properly construed 38 CFR §21.257 as restricting the availability of a program of Chapter 31 services and assistance under *the Self-Employment Track* <u>solely</u> to Veterans with "service-connected disability(ies) which are so severe as to necessitate selection of self-employment as the only reasonably feasible vocational goal";

(2) whether the NYRO VR&E Division correctly construed the procedural guidelines set forth in the M28R Manual procedural guidelines as restricting the availability of a program of Chapter 31 services and assistance under *the Self-Employment Track* <u>solely</u> to Veterans with "service-connected

36

disability(ies) which are so severe as to necessitate selection of self-employment as the only reasonably feasible vocational goal";

(3) whether Plaintiff complied with applicable criteria in selecting a suitable vocational goal for the purpose of establishing eligibility for a program of Chapter 31 services and assistance under *the Self-Employment Track*;

(4) whether the NYRO VR&E Division complied with applicable statutory and regulatory criteria while rendering the determination that Plaintiff is "ineligible"/"unqualified" for a program of Chapter 31 services and assistance under *the Self-Employment Track*;

(5) whether the NYRO VR&E Division complied with the applicable procedural guidelines set forth in the M28R Manual prior to interrupting, discontinuing, and disallowing Plaintiff's claim for a program of Chapter 31 services and assistance under *the Self-Employment Track*;

(6) whether the NYRO VR&E Division properly omitted conducting an extended evaluation of Plaintiff's claim for a program of Chapter 31 services and assistance under *the Self-Employment Track* prior to interrupting, discontinuing, and disallowing said claim; and,

(7) whether the DVA properly conducted an Administrative Review that was requested pursuant to the provisions set forth within 38 USC §3107(c) and 38 CFR §21.59.

75.   *Thursday 05 June 2014        Revocation of Veterans Service Organization's Power of Attorney as Plaintiff's Representative*.   Plaintiff submitted to the NYRO a 05 June 2014 memorandum revoking the VA Form 21-22 – *Appointment of Veterans Service Organization as*

*Claimant's Representative* previously submitted on 21 February 2012 that authorized the American Legion to act as Plaintiff's representative before the DVA. *See* Exhibit 11.

76.     *Friday 20 June 2014*          *Statement of the Case.* Plaintiff received from the NYRO VR&E Division a Statement of the Case (SOC) dated 17 June 2014, *see* Exhibit 12, that was prepared by the VRC and approved by the VREO, where the NYRO VR&E Division, *inter alia,*:

(a) stated that a copy of the SOC was provided to the New York State Division of Veterans Affairs as Plaintiff's representative, *ibid.* at 3;

(b) expressed the involved issue as concerning the "[d]enial of self-employment services under Chapter 31 VR&E", *ibid.*;

(c) recounted Plaintiff's disability rating of **SIXTY (60)** percent; *ibid.*;

(d) recounted a partial listing of Plaintiff's multiple SCD, *ibid.*;

(e) recounted Plaintiff's educational background, *ibid.* at 4;

(f) noted Plaintiff's lack of civilian work experience since being medically discharged from the Army on 12 January 2012, *ibid.*;

(g) noted Plaintiff's "extensive military work experience 1986-2012 – medical, aviation, training, security, and administrative occupations", *ibid.*;

(h) indicated within the heading that the American Legion possesses Plaintiff's Power of Attorney as a representative before the DVA, *ibid.*;

(i) recounted a partial listing of the Counseling and Rehabilitation Actions the NYRO VR&E Division preformed during Plaintiff's claim for Chapter 31 benefits and services, *ibid.* at 4-5;

(j) asserted that Plaintiff "was determined entitled to direct job placement services" as of 13 November 2013, *ibid.*;

(k) fully cited *ad verbum* 38 CFR §21.40 – *Basic Entitlement to Vocational Rehabilitation Benefits and Services* as one of the Pertinent Laws and Regulations involved in the claim, *ibid.* at 5-7;

(l) narrowly cited a passage from M28R.IV.C.4.04 as one of the Pertinent Laws and Regulations involved in the claim, *ibid.* at 7-8;

(m) narrowly cited 38 CFR §21.257(b) as one of the Pertinent Laws and Regulations involved in the claim, *ibid.* at 8;

(n) stated that Plaintiff was determined entitled to Chapter 31 benefits and services as of Plaintiff's 13 November 2013 Initial Evaluation interview, *ibid.* at 8;

(o) generally recounted some of the impairments resulting from Plaintiff's multiple SCD, *ibid.*;

(p) noted the assistance Plaintiff received from the CWTP at Northport VAMC, *ibid.*;

(q) quoted *ad verbum* a first-person description of the 07 January 2014 meeting between Plaintiff and the VREO as originally narrated in the AR Memorandum, including the pointed observation that Plaintiff "had to stand and then sit[] due to back pain" during said meeting, *ibid.* at 8-9;

(r) stated that Plaintiff "is entitled to VR&E services because he has an employment handicap, based on his service connected disabilities, which has not been overcome by suitable employment", *ibid.* at 9;

(s) opined that Plaintiff "has sufficient education and transferable military experience to seek competitive employment", *ibid.*;

(t) noted that though Plaintiff "had been looking for traditional employment, [with] the assistance of the staff at Northport VAMC, prior to applying for VR&E services[…Plaintiff] now refuses to continue with this plan", *ibid.*;

(u) reiterated Plaintiff's disability rating and multiple SCD, *ibid.*;

(v) asserted that "[t]here is a non-service connected issue of substance and alcohol abuse", *ibid.*;

(w) stated Plaintiff is entitled to Chapter 31 benefits and services as the impairments resulting from Plaintiff's multiple SCD satisfies the criteria in 38 CFR §21.51(b)(1) for a positive finding that Plaintiff has an EH related to service connected disabilities which has not been overcome, *ibid.*;

(x) also stated that Plaintiff is entitled to Chapter 31 benefits and services as the impairments resulting from Plaintiff's multiple SCD satisfies the criteria in 38 CFR §21.40(a)(3) for a positive determination that Plaintiff is in need of rehabilitation because of an EH, *ibid.*;

(y) reasoned that Plaintiff is "ineligible"/"unqualified" for a program of Chapter 31 services and assistance under the *Self-Employment Track* due to regarding Plaintiff's "refus[al]" to continue pursuing "traditional employment" as evidencing Plaintiff's failure to meet the criteria set forth in 38 CFR §21.257(b) in demonstrating that Self-Employment is the only feasible vocational goal for Plaintiff, *ibid.* at 9-10; and,

(z) further reasoned that Plaintiff is "ineligible"/"unqualified" for a program of Chapter 31 services and assistance under the *Self-Employment Track* due to regarding Plaintiff's "refus[al]" to continue pursuing "traditional

employment" as evidencing Plaintiff failed to meet the criteria set forth within M28R.IV.C.4.04 in demonstrating that Self-Employment is the only feasible vocational goal for Plaintiff, *ibid.* at 10.

77.    *Tuesday 01 July 2014*        *Submission of Substantive Appeal.*  Plaintiff perfected the administrative appeal of the NYRO VR&E Division's denial of Plaintiff's claim for a program of Chapter 31 services and assistance under the *Self-Employment Track* by submitted to the NYRO the requisite substantial administrative appeal form, VA Form 9 – *Appeal to the Board of Veterans' Appeal* (hereinafter, "VA Form 9"), *see* Exhibit 13 (*sans* attached sheets), wherein Plaintiff, *inter alia*,:

(a) reiterated Plaintiff's disagreements with the NYRO VR&E Division's reasoning and bases for denying Plaintiff's claim for a program of Chapter 31 services and assistance under the *Self-Employment Track* by directly citing and referencing the contentions and arguments delineated within the 02 June 2014 NOD;

(b) advanced the additional argument that the NYRO VR&E Division's asserted interpretation of 38 CFR §21.257 as restricting a program of Chapter 31 services and assistance under the Self-Employment Track solely to Veterans with "service-connected disability(ies) which are so severe as to necessitate selection of self-employment as the *only* reasonably feasible vocational goal" (emphasis added) contradicts and is irreconcilable with the DVA's stated intent for amending the criteria set forth within 38 CFR §21.257 as was announced within 74 Fed. Reg. 19,165 (28 April 2009) and 75 Fed. Reg. 3168 (20 January 2010); and,

41

(c) also advanced the additional argument that the NYRO VR&E Division's interpretations of both 38 CFR §21.257 and the M28R Manual as restricting a program of Chapter 31 services and assistance under the *Self-Employment Track* solely to Veterans with "service-connected disability(ies) which are so severe as to necessitate selection of self-employment as the *only* reasonably feasible vocational goal" (emphasis added), is incompatible and irreconcilable with the findings and determinations that the DVA Office of the Inspector General (DVA OIG) reported within DVA OIG Report 11-00317-37, "*Audit of Vocational Rehabilitation & Employment Program's Self-Employment Services at Eastern and Central Area Offices*" (11 December 2012), *see, e.g.,* DVA OIG Report 11-00317-37 at pages 20-21, Attachment A (reproducing a copy of the 27 August 2012 VR&E Letter 28-12-40 "*VR&E Procedures for Veterans Pursuing Self-Employment Goals under Chapter 31*", setting forth the criteria for the availability for Chapter 31 benefits and services under the *Self-Employment Track*).

78.     *Thursday 03 July 2014          Privacy Act Request.*  Pursuant to 5 USC §552a and 38 CFR §1.575 through 38 CFR §1.584, Plaintiff submitted VA Form 3288 – *Request For and Consent To Release of Information From Individual's Records* to the NYRO requesting for "[c]opies of all/any records and documentation acquired, generated, and maintained within Plaintiff's Counseling/Evaluation/Rehabilitation (CER) Folder" by the NYRO VR&E Division, *see* Exhibit 14 at 1-2.

79.     *Saturday 12 July 2014          Acknowledgement of Privacy Act Request.*  Plaintiff received an unsigned letter dated 09 July 2014 from an unidentified FOIA/PA Officer in the

NYRO acknowledging receipt of the 03 July 2014 PA Request for a copy of Plaintiff's CER

Folder. *See* Exhibit 14 at 3.

80.  *Wednesday 18 February 2015*  *Response to Privacy Act Request.*

(a) After a period of **TWO HUNDRED AND TWENTY-NINE (229)** days, Plaintiff

received a 17 February 2015 response from the NYRO to the 03 July 2014 PA Request for a

copy of Plaintiff's CER Folder (hereinafter, the "PA Response"), *see* Exhibit 14 at 4 (copy of

cover letter from the VREO), wherein which the NYRO, *inter alia,*:

(1) failed to provide a copy of the 17 January 2014 NOI as the NYRO VR&E

Division should have maintained within the CER Folder;

(2) failed to provide a copy of the 17 January 2014 AR Request as the NYRO

VR&E Division should have maintained within the CER Folder;

(3) failed to provide any documentation of the reasoning or bases for VR&E

Services delegating the NYRO VR&E Division to respond to the 17 January

2014 AR Request;

(4) failed to provide any documentation recounting VR&E Services' transference

of the AR Request to the NYRO VR&E Division;

(5) failed to provide a copy of the congressional inquiry the NYRO received from

Ms. **McCARTHY** as should have been maintained within the CER Folder;

(6) failed to provide a copy of the actual response the NYRO provided to Ms.

**McCARTHY**;

(7) failed to provide a copy of the 14 March 2014 congressional inquiry the

NYRO received from Senator **SCHUMER** as should have been maintained

within the CER Folder;

43

(8) failed to provide any documentation evidencing the NYRO provided a response to Senator **SCHUMER**;

(9) failed to provide a copy of the 25 April 2014 congressionally inquiry the NYRO received from Senator **GILLIBRAND** as should have been maintained within the CER Folder;

(10)    failed to provide any documentation evidencing the NYRO provided a response to Senator **GILLIBRAND**;

(11)    provided a copy of a previously unknown 09 April 2014 Notice of Proposed Discontinuance (NPD) from the NYRO VR&E Division with the VRC asserting that (i) the VR&E Division "tried to come to a feasible [vocational] goal with [Plaintiff] without success", (ii) Plaintiff "refused to participate in a feasible goal", and (iii) Plaintiff's claim will be discontinued if Plaintiff did not respond to the NPD, *see* Exhibit 15;

(12)    failed to provide a copy of the 09 May 2014 NFA as the NYRO VR&E Division should have maintained within the CER Folder;

(13)    failed to provide a copy of the 02 June 2014 NOD as the NYRO VR&E Division should have maintained within the CER Folder;

(14)    failed to provide a copy of the 17 June 2014 SOC as the NYRO VR&E Division should have maintained within the CER Folder;

(15)    failed to provide a copy of the 01 July 2014 VA Form 9 as the NYRO VR&E Division should have maintained within the CER Folder;

(16)    provided a copy of the 14 November 2013 Corporate WINRS (CWINRS) Case Management Counseling Report of the findings, conclusions, and

determinations rendered by the CP during the 13 November 2013 Initial Evaluation interview of Plaintiff (hereinafter, the "CWINRS CP Counseling Report"), *see* Exhibit 16;

(17)    provided a copy of VA Form 28-1902b – *Counseling Record – Narrative Report* prepared by the VRC (hereinafter, the "VAF 28-1902b") annotated as being completed and signed by the VRC on 07 January 2014, *see* Exhibit 17;

(18)    provided a copy of the 07 January 2014 CWINRS Case Management Counseling Report prepared by the VREO wherein which the VREO summarized the 07 January 2014 meeting between Plaintiff and the VREO (hereinafter, the "CWINRS VREO Counseling Report"), *see* Exhibit 18; and,

(19)    provided a copy of the 09 May 2014 VA Form 28-1905d – *Special Report of Training* prepared by the VRC (hereinafter, the "VAF 28-1905d"), *see* Exhibit 19.

(b) The CWINRS CP Counseling Report documents the findings, conclusions, and determinations rendered during the 13 November 2013 Initial Evaluation interview with Plaintiff wherein the CP reported, *inter alia*, that:

(1) Plaintiff's inability "to work in the medical field because it brings backs memories of [...] bagging and tagging his friends [and other victims]", *see* Exhibit 16 (CWINRS CP Counseling Report) at 1 ("Medical Information/ Disability Conditions");

(2) the impairments resulting from Plaintiff's multiple SCD include Plaintiff experiencing "difficulty sitting for prolong periods of time", *see ibid.* at 2 ("Medical Information/Disability Conditions");

(3) the impairments resulting from Plaintiff's multiple SCD include Plaintiff "experienc[ing] pain radiating down his back into his legs", *see ibid.*;

(4) the impairments resulting from Plaintiff's multiple SCD include Plaintiff's noticeable "prefer[ence] to stand" in reducing the level of pain being experienced in Plaintiff's lower back, *see ibid.*;

(5) the impairments resulting from Plaintiff's multiple SCD include Plaintiff experiencing "difficulty with bending, lifting, and stooping", *see ibid.*;

(6) the impairments resulting from Plaintiff's multiple SCD include Plaintiff experiencing a reduced ability "to engage in certain movements or positions because it aggravates his back", *see ibid.*;

(7) the impairments resulting from Plaintiff's multiple SCD include Plaintiff experiencing "numbness in his left hand and arm", *see ibid.*;

(8) the impairments resulting from Plaintiff's multiple SCD include "some loss of feeling in [left hand] which affects his grip[, and the intermittent need] to visually see his hand holding the object before he picks it up", *see ibid.*;

(9) the impairments resulting from Plaintiff's multiple SCD include Plaintiff "experienc[ing] severe pain in his [left knee] if he is in one position to [*sic*] long", *see ibid.*;

(10)   the impairments resulting from the Plaintiff's multiple SCD include Plaintiff experiencing episodes of Plaintiff's knees "tend[ing] to tighten up which makes it difficult to move [and ...] ambulate", *see ibid.*;

(11)   Plaintiff is "interested" in the Self-Employment Track "to start his own bar and grill restaurant", *see* ibid.;

46

(12)    Plaintiff "ha[s] impairment to employability because the disabilities, SCD, prevent [Plaintiff] from maintaining employment in [Plaintiff's] current field of Medicine", *see ibid.* at 2 ("Evidence of Impairments");

(13)    the impairments resulting from Plaintiff's multiple SCD  evidences "range of motion, psychological, and emotional limitations", *see ibid.*;

(14)    the impairments resulting from by Plaintiff's multiple SCD "are directly a result of" injuries which "occurred during" Plaintiff's military service, *see ibid.* at 2 (Substantial Contribution of SCD);

(15)    the impairments resulting from Plaintiff's multiple SCD demonstrates and evidences Plaintiff "has not overcome the effects of the impairment through suitable employment", *see ibid.* at 2 ("Has Veteran Overcome Impairment");

(16)    Plaintiff "does not have enough education or work experience for direct placement in an alternative field other than Medicine", *see ibid.*;

(17)    Plaintiff's "[Bachelors of Arts] degree in History is not sufficient to obtain employment as a teacher in [New York State]", *see ibid.*;

(18)    the impairments resulting from Plaintiff's multiple SCD evidences multiple EH which "inhibits [Plaintiff's] ability to obtain and retain employment", *see ibid.* at 2 ("Evidence of Employment Handicap");

(19)    the impairments resulting from Plaintiff's multiple SCD "presents severe symptoms which has limited [Plaintiff's] ability to deal with certain environment[s]", *see ibid.* at 2-3 ("Evidence of Employment Handicap");

(20)    that the impairments resulting from Plaintiff's multiple SCD include "no longer able to work as a paramedic because it causes flashbacks and

disturbing memories of [Plaintiff's] time in the military", *see ibid.* at 3 ("Evidence of Employment Handicap"); and,

(21)   that after carefully considering "[t]he nature and severity" of the impairments resulting from Plaintiff's multiple SCD and "the overall circumstances" of Plaintiff's situation, Plaintiff "meet the criteria" for establishing a positive finding of multiple SEH, *see ibid.* at 3 ("Evidence of Serious Employment Handicap").

(c) The VAF 28-1902b documents the opinions and decisions reported by the VRC wherein he, *inter alia,*:

(1) annotated that Plaintiff has not overcome the effects of the vocational impairments caused by multiple SCD, *see* Exhibit 17 at 1 (Item 7);

(2) annotated that the impairments resulting from Plaintiff's multiple SCD establishes the presence of EH, *see ibid.* at 1 (Item 8);

(3) explicitly annotated that the impairments resulting from Plaintiff's multiple SCD establishes the presence of SEH, *see ibid.* at 1 (Item 9);

(4) annotated that achievement of a vocational goal "cannot not be reasonable determined" thereby automatically necessitating a period of Extended Evaluation, *see ibid.* at 1 (Item 10);

(5) acknowledged through his signature that the foregoing determinations in "Part I – *Certification of Entitlement/Current Feasibility*" was rendered on 07 January 2014, *see ibid.* at 1 (Items 11 & 12);

(6) implicitly infers that he performed Plaintiff's 13 November 2013 Initial Evaluation interview instead of the CP as evidenced by his signature block in

48

the Counseling Narrative portion of VAF 28-1902b, *see ibid.* at 1 (Items 13 & 14);

(7) reutilized the history and background narration contained within the CWINRS CP Counseling Report with the exception of the first sentence by "cutting & pasting" such information *ad verbum* into VAF 28-1902b, *see ibid.* at 1-2 (Item 15 – "Eligibility & Entitlement Data – Veteran History");

(8) reutilized *ad verbum* the "Service Connected Disability Conditions" originally narrated within the CWINRS CP Counseling Report by "cutting & pasting" said information into VAF 28-1902b, *see ibid.* at 4;

(9) reutilized *ad verbum* the "Evidence of Impairments" originally narrated within the CWINRS CP Counseling Report by "cutting & pasting" said information into VAF 28-1902b, *see ibid.* at 5 ("Contribution of Service Connected Disability(ies) to Vocational Impairment");

(10)    reutilized *ad verbum* the "Substantial Contribution of SCD" originally narrated within the CWINRS CP Counseling Report by "cutting & pasting" said information into VAF 28-1902b, *see ibid.*;

(11)    failed to provide any finding or conclusion as to whether Plaintiff has or has not overcome the effects of impairments even though he expressly annotated (inaccurately) Plaintiff's employment status as being "Employed", *see ibid.* at 5 ("Overcoming the Effects of Impairment");

(12)    further inexplicably failed to "[d]escribe specifically how employment impacts the Veteran having overcome or not overcome the impairment", *see ibid.*;

(13)   explicitly reported finding and determining that the impairments resulting from Plaintiff's multiple SCD evidences the presence of multiple significant serious vocational impairments including (i) number of disabling conditions, (ii) record of current neuropsychiatric conditions, (iii) severity of disabling conditions, (iv) chronic pain, and (v) lack of education/ training for suitable employment, *see ibid.* at 5-6 ("Serious Employment Handicap");

(14)   reutilized for a second time the "Evidence of Impairments" originally narrated within the CWINRS CP Counseling Report by "cutting & pasting" said information *ad verbum* into VAF 28-1902b, *see ibid.* at 7 ("Serious Employment Handicap");

(15)   reutilized for a second time the "Substantial Contribution of SCD" originally narrated within the CWINRS CP Counseling Report by "cutting & pasting" said information *ad verbum* into the VAF 28-1902b, *see ibid.* at 7 ("Serious Employment Handicap");

(16)   expressly reiterated determining that Plaintiff has a SEH, *see ibid.* at 7 ("Serious Employment Handicap");

(17)   stated that Plaintiff is entitled to Chapter 31 benefits and services, *see ibid.* at 7 ("Entitlement Determination"); and,

(18)   asserted that Plaintiff's ability to achieve a vocational goal was allegedly "[u]ncertain" due to perceiving Plaintiff as being "only interested in pursuing a Self-Employment Plan[...and as he] is unwilling to entertain other discussion, feasibility cannot be determined at this time", *see ibid.* at 7 ("Feasibility").

(d) The CWINRS VREO Counseling Report, *see* Exhibit 18, documents the observations, impressions, and opinions the VREO inferred from the 07 January 2014 meeting with Plaintiff wherein the VREO, *inter alia,*:

(1) stated that Plaintiff's intent as seeking "VR&E sponsorship to open a Cabaret-self employment";

(2) recounted that Plaintiff "looked for hundreds of jobs since [January 2012] and has been turned down";

(3) noted that Plaintiff "has been known to VR&E only since [November 2013]";

(4) noted that Plaintiff "has two [Bachelors of Arts] degrees, but no recent civilian work history";

(5) recounted that Northport VAMC is treating Plaintiff for "back [pain] and depression" ;

(6) recounted that "as per [the Compensation and Pension Record Interchange (CAPRI) electronic record system, Plaintiff] has also been recommended for Alcohol treatment and had suicide attempt early 2013";

(7) expressly noted that during the course of the meeting, Plaintiff "had to stand up and stretch due to severe back pain";

(8) noted that the NYRO VR&E Division "has never helped [Plaintiff] look for employment";

(9) recounted that "[a]s per CAPRI[, Plaintiff] has been looking for work on his own recently but is not willing to see if VRE [sic] can help";

(10)   noted that Plaintiff "makes an excellent impression and speaks well[...and has] a calm demeanor".

(e) The VAF 28-1905d, *see* Exhibit 19, documents the VRC's assertions that Plaintiff:

    (1) "refused to participate in any evaluation and planning activities that do not include a plan of self-employment";

    (2) "has been deemed not to be eligible for a plan of self-employment"; and,

    (3) "has been deemed employable by typical employment standards".

81.    *Saturday 14 March 2015    Response to Freedom of Information Act Request.*  Plaintiff received from VR&E Services a 10 March 2015 response to Plaintiff's 10 March 2014 FOIA Request (hereinafter, the "FOIA Response"), *see* Exhibit 20, wherein VR&E Services reported, *inter alia*, that during Fiscal Years 2010 through 2015, out of a total of **THREE HUNDRED AND SEVENTY-SIX (376)** Veterans nationwide:

    (a) **ELEVEN (11)** Veterans adjudicated with a service-connected disability rating of 10%;

    (b) **EIGHTEEN (18)** Veterans adjudicated with a service-connected disability rating of 20%;

    (c) **SIXTY-TWO (62)** Veterans adjudicated with a service-connected disability rating between 30%-40%;

    (d) **SIXTY-EIGHT (68)** Veterans adjudicated with a service-connected disability rating between 50%-60%; and,

    (e) **SIXTY-FIVE (65)** Veterans assessed with impairments demonstrating and evidencing the presence of just EH instead of being impaired with SEH "so severe as to necessitate" self-employment as the only feasible vocational goal,

were provided a program of Chapter 31 services and assistance under the *Self-Employment Track*, which contravenes the principle reasoning and bases asserted by the NYRO VR&E

Division for interrupting, denying, and disallowing Plaintiff's claim for a program of Chapter 31 services and assistance under the *Self-Employment Track*.

82.     *Friday 24 April 2015          Notice from the Board of Veterans' Appeals*.   Plaintiff received a letter dated 20 April 2015 from the DVA Board of Veterans' Appeals (BVA), providing notice that the BVA received Plaintiff's CER Folder as the certified appellate record from the NYRO.

83.     *Wednesday 05 August 2015    Hearing before the Board of Veterans' Appeals*.   Plaintiff noted during the BVA hearing that the CER Folder, *inter alia*:

(a) did not contain any documentation recounting the reasoning or bases for the NYRO VR&E Division disregarding, ignoring, and not utilizing the information collected from Plaintiff as reported within the CWINRS CP Counseling Report while rendering determinations regarding Plaintiff's qualifications, character, rights, opportunities, and benefits to a program of Chapter 31 services and assistance under the *Self-Employment Track*;

(b) did not contain a copy of the 17 January 2014 AR Request that Plaintiff submitted to VR&E Services;

(c) did not contain any documentation recounting the reasoning or bases for VR&E Services delegating the NYRO VR&E Division to provide a response to the AR Request;

(d) did not contain any documentation recounting VR&E Services' transference of the AR Request to the NYRO VR&E Division;

(e) did not contain a copy of the congressional inquiry the NYRO received from Ms. **McCARTHY**;

(f) did not contain a copy of the actual response the VREO provided to Ms. **McCARTHY**;

(g) did not contain a copy of the 14 March 2014 congressional inquiry the NYRO received from Senator **SCHUMER**;

(h) did not contain any documentation evidencing that the NYRO provided a response to Senator **SCHUMER**;

(i) did not contain a copy of the 25 April 2014 congressional inquiry the NYRO received from Senator **GILLIBRAND**;

(j) did not contain any documentation evidencing that the NYRO provided a response to Senator **GILLIBRAND**;

(k) did not contain a copy of the 09 May 2014 NFA that the NYRO VR&E Division provided to Plaintiff;

(l) did not contain a copy of the 02 June 2014 NOD that Plaintiff submitted to the NYRO;

(m) did contain a copy of the 17 June 2014 SOC that the NYRO VR&E Division provided to Plaintiff; and,

(n) did not contain a copy of the 03 July 2014 PA Request that Plaintiff submitted to the NYRO;

(o) did not contain any documentation of the NYRO VR&E Division notifying Plaintiff of the transference of the appellate record to the BVA; and,

(p) did not contain any documentation or information evidencing that the NYRO VR&E Division attempted to correct any of the inconsistent, inaccurate information contained within Plaintiff's CER Folder.

## CONTENTIONS

84.    As recounted *supra* within ¶¶56-77, the NYRO VR&E Division maintained and upheld the 17 December 2013 "professional opinion[s]" and decisions of the VRC that:

(a) Plaintiff is "ineligible"/"unqualified" for a program of Chapter 31 services and assistance under the *Self-Employment Track*;

(b) the impairments resulting from Plaintiff's multiple SCD "are not of the most severe nature that self employment is [Plaintiff's] only feasible opportunity for employment";

(c) Plaintiff is "employable in Governmental as well as private industry";

(d) Plaintiff's "barriers and handicaps" to employment are "not to the degree of being designated with having a Serious Employment Handicap";

(e) Plaintiff needed to pursue a vocational goal of obtaining "traditional employment"; and,

(f) Plaintiff is only eligible for and entitled to direct job placement through a program of Chapter 31 services and assistance under *Rapid Access to Employment Track*,

while asserting that the reasoning and bases for such opinions and decisions were purportedly premised on the findings, conclusions, and determinations rendered during the 13 November 2013 Initial Evaluation of Plaintiff.  See, *e.g.*, Exhibit 12 (SOC) at 4, Exhibit 7 (AR Memorandum) at 3.

85.    The documents contained within Plaintiff's CER Folder evidences the NYRO VR&E Division primarily relied on the opinions and decisions of the VRC in restricting Plaintiff to direct job placement to the exclusion of any other course of action, *e.g.*,:

(a) the VRC opining Plaintiff is purportedly "employable in Governmental as well as private industry", *see* Exhibit 3 (NPA) at 1;

(b) the VRC opining Plaintiff as purportedly having "legitimate options for suitable employment", *see ibid.*;

(c) the VREO opining that Plaintiff is supposedly "not willing to see if [the NYRO VR&E Division] can help" with job placement, *see* Exhibit 18 (CWINRS VREO Counseling Report);

(d) the VREO expressly recounting that the NYRO VR&E Division offered direct job placement assistance to Plaintiff "as an initial service", *see* Exhibit 6 (Inquiry Response) at 1;

(e) the VREO expressly stating that the NYRO VR&E Division "would gladly work with [Plaintiff] towards competitive job placement", *see* Exhibit 7 (AR Memorandum) at 5;

(f) the NYRO VR&E Division reporting that Plaintiff was purportedly "determined entitled to direct job placement services" as of the 13 November 2013 Initial Evaluation, *see* Exhibit 12 (SOC) at 2;

(g) the NYRO VR&E Division reporting that Plaintiff supposedly "refused" any attempts and assistance from the NYRO VR&E Division towards obtaining "traditional employment", *see* Exhibit 12 (SOC) at 8; and,

(h) the VRC explicitly opining and deciding that Plaintiff " has been deemed not to be eligible for a plan of self-employment, as he has been deemed employable by typical employment standards", *see* Exhibit 19 (VAF 28-1905d).

86.     However Plaintiff's CER Folder also evidences material discrepancies between the aforesaid opinions and decisions versus the incompatible and irreconcilable , *e.g.*,:

(a) 14 November 2013 CWINRS CP Counseling Report wherein the CP explicitly found, concluded, and determined, *inter alia*, that (1) the impairments resulting from Plaintiff's multiple SCD demonstrates and evidences the presence of multiple SEH, (2) Plaintiff "does not have enough education or work experience for direct placement in an alternative field other than Medicine", (3) the impairments resulting from Plaintiff's multiple SCD precludes employment within the medical field, and (4) Plaintiff purportedly required an extended evaluation, *see* Exhibit 16;

(b) 07 January 2014 VAF 28-1902b wherein the VRC explicitly annotated that premised on findings, conclusions, and determinations rendered during 13 November 2013 Initial Evaluation, *inter alia*, (1) the impairments resulting from Plaintiff's multiple SCD demonstrates and evidences the presence of multiple SEH, (2) the impairments resulting from Plaintiff's multiple SCD precludes employment in the medical field, and (3) acknowledging Plaintiff required an extended evaluation, *see* Exhibit 17; and,

(c) election of the VRC to disregard and omit from the VAF 28-1902b any reference or information to the express determination of the CP that Plaintiff "does not have enough education or work experience for direct placement in an alternative field other than Medicine" notwithstanding reutilizing the findings, conclusions, and determinations reported in the CWINRS CP Counseling Report *ad verbum, see ibid.*.

57

87.     Comparing the CWINRS CP Counseling Report and the VAF 28-1902b against the other documents in Plaintiff's CER Folder evidences numerous instances of noncompliance with the DVA's principles of *Duty to Inform* and the PA's principles of *Fair Information Practices*, *e.g.*,:

(a) the Entitlement Letter did not contain any information or notice of the contemporaneous determinations that the impairments resulting from Plaintiff's multiple SCD evidences the presence of multiple SEH and of the perceived necessity for an Extended Evaluation;

(b) although unambiguously emphasizing the explicit "professional opinion" that Plaintiff's "barriers and handicaps" to employment are "not to the degree of being designated with having a [SEH]", the NPA did not contain any information or notice of the 13 November 2013 determinations that the impairments resulting from Plaintiff's multiple SCD evidences the presence of multiple SEH and of the perceived necessity for an Extended Evaluation;

(c) the CWINRS VREO Counseling Report did not contain any narrative of informing Plaintiff of the 13 November 2013 and 07 January 2014 determinations that the impairments resulting from Plaintiff's multiple SCD evidences the presence of multiple SHE even though the topic was extensively discussed during the meeting or, further, of the perceived necessity for an Extended Evaluation;

(d) though asserting Plaintiff supposedly "ha[d] been informed [of] the requirements for a self-employment plan[] for which you do not qualify", the NOI did not contain any information or notice of the 13 November 2013 and 07 January 2014 determinations that the impairments resulting from Plaintiff's

multiple SCD evidences the presence of multiple SEH and of the perceived necessity for an Extended Evaluation;

(e) the AR Memorandum did not contain any information or notice of the 13 November 2013 and 07 January 2014 determinations that the impairments resulting from Plaintiff's multiple SCD evidences the presence of multiple SEH and of the perceived necessity for an Extended Evaluation;

(f) though asserting that the NYRO VR&E Division supposedly "tried to come to a feasible [vocational] goal" with Plaintiff, the NPD did not contain any information or notice (1) of the 13 November 2013 and 07 January 2014 determinations that the impairments resulting from Plaintiff's multiple SCD evidences the presence of multiple SEH and of the perceived necessity for an Extended Evaluation or (2) recounting any of the "reasonable efforts" attempted in reaching "a feasible goal" with Plaintiff;

(g) other than curtly announcing the disallowance of Plaintiff's claim for Chapter 31 benefits and services because Plaintiff allegedly "refused to participate in any plan that did not fall under self-employment as the owner of a cabaret", the NFA did not contain any information or notice (1) of the 13 November 2013 and 07 January 2014 determinations that the impairments resulting from Plaintiff's multiple SCD evidences the presence of multiple SEH and of the perceived necessity for an Extended Evaluation or (2) recounting any of the "reasonable efforts" attempted in reaching "a feasible goal" with Plaintiff;

(h) failing to provide any information within the SOC addressing the obvious discrepancies between the CWINRS CP Counseling Report documenting that

59

Plaintiff's educational and professional background precluded direct job placement versus annotations in the "Counseling and Rehabilitation Actions" section of the SOC reporting that "[b]ased on education and current job placement endeavors, [Plaintiff] was determined entitled to direct job placement services" as of 13 November 2013;

(i) failing to provide any information within the SOC of the contentions advanced in the NOD regarding whether the severity of the impairments resulting from Plaintiff's multiple SCD meet the criteria for SEH, *cf.*, 38 CFR §19.29(c) (SOC must contain determination and reasoning for each contested determination);

(j) failing to provide any discussion within the SOC of Plaintiff's contentions and arguments advanced in the NOD regarding whether Plaintiff should have been afforded a period of Extended Evaluation, *cf.*, 38 CFR §19.29(c);

(k) failing to provide any information within the SOC of the findings, conclusions, or determinations reported in the CWINRS CP Counseling Report that the impairments resulting from Plaintiff's multiple SCD evidences the presence of multiple EH;

(l) failing to provide any information within the SOC of the findings, conclusions, and determinations reported in the CWINRS CP Counseling Report that the impairments resulting from Plaintiff's multiple SCD evidences the presence of multiple SEH;

(m) failing to provide any information within the SOC of the findings, conclusions, and determinations reported in the CWINRS CP Counseling

60

Report that the impairments resulting from Plaintiff's multiple SCD demonstrates an alleged necessity for an Extended Evaluation, *see* Exhibit 16 at 3 (feasibility of achieving a vocational goal will be determined by the case manager);

(n) failing to provide any information within the SOC of the opinions and decisions that the VRC clearly annotated in the VAF 28-1902b reporting that the impairments resulting from Plaintiff's multiple SCD demonstrates and evidences the presence of multiple EH;

(o) failing to provide any information within the SOC of the opinions and decisions that the VRC clearly annotated in the VAF 28-1902b reporting that the impairments resulting from Plaintiff's multiple SCD demonstrates and evidences the presence of multiple SEH;

(p) failing to provide any information within the SOC of the opinions and decisions that the VRC clearly annotated in the VAF 28-1902b reporting that the feasibility of Plaintiff's ability in achieving a vocational goal "[c]annot currently be determined", and, as such, automatically required for Plaintiff to undergo a period of Extended Evaluation, *see* Exhibit 17 at 1 (Item 10);

(q) failing to provide any information within the SOC addressing the discrepancies between the findings, conclusions, and determinations reported within the CWINRS CP Counseling Report versus the "professional opinion[s]" and decisions that the VRC reported within the NPA;

(r) failing to provide any information within the SOC addressing the discrepancies between the "professional opinion[s]" and decisions that the

VRC expressly reported in the NPA, *see* Exhibit 3 at 1 (*e.g.*, Plaintiff's "barriers and handicaps" to employment are allegedly not to the degree of being designated with having a SEH), versus the inconsistent and irreconcilable opinions and decisions the VRC explicitly annotated and reported in the VAF 28-1902b, *see* Exhibit 17 at 1 (annotating the presence of SEH) *and* at 6 (annotating the presence of multiple SEH);

(s) failing to provide any information within the SOC addressing the discrepancies between findings, conclusions, and determinations reported within the CWINRS CP Counseling Report and VAF 28-1902b versus the incompatible information and determinations the NYRO VR&E Division staunchly conveyed to Plaintiff both verbally (*i.e.*, during the 17 December 2013 initial appointment with the VRC and during the 07 January 2014 meeting with the VREO) and in writing (*i.e.*, within the NPA, the NOI, the AR Memorandum, and the NFA, *see also* the NPD and the Inquiry Response);

(t) failing to provide any information within the SOC recounting or addressing any of the asserted alleged "reasonable efforts" that the NYRO VR&E Division supposedly attempted in reaching "a feasible goal" with Plaintiff;

(u) failing to furnish a Supplemental Statement of the Case (SSOC) addressing Plaintiff's timely advancement of additional evidence and arguments (*i.e.*, citation of Federal Register, citation of the DVA OIG Report, citation of Internet articles) within VA Form 9, *see* 38 CFR §19.31(a) (SSOC must be prepared in event of changes in or additions to information included in the SOC); and,

(v) failing to furnish a SSOC in order to correct and address the deficiencies delineated *supra* within subparagraphs (a) through subparagraphs (u), <u>cf.</u>, 38 CFR §19.31(b)(2) (SSOC must be prepared in event a material defect in the SOC is discovered).

88.     Plaintiff's CER Folder further reflects that during the administrative appeal process of Plaintiff's claim for Chapter 31 benefits and services, the NYRO VR&E Division:

(a) failed to furnish Plaintiff with a *Veterans Claims Assistance Act of 2000* (VCAA) notice that the M28R Manual clearly requires for a VR&E Division to provide a Veteran after he/she submits a NOD, <u>see</u> M28R.III.C.3.07(c)(1)(b) (08 March 2013) (VREO must ensure VCAA letter is sent to Veteran in a timely matter within seven days of receiving the NOD and ensure that the "*Duty to Assist*" is met); and,

(b) failed to provide any notice of the certification and transference of Plaintiff's appeal record to the BVA, <u>cf.</u> 38 CFR §19.36 (Veteran and his/her representative, if any, will be notified in writing of the certification and transfer of appellant record and of the time limit for requesting a change in representation, for requesting a personal hearing, and for submitting additional evidence) *and* M28R.III.C.3.07(c)(11)(a) (08 March 2013) (Veteran must be informed in writing that the appeal is certified and transferred to BVA).

89.     Plaintiff's CER Folder likewise documents and evidences that while providing the 19 March 2014 Inquiry Response, the NYRO VR&E Division, *e.g.*:

(a) failed to provide any information of the 13 November 2013 findings, conclusions, and determinations of the CP reporting that the impairments

resulting from Plaintiff's multiple SCD evidences the presence of multiple

SEH even though such topic was one of the main points of inquiry;

(b) failed to provide any information of the 13 November 2013 findings,

conclusions, and determinations of the CP reporting that the impairments

resulting from Plaintiff's multiple SCD allegedly evidences the necessity for a

period of Extended Evaluation;

(c) failed to provide a member of Congress with accurate information of the

applicable criteria set forth within 38 CFR §21.257 governing determinations

of whether a Veteran may be afforded the availability of a program of Chapter

31 services and assistance under the *Self-Employment Track*; and,

(d) failed to comply with 38 CFR §§1.460-1.499 by disclosing without specific

written consent information of Plaintiff's discussion of an immoderate use of

alcohol and infrequent use of marijuana with his primary health care provider,

*see* 38 CFR §1.460(1)(iii) *and* VA Handbook 6300.4 (prohibiting release to

congressional representative of information relating to the use, abuse, or

treatment for alcohol or drugs without specific consent).

90.     Considering the number of *de novo* reviews of the information and records contained

within Plaintiff's CER Folder that the NYRO VR&E Division was mandated to perform in

compliance with apposite regulations and policy, *e.g.*,:

(a) prior to the VRC conducting the 17 December 2013 appointment, *see*, *e.g.* 38

CFR §21.70 (goal of a rehabilitation program is to, inter alia, evaluate and

improve Veteran's ability to achieve a vocational goal and provide services

needed to qualify for suitable employment) *and* M28R.IV.C.1.01(b) (VRC's

primary role is to assist Veteran in making informed decision based upon his or her functional abilities, interests, and aptitudes);

(b) upon proposing the discontinuance of Plaintiff's claim for Chapter 31 benefits and services on 17 December 2013, *see* 38 CFR §21.198(c)(7) (VREO shall review each case in which discontinuance is being considered for a Veteran with a disability rated 50% or higher), M28R.V.A.7.04(c) (07 November 2013) ("VREO shall review each case in which discontinuance is being considered"), *and* M28R.V.A.7.04(g) (07 November 2013) (Veteran notified of case discontinuance only after receiving VREO approval);

(c) prior to the VREO participating in the 07 January 2014 Informal Hearing with Plaintiff, *see* 38 CFR §21.420(d) (Veteran may meet informally with a DVA representative and review the bases for DVA decision, including any relevant written documents and material);

(d) upon to the 17 January 2014 interruption of Plaintiff's claim for Chapter 31 benefits and services, *see* 38 CFR §21.198(c)(7) (VREO shall review each case in which discontinuance is being considered for a Veteran with a disability rated 50% or higher), M28R.V.A.7.04(c) (07 November 2013) ("VREO shall review each case in which discontinuance is being considered"), *and* M28R.V.A.7.04(g) (07 November 2013) (Veteran notified of case discontinuance only after receiving VREO approval);

(e) prior to the VREO providing the 19 March 2014 Inquiry Response; *see* 38 CFR §1.576(b)(9) (Veteran may request disclosure of personal information contained within DVA records to be released to Member of Congress) *and* 38

CFR §1.577(d) (custodian of record must review and identify the presence of any sensitive records prior to disclosing information);

(f) prior to the VREO finalizing and providing Plaintiff with the 20 March 2014 AR Memorandum, *see* M28R.III.C.3.05(e)(1)(c) (08 March 2013) (VREO must explain each decision as clearly supported by evidence within CER Folder);

(g) prior to the 09 April 2014 proposal to discontinue Plaintiff's claim for Chapter 31 benefits and services, *see* 38 CFR §21.198(c)(7) (VREO shall review each case in which discontinuance is being considered for a Veteran with a disability rated 50% or higher), M28R.V.A.7.04(c) (07 November 2013) ("VREO shall review each case in which discontinuance is being considered"), *and* M28R.V.A.7.04(g) (07 November 2013) (Veteran notified of case discontinuance only after receiving VREO approval);

(h) prior to the VREO approving the 09 April 2014 proposal to discontinue Plaintiff's claim for Chapter 31 benefits and services, *see* 38 CFR §21.198(c)(7) (VREO shall review each case in which discontinuance is being considered for a Veteran with a disability rated 50% or higher), M28R.V.A.7.04(c) (07 November 2013) ("VREO shall review each case in which discontinuance is being considered"), *and* M28R.V.A.7.04(g) (07 November 2013) (Veteran notified of case discontinuance only after receiving VREO approval);

(i) prior to the VRC proposing the 09 May 2014 disallowance of Plaintiff's claim for Chapter 31 benefits and services, *see* 38 CFR §21.198(c)(7) (VREO shall

review each case in which discontinuance is being considered for a Veteran with a disability rated 50% or higher), M28R.V.A.7.04(c) (07 November 2013) ("VREO shall review each case in which discontinuance is being considered"), *and* M28R.V.A.7.04(g) (07 November 2013) (Veteran notified of case discontinuance only after receiving VREO approval);

(j) prior to the VREO approving the 09 May 2014 disallowance of Plaintiff's claim for Chapter 31 benefits and services, *see* 38 CFR §21.198(c)(7) (VREO shall review each case in which discontinuance is being considered for a Veteran with a disability rated 50% or higher), M28R.V.A.7.04(c) (07 November 2013) ("VREO shall review each case in which discontinuance is being considered"), *and* M28R.V.A.7.04(g) (07 November 2013) (Veteran notified of case discontinuance only after receiving VREO approval);

(k) prior to the NYRO VR&E Division effectuating the 09 May 2014 disallowance of Plaintiff's claim for Chapter 31 benefits and services, *see* 38 CFR §21.198(c)(7) (VREO shall review each case in which discontinuance is being considered for a Veteran with a disability rated 50% or higher) *and* M28R.V.A.7.04(g) (07 November 2013) (case manager notifies Veteran of case discontinuance only after receiving the approval of the VREO);

(l) upon receiving Plaintiff's timely submission of the 02 June 2014 NOD, *see* 38 CFR §19.26 (when timely NOD is filed, claim must be reexamined and determined whether additional review or development is warranted), M28R.III.C.1.03(b) (08 March 2013) (VREO responsible for reviewing NOD), *and* M28R.III.C.3.07(c)(1)(c) (08 March 2013) (VREO must review

NOD and evidence of record to determine if prior decision is correct and whether any further development or action is needed);

(m) prior to providing the 17 June 2014 SOC to Plaintiff, *see* M28R.III.C.1.03(b) (08 March 2013) (VREO must review and approve SOC), M28R.III.C.3.07(c)(3)(a) (08 March 2013) (VREO must review SOC and CER Folder), M28R.III.C.3.07(c)(4)(a) (08 March 2013) (VREO signs SOC upon completion of SOC review), M28R.III.C.3.11(b) (08 March 2013) (case manager must forward SOC to VREO for review and signature), M28R.III.C.3.11(c)(5) (08 March 2013) (SOC must (i) explain in detail the evidence used and how it supported the decision, (ii) address all of the Veteran's contentions, and (iii) provide clarification to ensure that the bases for the decision is fully explained), *and* M28R.III.C.3.11(c)(6) (08 March 2013) (case manager is to submit SOC to VREO for view and approval), *also see* 38 CFR §19.29 (SOC must contain (i) summary of the evidence relating to the issue or issues appellant expressed disagreement with and (ii) determination on each issue and the reasons for each such determination with respect to which disagreement has been expressed);

(n) upon Plaintiff's timely submission of the 01 July 2014 VA Form 9 to the NYRO, *see* 38 CFR §19.31(a) (SSOC must be prepared in event of changes in or additions to the information included in the SOC); M28R.III.C.3.07(c)(6)(b) (08 March 2013) (receipt of properly completed VA Form 9 requires VR&E Division to conduct a review of the entire record to determine whether further development is necessary), *and*

M28R.III.C.3.07(c)(6)(c) (08 March 2013) (VREO must determine if appeal is deficient in specification of fact or law);

(o) when the VA Form 9 advanced additional evidence and argument, the NYRO VR&E Division was required to review the record and issue a SSOC, *see* 38 CFR §19.31(b)(1) (SSOC must be prepared and furnished in the event additional pertinent evidence in provided), M28R.III.C.3.12 (08 March 2013) (SSOC will be developed when new evidence is submitted after SOC is issued or SOC contains an error or is materially deficient), *also see* 38 CFR §19.30(b) (SSOC required if a material defect in the SOC is discovered), M28R.III.C.3.07(c)(6)(d) (08 March 2013) (VREO must ensure SSOC is prepared if SOC contains an error or is materially deficient), *and* M28R.III.C.3.07(c)(8) (08 March 2013) (VREO must review the appeal and prepare a SSOC, grant the claim, arrange for a hearing, or certify the appeal to BVA); and,

(p) prior to certifying the case to the BVA, *see* 38 CFR §19.36 (appellant will be notified in writing of the certification and transfer of appellate record), M28R.III.C.3.07(c)(6) (VREO must review the record to determine whether to prepare the case for BVA review), M28R.III.C.3.07(c)(11)(a) (08 March 2013) (VREO must ensure that VA Form 8 is certified and sent to BVA), *and* M28R.III.C.3.07(c)(11)(a) (08 March 2013) (Veteran must be informed in writing that the appeal is certified to BVA),

only highlights and exponentially compounds the problematic issues regarding the manner in which the NYRO VR&E Division maintained Plaintiff's CER Folder.

91.     If it were not for the dilatory PA Response, Plaintiff would have remained unaware that the acts and omissions effectuated by the NYRO VR&E Division throughout the pendency of Plaintiff's claim for Chapter 31 benefits and services were inconsistent with the material and highly relevant information expressly documented in the CWINRS CP Counseling Report.

92.     The NYRO VR&E Division knew or should have known 5 USC §552a(e)(1) mandates that only such information about Plaintiff that is relevant and necessary in accomplishing VBA's mission in providing Plaintiff with timely and appropriate Chapter 31 benefits and services are to be maintained within Plaintiff's CER Folder.  *See also* OMB Privacy Act Implementation: Guidelines and Responsibilities (hereinafter, "OMB Guidelines"), 40 Fed. Reg. 28948 (09 July 1975) at 28960 ("key objective" of the PA is to reduce the amount of personal information collected by Federal agencies to reduce the risk of intentionally or inadvertently improper use of personally identifiable information).

93.     The NYRO VR&E Division knew or should have known 5 USC §552a(e)(5) mandates that all records utilized in making determinations concerning Plaintiff's claim for Chapter 31 benefits and services are to be maintained with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to Plaintiff in any such determination. *See also* OMB Guidelines, 40 Fed. Reg. at 28964 (objective of §552a(e)(5) is to minimize the risk that an agency will make an adverse determination about an individual on the bases of inaccurate, incomplete, irrelevant, or out-of-date records).

94.     The NYRO VR&E Division knew or should have known 5 USC §552a(e)(6) mandates for expending "reasonable efforts" in assuring Plaintiff's records are "accurate, complete, timely, and relevant for agency purposes" prior to disseminating any information about Plaintiff to any person other than an agency.  *See also* OMB Guidelines, 40 Fed. Reg. at 28965 (any record

70

disclosed to any person other than an agency must be as accurate as appropriate for purposes of the agency which maintained the record).

95.     The NYRO VR&E Division knew or should have known 5 USC §552a(e)(9) mandates that persons involved in, *inter alia*, the operation or maintenance of any systems of records or in maintaining any record must comply with the "rules of conduct" established by DVA pursuant to the requirements set forth within §552a. *See also* OMB Guidelines, 40 Fed. Reg. at 28965 ("[e]ffective compliance" with 5 USC §552a(e)(9) requires for all personnel having access to systems of records to be informed of the requirements of the PA and to be "adequately trained" in agency procedures implementing the requirements of the PA).

96.     The NYRO VR&E Division knew or should have known the "rules of conduct" cited *supra* within ¶¶24-37 are essential in assuring compliance with the requirements of the PA.

97.     The NYRO VR&E Division  knew or should have known the criteria cited *supra* within ¶¶38-43 governs the specific items and grouping of information the NYRO VR&E Division needed to obtain and maintain in order to provide Plaintiff with Chapter 31 benefits and services.

98.     The NYRO VR&E Division  knew or should have known the regulatory criteria cited *supra* within ¶¶44-49 governs the manner and methods that the NYRO VR&E Division is required to utilize while collecting, using, and maintaining information and records in providing Plaintiff with a comprehensive Initial Evaluation for Chapter 31 benefits and services.

99.     The NYRO VR&E Division knew or should have known the information collected from Plaintiff as recorded in the CWINRS CP Counseling Report was essential in accomplishing the purpose of determining Plaintiff's qualifications, character, rights, opportunities for, and benefit to an appropriate program of Chapter 31 benefits, services, and assistance in compliance with the statutory, regulatory, and procedural criteria cited *supra* in ¶¶38-43 and ¶¶51-52.

100.    The NYRO VR&E Division knew or should have known the CP collected the information contained in the CWINRS CP Counseling Report directly from Plaintiff in the course of favorably determining Plaintiff as being eligible and entitled to Chapter 31 benefits and services in compliance with the regulatory criteria cited *supra* within ¶¶38-49.

101.    The NYRO VR&E Division knew or should have known the "professional opinion[s]" and decisions the VRC reported in the 17 December 2013 NPA contradicted the information reported in the CWINRS CP Counseling Report and failed to comply with the regulatory criteria cited *supra* within ¶¶38-49.

102.    The NYRO VR&E Division knew or should have known the VRC did not directly collect from Plaintiff the information premising the reasoning and bases for the opinions and decisions the VRC annotated in the 07 January 2014 VAF 28-1902b.

103.    The NYRO VR&E Division knew or should have known the VRC plagiarized the information in the 07 January 2014 VAF 28-1902b from the CWINRS CP Counseling Report.

104.    The NYRO VR&E Division knew or should have known the reasoning and bases for the "professional opinion[s]" and decisions the VRC reported in the NPA and VAF 28-1902b inaccurately depicted information previously collected from Plaintiff.

105.    The NYRO VR&E Division knew or should have known that at no time during the pendency of Plaintiff's claim for Chapter 31 benefits and services was the information in the CWINRS CP Counseling Report utilized for the statutory purpose it was collected for.

106.    The NYRO VR&E Division knew or should have known that disregarding or ignoring the information contained in the CWINRS CP Counseling Report while determining Plaintiff's qualifications, character, rights, opportunities, and benefits to Chapter 31 benefits and services renders such information irrelevant and unnecessary.

107.   The NYRO VR&E Division knew or should have known that supplanting the information contained in the CWINRS CP Counseling Report with the "professional opinion[s]" and decisions the VRC reported in the 17 December 2013 NPA rendered the CWINRS CP Counseling Report nonessential and extraneous.

108.   The NYRO VR&E Division knew or should have known that obfuscating the information contained in the CWINRS CP Counseling Report with the VRC's selective plagiarism of said information in the 07 January 2014 VAF 28-1902b rendered the purpose for collecting the information reported in the CWINRS CP Counseling Report as discretionary and capricious.

109.   The NYRO VR&E Division knew or should have known that classifying the CWINRS CP Counseling Report as being irrelevant, unnecessary, nonessential, extraneous, or discretionary establishes such Report as an improper maintenance of personally identifiable information contrary to the requirements of the PA. *Cf.* OMB Guidelines, 40 Fed. Reg. at 28960 (authority to maintain a system of records does not give an agency the authority to maintain any information deemed useful or relevant; such information "must be both relevant and necessary").

110.   The NYRO VR&E Division knew or should have known that utilizing the "personal opinion[s]" and decisions of the VRC as the reasoning and bases for determining Plaintiff's qualifications, character, rights, opportunities, and benefits to Chapter 31 benefits and services directly and proximately caused several adverse determinations being rendered during the pendency of Plaintiff's claim for Chapter 31 benefits and services.

111.   The NYRO VR&E Division knew or should have known classifying the CWINRS CP Counseling Report as being irrelevant, unnecessary, nonessential, extraneous, or discretionary by failing to properly utilize the information contained in said Report directly and proximately caused Plaintiff to sustain numerous adverse and harmful damages.

73

112. Given that Plaintiff was determined eligible for and entitled to Chapter 31 benefits and services since 13 November 2013, the intentional and willfully acts and omissions of the NYRO and the NYRO VR&E Division directly and proximately, *inter alia*:

(a) denied Plaintiff with a meaningful and fair opportunity to effectively participate in planning and implementing an appropriate program of Chapter 31 services and assistance;

(b) afflicted disparate treatment upon Plaintiff in the planning of an appropriate program of Chapter 31 services and assistance for Plaintiff;

(c) precipitated multiple adverse determinations in implementing an appropriate program of Chapter 31 services and assistance for Plaintiff;

(d) impaired Plaintiff's right to Due Process;

(e) prolonged Plaintiff's unemployment unnecessarily;

(f) caused Plaintiff to forego and lose several entrepreneurial opportunities;

(g) increased and prolonged Plaintiff's financial insufficiency drastically;

(h) caused Plaintiff to experience an **EIGHT (8)**-month period of homelessness resulting in the lost of personal Household Goods/ Household Items (HHG/HHI);

(i) exacerbated Plaintiff's anxiety and stress over the unwarranted extension to effectuate adequate measures for self-support and sufficiency in alleviating current financial difficulties and hardships;

(j) aggravated and exacerbated severely Plaintiff's extreme distrust of individuals in supervisory or authoritative positions over Plaintiff; and,

(k) exacerbated Plaintiff's chronic insomnia severely.

<u>**CAUSES OF ACTION**</u>

**CLAIM I:**            **Defendant Violated 5 USC §552a(e)(1) on Multiple Occasions**.

113.    Plaintiff incorporates by reference ¶¶1-112 *supra* as if fully set forth herein.

114.    The NYRO VR&E Division knew or should have known that the following intentional

and willful acts and omissions constitutes separate and discrete violations of 5 USC §552a(e)(1):

(a) COUNT 1: Failing to utilize, recognize, or acknowledge the relevance of the

material information contained in the CWINRS CP Counseling Report during

the 17 December 2013 appointment between Plaintiff and the VRC;

(b) COUNT 2: Supplanting the findings, conclusions, and determinations reported

in the CWINRS CP Counseling Report with the opinions and decisions of the

VRC during the 17 December 2013 appointment with Plaintiff;

(c) COUNT 3: Failing to utilize, recognize, or acknowledge the relevance of the

material information contained in the CWINRS CP Counseling Report while

rendering determinations concerning Plaintiff's qualifications, character,

rights, opportunities for, and benefits to Chapter 31 benefits and services;

(d) COUNT 4: Failing to utilize, recognize, or acknowledge the relevance of the

material information contained in the CWINRS CP Counseling Report prior to

the VRC proposing for the 17 December 2013 discontinuance of Plaintiff's

claim for Chapter 31 benefits and services;

(e) COUNT 5: Failing to utilize, recognize, or acknowledge the relevance of the

material information contained in the CWINRS CP Counseling Report prior to

the VREO approving the proposal for the 17 December 2013 discontinuance

of Plaintiff's claim for Chapter 31 benefits and services;

(f) COUNT 6: Failing to utilize, recognize, or acknowledge the relevance of the material information contained in the CWINRS CP Counseling Report prior to NYRO VR&E Division providing Plaintiff with the 17 December 2013 NPA announcing the proposal to discontinue Plaintiff's claim for Chapter 31 benefits and services;

(g) COUNT 7: Failing to utilize, recognize, or acknowledge the relevance of the material information contained in the CWINRS CP Counseling Report while the VRC prepared the 07 January 2014 VAF 28-1902b;

(h) COUNT 8: Failing to utilize, recognize, or acknowledge the relevance of the material information contained in the CWINRS CP Counseling Report during the 07 January 2014 meeting between Plaintiff and the VREO;

(i) COUNT 9: Failing to utilize, recognize, or acknowledge the relevance of the material information contained in the CWINRS CP Counseling Report while the VREO prepared the 07 January 2014 CWINRS VREO Counseling Report of the 07 January 2014 meeting with Plaintiff;

(j) COUNT 10: Failing to utilize, recognize, or acknowledge the relevance of the material information contained in the CWINRS CP Counseling Report prior to the VRC proposing for the 17 January 2014 interruption of Plaintiff's claim for Chapter 31 benefits and services;

(k) COUNT 11: Failing to utilize, recognize, or acknowledge the relevance of the material information contained in the CWINRS CP Counseling Report prior to the VREO approving the proposal for the 17 January 2014 interruption of Plaintiff's claim for Chapter 31 benefits and services;

(l) COUNT 12: Failing to utilize, recognize, or acknowledge the relevance of the material information contained in the CWINRS CP Counseling Report prior to NYRO VR&E Division providing Plaintiff with the 17 January 2014 NOI announcing the interruption of Plaintiff's claim for Chapter 31 benefits and services;

(m) COUNT 13: Failing to recognize or acknowledge the relevance of the material information contained in the CWINRS CP Counseling Report while the VREO reviewed Plaintiff's CER Folder after receiving Plaintiff's 17 January 2014 AR Request;

(n) COUNT 14: Failing to recognize or acknowledge the relevance of the material information contained in the CWINRS CP Counseling Report while reviewing Plaintiff's CER Folder after the NYRO received the 12 March 2014 congressional inquiry from Ms. **McCARTHY**;

(o) COUNT 15: Failing to recognize or acknowledge the relevance of the material information contained in the CWINRS CP Counseling Report while reviewing Plaintiff's CER Folder after the NYRO received the 14 March 2014 congressional inquiry from Senator **SCHUMER**;

(p) COUNT 16: Failing to recognize or acknowledge the relevance of the material information contained in the CWINRS CP Counseling Report before the VREO provided the 19 March 2014 Inquiry Response to Ms. **McCARTHY**;

(q) COUNT 17: Failing to utilize, recognize, or acknowledge the relevance of the material information contained in the CWINRS CP Counseling Report when the VREO provided the 20 March 2014 AR Memorandum to Plaintiff;

(r) COUNT 18: Failing to utilize, recognize, or acknowledge the relevance of the material information contained in the CWINRS CP Counseling Report prior to the VRC proposing for the 09 April 2014 discontinuance of Plaintiff's claim for Chapter 31 benefits and services;

(s) COUNT 19: Failing to utilize, recognize, or acknowledge the relevance of the material information contained in the CWINRS CP Counseling Report prior to the VREO approving the proposal for the 09 April 2014 discontinuance of Plaintiff's claim for Chapter 31 benefits and services;

(t) COUNT 20: Failing to utilize, recognize, or acknowledge the relevance of the material information contained in the CWINRS CP Counseling Report prior to NYRO VR&E Division preparing the 09 April 2014 NPD announcing the approval for the discontinuance of Plaintiff's claim for Chapter 31 benefits and services;

(u) COUNT 21: Failing to recognize or acknowledge the relevance of the material information contained in the CWINRS CP Counseling Report while reviewing Plaintiff's CER Folder after the NYRO received the 25 April 2014 congressional inquiry from Senator **GILLIBRAND**;

(v) COUNT 22: Failing to utilize, recognize, or acknowledge the relevance of the material information contained in the CWINRS CP Counseling Report prior to the VRC proposing for disallowing Plaintiff's claim for Chapter 31 benefits and services within the 09 May 2014 VAF 28-1905d;

(w) COUNT 23: Failing to utilize, recognize, or acknowledge the relevance of the material information contained in the CWINRS CP Counseling Report prior to

78

the VREO approving the proposal for the 09 May 2014 disallowance of Plaintiff's claim for Chapter 31 benefits and services;

(x) COUNT 24: Failing to utilize, recognize, or acknowledge the relevance of the material information contained in the CWINRS CP Counseling Report prior to NYRO VR&E Division providing Plaintiff with the 09 May 2014 NFA announcing the disallowance of Plaintiff's claim for Chapter 31 benefits and services;

(y) COUNT 25: Failing to utilize, recognize, or acknowledge the relevance of the material information contained in the CWINRS CP Counseling Report while the NYRO VR&E Division reviewed Plaintiff's CER Folder after receiving Plaintiff's 02 June 2014 NOD;

(z) COUNT 26: Failing to utilize, recognize, or acknowledge the relevance of the material information contained in the CWINRS CP Counseling Report while the VRC prepared the 17 June 2014 SOC;

(aa)    COUNT 27: Failing to utilize, recognize, or acknowledge the relevance of the material information contained in the CWINRS CP Counseling Report prior to the VREO approving the 17 June 2014 SOC;

(bb)    COUNT 28: Failing to utilize, recognize, or acknowledge the relevance of the material information contained in the CWINRS CP Counseling Report prior to the NYRO VR&E Division delivering  the 17 June 2014 SOC to Plaintiff;

(cc)    COUNT 29: Failing to utilize, recognize, or acknowledge the relevance of the material information contained in the CWINRS CP Counseling Report

while the NYRO VR&E Division reviewed Plaintiff's CER Folder after receiving Plaintiff's 01 July 2014 VA Form 9;

(dd)   COUNT 30: Failing to utilize, recognize, or acknowledge the relevance of the material information contained in the CWINRS CP Counseling Report while the NYRO VR&E Division reviewed Plaintiff's CER Folder after receiving Plaintiff's 03 July 2014 PA Request for a copy of the CER Folder;

(ee)   COUNT 31: Failing to utilize, recognize, or acknowledge the relevance of the material information contained in the CWINRS CP Counseling Report while the VREO reviewed Plaintiff's CER Folder prior to certifying the appellate record to the BVA on 23 December 2014;

(ff) COUNT 32: Failing to utilize, recognize, or acknowledge the relevance of the material information contained in the CWINRS CP Counseling Report prior to the VREO provided the 18 February 2015 PA Response to Plaintiff; and,

(gg)   COUNT 33: Failing to utilize, recognize, or acknowledge the relevance of the material information contained in the CWINRS CP Counseling Report prior to the NYRO VR&E Division delivering the certified appellate record to the BVA on 14 April 2015.

115.   As a direct and proximate result of the acts and omissions specified *supra* within ¶114, Plaintiff sustained adverse and harmful effects, including, but not limited to, mental distress, emotional trauma, economic loss, the lost of benefits, the lost of personal property, the lost of professional opportunities, and the lost of past, current, and future economic opportunities.

116.   Pursuant to 5 USC §552a(g)(1)(C) and 5 USC §552a(g)(1)(D), the DVA is liable for the intentional and willful acts and omissions specified *supra* within ¶¶113-115.

**CLAIM II:**          **Defendant Violated 5 USC §552a(e)(2) on Multiple Occasions**.

117.   Plaintiff incorporates by reference ¶¶1-112 *supra* as if fully set forth herein.

118.   The NYRO VR&E Division knew or should have known 5 USC §552a(e)(2) requires the collection of information directly from Plaintiff prior to rendering any adverse determinations regarding Plaintiff's claim for Chapter 31 benefits and services.

119.   The NYRO VR&E Division knew or should have know the opinions and decisions reported in the 17 December 2013 NPA were not premised on information the VRC collected directly from Plaintiff.

120.   The NYRO VR&E Division knew or should have known the opinions and decisions reported within the 07 January 2014 VAF 28-1902b were not premised on information the VRC collected directly from Plaintiff.

121.   The NYRO VR&E Division knew or should have known that the following intentional and willful acts and omissions constitutes separate and discrete violations of 5 USC §552a(e)(2):

   (a) COUNT 1: Failing to collect information directly from Plaintiff when the VRC rendered the "professional opinion[s]" and decisions reported in the 17 December 2013 NPA;

   (b) COUNT 2: Utilizing the opinions and decisions reported in the 17 December 2013 NPA in supplanting the findings, conclusions, and determinations reported in the CWINRS CP Counseling Report;

   (c) COUNT 3: Utilizing the opinions and decisions reported in the 17 December 2013 NPA as the reasoning and bases for determining Plaintiff's qualifications, character, rights, opportunities, and benefits to a program of Chapter 31 services and assistance under the *Self-Employment Track*;

81

(d) COUNT 4: Utilizing the opinions and decisions reported in the 17 December 2013 NPA as the reasoning and bases for the VRC's 17 December 2013 proposal to discontinue Plaintiff's claim for Chapter 31 benefits and services;

(e) COUNT 5: Utilizing the opinions and decisions reported in the 17 December 2013 NPA as the reasoning and bases for the VREO approving the 17 December 2013 proposal to discontinue Plaintiff's claim for Chapter 31 benefits and services;

(f) COUNT 6: Utilizing the opinions and decisions reported in the 17 December 2013 NPA as the reasoning and bases for the NYRO VR&E Division providing Plaintiff with the 17 December 2013 NPA announcing the approved proposal to discontinue Plaintiff's claim for Chapter 31 benefits and services;

(g) COUNT 7: Failing to collect information directly from Plaintiff when the VRC prepared opinions and decisions reported in the 07 January 2014 VAF 28-1902b;

(h) COUNT 8: Utilizing the opinions and decisions reported in the 17 December 2013 NPA as the reasoning and bases for the VREO upholding the decision of the VRC during the 07 January 2014 meeting with Plaintiff;

(i) COUNT 9: Utilizing the opinions and decisions reported in the 17 December 2013 NPA as the reasoning and bases for the opinions and decisions reported by the VREO in the CWINRS VERO Counseling Report;

(j) COUNT 10: Utilizing the opinions and decisions reported in the 17 December 2013 NPA as the reasoning and bases for the VRC's 17 January 2014 proposal to interrupt Plaintiff's claim for Chapter 31 benefits and services;

(k) COUNT 11: Utilizing the opinions and decisions reported in the 17 December 2013 NPA as the reasoning and bases for the VREO approving the 17 January 2013 interruption of Plaintiff's claim for Chapter 31 benefits and services;

(l) COUNT 12: Utilizing the opinions and decisions reported in the 17 December 2013 NPA as the reasoning and bases for the NYRO VR&E Division providing Plaintiff with the 17 January 2014 NOI announcing the interruption of Plaintiff's claim for Chapter 31 benefits and services;

(m) COUNT 13: Utilizing the opinions and decisions reported in the 17 December 2013 NPA as the reasoning and bases premising the VREO's deficient disclosure of information purportedly contained within Plaintiff's CER Folder while preparing and providing the 19 March 2014 Inquiry Response to Ms. **McCARTHY**;

(n) COUNT 14: Utilizing the opinions and decisions reported in the 17 December 2013 NPA as the reasoning and bases premising the VREO's deficient disclosure of information purportedly contained within Plaintiff's CER Folder while providing the 20 March 2014 AR Memorandum to Plaintiff;

(o) COUNT 15: Utilizing the opinions and decisions reported in the 17 December 2013 NPA as the reasoning and bases for the VRC's 09 April 2014 proposal to discontinue Plaintiff's claim for Chapter 31 benefits and services;

(p) COUNT 16: Utilizing the opinions and decisions reported in the 17 December 2013 NPA as the reasoning and bases for the VREO approving the 09 April 2014 proposal to discontinue Plaintiff's claim for Chapter 31 benefits and services;

(q) COUNT 17: Utilizing the opinions and decisions reported in the 17 December 2013 NPA as the reasoning and bases for the NYRO VR&E Division preparing the 09 April 2014 NPD announcing the proposal to discontinue Plaintiff's claim for Chapter 31 benefits and services;

(r) COUNT 18: Utilizing the opinions and decisions reported in the 17 December 2013 NPA as the reasoning and bases for the VRC asserting the proposal advanced in the 09 May 2014 VAF 28-1905d to disallow Plaintiff's claim for Chapter 31 benefits and services;

(s) COUNT 19: Utilizing the opinions and decisions reported in the 17 December 2013 NPA as the reasoning and bases for the VREO approving the 09 May 2014 proposal to disallow Plaintiff's claim for Chapter 31 benefits and services;

(t) COUNT 20: Utilizing the opinions and decisions reported in the 17 December 2013 NPA as the reasoning and bases for the NYRO VR&E Division providing Plaintiff with the 09 May 2014 NFA announcing the disallowance of Plaintiff's claim for Chapter 31 benefits and services;

(u) COUNT 21: Utilizing the opinions reported in the 17 December 2013 NPA as the reasoning and bases for the 17 June 2014 SOC upholding the VRC's decision that Plaintiff was "ineligible"/"unqualified" for a program of Chapter 31 services and assistance under the *Self-Employment Track*;

(v) COUNT 22: Utilizing the opinions reported in the 17 December 2013 NPA as the reasoning and bases for the 17 June 2014 SOC upholding the VRC's decision to disallow Plaintiff 's claim for Chapter 31 benefits and services;

(w) COUNT 23: Utilizing the opinions reported in the 17 December 2013 NPA as the reasoning and bases for the VREO approving the 17 June 2014 SOC decision that Plaintiff was "ineligible"/"unqualified" for a program of Chapter 31 services and assistance under the *Self-Employment Track*;

(x) COUNT 24: Utilizing the opinions reported in the 17 December 2013 NPA as the reasoning and bases for the VREO approving the 17 June 2014 SOC disallowance of Plaintiff 's claim for Chapter 31 benefits and services;

(y) COUNT 25: Utilizing the opinions and decisions reported in the 17 December 2013 NPA and 17 June 2014 SOC as the reasoning and bases for the VREO not to preparing a SSOC after receiving Plaintiff's 01 July 2014 VA Form 9;

(z) COUNT 26: Utilizing the opinions and decisions reported in the 17 December 2013 NPA and 17 June 2014 SOC as the reasoning and bases for the VREO certifying Plaintiff's CER Folder as being complete and accurate for the administrative appellate record before the BVA; and,

(aa)   COUNT 27: Utilizing the opinions and decisions reported in the 17 December 2013 NPA and 17 June 2014 SOC as the reasoning and bases for the NYRO transferring the administrative appellate record to the BVA.

122.   As a direct and proximate result of the acts and omissions specified *supra* within ¶121, Plaintiff sustained adverse and harmful effects, including, but not limited to, mental distress, emotional trauma, economic loss, the lost of benefits, the lost of personal property, the lost of professional opportunities, and the lost of past, current, and future economic opportunities.

123.   Pursuant to 5 USC §552a(g)(1)(C) and 5 USC §552a(g)(1)(D), the DVA is liable for the intentional and willful acts and omissions specified *supra* within ¶¶117-122.

**CLAIM III**:          **Defendant Violated 5 USC §552a(e)(5) on Multiple Occasions**.

124.    Plaintiff incorporates by reference ¶¶1-112 *supra* as if fully set forth herein.

125.    The NYRO VR&E Division knew or should have known that the following intentional

and willful acts and omissions constitutes separate and discrete violations of 5 USC §552a(e)(5):

   (a) COUNT 1: Failing to ensure Plaintiff's CER Folder contained the CWINRS

       CP Counseling Report prior to the 17 December 2013 appointment between

       Plaintiff and the VRC;

   (b) COUNT 2: Failing to ensure Plaintiff's CER Folder contained the CWINRS

       CP Counseling Report while the VRC conducted the 17 December 2013

       appointment with Plaintiff;

   (c) COUNT 3: Failing to ensure Plaintiff's CER Folder contained the CWINRS

       CP Counseling Report while the VRC rendered determinations of  Plaintiff's

       qualifications for, opportunities of, and benefits to a program of Chapter 31

       services and assistance;

   (d) COUNT 4: Failing to ensure Plaintiff's CER Folder contained the relevant

       CWINRS CP Counseling Report prior to the VRC's 17 December 2013

       proposal to discontinue Plaintiff's claim for Chapter 31 benefits and services;

   (e) COUNT 5: Failing to ensure Plaintiff's CER Folder contained the CWINRS

       CP Counseling Report prior to the VREO approving the VRC's 17 December

       2013 proposal to discontinue Plaintiff's claim for Chapter 31 benefits and

       services;

   (f) COUNT 6: Failing to discern the discrepancies within Plaintiff's CER Folder

       between the CWINRS CP Counseling Report versus the contradictory 17

December 2013 NPA prior to the VREO approving the VRC's 17 December 2013 proposal to discontinue Plaintiff's claim for Chapter 31 benefits and services;

(g) COUNT 7: Failing to ensure Plaintiff's CER Folder contained the relevant CWINRS CP Counseling Report prior to the NYRO VR&E Division providing Plaintiff with the 17 December 2013 NPA announcing the proposal to discontinue Plaintiff's claim for Chapter 31 benefits and services;

(h) COUNT 8: Failing to discern the discrepancies within Plaintiff's CER Folder between the CWINRS CP Counseling Report versus the contradictory 17 December 2013 NPA prior to the NYRO VR&E Division providing Plaintiff with the 17 December 2013 NPA announcing the proposal to discontinue Plaintiff's claim for Chapter 31 benefits and services;

(i) COUNT 9: Failing to ensure Plaintiff's CER Folder contained the relevant CWINRS CP Counseling Report prior to the VREO conducted the 07 January 2014 meeting with Plaintiff;

(j) COUNT 10: Failing to discern the discrepancies within Plaintiff's CER Folder between the CWINRS CP Counseling Report versus the contradictory 17 December 2013 NPA prior to the VREO conducted the 07 January 2014 meeting with Plaintiff;

(k) COUNT 11: Failing to discern the discrepancies within Plaintiff's CER Folder between the 17 December 2013 NPA versus the inconsistent and incompatible opinions the VRC reported in the 07 January 2014 VAF 28-1902b prior to the VREO conducted the 07 January 2014 meeting with Plaintiff;

(l) COUNT 12: Failing to discern the discrepancies within Plaintiff's CER Folder between the CWINRS CP Counseling Report versus the incompatible and inconsistent opinions reported by the VRC in the 17 December 2013 NPA and the 07 January 2014 VAF 28-1902b prior to the VREO conducted the 07 January 2014 meeting with Plaintiff;

(m) COUNT 13: Failing to ensure Plaintiff's CER Folder contained the relevant CWINRS CP Counseling Report while the VREO conducted the 07 January 2014 meeting between Plaintiff;

(n) COUNT 14: Failing to discern the discrepancies within Plaintiff's CER Folder between the CWINRS CP Counseling Report versus the contradictory 17 December 2013 NPA while the VREO conducted the 07 January 2014 meeting between Plaintiff;

(o) COUNT 15: Failing to discern the discrepancies within Plaintiff's CER Folder between the 17 December 2013 NPA versus the inconsistent and incompatible opinions the VRC reported in the 07 January 2014 VAF 28-1902b while the VREO conducted the 07 January 2014 meeting between Plaintiff;

(p) COUNT 16: Failing to discern the discrepancies within Plaintiff's CER Folder between the CWINRS CP Counseling Report versus the incompatible and inconsistent opinions reported by the VRC in the 17 December 2013 NPA and the 07 January 2014 VAF 28-1902b while the VREO conducted the 07 January 2014 meeting between Plaintiff;

(q) COUNT 17: Failing to ensure Plaintiff's CER Folder contained the relevant CWINRS CP Counseling Report prior to the VREO upholding the VRC's

opinions regarding Plaintiff's qualifications, opportunities, and benefits to a program of Chapter 31 services and assistance;

(r) COUNT 18: Failing to discern the discrepancies within Plaintiff's CER Folder between the CWINRS CP Counseling Report versus the contradictory 17 December 2013 NPA prior to the VREO upholding the VRC's opinions regarding Plaintiff's qualifications, opportunities, and benefits to a program of Chapter 31 services and assistance;

(s) COUNT 19: Failing to discern the discrepancies within Plaintiff's CER Folder between the 17 December 2013 NPA versus the inconsistent and incompatible opinions the VRC reported in the 07 January 2014 VAF 28-1902b prior to the VREO upholding the VRC's opinions regarding Plaintiff's qualifications, opportunities, and benefits to a program of Chapter 31 services and assistance;

(t) COUNT 20: Failing to discern the discrepancies within Plaintiff's CER Folder between the CWINRS CP Counseling Report versus the incompatible and inconsistent opinions reported by the VRC in the 17 December 2013 NPA and the 07 January 2014 VAF 28-1902b prior to the VREO upholding the VRC's opinions regarding Plaintiff's qualifications, opportunities, and benefits to a program of Chapter 31 services and assistance;

(u) COUNT 21: Failing to ensure Plaintiff's CER Folder contained the relevant CWINRS CP Counseling Report prior to the VREO concluding the 07 January 2014 meeting with Plaintiff;

(v) COUNT 22: Failing to discern the discrepancies within Plaintiff's CER Folder between the CWINRS CP Counseling Report versus the contradictory 17

December 2013 NPA prior to the VREO concluding the 07 January 2014 meeting with Plaintiff;

(w) COUNT 23: Failing to discern the discrepancies within Plaintiff's CER Folder between the 17 December 2013 NPA versus the inconsistent and incompatible opinions the VRC reported in the 07 January 2014 VAF 28-1902b prior to the VREO concluding the 07 January 2014 meeting with Plaintiff;

(x) COUNT 24: Failing to discern the discrepancies within Plaintiff's CER Folder between the CWINRS CP Counseling Report versus the incompatible and inconsistent opinions reported by the VRC in the 17 December 2013 NPA and the 07 January 2014 VAF 28-1902b prior to the VREO concluding the 07 January 2014 meeting with Plaintiff;

(y) COUNT 25: Failing to ensure Plaintiff's CER Folder contained the relevant CWINRS CP Counseling Report prior to the VRC proposing the interruption of Plaintiff's claim for Chapter 31 benefits and services;

(z) COUNT 26: Failing to discern the discrepancies within Plaintiff's CER Folder between the CWINRS CP Counseling Report versus the contradictory 17 December 2013 NPA prior to the VRC proposing the interruption of Plaintiff's claim for Chapter 31 benefits and services;

(aa)    COUNT 27: Failing to discern the discrepancies within Plaintiff's CER Folder between the 17 December 2013 NPA versus the inconsistent and incompatible opinions the VRC reported in the 07 January 2014 VAF 28-1902b prior to the VRC proposing the interruption of Plaintiff's claim for Chapter 31 benefits and services;

(bb)    COUNT 28: Failing to discern the discrepancies within Plaintiff's CER Folder between the CWINRS CP Counseling Report versus the incompatible and inconsistent opinions reported by the VRC in the 17 December 2013 NPA and the 07 January 2014 VAF 28-1902b prior to the VRC proposing the interruption of Plaintiff's claim for Chapter 31 benefits and services;

(cc)    COUNT 29: Failing to ensure Plaintiff's CER Folder contained the relevant CWINRS CP Counseling Report prior to the VREO approving the VRC's proposal for interrupting Plaintiff's claim for Chapter 31 benefits and services;

(dd)    COUNT 30: Failing to discern the discrepancies within Plaintiff's CER Folder between the CWINRS CP Counseling Report versus the contradictory 17 December 2013 NPA prior to the VREO approving the VRC's proposal for interrupting Plaintiff's claim for Chapter 31 benefits and services;

(ee)    COUNT 31: Failing to discern the discrepancies within Plaintiff's CER Folder between the 17 December 2013 NPA versus the inconsistent and incompatible opinions the VRC reported in the 07 January 2014 VAF 28-1902b prior to the VREO approving the VRC's proposal for interrupting Plaintiff's claim for Chapter 31 benefits and services;

(ff) COUNT 32: Failing to discern the discrepancies within Plaintiff's CER Folder between the CWINRS CP Counseling Report versus the incompatible and inconsistent opinions reported by the VRC in the 17 December 2013 NPA and the 07 January 2014 VAF 28-1902b prior to the VREO approving the VRC's proposal for interrupting Plaintiff's claim for Chapter 31 benefits and services;

(gg)   COUNT 33: Failing to ensure Plaintiff's CER Folder contained the CWINRS CP Counseling Report prior to the NYRO VR&E Division providing Plaintiff with the 17 January 2014 NOI announcing the interruption of Plaintiff's claim for Chapter 31 benefits and services;

(hh)   COUNT 34: Failing to discern the discrepancies within Plaintiff's CER Folder between the CWINRS CP Counseling Report versus the contradictory 17 December 2013 NPA prior to the NYRO VR&E Division providing Plaintiff with the 17 January 2014 NOI announcing the interruption of Plaintiff's claim for Chapter 31 benefits and services;

(ii) COUNT 35: Failing to discern the discrepancies within Plaintiff's CER Folder between the 17 December 2013 NPA versus the inconsistent and incompatible opinions the VRC reported in the 07 January 2014 VAF 28-1902b prior to the NYRO VR&E Division providing Plaintiff with the 17 January 2014 NOI announcing the interruption of Plaintiff's claim for Chapter 31 benefits and services;

(jj) COUNT 36: Failing to discern the discrepancies within Plaintiff's CER Folder between the CWINRS CP Counseling Report versus the incompatible and inconsistent opinions reported by the VRC in the 17 December 2013 NPA and the 07 January 2014 VAF 28-1902b prior to the NYRO VR&E Division providing Plaintiff with the 17 January 2014 NOI announcing the interruption of Plaintiff's claim for Chapter 31 benefits and services;

(kk)   COUNT 37: Failing to ensure Plaintiff's CER Folder contained the relevant CWINRS CP Counseling Report when the VREO supposedly

reviewed Plaintiff's CER Folder prior to preparing the 19 March 2014 Inquiry Response to Ms. **McCARTHY**;

(ll) COUNT 38: Failing to discern the discrepancies within Plaintiff's CER Folder between the CWINRS CP Counseling Report versus the contradictory 17 December 2013 NPA when the VREO supposedly reviewed Plaintiff's CER Folder prior to preparing the 19 March 2014 Inquiry Response to Ms. **McCARTHY**;

(mm)  COUNT 39: Failing to discern the discrepancies within Plaintiff's CER Folder between the 17 December 2013 NPA versus the inconsistent and incompatible opinions the VRC reported in the 07 January 2014 VAF 28-1902b when the VREO supposedly reviewed Plaintiff's CER Folder prior to preparing the 19 March 2014 Inquiry Response to Ms. **McCARTHY**;

(nn)  COUNT 40: Failing to discern the discrepancies within Plaintiff's CER Folder between the CWINRS CP Counseling Report versus the incompatible and inconsistent opinions reported by the VRC in the 17 December 2013 NPA and the 07 January 2014 VAF 28-1902b when the VREO supposedly reviewed Plaintiff's CER Folder prior to preparing the 19 March 2014 Inquiry Response to Ms. **McCARTHY**;

(oo)  COUNT 41: Failing to ensure Plaintiff's CER Folder contained the relevant CWINRS CP Counseling Report prior to the NYRO VR&E Division providing the 19 March 2014 Inquiry Response to Ms. **McCARTHY**;

(pp)  COUNT 42: Failing to discern the discrepancies within Plaintiff's CER Folder between the CWINRS CP Counseling Report versus the contradictory

17 December 2013 NPA prior to the NYRO VR&E Division providing the 19 March 2014 Inquiry Response to Ms. **McCARTHY**;

(qq)    COUNT 43: Failing to discern the discrepancies within Plaintiff's CER Folder between the 17 December 2013 NPA versus the inconsistent and incompatible opinions the VRC reported in the 07 January 2014 VAF 28-1902b prior to the NYRO VR&E Division providing the 19 March 2014 Inquiry Response to Ms. **McCARTHY**;

(rr) COUNT 44: Failing to discern the discrepancies within Plaintiff's CER Folder between the CWINRS CP Counseling Report versus the incompatible and inconsistent opinions reported by the VRC in the 17 December 2013 NPA and the 07 January 2014 VAF 28-1902b prior to the NYRO VR&E Division providing the 19 March 2014 Inquiry Response to Ms. **McCARTHY**;

(ss) COUNT 45: Failing to ensure Plaintiff's CER Folder contained the relevant CWINRS CP Counseling Report when the VREO supposedly reviewed Plaintiff's CER Folder prior to preparing the 20 March 2014 AR Memorandum;

(tt) COUNT 46: Failing to discern the discrepancies within Plaintiff's CER Folder between the CWINRS CP Counseling Report versus the contradictory 17 December 2013 NPA when the VREO supposedly reviewed Plaintiff's CER Folder prior to preparing the 20 March 2014 AR Memorandum;

(uu)    COUNT 47: Failing to discern the discrepancies within Plaintiff's CER Folder between the 17 December 2013 NPA versus the inconsistent and incompatible opinions the VRC reported in the 07 January 2014 VAF 28-

1902b when the VREO supposedly reviewed Plaintiff's CER Folder prior to
the preparing the 20 March 2014 AR Memorandum;

(vv)    COUNT 48: Failing to discern the discrepancies within Plaintiff's CER
Folder between the CWINRS CP Counseling Report versus the incompatible
and inconsistent opinions reported by the VRC in the 17 December 2013 NPA
and the 07 January 2014 VAF 28-1902b when the VREO supposedly
reviewed Plaintiff's CER Folder prior to the preparing the 20 March 2014 AR
Memorandum;

(ww)    COUNT 49: Failing to ensure Plaintiff's CER Folder contained the
relevant CWINRS CP Counseling Report prior to the NYRO VR&E Division
providing the 20 March 2014 AR Memorandum to Plaintiff;

(xx)    COUNT 50: Failing to discern the discrepancies within Plaintiff's CER
Folder between the CWINRS CP Counseling Report versus the contradictory
17 December 2013 NPA prior to the NYRO VR&E Division providing the 20
March 2014 AR Memorandum to Plaintiff;

(yy)    COUNT 51: Failing to discern the discrepancies within Plaintiff's CER
Folder between the 17 December 2013 NPA versus the inconsistent and
incompatible opinions the VRC reported in the 07 January 2014 VAF 28-
1902b prior to the NYRO VR&E Division providing the 20 March 2014 AR
Memorandum to Plaintiff;

(zz)    COUNT 52: Failing to discern the discrepancies within Plaintiff's CER
Folder between the CWINRS CP Counseling Report versus the incompatible
and inconsistent opinions reported by the VRC in the 17 December 2013 NPA

and the 07 January 2014 VAF 28-1902b prior to the NYRO VR&E Division providing the 20 March 2014 AR Memorandum to Plaintiff;

(aaa)    COUNT 53: Failing to ensure Plaintiff's CER Folder contained the relevant CWINRS CP Counseling Report prior to the VRC proposing in the 09 May 2014 VAF 28-1905d for disallowing Plaintiff's claim for Chapter 31 benefits and services;

(bbb)    COUNT 54: Failing to discern the discrepancies within Plaintiff's CER Folder between the CWINRS CP Counseling Report versus the contradictory 17 December 2013 NPA prior to the VRC proposing in the 09 May 2014 VAF 28-1905d disallowing Plaintiff's claim for Chapter 31 benefits and services;

(ccc)    COUNT 55: Failing to discern the discrepancies within Plaintiff's CER Folder between the 17 December 2013 NPA versus the inconsistent and incompatible opinions the VRC reported in the 07 January 2014 VAF 28-1902b prior to the VRC proposing in the 09 May 2014 VAF 28-1905d for disallowing Plaintiff's claim for Chapter 31 benefits and services;

(ddd)    COUNT 56: Failing to discern the discrepancies within Plaintiff's CER Folder between the CWINRS CP Counseling Report versus the incompatible and inconsistent opinions reported by the VRC in the 17 December 2013 NPA and the 07 January 2014 VAF 28-1902b prior to the VRC proposing in the 09 May 2014 VAF 28-1905d for disallowing Plaintiff's claim for Chapter 31 benefits and services;

(eee)    COUNT 57: Failing to ensure Plaintiff's CER Folder contained the relevant CWINRS CP Counseling Report prior to the VREO approving the

VRC's proposal to disallow Plaintiff's claim for Chapter 31 benefits and services;

(fff)   COUNT 58: Failing to discern the discrepancies within Plaintiff's CER Folder between the CWINRS CP Counseling Report versus the contradictory 17 December 2013 NPA prior to the VREO approving the VRC's proposal to disallow Plaintiff's claim for Chapter 31 benefits and services;

(ggg)   COUNT 59: Failing to discern the discrepancies within Plaintiff's CER Folder between the 17 December 2013 NPA versus the inconsistent and incompatible opinions the VRC reported in the 07 January 2014 VAF 28-1902b prior to the VREO approving the VRC's proposal to disallow Plaintiff's claim for Chapter 31 benefits and services;

(hhh)   COUNT 60: Failing to discern the discrepancies within Plaintiff's CER Folder between the CWINRS CP Counseling Report versus the incompatible and inconsistent opinions reported by the VRC in the 17 December 2013 NPA and the 07 January 2014 VAF 28-1902b prior to the VREO approving the VRC's proposal to disallow Plaintiff's claim for Chapter 31 benefits and services;

(iii)COUNT 61: Failing to ensure Plaintiff's CER Folder contained the relevant CWINRS CP Counseling Report before the NYRO VR&E Division effectuated the disallowance of Plaintiff's claim for Chapter 31 benefits and services;

(jjj)COUNT 62: Failing to discern the discrepancies within Plaintiff's CER Folder between the CWINRS CP Counseling Report versus the contradictory 17

December 2013 NPA before the NYRO VR&E Division effectuated the disallowance of Plaintiff's claim for Chapter 31 benefits and services;

(kkk)   COUNT 63: Failing to discern the discrepancies within Plaintiff's CER Folder between the 17 December 2013 NPA versus the inconsistent and incompatible opinions the VRC reported in the 07 January 2014 VAF 28-1902b before the NYRO VR&E Division effectuated the disallowance of Plaintiff's claim for Chapter 31 benefits and services;

(lll) COUNT 64: Failing to discern the discrepancies within Plaintiff's CER Folder between the CWINRS CP Counseling Report versus the incompatible and inconsistent opinions reported by the VRC in the 17 December 2013 NPA and the 07 January 2014 VAF 28-1902b before the NYRO VR&E Division effectuated the disallowance of Plaintiff's claim for Chapter 31 benefits and services;

(mmm) COUNT 65: Failing to ensure Plaintiff's CER Folder contained the relevant CWINRS CP Counseling Report before the NYRO VR&E Division provided Plaintiff with the 09 May 2014 NFA;

(nnn)   COUNT 66: Failing to discern the discrepancies within Plaintiff's CER Folder between the CWINRS CP Counseling Report versus the contradictory 17 December 2013 NPA prior to the NYRO VR&E Division providing Plaintiff with the 09 May 2014 NFA;

(ooo)   COUNT 67: Failing to discern the discrepancies within Plaintiff's CER Folder between the 17 December 2013 NPA versus the inconsistent and incompatible opinions the VRC reported in the 07 January 2014 VAF 28-

1902b prior to the NYRO VR&E Division providing Plaintiff with the 09 May 2014 NFA announcing the disallowance of Plaintiff's claim for Chapter 31 benefits and services;

(ppp)   COUNT 68: Failing to discern the discrepancies within Plaintiff's CER Folder between the CWINRS CP Counseling Report versus the incompatible and inconsistent opinions reported by the VRC in the 17 December 2013 NPA and the 07 January 2014 VAF 28-1902b prior to the NYRO VR&E Division providing Plaintiff with the 09 May 2014 NFA announcing the disallowance of Plaintiff's claim for Chapter 31 benefits and services;

(qqq)   COUNT 69: Failing to ensure Plaintiff's CER Folder contained the relevant CWINRS CP Counseling Report while the NYRO VR&E Division conducted the mandated *de novo* review of the information and records contained within Plaintiff's CER Folder after receiving the 02 June 2014 NOD submitted by Plaintiff;

(rrr)   COUNT 70: Failing to discern the discrepancies within Plaintiff's CER Folder between the CWINRS CP Counseling Report versus the contradictory 17 December 2013 NPA while the NYRO VR&E Division conducted the mandated *de novo* review of Plaintiff's CER Folder after receiving the 02 June 2014 NOD submitted by Plaintiff;

(sss)   COUNT 71: Failing to discern the discrepancies within Plaintiff's CER Folder between the 17 December 2013 NPA versus the inconsistent and incompatible opinions the VRC reported in the 07 January 2014 VAF 28-1902b while the NYRO VR&E Division conducted the mandated *de novo*

review of Plaintiff's CER Folder after receiving the 02 June 2014 NOD submitted by Plaintiff;

(ttt) COUNT 72: Failing to discern the discrepancies within Plaintiff's CER Folder between the CWINRS CP Counseling Report versus the incompatible and inconsistent opinions reported by the VRC in the 17 December 2013 NPA and 07 January 2014 VAF 28-1902b while the NYRO VR&E Division conducted the mandated *de novo* review of Plaintiff's CER Folder after receiving the 02 June 2014 NOD submitted by Plaintiff;

(uuu) COUNT 73: Failing to ensure Plaintiff's CER Folder contained the relevant CWINRS CP Counseling Report prior to the VRC preparing the 17 June 2014 SOC upholding the determination Plaintiff is ineligible/unqualified for Chapter 31 services and assistance under the *Self-Employment Track*;

(vvv) COUNT 74: Failing to discern the discrepancies within Plaintiff's CER Folder between the CWINRS CP Counseling Report versus the contradictory 17 December 2013 NPA prior to the VRC preparing the 17 June 2014 SOC upholding the determination Plaintiff is ineligible/unqualified for Chapter 31 services and assistance under the *Self-Employment Track*;

(www) COUNT 75: Failing to discern the discrepancies within Plaintiff's CER Folder between the 17 December 2013 NPA versus the inconsistent and incompatible opinions the VRC reported in the 07 January 2014 VAF 28-1902b prior to the VRC preparing the 17 June 2014 SOC upholding the determination Plaintiff is ineligible/unqualified for Chapter 31 services and assistance under the *Self-Employment Track*;

100

(xxx)  COUNT 76: Failing to discern the discrepancies within Plaintiff's CER Folder between the CWINRS CP Counseling Report versus the incompatible and inconsistent opinions reported by the VRC in the 17 December 2013 NPA and the 07 January 2014 VAF 28-1902b prior to the VRC preparing the 17 June 2014 SOC upholding the determination Plaintiff is ineligible/ unqualified for Chapter 31 services and assistance under the *Self-Employment Track*;

(yyy)  COUNT 77: Failing to ensure Plaintiff's CER Folder contained the relevant CWINRS CP Counseling Report while the VRC prepared the 17 June 2014 SOC disallowing Plaintiff's claim for Chapter 31 benefits and services;

(zzz)  COUNT 78: Failing to discern the discrepancies within Plaintiff's CER Folder between the CWINRS CP Counseling Report versus the contradictory 17 December 2013 NPA while the VRC prepared the 17 June 2014 SOC disallowing Plaintiff's claim for Chapter 31 benefits and services;

(aaaa)  COUNT 79: Failing to discern the discrepancies within Plaintiff's CER Folder between the 17 December 2013 NPA versus the inconsistent and incompatible opinions the VRC reported in the 07 January 2014 VAF 28-1902b while the VRC prepared the 17 June 2014 SOC disallowing Plaintiff's claim for Chapter 31 benefits and services;

(bbbb) COUNT 80: Failing to discern the discrepancies within Plaintiff's CER Folder between the CWINRS CP Counseling Report versus the incompatible and inconsistent opinions reported by the VRC in the 17 December 2013 NPA and the 07 January 2014 VAF 28-1902b while the VRC prepared the 17 June 2014 SSOC disallowing Plaintiff's claim for Chapter 31 benefits and services;

(cccc) COUNT 81: Failing to ensure Plaintiff's CER Folder contained the relevant CWINRS CP Counseling Report prior to the VREO approving the 17 June 2014 SOC upholding the determination that Plaintiff is "ineligible"/ "unqualified" for Chapter 31 services and assistance under the *Self-Employment Track*;

(dddd) COUNT 82: Failing to discern the discrepancies within Plaintiff's CER Folder between the CWINRS CP Counseling Report versus the contradictory 17 December 2013 NPA prior to the VREO approving the 17 June 2014 SOC upholding the determination that Plaintiff is "ineligible"/"unqualified" for Chapter 31 services and assistance under the *Self-Employment Track*;

(eeee) COUNT 83: Failing to discern the discrepancies within Plaintiff's CER Folder between the 17 December 2013 NPA versus the inconsistent and incompatible opinions the VRC reported in the 07 January 2014 VAF 28-1902b prior to the VREO approving the 17 June 2014 SOC upholding the determination that Plaintiff is "ineligible"/"unqualified" for Chapter 31 services and assistance under the *Self-Employment Track*;

(ffff) COUNT 84: Failing to discern the discrepancies within Plaintiff's CER Folder between the CWINRS CP Counseling Report versus the incompatible and inconsistent opinions reported by the VRC in the 17 December 2013 NPA and the 07 January 2014 VAF 28-1902b prior to the VREO approving the 17 June 2014 SOC upholding the determination that Plaintiff is "ineligible"/ "unqualified" for Chapter 31 services and assistance under the *Self-Employment Track*;

(gggg) COUNT 85: Failing to ensure Plaintiff's CER Folder contained the relevant CWINRS CP Counseling Report prior to the VREO approving the 17 June 2014 SOC upholding the disallowance of Plaintiff's claim for Chapter 31 benefits and services;

(hhhh) COUNT 86: Failing to discern the discrepancies within Plaintiff's CER Folder between the CWINRS CP Counseling Report versus the contradictory 17 December 2013 NPA prior to the VREO approving the 17 June 2014 SOC upholding the disallowance of Plaintiff's claim for Chapter 31 benefits and services;

(iiii) COUNT 87: Failing to discern the discrepancies within Plaintiff's CER Folder between the 17 December 2013 NPA versus the inconsistent and incompatible opinions the VRC reported in the 07 January 2014 VAF 28-1902b prior to the VREO approving the 17 June 2014 SOC upholding the disallowance of Plaintiff's claim for Chapter 31 benefits and services;

(jjjj) COUNT 88: Failing to discern the discrepancies within Plaintiff's CER Folder between the CWINRS CP Counseling Report versus the incompatible and inconsistent opinions reported by the VRC in the 17 December 2013 NPA and the 07 January 2014 VAF 28-1902b prior to the VREO approving the 17 June 2014 SOC upholding the disallowance of Plaintiff's claim for Chapter 31 benefits and services;

(kkkk) COUNT 89: Failing to ensure Plaintiff's CER Folder contained the relevant CWINRS CP Counseling Report prior to the NYRO VR&E Division providing the 17 June 2014 SOC to Plaintiff;

(llll)   COUNT 90: Failing to discern the discrepancies within Plaintiff's CER Folder between the CWINRS CP Counseling Report versus the contradictory 17 December 2013 NPA prior to the NYRO VR&E Division providing the 17 June 2014 SOC to Plaintiff;

(mmmm)   COUNT 91: Failing to discern the discrepancies within Plaintiff's CER Folder between the 17 December 2013 NPA versus the inconsistent and incompatible opinions the VRC reported in the 07 January 2014 VAF 28-1902b prior to the NYRO VR&E Division providing the 17 June 2014 SOC to Plaintiff;

(nnnn) COUNT 92: Failing to discern the discrepancies within Plaintiff's CER Folder between the CWINRS CP Counseling Report versus the incompatible and inconsistent opinions reported by the VRC in the 17 December 2013 NPA and the 07 January 2014 VAF 28-1902b prior to the NYRO VR&E Division providing the 17 June 2014 SOC to Plaintiff;

(oooo) COUNT 93: Failing to ensure Plaintiff's CER Folder contained the relevant CWINRS CP Counseling Report while the NYRO VR&E Division reviewed the information and records contained within Plaintiff's CER Folder after receiving the 01 July 2014 VA Form 9 submitted by Plaintiff;

(pppp) COUNT 94: Failing to discern the discrepancies within Plaintiff's CER Folder between the CWINRS CP Counseling Report versus the contradictory 17 December 2013 NPA while the NYRO VR&E Division reviewed the information and records contained within Plaintiff's CER Folder after receiving the 01 July 2014 VA Form 9 submitted by Plaintiff;

(qqqq) COUNT 95: Failing to discern the discrepancies within Plaintiff's CER Folder between the 17 December 2013 NPA versus the inconsistent and incompatible opinions the VRC reported in the 07 January 2014 VAF 28-1902b while the NYRO VR&E Division reviewed the information and records contained within Plaintiff's CER Folder after receiving the 01 July 2014 VA Form 9 submitted by Plaintiff;

(rrrr) COUNT 96: Failing to discern the discrepancies within Plaintiff's CER Folder between the CWINRS CP Counseling Report versus the incompatible and inconsistent opinions reported by the VRC in the 17 December 2013 NPA and the 07 January 2014 VAF 28-1902b while the NYRO VR&E Division reviewed the information and records contained within Plaintiff's CER Folder after receiving the 01 July 2014 VA Form 9 submitted by Plaintiff;

(ssss) COUNT 97: Failing to ensure Plaintiff's CER Folder contained the relevant CWINRS CP Counseling Report prior to the NYRO VR&E Division determining that preparing a SSOC was unnecessary after receiving the 01 July 2014 VA Form 9;

(tttt) COUNT 98: Failing to discern the discrepancies within Plaintiff's CER Folder between the CWINRS CP Counseling Report versus the contradictory 17 December 2013 NPA prior to the NYRO VR&E Division determining that preparing a SSOC was unnecessary after receiving the 01 July 2014 VA Form 9;

(uuuu) COUNT 99: Failing to discern the discrepancies within Plaintiff's CER Folder between the 17 December 2013 NPA versus the inconsistent and

incompatible opinions the VRC reported in the 07 January 2014 VAF 28-1902b prior to the NYRO VR&E Division determining that preparing a SSOC was unnecessary after receiving the 01 July 2014 VA Form 9;

(vvvv) COUNT 100: Failing to discern the discrepancies within Plaintiff's CER Folder between the CWINRS CP Counseling Report versus the incompatible and inconsistent opinions reported by the VRC in the 17 December 2013 NPA and the 07 January 2014 VAF 28-1902b prior to the NYRO VR&E Division determining that preparing a SSOC was unnecessary after receiving the 01 July 2014 VA Form 9;

(wwww)     COUNT 101: Failing to ensure Plaintiff's CER Folder contained the relevant CWINRS CP Counseling Report prior to the NYRO VR&E Division certifying the appellate record to the BVA;

(xxxx) COUNT 102: Failing to discern the discrepancies within Plaintiff's CER Folder between the CWINRS CP Counseling Report versus the contradictory 17 December 2013 NPA prior to the NYRO VR&E Division certifying the appellate record to the BVA;

(yyyy) COUNT 103: Failing to discern the discrepancies within Plaintiff's CER Folder between the 17 December 2013 NPA versus the inconsistent and incompatible opinions the VRC reported in the 07 January 2014 VAF 28-1902b prior to the NYRO VR&E Division certifying the appellate record to the BVA; and,

(zzzz) COUNT 104: Failing to discern the discrepancies within Plaintiff's CER Folder between the CWINRS CP Counseling Report versus the incompatible

and inconsistent opinions reported by the VRC in the 17 December 2013 NPA and the 07 January 2014 VAF 28-1902b prior to the NYRO VR&E Division certifying the appellate record to the BVA.

126.    As a direct and proximate result of the acts and omissions specified *supra* within ¶125, the NYRO VR&E Division failed to maintain Plaintiff's CER Folder with such accuracy, relevance, timeliness, and completeness as necessary for the purpose of providing Plaintiff with Chapter 31 benefits and services.

127.    As a direct and proximate result of the aforesaid acts and omissions, the NYRO VR&E Division failed to assure Plaintiff's CER Folder was accurate, relevant, timely, and complete while determining Plaintiff's claim for Chapter 31 benefits and services.

128.    As a direct and proximate result of the aforesaid acts and omissions, the NYRO VR&E Division failed to assure fairness while rendering determinations regarding Plaintiff's qualifications, character, rights, opportunities for, and benefit to an appropriate program of Chapter 31 services and assistance.

129.    As a direct and proximate result of the aforesaid acts and omissions, the NYRO VR&E Division failed to perform in a reasonable and necessary manner throughout the pendency of Plaintiff's claim for Chapter 31 benefits and services.

130.    As a direct and proximate result of the aforesaid acts and omissions, Plaintiff sustained adverse and harmful effects, including, but not limited to, mental distress, emotional trauma, economic loss, the lost of personal property, the lost of professional opportunities, the lost of past, current, and future economic opportunities, and the denial of meaningful due process.

131.    Pursuant to 5 USC §552a(g)(1)(C) and 5 USC §552a(g)(1)(D), the DVA is liable for the intentional and willful acts and omissions specified *supra* within ¶¶124-130.

**CLAIM IV:**          **Defendant Violated 5 USC §552a(e)(6) on Multiple Occasions**.

132.   Plaintiff incorporates by reference ¶¶1-112 *supra* as if fully set forth herein.

133.   The NYRO VR&E Division knew or should have known that the following intentional and willful acts and omissions constitutes separate and discrete violations of 5 USC §552a(e)(6):

  (a) COUNT 1: Failing to ensure Plaintiff's CER Folder contained the relevant findings, conclusions, and determinations of the CWINRS CP Counseling Report while the VRC discussed the information purportedly contained within Plaintiff's CER Folder during the 17 December 2013 meeting;

  (b) COUNT 2: Failing to discern the discrepancies within Plaintiff's CER Folder between the CWINRS CP Counseling Report versus the contradictory 17 December 2013 NPA before the NYRO VR&E Division provided Plaintiff with notice of the information purportedly contained within Plaintiff's CER Folder in the 17 December 2013 NPA;

  (c) COUNT 3: Failing to ensure Plaintiff's CER Folder contained the relevant findings, conclusions, and determinations of the CWINRS CP Counseling Report  while the VREO discussed the information purportedly contained within Plaintiff's CER Folder during the 07 January 2014 meeting;

  (d) COUNT 4: Failing to discern the discrepancies within Plaintiff's CER Folder between the CWINRS CP Counseling Report versus the contradictory 17 December 2013 NPA while the VREO discussed the information purportedly contained within Plaintiff's CER Folder during the 07 January 2014 meeting;

  (e) COUNT 5: Failing to discern the discrepancies within Plaintiff's CER Folder between the 17 December 2013 NPA versus the inconsistent and incompatible

opinions the VRC reported in the 07 January 2014 VAF 28-1902b while the VREO discussed the information purportedly contained within Plaintiff's CER Folder during the 07 January 2014 meeting;

(f) COUNT 6: Failing to discern the discrepancies within Plaintiff's CER Folder between the 17 December 2013 NPA versus the inconsistent and incompatible opinions the VRC reported in the 07 January 2014 VAF 28-1902b while the VREO discussed the information purportedly contained within Plaintiff's CER Folder during the 07 January 2014 meeting;

(g) COUNT 7: Failing to ensure Plaintiff's CER Folder contained the relevant findings, conclusions, and determinations of the CWINRS CP Counseling Report before the VRC provided Plaintiff with information purportedly contained within Plaintiff's CER Folder in the 17 January 2014 NOI;

(h) COUNT 8: Failing to discern the discrepancies within Plaintiff's CER Folder between the CWINRS CP Counseling Report versus the contradictory 17 December 2013 NPA before the VRC provided information purportedly contained within Plaintiff's CER Folder in the 17 January 2014 NOI;

(i) COUNT 9: Failing to discern the discrepancies within Plaintiff's CER Folder between the 17 December 2013 NPA versus the inconsistent and incompatible opinions the VRC reported in the 07 January 2014 VAF 28-1902b before the VRC provided information purportedly contained within Plaintiff's CER Folder in the 17 January 2014 NOI;

(j) COUNT 10: Failing to discern the discrepancies within Plaintiff's CER Folder between the 17 December 2013 NPA versus the inconsistent and incompatible

opinions the VRC reported in the 07 January 2014 VAF 28-1902b before the NYRO VR&E Division provided information purportedly contained within Plaintiff's CER Folder in the 17 January 2014 NOI;

(k) COUNT 11: Failing to ensure Plaintiff's CER Folder contained the relevant findings, conclusions, and determinations of the CWINRS CP Counseling Report prior to the VREO disclosing information purportedly contained within Plaintiff's CER Folder in the 19 March 2014 Inquiry Response to Ms. **McCARTHY**;

(l) COUNT 12: Failing to discern the discrepancies within Plaintiff's CER Folder between the CWINRS CP Counseling Report versus the contradictory 17 December 2013 NPA prior to the VREO disclosing information purportedly contained within Plaintiff's CER Folder in the 19 March 2014 Inquiry Response to Ms. **McCARTHY**;

(m) COUNT 13: Failing to discern the discrepancies within Plaintiff's CER Folder between the 17 December 2013 NPA versus the inconsistent and incompatible opinions the VRC reported within the 07 January 2014 VAF 28-1902b prior to the VREO disclosing information purportedly contained within Plaintiff's CER Folder in the 19 March 2014 Inquiry Response to Ms. **McCARTHY**;

(n) COUNT 14: Failing to discern the discrepancies within Plaintiff's CER Folder between the 17 December 2013 NPA versus the inconsistent and incompatible opinions the VRC reported in the 07 January 2014 VAF 28-1902b prior to the VREO disclosing information purportedly contained within Plaintiff's CER Folder in the 19 March 2014 Inquiry Response to Ms. **McCARTHY**;

(o) COUNT 15: Failing to ensure Plaintiff's CER Folder contained the relevant findings, conclusions, and determinations of the CWINRS CP Counseling Report before the VREO discussed information purportedly contained within Plaintiff's CER Folder in the 20 March 2014 AR Memorandum;

(p) COUNT 16: Failing to discern the discrepancies within Plaintiff's CER Folder between the CWINRS CP Counseling Report versus the contradictory 17 December 2013 NPA before the VREO discussed information purportedly contained within Plaintiff's CER Folder in the 20 March 2014 AR Memorandum;

(q) COUNT 17: Failing to discern the discrepancies within Plaintiff's CER Folder between the 17 December 2013 NPA versus the inconsistent and incompatible opinions the VRC reported within the 07 January 2014 VAF 28-1902b before the VREO discussed information purportedly contained within Plaintiff's CER Folder in the 20 March 2014 AR Memorandum;

(r) COUNT 18: Failing to discern the discrepancies within Plaintiff's CER Folder between the 17 December 2013 NPA versus the inconsistent and incompatible opinions the VRC reported in the 07 January 2014 VAF 28-1902b before the VREO discussed information purportedly contained within Plaintiff's CER Folder in the 20 March 2014 AR Memorandum;

(s) COUNT 19: Failing to ensure Plaintiff's CER Folder contained the relevant findings, conclusions, and determinations of the CWINRS CP Counseling Report before the VRC referenced information purportedly within Plaintiff's CER Folder in the 09 April 2014 NPD;

111

(t) COUNT 20: Failing to discern the discrepancies within Plaintiff's CER Folder between the 14 November 2013 CWINRS CP Counseling Report versus the contradictory 17 December 2013 NPA before the VRC referenced information purportedly within Plaintiff's CER Folder in the 09 April 2014 NPD;

(u) COUNT 21: Failing to discern the discrepancies within Plaintiff's CER Folder between the 17 December 2013 NPA versus the inconsistent and incompatible opinions the VRC reported within the 07 January 2014 VAF 28-1902b before the VRC referenced information purportedly within Plaintiff's CER Folder in the 09 April 2014 NPD;

(v) COUNT 22: Failing to discern the discrepancies within Plaintiff's CER Folder between the 17 December 2013 NPA versus the inconsistent and incompatible opinions the VRC reported in the 07 January 2014 VAF 28-1902b before the VRC referenced information purportedly within Plaintiff's CER Folder in the 09 April 2014 NPD;

(w) COUNT 23: Failing to ensure Plaintiff's CER Folder contained the relevant findings, conclusions, and determinations of the CWINRS CP Counseling Report before the VRC expressly referenced information purportedly contained within Plaintiff's CER Folder in the 09 May 2014 NFA;

(x) COUNT 24: Failing to discern the discrepancies within Plaintiff's CER Folder between the 14 November 2013 CWINRS CP Counseling Report versus the contradictory 17 December 2013 NPA before the VRC expressly referenced information purportedly contained within Plaintiff's CER Folder in the 09 May 2014 NFA;

(y) COUNT 25: Failing to discern the discrepancies within Plaintiff's CER Folder between the 17 December 2013 NPA versus the inconsistent and incompatible opinions the VRC reported within the 07 January 2014 VAF 28-1902b before the VRC expressly referenced information purportedly contained within Plaintiff's CER Folder in the 09 May 2014 NFA;

(z) COUNT 26: Failing to discern the discrepancies within Plaintiff's CER Folder between the 17 December 2013 NPA versus the inconsistent and incompatible opinions the VRC reported in the 07 January 2014 VAF 28-1902b before the VRC expressly referenced information purportedly contained within Plaintiff's CER Folder in the 09 May 2014 NFA;

(aa) COUNT 27: Failing to ensure Plaintiff's CER Folder contained the relevant findings, conclusions, and determinations of the CWINRS CP Counseling Report prior to the NYRO VR&E Division supposedly extensive discussion of the information purportedly contained within Plaintiff's CER Folder in the 17 June 2014 SOC;

(bb) COUNT 28: Failing to discern the discrepancies within Plaintiff's CER Folder between the 14 November 2013 CWINRS CP Counseling Report versus the contradictory 17 December 2013 NPA prior to the NYRO VR&E Division supposedly extensive discussion of the information purportedly contained within Plaintiff's CER Folder in the 17 June 2014 SOC;

(cc) COUNT 29: Failing to discern the discrepancies within Plaintiff's CER Folder between the 17 December 2013 NPA versus the inconsistent and incompatible opinions the VRC reported within the 07 January 2014 VAF 28-

113

1902b prior to the NYRO VR&E Division supposedly extensive discussion of the information purportedly contained within Plaintiff's CER Folder in the 17 June 2014 SOC;

(dd)    COUNT 30: Failing to discern the discrepancies within Plaintiff's CER Folder between the 17 December 2013 NPA versus the inconsistent and incompatible opinions the VRC reported in the 07 January 2014 VAF 28-1902b prior to the NYRO VR&E Division supposedly extensive discussion of the information purportedly contained within Plaintiff's CER Folder in the 17 June 2014 SOC;

(ee)    COUNT 31: Failing to ensure Plaintiff's CER Folder contained the relevant findings, conclusions, and determinations of the CWINRS CP Counseling Report prior to the NYRO VR&E Division's disclosure of the information purportedly contained within Plaintiff's CER Folder in providing the 17 June 2014 SOC to the American Legion;

(ff) COUNT 32: Failing to discern the discrepancies within Plaintiff's CER Folder between the 14 November 2013 CWINRS CP Counseling Report versus the contradictory 17 December 2013 NPA prior to the NYRO VR&E Division's disclosure of the information purportedly contained within Plaintiff's CER Folder in providing the 17 June 2014 SOC to the American Legion;

(gg)    COUNT 33: Failing to discern the discrepancies within Plaintiff's CER Folder between the 17 December 2013 NPA versus the inconsistent and incompatible opinions the VRC reported within the 07 January 2014 VAF 28-1902b prior to the NYRO VR&E Division's disclosure of the information

114

purportedly contained within Plaintiff's CER Folder in providing the 17 June 2014 SOC to the American Legion;

(hh)   COUNT 34: Failing to discern the discrepancies within Plaintiff's CER Folder between the 17 December 2013 NPA versus the inconsistent and incompatible opinions the VRC reported in the 07 January 2014 VAF 28-1902b prior to the NYRO VR&E Division's disclosure of the information purportedly contained within Plaintiff's CER Folder in providing the 17 June 2014 SOC to the American Legion;

(ii) COUNT 35: Failing to ensure Plaintiff's CER Folder contained the relevant findings, conclusions, and determinations of the CWINRS CP Counseling Report prior to the NYRO VR&E Division's disclosure of the information purportedly contained within Plaintiff's CER Folder in providing the 17 June 2014 SOC to the New York State Division of Veterans Affairs;

(jj) COUNT 36: Failing to discern the discrepancies within Plaintiff's CER Folder between the 14 November 2013 CWINRS CP Counseling Report versus the contradictory 17 December 2013 NPA prior to the NYRO VR&E Division's disclosure of the information purportedly contained within Plaintiff's CER Folder in providing the 17 June 2014 SOC to the New York State Division of Veterans Affairs;

(kk)   COUNT 37: Failing to discern the discrepancies within Plaintiff's CER Folder between the 17 December 2013 NPA versus the inconsistent and incompatible opinions the VRC reported within the 07 January 2014 VAF 28-1902b prior to the NYRO VR&E Division's disclosure of the information

purportedly contained within Plaintiff's CER Folder in providing the 17 June 2014 SOC to the New York State Division of Veterans Affairs; and,

(ll) COUNT 38: Failing to discern the discrepancies within Plaintiff's CER Folder between the 17 December 2013 NPA versus the inconsistent and incompatible opinions the VRC reported in the 07 January 2014 VAF 28-1902b prior to the NYRO VR&E Division's disclosure of the information purportedly contained within Plaintiff's CER Folder in providing the 17 June 2014 SOC to the New York State Division of Veterans Affairs.

134.  As a direct and proximate result of the acts and omissions specified *supra* within ¶133, the NYRO VR&E Division failed to assure that the information within Plaintiff's CER Folder was accurate, complete, timely, and relevant prior to disseminating information to Plaintiff.

135.  As a direct and proximate result of the aforesaid acts and omissions, the NYRO VR&E Division failed to assure that the information within Plaintiff's CER Folder was accurate, complete, timely, and relevant prior to disseminating information regarding Plaintiff's claim for Chapter 31 benefits and services to Ms. **McCARTHY**, the American Legion, and the New York State Department of Veterans Affairs.

136.  As a direct and proximate result of the aforesaid acts and omissions, Plaintiff sustained adverse and harmful effects, including, but not limited to, mental distress, emotional trauma, economic loss, the lost of personal property, the lost of professional opportunities, the lost of past, current, and future economic opportunities, denial of meaningful due process, and impairment of Plaintiff's ability in attaining assistance from an independent person or entity.

137.  Pursuant to 5 USC §552a(g)(1)(C) and 5 USC §552a(g)(1)(D), the DVA is liable for the intentional and willful acts and omissions specified *supra* within ¶¶132-136.

**CLAIM V:**         **Defendant Violated 5 USC §552a(e)(9) on Multiple Occasions**.

138.    Plaintiff incorporates by reference ¶¶1-112 *supra* as if fully set forth herein.

139.    The pertinent history of the present case evidences numerous incidents wherein the NYRO VR&E Division failed to comply with several apposite statutory and regulatory provisions implementing the requirements of both the PA and the FOIA.

140.    The DVA knew or should have known that the following intentional and willful acts and omissions constitutes separate and discrete violations of 5 USC §552a(e)(9):

(a) COUNT 1: Failing to ensure that the personnel of the NYRO and the NYRO VR&E Division were trained in, familiar with, and complied with the regulatory rules of conduct specified within 38 CFR §1.575 through §1.584 implementing the requirements of 5 USC §552a (the Privacy Act);

(b) COUNT 2: Failing to ensure that the personnel of the NYRO and the NYRO VR&E Division were trained in, familiar with, and complied with the regulatory rules of conduct specified within 38 CFR §1.550 through §1.559 implementing the requirements of 5 USC §552 (the Freedom of Information Act);

(c) COUNT 3: Failing to ensure that the personnel of the NYRO and the NYRO VR&E Division were trained in, familiar with, and complied with the regulatory rules of conduct specified within 38 CFR §1.500 through §1.527 implementing the requirements of 38 USC §5701 (Confidential Nature of Claims) and 38 USC §5702 (Furnishing of Records);

(d) COUNT 4: Failing to ensure that the personnel of the NYRO and the NYRO VR&E Division trained in, familiar with, and complied with the regulatory

117

rules of conduct specified within 38 CFR §1.460 through §1.744 implementing the requirements of 5 USC §7331-7334 (Protection of Patient Rights);

(e) COUNT 5: Failing to ensure that the personnel of the NYRO and the NYRO VR&E Division were trained in, familiar with, and complied with the procedural rules of conduct specified within VA Handbook 6300.3 – *Procedures for Implementing the Freedom of Information Act*; and,

(f) COUNT 6: Failing to ensure that the personnel of the NYRO and the NYRO VR&E Division were trained in, familiar with, and complied with the procedural rules of conduct specified within VA Handbook 6300.3 – *Procedures for Processing Requests for Records Subject to the Privacy Act*.

141.   As a direct and proximate result of the acts and omissions specified *supra* in ¶140, the NYRO and the NYRO VR&E Division failed to provide a timely response to Plaintiff's request for records pursuant to the PA.

142.   As a direct and proximate result of the aforesaid acts and omissions, the NYRO and the NYRO VR&E Division wrongfully delayed and impaired Plaintiff's rights to Due Process.

143.   As a direct and proximate result of the aforesaid acts and omissions, Plaintiff sustained adverse and harmful effects, including, but not limited to, mental distress, emotional trauma, embarrassment, humiliation, economic loss, the lost of personal property, the lost of professional opportunities, the lost of past, current, and future economic opportunities, and impairment of Plaintiff's ability in attaining assistance from an independent person or entity.

144.   Pursuant to 5 USC §552a(g)(1)(D), the DVA is liable for the intentional and willful acts and omissions specified *supra* within ¶¶138-143.

**CLAIM VI:**       **Defendant Violated 5 USC §552a(b) in Multiple Instances**.

145.    Plaintiff incorporates by reference ¶¶1-80 *supra* as if fully set forth herein.

146.    Plaintiff revoked the American Legion's authorization to represent Plaintiff in manners before the DVA after an extremely heated and vitriol 04 June 2014 exchange between Plaintiff and two employees of the Nassau County Veterans Services Agency (NCVSA) fulfilling duties and responsibilities as accredited agents of the American Legion regarding the American Legion's inadequate representation in Plaintiff's claim for Chapter 31 benefits and services. *See* Exhibit 11 at 2-3 (copy of 05 June 2014 letter to the NCVSA detailing Plaintiff's reasoning and bases for revoking authorization).

147.    Plaintiff also submitted on 05 June 2014 a letter of complaint to the National Commander of the American Legion, *see* Exhibit 11 at 4-6, protesting, *inter alia*, the American Legion's NCVSA agents refusal to return to Plaintiff all documents and records containing Plaintiff's personally identifiable information and assertion that such documents and records "doesn't belong to you; it is the American Legion's property", *ibid.* at 5.

148.    Plaintiff further submitted on 05 June 2014 a letter of complaint to the DVA Office of General Counsel (OGC) advancing contentions that the American Legion's NCVSA agents violated several apposite regulations governing the duties and responsibilities of DVA-accredited agents. *See* Exhibit 11 at 7-8 (*sans* enclosures).

149.    Plaintiff resubmitted on 13 June 2014 a copy of 05 June 2014 revocation memorandum to the NYRO after the NYRO professing an inability to locate any indication in their system of the original submission. *See* Exhibit 11 at 1 (evidencing NYRO's 13 June 2014 date-time stamp).

150.    Even though the American Legion provided a 14 July 2014 letter acknowledging Plaintiff's complaints, *see* Exhibit 11 at 9, neither the American Legion nor the NCVSA has yet

to return to Plaintiff all information and records containing Plaintiff's personally identifiable information as of the date of this complaint.

151.    Even though the DVA OGC provided a 07 August 2014 letter acknowledging Plaintiff's complaint and assuring to conduct an inquiry into the matter, _see_ Exhibit 11 at 10 (*sans* enclosure), neither the American Legion nor the NCVSA has yet to return all information and records containing Plaintiff's personally identifiable information as of the date of this complaint.

152.    Plaintiff never submitted a VA Form 21-22 – *Appointment of Veterans Service Organization as Claimant's Representative* authorizing the New York Division of Veterans Affairs to act on Plaintiff's behalf in manners before the DVA.

153.    Notwithstanding the foregoing, the NYRO VR&E Division submitted a copy of the 17 June 2014 SOC to the New York Division of Veterans Affairs, _see_ Exhibit 12 at 3.

154.    It is currently unknown and impossible to state conclusively whether the NYRO VR&E Division disclosed Plaintiff's personally identifiable information to any other person or agency without the benefit of discovery.

155.    It is currently unknown and impossible to state conclusively whether the NYRO disclosed Plaintiff's personally identifiable information to any other person or agency without the benefit of discovery.

156.    It is currently unknown and impossible to state conclusively whether the NCVSA further disclosed Plaintiff's personally identifiable information to any other person or agency without the benefit of discovery.

157.    It is currently unknown and impossible to state conclusively whether the American Legion further disclosed Plaintiff's personally identifiable information to any other person or agency without the benefit of discovery.

158.   It is currently unknown and impossible to state conclusively whether the New York State Division of Veterans Affairs further disclosed Plaintiff's personally identifiable information to any other person or agency without the benefit of discovery.

159.   It is currently unknown and impossible to state conclusively the effectiveness of any inquiry conducted by the DVA Office of General Counsel without the benefit of discovery. *See* Exhibit 11 at 11 (copy of 06 January 2015 E-mail from DVA Office of General Counsel refusing request for information regarding the status of Plaintiff's complaint).

160.   The unauthorized disclosure of Plaintiff's personally identifiable information has caused Plaintiff to remain highly anxious over the possibility of further disclosure of such information and the possibility of identity theft.

161.   The NYRO and the NYRO VR&E Division knew or should have known 5 USC §552a(b) proscribes the disclosure of any record "contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains".

162.   The NYRO and the NYRO VR&E Division knew or should have known that Plaintiff expressly revoked as of 05 June 2014 the American Legion's authorization to act as Plaintiff's representative in manners before the DVA.

163.   The NYRO and the NYRO VR&E Division knew or should have known that Plaintiff never authorized the New York State Division of Veterans Affairs to act as Plaintiff's representative in manners before the DVA.

164.   The NYRO and the NYRO VR&E Division knew or should have known that the following intentional and willful acts and omissions constitutes separate and discrete violations of 5 USC §552a(b):

(a) COUNT 1: Disclosing Plaintiff's personally identifiable information to the American Legion;

(b) COUNT 2: Disclosing information purportedly contained within Plaintiff's CER Folder by providing the 17 June 2014 SOC to the American Legion;

(c) COUNT 3: Disclosing Plaintiff's personally identifiable information to the New York State Division of Veterans Affairs;

(d) COUNT 4: Disclosing information purportedly contained within Plaintiff's CER Folder by providing the 17 June 2014 SOC to the New York State Division of Veterans Affairs;

(e) COUNT 5: Disclosing Plaintiff's personally identifiable information to any other person or agency without Plaintiff's prior written consent or request;

(f) COUNT 6: Enabling the unauthorized disclosure of Plaintiff's personally identifiable information in the event the American Legion further disclosed such information to any other person or agency; and,

(g) COUNT 7: Enabling the unauthorized disclosure of Plaintiff's personally identifiable information in the event the New York Division of Veterans Affairs further disclosed such information to any other person or agency.

165. As a direct and proximate result of the aforesaid acts and omissions, Plaintiff sustained the adverse and harmful effects specified *supra* in ¶112, including, but not limited to, mental distress, economic loss, the lost of personal property, the lost of professional opportunities, and the lost of past, current, and future economic opportunities.

166. Pursuant to 5 USC §552a(g)(1)(C) and 5 USC §552a(g)(1)(D), the DVA is liable for the intentional and willful acts and omissions specified *supra* within ¶¶161-165.

122

**CLAIM VII:**        **Defendant Violated 38 USC §7332.**

167.    Plaintiff incorporates by reference ¶¶1-80 *supra* as if fully set forth herein.

168.    The NYRO VR&E Division knew or should have known that the PA requires the performance of certain precautions to keep personal information confidential.

169.    The NYRO VR&E Division knew or should have known Plaintiff's self-report to his health care provider of a previous six-month period of the use of alcohol and marijuana as a method of self-treatment in alleviating the pain resulting from Plaintiff's multiple SCD was protected confidential information pursuant to 38 USC §7332(a)(1) and 38 CFR §1.460(1).

170.    The NYRO VR&E Division knew or should have known that the reasoning and bases for the interruption, discontinuance, and disallowance of Plaintiff's claim for Chapter 31 benefits and services was not premised on said six-month period of the use of alcohol and drugs.

171.    The NYRO VR&E Division knew or should have known such protected confidential information was never annotated within Plaintiff's CER Folder prior to NYRO receiving the inquiries from Plaintiff's congressional representatives.

172.    The NYRO VR&E Division knew or should have known that the inquiries from Plaintiff's congressional representatives concerned issues regarding the methods and procedures utilized in providing Chapter 31 benefits and services to Plaintiff.

173.    The NYRO VR&E Division knew or should have known 38 USC §7332(a)(2) and 38 CFR §1.475 mandates for the specific written consent of Plaintiff prior to disclosing any information regarding the aforesaid protected confidential information.

174.    The NYRO VR&E Division knew or should have known that the written consents Plaintiff provided to his congressional representatives were general written consents authorizing the disclosure of information and records contained within Plaintiff's CER Folder regarding the

methods and procedures the NYRO VR&E Division utilized while adjudicating Plaintiff's claim for Chapter 31 benefits and services.

175.    The NYRO VR&E Division knew or should have known that such general written consents were legally insufficient to authorize the disclosure of any confidential information protected by 38 USC §7332 and 38 CFR §1.460(1).

176.    The NYRO VR&E Division knew or should have known disclosing Plaintiff's protected confidential information by explicitly asserting Plaintiff's supposedly "recent issues with alcohol and substance abuse" in the 19 March 2014 Inquiry Response raised inferences premised on speculative conjecture of Plaintiff's unsuitability for a vocation affording ready access to alcohol and possible access to other proscribed substances.

177.    The NYRO VR&E Division knew or should have known the negative inferences raised by disclosing Plaintiff's protected confidential information in the 19 March 2014 Inquiry Response were sufficiently derogatory enough to irreparably injure Plaintiff's reputation, character, qualifications, and standing with Ms. **McCARTHY** and her staff.

178.    The NYRO VR&E Division knew or should have known the negative inferences raised by disclosing Plaintiff's protected confidential information in the 19 March 2014 Inquiry Response were sufficiently derogatory enough to impair the level of assistance Ms. **McCARTHY** and her staff provided Plaintiff in regards to the denial of Plaintiff's claim for Chapter 31 benefits and services.

179.    The NYRO VR&E Division knew or should have known that asserting in the 17 June 2014 SOC of Plaintiff's supposedly "non-service connected issue of substance and alcohol abuse, in partial remission" as a purported reason for the underlying contested decision disclosed Plaintiff's protected confidential information.

180.    The Defendant knew or should have known that providing a copy of the 17 June 2014 SOC to the American Legion disclosed Plaintiff's protected confidential information to an organization whose authorization to act as Plaintiff's representative in manners before the DVA was affirmatively revoked on 05 June 2014.

181.    The Defendant knew or should have known that providing a copy of the 17 June 2014 SOC to the New York State Division of Veterans Affairs disclosed Plaintiff's protected confidential information to an organization that did not possess authorization to act as Plaintiff's representative in manners before the DVA.

182.    The NYRO VR&E Division knew or should have known the aberrant and transitory nature of such alleged "issues" was readily ascertainable from the negative results of numerous toxicology screenings administered by the Northport VAMC since August 2013 as recorded within the same system of records where the NYRO VR&E Division obtained Plaintiff's protected confidential information as disclosed in the Inquiry Response and SOC.

183.    The NYRO VR&E Division knew or should have known the aberrant and transitory nature of such alleged "issues" was readily ascertainable from treatment notes documented by Plaintiff's primary health care provider at the Northport VAMC since August 2013 as recorded within the same system of records where the NYRO VR&E Division obtained information of the treatment Northport VAMC renders in connection with Plaintiff's multiple SCD as disclosed in the Inquiry Response and SOC.

184.    The NYRO VR&E Division knew or should have known the aberrant and transitory nature of such alleged "issues" was readily ascertainable from treatment notes documented by Plaintiff's mental health provider at the DVA East Meadow Community-Based Outpatient Clinic (CBOC) since August 2013 as recorded within the same system of records where the NYRO

VR&E Division obtained information of the treatment the East Meadow CBOC renders in connection with Plaintiff's multiple SCD as disclosed in the Inquiry Response and SOC.

185. The NYRO VR&E Division knew or should have known the information and records referenced *supra* in ¶¶182-184 clearly evidences and positively refutes the wrongful, derogatory inferences and implications of the asserted allegations of Plaintiff's supposedly "issues" of the use and abuse of alcohol and drugs.

186. The NYRO VR&E Division knew or should have known that the following intentional and willful acts and omissions constitutes separate and discrete violations of 38 USC §7332:

(a) COUNT 1: Disclosing Plaintiff's protected confidential information to Ms. **McCARTHY** for a purpose and under circumstances that were not authorized under 38 USC §7332;

(b) COUNT 2: Disclosing Plaintiff's protected confidential information to the American Legion for a purpose and under circumstances that were not authorized under 38 USC §7332;

(c) COUNT 3: Disclosing Plaintiff's protected confidential information to the New York State Division of Veterans Affairs for a purpose and under circumstances that were not authorized under 38 USC §7332;

(d) COUNT 4: Failing to comply with 38 USC §7332(b)(1) mandate that the disclosure of Plaintiff's protected confidential information to Ms. **McCARTHY** may only occur with Plaintiff's specific written consent;

(e) COUNT 5: Failing to comply with 38 USC §7332(b)(1) mandate that the disclosure of Plaintiff's protected confidential information to the American Legion may only occur with Plaintiff's specific written consent;

(f) COUNT 6: Failing to comply with 38 USC §7332(b)(1) mandate that the disclosure of Plaintiff's protected confidential information to the New York State Division of Veterans Affairs may only occur with Plaintiff's specific written consent;

(g) COUNT 7: Failing to comply with 38 USC §7332(b)(1) mandate that disclosing Plaintiff's protected confidential information to Ms **McCARTHY** may occur "only to such extent, under such circumstances, and for such purposes as may be allowed in regulations prescribed by [DVA]";

(h) COUNT 8: Failing to comply with 38 USC §7332(b)(1) mandate that disclosing Plaintiff's protected confidential information to the American Legion may occur "only to such extent, under such circumstances, and for such purposes as may be allowed in regulations prescribed by [DVA]";

(i) COUNT 9: Failing to comply with 38 USC §7332(b)(1) mandate that disclosing Plaintiff's protected confidential information to the New York State Division of Veterans Affairs may occur "only to such extent, under such circumstances, and for such purposes as may be allowed in regulations prescribed by [DVA]";

(j) COUNT 10: Failing to comply with the confidentiality restrictions of 38 CFR §1.462(c)(2) prohibiting disclosure of Plaintiff's protected confidential information that Plaintiff has been, or is being diagnosed or treated for drug abuse, alcoholism, or alcohol abuse by the VREO asserting in the 19 March 2014 Inquiry Response to Ms. **McCARTHY** of Plaintiff's supposedly "recent issues with substance and alcohol abuse";

(k) COUNT 11: Failing to comply with the confidentiality restrictions of 38 CFR §1.462(c)(2) prohibiting disclosure of Plaintiff's protected confidential information that Plaintiff has been, or is being diagnosed or treated for drug abuse, alcoholism, or alcohol abuse by disclosing to the American Legion in the 17 June 2014 SOC of Plaintiff's supposedly "non-service connected issue of substance and alcohol abuse, in partial remission";

(l) COUNT 12: Failing to comply with the confidentiality restrictions of 38 CFR §1.462(c)(2) prohibiting disclosure of Plaintiff's protected confidential information that Plaintiff has been, or is being diagnosed or treated for drug abuse, alcoholism, or alcohol abuse by disclosing to the New York State Division of Veterans Affairs in the 17 June 2014 SOC of Plaintiff's supposedly "non-service connected issue of substance and alcohol abuse, in partial remission";

(m) COUNT 13: Disclosing Plaintiff's protected confidential information even though the written consent presented by Ms. **McCARTHY** failed to comply with the requisite elements of consent pursuant to 38 CFR §1.475(a);

(n) COUNT 14: Disclosing Plaintiff's protected confidential information even though the written consent presented by the American Legion failed to comply with the requisite elements of consent pursuant to 38 CFR §1.475(a);

(o) COUNT 15: Disclosing Plaintiff's protected confidential information even though the New York State Division of Veterans Affairs never provided a written consent complying with the requisite elements of consent pursuant to 38 CFR §1.475(a);

(p) COUNT 16: Failing to comply with the rule set forth in 38 CFR §1.475(b) prohibiting the disclosure of Plaintiff's protected confidential information since the written consent presented by Ms. **McCARTHY** failed to conform with the requirements of 38 CFR §1.475(a);

(q) COUNT 17: Failing to comply with the rule set forth in 38 CFR §1.475(b) prohibiting the disclosure of Plaintiff's protected confidential information since the written consent presented by the American Legion failed to conform with the requirements of 38 CFR §1.475(a);

(r) COUNT 18: Failing to comply with the rule set forth in 38 CFR §1.475(b) prohibiting the disclosure of Plaintiff's protected confidential information since the New York Division of Veterans Affairs never presented a written consent that conformed with the requirements of 38 CFR §1.475(a);

(s) COUNT 19: Failing to comply with the rule set forth in 38 CFR §1.475(c) to obtain a legally sufficient written special consent from Plaintiff prior to disclosing Plaintiff's protected confidential information to Ms. **McCARTHY**;

(t) COUNT 20: Failing to comply with the rule set forth in 38 CFR §1.475(c) to obtain a legally sufficient written special consent from Plaintiff prior to disclosing Plaintiff's protected confidential information to the American Legion;

(u) COUNT 21: Failing to comply with the rule set forth in 38 CFR §1.475(c) to obtain a legally sufficient special written consent from Plaintiff prior to disclosing Plaintiff's protected confidential information to the New York State Division of Veterans Affairs;

(v) COUNT 22: Disclosing Plaintiff's protected confidential information in noncompliance with 38 CFR §1.476 requirement that a notice informing Ms. **McCARTHY** of the Federal rules prohibiting further disclosure of such protected confidential information without Plaintiff's express written consent is to be included with such disclosure;

(w) COUNT 23: Disclosing Plaintiff's protected confidential information in noncompliance with 38 CFR §1.476 requirement that a notice informing the American Legion of the Federal rules prohibiting further disclosure of such protected confidential information without Plaintiff's express written consent is to be included with such disclosure; and,

(x) COUNT 24: Disclosing Plaintiff's protected confidential information in noncompliance with 38 CFR §1.476 requirement that a notice informing the New York Division of Veterans Affairs of the Federal rules prohibiting further disclosure of such protected confidential information without Plaintiff's express written consent is to be included with such disclosure.

187.   As a direct and proximate result of the violations specified *supra* in ¶186, Plaintiff sustained adverse and harmful effects specified *supra* in ¶112, including, but not limited to, mental distress, emotional trauma, embarrassment, humiliation, economic loss, the lost of benefits, the lost of personal property, the lost of professional opportunities, and the lost of past, current, and future economic opportunities, and impairment in receiving assistance from Ms. **McCARTHY**.

188.   Pursuant to 5 USC §552a(g)(1)(C) and 5 USC §552a(g)(1)(D), the DVA is liable for the intentional and willful acts and omissions specified *supra* within ¶¶167-187.

**CLAIM VIII:**       **Defendant Violated 38 CFR §1.556.**

189.   Plaintiff incorporates by reference ¶¶1-112 *supra* as if fully set forth herein.

190.   The NYRO knew or should have known 38 CFR §1.556(a) requires that a response to a request for records under the PA is to comply with the time frames established pursuant to the FOIA.

191.   The NYRO knew or should have known 5 USC §552(a)(6)(A) specifies the apposite time limits applicable for a FOIA request for records.

192.   The NYRO knew or should have known 38 CFR §1.557(c) normally affords, in compliance with 5 USC §552(a)(6)(A), a 20-day business day time limit for determining whether to grant a request for records in its entirety, grant the request in part, or deny the request.

193.   The NYRO knew or should have known that in the event of "unusual circumstances" preventing a timely response to a PA request within the 20-business day time limit, 38 CFR §1.556(c) affords an extension of 10 more business days and further requires for the requestor to be provided written notification of the unusual circumstances and of the expected date by which processing of the request will be completed.

194.   The NYRO knew or should have known Plaintiff was never informed of any "unusual circumstances" involving, or of the necessity for an extension in providing, a response to Plaintiff's 03 July 2014 PA Request.

195.   The NYRO knew or should have known a timely response to Plaintiff's 03 July 2014 PA Request would explicitly evidence the material discrepancies documented within Plaintiff's CER Folder.

196.   The NYRO knew or should have known a timely response to Plaintiff's 03 July 2014 PA Request would explicitly evidence the willful misrepresentations of the NYRO VR&E Division.

197.   The NYRO knew or should have known that providing the 17 February 2015 PA Response 229 days after receiving Plaintiff's 03 July 2014 PA Request violated the statutory time limit set forth within 5 USC §552(a)(6)(A) and 38 CFR §1.577(c).

198.   As a direct and proximate result of the acts and omissions specified *supra* within ¶¶189-197, the NYRO materially hinder Plaintiff's ability to timely ascertain the accuracy, relevance, timeliness, and completeness of the information contained in Plaintiff's CER Folder.

199.   As a direct and proximate result of the aforesaid acts and omissions, the NYRO materially hindered Plaintiff's ability to timely request correction or amendment of any inaccurate or incomplete information contained within Plaintiff's CER Folder.

200.   As a direct and proximate result of the aforesaid acts and omissions, the NYRO materially hindered Plaintiff's ability in contesting the determination that Plaintiff is "ineligible"/"unqualified" for a program of Chapter 31 services and assistance under the *Self-Employment Track*.

201.   As a direct and proximate result of the aforesaid acts and omissions, the NYRO denied Plaintiff's right to meaningful *Due Process* during the administrative appeal of the interruption, discontinuance, and disallowance of Plaintiff's claim for Chapter 31 benefits and services.

202.   As a direct and proximate result of the aforesaid acts and omissions, Plaintiff sustained adverse and harmful effects, including, but not limited to, mental distress, emotional trauma, economic loss, the lost of benefits, denial of meaningful due process, the lost of personal property, the lost of professional opportunities, and the lost of past, current, and future economic opportunities.

203.   Pursuant to 5 USC §552a(g)(1)(D), the DVA is liable for the intentional and willful acts and omissions specified *supra* within ¶¶189-202.

**CLAIM IX**            **Defendant Violated Agency Rules implementing the Requirement of the PA and FOIA in Multiple Instances.**

204.   Plaintiff incorporates by reference ¶¶1-112 *supra* as if fully set forth herein.

205.   The NYRO knew or should have known that VA Directive 6300 and the concomitant 6300-Series of VA Handbooks prescribes the agency-wide rules and policies applicable for responding to requests for information and records pursuant to the PA and the FOIA.

206.   The NYRO knew or should have known that the following intentional and willful acts and omissions constitutes separate and discrete violations of apposite agency rules and policies:

   (a) COUNT 1: Failing to comply with the rule set forth in ¶2(g) of VA Directive 6300 directing that all DVA records will be maintained, protected, and released in accordance with applicable laws;

   (b) COUNT 2: Failing to comply with the rule set forth in ¶2(g) of VA Directive 6300 directing that information on Veterans will be collected only when legally authorized;

   (c) COUNT 3: Failing to comply with the rule set forth in ¶2(g) of VA Directive 6300 directing that information on Veterans will be protected from unauthorized disclosure;

   (d) COUNT 4: Failing to comply with the rule set forth in ¶2(c), Chapter 4 of VA Handbook 6300.1 directing that VA Directive 6300, VA Handbook 6300.3, and 38 CFR §1.500 *et. seq.* are applicable in the event records or information proposed for collection or creation pertain to individuals;

   (e) COUNT 5: Failing to comply with the rule set forth in ¶2(h), Chapter 4 of VA Handbook 6300.1 directing that the DVA information and records "must be

protected and used, or disseminated or released only in accordance with applicable Federal laws and regulations";

(f) COUNT 6: Failing to comply with the rule set forth in ¶2(k), Chapter 4 of VA Handbook 6300.1 directing that "[t]he dissemination or release of any records and information within and outside [DVA] must be in accordance with Federal statutes and [DVA] policy";

(g) COUNT 7: Failing to comply with the rule set forth in ¶3(c) of VA Handbook 6300.3 directing that "[p]articular attention" is required in ensuring that responses to FOIA requests are provided within the time limits specified in 5 USC §552(a)(6)(A)-(F);

(h) COUNT 8: Failing to comply with the rule set forth in ¶2(c)(1) of VA Handbook 6300.4 directing that a Privacy Officer (PO) and a FOIA/PO are responsible for, *inter alia*, being familiar with all laws and policies concerning the release of information pursuant to the PA;

(i) COUNT 9: Failing to comply with the rule set forth in ¶2(c)(4) of VA Handbook 6300.4 directing that a Privacy Officer (PO) and FOIA/PO are responsible for "[e]nsuring that offices collect, maintain, use, and disclose records retrieved by personal identifier in the manner" prescribed by the PA and VA Handbook 6300.5;

(j) COUNT 10: Failing to comply with the rule set forth in ¶4(a) of VA Handbook 6300.4 proscribing the disclosure of any information or record from a DVA system of records to any person or any other agency except by written request of, or prior written consent of, the individual to whom the

134

record pertains, unless such disclosure is permitted by statute, DVA regulation, or routine use as defined within the PA;

(k) COUNT 11: Failing to comply with the rule set forth in ¶4(c) of VA Handbook 6300.4 directing that records or information involving, inter alia, the use or abuse of alcohol or drugs requires DVA to obtain a special consent to release prior to release such records or information;

(l) COUNT 12: Failing to comply with the rule set forth in ¶4(d) of VA Handbook 6300.4 directing that disclosures from the record of an individual in response to a congressional inquiry made at the request of said individual "must be within the scope of the individual's request";

(m) COUNT 13: Failing to comply with the rule set forth in ¶4(d) of VA Handbook 6300.4 directing that disclosure of records or information relating to, *inter alia*, the use or abuse of alcohol or drugs in response to a congressional inquiry made at the request of the concerned individual "must be specifically addressed in the individual's request to the congressional office for assistance";

(n) COUNT 14: Failing to comply with the rule set forth in ¶2(a) of VA Handbook 6300.5 directing for the DVA official responsible for the system of records containing Plaintiff's CER Folder to ensure that the policies, practices, and procedures governing the maintenance of records in such system are being followed;

(o) COUNT 15: Failing to comply with the rule set forth in ¶2(c) of VA Handbook 6300.5 directing for the DVA official responsible for the system of

135

records containing Plaintiff's CER Folder to confirm that records contain only such information about an individual that is relevant and necessary to accomplish, *inter alia*, a statutory purpose of DVA; and,

(p) COUNT 16: Failing to comply with the rule set forth in ¶2(d) of VA Handbook 6300.5 directing for the DVA official responsible for the system of records containing Plaintiff's CER Folder to ensure that Plaintiff's personally identifiable information contained in the system is accurate, timely, complete, relevant, and necessary to accomplish a DVA mission.

207.    As a direct and proximate result of the acts and omissions specified *supra* in ¶206, Plaintiff received from the NYRO an insufficient dilatory response to a PA request for records.

208.    As a direct and proximate result of the aforesaid acts and omissions, the NYRO materially hindered Plaintiff's ability to timely ascertain the accuracy, relevance, timeliness, and completeness of the information contained in Plaintiff's CER Folder.

209.    As a direct and proximate result of the aforesaid acts and omissions, the NYRO materially hindered Plaintiff's ability to timely request correction or amendment of any inaccurate or incomplete information contained within Plaintiff's CER Folder.

210.    As a direct and proximate result of the aforesaid acts and omissions, Plaintiff sustained adverse and harmful effects, including, but not limited to, mental distress, emotional trauma, economic loss, the lost of benefits, denial of meaningful due process, the lost of personal property, the lost of professional opportunities, and the lost of past, current, and future economic opportunities.

211.    Pursuant to 5 USC §552a(g)(1)(C) and 5 USC §552a(g)(1)(D), the DVA is liable for the intentional and willful acts and omissions specified *supra* within ¶¶204-210.

**CLAIM X**          **Defendant Violated 5 USC §552a(v) in Multiple Instances**.

212.    Plaintiff incorporates by reference ¶¶1-112 *supra* as if fully set forth herein.

213.    The NYRO knew or should have known 5 USC §552a(v) mandates for OMB to prescribe guidelines and regulations for the use of agencies implementing the provisions of the PA.

214.    The NYRO knew or should have known that the purpose of the OMB Guidelines is to "define[] the responsibilities for implementing the [PA]", *see* OMB Guidelines, 40 Fed. Reg. at 28948.

215.    The NYRO knew or should have known that coverage of the OMB Guidelines "applies to all agencies as defined in the [PA]", *see ibid.*.

216.    The NYRO knew or should have know the OMB Guidelines directs that agencies "shall" establish procedures consistent with the PA, OMB Guidelines, and "related directives", *see ibid.*

217.    The NYRO knew or should have known that the following intentional and willful acts and omissions constitutes separate and discrete violations of the OMB Guidelines:

   (a) COUNT 1: Failing to comply with the guideline setting the benchmark that "the primary objectives of the [PA] is to restrict the use of information to the purposes for which it was collected" pursuant to 5 USC §552a(a)(7) definition of the term, "routine use", *see* OMB Guidelines, 40 Fed. Reg. at 28953;

   (b) COUNT 2: Failing to comply with the apposite guideline setting the benchmarks for an agency's response to an individual's request for records in accordance with 5 USC §552a(a)(7), *see ibid.* at 28957-28958;

   (c) COUNT 3: Failing to comply with the apposite guidelines setting the benchmarks on the restrictions on collecting information about individuals in accordance with 5 USC §552a(e)(1), *see ibid.* at 28960-28961;

(d) COUNT 4: Failing to comply with the apposite guidelines setting the benchmarks for the collection of information directly from an individual in accordance with 5 USC §552a(e)(2), *see ibid.* at 28961;

(e) COUNT 5: Failing to comply with the apposite guidelines setting the benchmarks for maintaining records accuracy in accordance with 5 USC §552a(e)(5), *see ibid.* at 28964-28965;

(f) COUNT 6: Failing to comply with the apposite guidelines setting the benchmarks for validating records before disclosure in accordance with 5 USC §552a(e)(6) *see ibid.* at 28965; and,

(g) COUNT 7: Failing to comply with the apposite guidelines setting the benchmarks for an agency in establishing and training personnel on applicable "rules of conduct" in accordance with 5 USC §552a(e)(9) *see ibid.* at 28965-28966.

218. As a direct and proximate result of the acts and omissions specified *supra* in ¶217, the NYRO failed to assure that Plaintiff's CER Folder contained inaccurate, irrelevant, untimely, and incomplete information.

219. As a direct and proximate result of the aforesaid acts and omissions, Plaintiff sustained adverse and harmful effects, including, but not limited to, mental distress, emotional trauma, economic loss, the lost of benefits, denial of meaningful due process, the lost of personal property, the lost of professional opportunities, and the lost of past, current, and future economic opportunities.

220. Pursuant to 5 USC §552a(g)(1)(C) and 5 USC §552a(g)(1)(D), the DVA is liable for the intentional and willful acts and omissions specified *supra* within ¶¶212-219.

## REQUEST FOR RELIEF

Wherefore Plaintiff respectfully requests this Court to enter judgment against the DVA for the following relief:

(a) declare that the DVA materially and willfully misrepresented to Plaintiff the information and records contained within Plaintiff's CER Folder;

(b) declare that the DVA materially and willfully misrepresented to a member of Congress the information and record contained within Plaintiff's CER Folder;

(c) declare that the DVA materially and willfully misrepresented on multiple occasions the information and records contained within Plaintiff's CER Folder so as to prevent discovery of the discrepancies and inaccuracies documented within Plaintiff's CER Folder;

(d) declare that the DVA materially and willfully misrepresented on multiple occasions the information and records contained within Plaintiff's CER Folder so as to obstruct any attempt by Plaintiff to request the correction or amendment of Plaintiff's CER Folder;

(e) declare that the DVA materially and willfully misrepresented on multiple occasions the information contained within Plaintiff's CER Folder so as to conceal the agency's liability under the Privacy Act;

(f) declare the DVA violated the Privacy Act by intentionally and willfully disclosing Plaintiff's protected confidential information to Ms. **McCARTHY**;

(g) declare that the DVA violated the Privacy Act by intentionally and willfully disclosing Plaintiff's personally identifiable information and protected confidential information to the American Legion;

139

(h) declare that the DVA violated the Privacy Act by intentionally and willfully disclosing Plaintiff's personally identifiable information and protected confidential information to the New York State Division of Veterans Affairs;

(i) declare that the DVA intentionally and willfully violated the Privacy Act on multiple occasions by failing to comply with 5 USC §552a(b);

(j) declare that the DVA intentionally and willfully violated the Privacy Act on multiple occasions by failing to comply with 5 USC §552a(e)(1);

(k) declare that the DVA intentionally and willfully violated the Privacy Act on multiple occasions by failing to comply with 5 USC §552a(e)(2);

(l) declare that the DVA intentionally and willfully violated the Privacy Act on multiple occasions by failing to comply with 5 USC §552a(e)(5);

(m) declare that the DVA intentionally and willfully violated the Privacy Act on multiple occasions by failing to comply with 5 USC §552a(e)(6);

(n) declare that the DVA intentionally and willfully violated the Privacy Act on multiple occasions by failing to comply with 5 USC §552a(e)(9);

(o) declare that the DVA intentionally and willfully violated the Privacy Act on multiple occasions by failing to comply with 5 USC §552a(v);

(p) declare that the DVA intentionally and willfully violated the Privacy Act on multiple occasions by failing to comply with the apposite mandated requirements of 38 USC §7332 (Confidentiality of Certain Medical Records);

(q) declare that the DVA intentionally and willfully violated the Privacy Act by failing to comply with apposite provisions of 38 CFR §1.575 through §1.584 implementing the requirements of the PA;

(r) declare that the DVA intentionally and willfully violated the Privacy Act by failing to comply with apposite provisions of 38 CFR §1.500 through §1.527 implementing the requirements pursuant to the FOIA and 38 USC §5701 for processing requests for records or information relating to a DVA claim;

(s) declare that the DVA intentionally and willfully violated the Privacy Act by failing to comply with apposite provisions of 38 CFR §1.460 through §1.499 implementing the requirements pursuant to the FOIA and 38 USC §7332 for protecting the confidentiality of records or information relating to a Veteran's use or abuse of alcohol or drugs;

(t) declare that the DVA intentionally and willfully failed to comply with the apposite procedures specified within VA Directive 6300;

(u) declare that the DVA intentionally and willfully failed to comply with the apposite procedures specified within VA Handbook 6300.1;

(v) declare that the DVA intentionally and willfully failed to comply with the apposite procedures specified within VA Handbook 6300.3;

(w) declare that the DVA intentionally and willfully failed to comply with the apposite procedures specified within VA Handbook 6300.4;

(x) declare that the DVA intentionally and willfully failed to comply with the apposite procedures specified within VA Handbook 6300.5;

(y) declare that the DVA intentionally and willfully failed to comply with OMB Guidelines regarding an agency's implementation of the provisions of the PA;

(z) order the DVA to provide a detailed and comprehensive accounting of each system of records containing Plaintiff's personally identifiable information;

141

(aa)    order the DVA to provide an accurate accounting of each requestor's name, address, date(s) of request, nature of information or record requested, and asserted purpose for requesting for the disclosure of Plaintiff's personally identifiable information the DVA received after 13 December 2013 from any person or agency within and outside the DVA;

(bb)    order the DVA to provide an accurate accounting of each approving authority's name, duty position, address, date(s) of disclosure, justification for, and the statutory and regulatory authorities for the DVA effectuating disclosure of Plaintiff's personally identifiable information to any person or agency within and outside the DVA;

(cc)    order the DVA to provide an accurate accounting of the recipient's name, address, date(s) of disclosure, method(s) of delivery, and the specific information or record released to each person or agency within and outside the DVA to whom the DVA effectuated disclosure of Plaintiff's personally identifiable information;

(dd)    order the DVA to positively retrieve all information and records containing Plaintiff's personally identifiable information disclosed to the American Legion;

(ee)    order the DVA to positively retrieve all information and records containing Plaintiff's personally identifiable information disclosed to the New York State Division of Veterans Affairs;

(ff) order the DVA to positively retrieve from any person and agency within and outside the DVA who is jointly or severally identified by Plaintiff and the

142

DVA as possessing any improperly disclosed information or record containing Plaintiff's personally identifiable information for non-law enforcement purposes;

(gg)  order the DVA to assure Plaintiff a meaningful opportunity to review and obtain a copy of the information and records pertaining to Plaintiff contained in any apposite system of records maintained by the DVA for non-law enforcement purposes;

(hh)  order the DVA to collaborate with and provide a **THIRTY (30)**-day positive notice to Plaintiff prior to correcting any information or record pertaining to Plaintiff maintained by the DVA for non-law enforcement purposes;

(ii) order the DVA to assure Plaintiff a meaningful opportunity to request amendment of any information or record pertaining to Plaintiff maintained by the DVA for non-law enforcement purposes;

(jj) order the DVA to timely effectuate any reasonable request from Plaintiff for amendment of any information or record pertaining to Plaintiff maintained by the DVA for non-law enforcement purposes;

(kk)  order the DVA to facilitate effectuating a reasonable request from Plaintiff for amendment of any inaccurate or incomplete information or record pertaining to Plaintiff disclosed by the DVA that is maintained by any person or agency outside of the DVA;

(ll) order the DVA to provide Ms. **McCARTHY**'s successor, Representative Kathleen **RICE**, with a corrected and amended copy of Plaintiff's CER Folder

143

accompanied with a comprehensive report endorsed in writing by Plaintiff specifying (1) the reasoning and bases for each singular correction and amendment effectuated within Plaintiff's CER Folder, (2) the circumstances, reasoning, and bases which caused the initial inaccuracies within Plaintiff's CER Folder, and (2) the circumstances, reasoning, and bases which caused the NYRO VR&E Division to provide an inaccurate response to the 12 March 2014 congressional inquiry from her predecessor;

(mm)  order the DVA to provide Senator **SCHUMER** with a comprehensive memorandum that is endorsed in writing by Plaintiff specifying (1) the reasoning and bases for each singular correction and amendment effectuated within Plaintiff's CER Folder and (2) the circumstances, reasoning, and bases which caused the initial inaccuracies within Plaintiff's CER Folder;

(nn)  order the DVA to provide Senator **GILLIBRAND** with a comprehensive memorandum that is endorsed in writing by Plaintiff specifying (1) the reasoning and bases for each singular correction and amendment effectuated within Plaintiff's CER Folder and (2) the circumstances, reasoning, and bases which caused the initial inaccuracies within Plaintiff's CER Folder;

(oo)  order the DVA to effectuate within **TEN (10)**-business days after a written request from Plaintiff for the DVA to provide a person or agency within or outside the DVA identified as receiving inaccurate or incomplete information or record pertaining to Plaintiff with a memorandum endorsed in writing by Plaintiff specifying (1) the reasoning and bases for each singular correction and amendment effectuated within Plaintiff's CER Folder and (2) the

144

circumstances, reasoning, and bases which caused the initial inaccuracies within Plaintiff's CER Folder;

(pp)　　award Plaintiff damages as afforded by 5 USC §552a(g)(4)(A), the exact amount of which is to be determined at trail but is no less than $1,000.00 for each specified count of each distinct claim;

(qq)　　award Plaintiff all reasonable costs and fees incurred in this civil action as is afforded by 5USC §552a(g)(4)(B); and,

(rr) grant any such other further relief as the Court may deem proper and appropriate.

Dated: Monday 04 January 2016

Vincent Curtis **CONYERS**
Plaintiff *Pro Se*
533 Mitchell Street
Uniondale, New York  11553-3014
E-mail:　　VCConyers@gmail.com
Telephone:　646-670-0483

**EXHIBIT 1**

Vocational Rehabilitation & Employment Division
245 West Houston Street, 3rd Floor
New York, NY 10014

11/14/2013

In Reply, Refer To: 306/28
██████████

Mr. Vincent C. Conyers
533 Mitchell Street
Uniondale, NY 11553

Dear Mr. Conyers,

## ENTITLEMENT TO BENEFITS UNDER 38 USC CHAPTER 31

**What I Decided:**

I have reviewed your application for vocational rehabilitation and form 28-1902W. I am pleased to inform you that I have **found you entitled to benefits under Chapter 31.**

The next step will be to develop a vocational rehabilitation plan. Each rehabilitation plan is developed individually, based on your medical history; disabling condition(s); barriers to employability; patterns of interests, aptitudes and abilities; acquired education and transferable job skills, and ability to live and function with your family and community.

Unfortunately, we will not be able to sponsor you for any occupation that will aggravate your SC condition, however we are will to explore other valiable options with you and sponsor you for suitable training that will lead to productive employment.

You will receive another letter informing you of your next appointment to discuss your vocational goal as well as the name of your Vocational Rehabilitation Counselor and their contact information. We wish you the best and once again Congratulations on your entitlement to Chapter 31 services.

Sincerely,

Wanda Richards-Clarke
Counseling Psychologist

1-800-827-1000 ext
Fax (212) 807-4036

**EXHIBIT 2**



**Vocational Rehabilitation & Employment Division**
**245 West Houston Street, 3rd Floor**
**New York, NY 10014**

11/19/2013

Mr. Vincent C. Conyers
533 Mitchell Street
Uniondale, NY 11553

306/28 

Dear Mr. Conyers:

Your case was recently transferred to me.  Please contact me to schedule an appointment to discuss your vocational rehabilitation program.  If I am not available when you call, leave a message, including a phone number where you can be reached during business hours.

Sincerely,

Christopher Holder, M.S.Ed., CRC, LP-MHC
Vocational Rehabilitation Counselor

 **U.S. Department of Veterans Affairs**
**NY Regional Office**

**Christopher Holder, M.S. Ed, CRC, LP-MHC**
Vocational Rehabilitation Counselor
Vocational Rehabilitation & Employment Division

NY Regional Office
245 W. Houston Street
New York, NY 10014

Office: (212) 807-3010
Fax: (212) 807-4036
Email: Christopher.Holder@va.gov

# EXHIBIT 3



**USDVA Regional Office**
**245 W Houston St**
**NY, NY 10014**

12/17/2013

Mr. Vincent C. Conyers
533 Mitchell Street
Uniondale, NY 11553


Dear Mr. Conyers:

We are writing to inform you of the following decision that affects your VA Benefits:

I propose to discontinue your VR&E case for failure to cooperate in any plan that does not fall within the Self-Employment Track.

**Why did we make this decision?**

This decision was made based on the following reasons:

During our meeting, I explained the eligibility and procedural requirements to pursue a Self-Employment plan, through VR&E.  We discussed your financial situation and that you do not have the capital for such a venture.  I explained to you other possible courses of action, such as going to school for Hotel & Restauraunt Management, or Management, which could lead toward a better understanding and greater business abilities.  You stated, you were not interested in school, due to an incident at Nassau Community College.  You have made it clear that you are only interested in the Self-Employment Track.  I do not find this to be a feasible course, at this time.


**What evidence did we use to make this decision?**

Your disabilities, in my professional opinion as a Certified Rehabilitation Counselor, are not of the most severe nature that self employment is your only feasible opportunity for employment.  I believe you are employable in Governmental as well as private industry. You do have barriers and handicaps to your employment, but not to the degree of being designated with having a Serious Employment Handicap.  You have legitimate options for suitable employment.


**What can you do if you disagree with our decision?**

If you do not agree with the decision you may take the following steps:

1. If you contact us within 30 days of this letter you may:

   a. Meet with a staff member to review the basis for the decision, including any relevant written documents or material; and

   b. Submit to us any material or information you may have which is relevant to the decision.

2. After 30 days and within one year from the date of this letter, either you or your accredited representative – for example, a veterans service organization representative, independent agent, or private attorney – may take the following actions:

   a. Request for an Administrative Review

   If you disagree with our decision, you can write to us requesting for an administrative review.  In your letter, please tell us about the reasons you disagree with our decision.  Send your request to the address at the top of this letter.

   In an administrative review, a Vocational Rehabilitation and Employment (VR&E) program manager will review your records.  This manager will examine if there were errors in the decision making process that would allow us to change our decision.

   *Note*:  You cannot ask for an administrative review after we have received your appeal of our decision.

   b. Appeal our decision

   Your other option is to formally appeal our decision to the Board of Veterans Appeals within one year from the date of this letter.  Please read the detailed instructions on the attached VA Form 4107, Your Rights to Appeal Our Decision, for filing a formal appeal.

Sincerely,

Christopher Holder, M.S.Ed., CRC, LP-MHC
Vocational Rehabilitation Counselor

Enclosure: VA Form 4107
cc:  AMERICAN LEGION

**EXHIBIT 4**



**USDVA Regional Office**
**245 W Houston St**
**NY, NY 10014**

01/17/2014

Mr. Vincent C. Conyers
533 Mitchell Street
Uniondale, NY 11553

In Reply Refer to Both:
306/28

Dear Mr. Conyers:

We've interrupted your Vocational Rehabilitation and Employment (VR&E) program effective 01/17/2014 because; you have been informed as to the requirements for a self-employment plan, for which you do not qualify.  You refuse to entertain any other plan under VR&E.  This constitutes a refusal to participate.  This letter tells you:

How interruption affects your program benefits
How to contact me
What can happen if you don't contact me
What to do if you find suitable employment and no longer require services
What to do if you disagree with our decision to interrupt your program

**How does interruption affect your benefits under our program?**

You won't receive subsistence allowance during the period your program is interrupted, however, you will remain eligible for other VR&E services, such as referrals for medical and dental appointments and counseling.

**How can you contact me?**

Contact me during normal business hours at (212) 807-3010 –or- at any time by e-mail at Christopher.Holder@va.gov.

**What can happen if you don't contact me?**

If you do not contact me within 30 days from the date of this letter requesting that your case remain open, we may discontinue your program.  The discontinuance means you will no longer be eligible for the benefits under this program.  If you

2.

Mr. Vincent C. Conyers 

should later want to take part in the VR&E program, you would have to remove the reason for the discontinuance of your current program.  To reenter the program you would need to do all of the following:

1. Reapply for services using VA Form 28-1900, Disabled Veterans Application for Vocational Rehabilitation
2. Meet the entitlement and eligibility requirements, and
3. Be reevaluated to determine if you still require services

**What if you find suitable employment during interruption and no longer require services?**

If you find suitable employment and no longer require services, please answer the following questions and return this letter by scanning it and emailing back to your counselor or mailing it to the address at the top of page one:

Name and Address of Employer: _____

Job Title: _____

Wages per Hour_____ or per Year_____

Current Address: _____

Email Address: _____

Telephone Number:  Home: _____ Work: _____

Do you believe you are in need of rehabilitation services/accommodations at your work site?    Yes _____    No _____

If so, what services/accommodations do you feel you require?

_____

**What can you do if you disagree with our decision?**

If you disagree with our decision, either you or your accredited representative—for example, a Veterans service organization representative, independent agent, or private attorney—can take the following actions within one year from the date of this letter:

3.

Mr. Vincent C. Conyers 

1. Request an Administrative Review
2. Appeal our decision

**Note:** You cannot ask for an Administrative Review after we receive your request to appeal our decision.

**Administrative Review**

You can request an Administrative Review if you disagree with our decision. In your request, please tell us the reason(s) you disagree with our decision, and mail your request to the address at the top of this letter.

In an Administrative Review, a Vocational Rehabilitation and Employment Officer or his/her designee will review the information leading to the decision to determine if an error was made in the decision making process that would allow us to overturn our decision.

**Formal Appeal**

Your other option is to formally appeal our decision. For instructions on how to appeal our decision, please see the enclosed VA Form 4107, Your Rights to Appeal Our Decision.

I'm looking forward to hearing from you soon so that you can get back on track toward reaching your vocational and other life goals.

If you have any questions about this letter or need additional verification of VA benefits, please contact me at , or call 1-800-827-1000. If you use the Telecommunications Device for the Deaf (TDD), the federal number is 711. Send electronic inquiries to https://iris.va.gov/.

Sincerely,

Christopher Holder, M.S.Ed., CRC, LP-MHC
Vocational Rehabilitation Counselor

4.

Mr. Vincent C. Conyers █████████████

Enclosure:  VA Form 4107

cc:  AMERICAN LEGION

**How can eBenefits assist you?**

eBenefits is a joint VA/DoD web portal that provides resources and self-service capabilities to Veterans, Servicemembers, and their families to research, access and manage their VA and military benefits and personal information.  eBenefits uses secure credentials to allow access to personal information and gives users the ability to perform numerous self-service functions.  It also provides a list of links to other sites that provide information about military and Veteran benefits.  It is an essential way for Veterans, Servicemembers, and their families to receive access to services.  To access eBenefits go to www.ebenefits.va.gov.

# EXHIBIT 5



Dear Mr. Conyers,

Attached is a copy of a letter written on your behalf.

Charles E. Schumer
U.S.S.

# United States Senate

WASHINGTON, DC 20510

March 14, 2014

Director
Department of Veterans Affairs
VA Regional Office, New York
245 West Houston Street
New York, NY 10014-4805

Re: Vincent Curtis Conyers

Dear Sir/Madame:

I am writing on behalf of my constituent, Vincent Curtis Conyers, regarding an issue that falls under the jurisdiction of The Department of Veterans Affairs. Any assistance or information you could provide would be greatly appreciated.

For your review I have attached the related correspondence. I know I can count on your cooperation in reviewing the self-explanatory material and advising me of your findings as expeditiously as possible. You may call Julietta at my NYC Office at 212-486-4430 if there are any questions. Thank you for your assistance in this matter.

Sincerely,

 **COPY**

Charles E. Schumer
United States Senator

CES\jl

PLEASE RESPOND TO THE FOLLOWING OFFICE:

| ☐ ALBANY: | ☐ BINGHAMTON: | ☐ BUFFALO: | ☐ HUDSON VALLEY: | ☐ LONG ISLAND: | ☐ NEW YORK CITY: | ☐ ROCHESTER: | ☐ SYRACUSE: | ☐ WASHINGTON: |
|---|---|---|---|---|---|---|---|---|
| LEO O'BRIEN BUILDING ROOM 420 ALBANY, NY 12207 (518) 431-4070 | FEDERAL OFFICE BUILDING 15 HENRY STREET ROOM M103 BINGHAMTON, NY 13901 (607) 772-6792 | 130 SOUTH ELMWOOD #660 BUFFALO, NY 14202 (716) 846-4111 | ONE PARK PLACE SUITE 100 PEEKSKILL, NY 10566 (914) 734-1532 | TWO GREENWAY PLAZA 145 PINE LAWN ROAD ROOM 300N MELVILLE, NY 11747 (631) 753-0978 | 780 THIRD AVENUE SUITE 2301 NEW YORK, NY 10017 (212) 486-4430 TDD: (212) 486-7661 | KENNETH B. KEATING BUILDING 100 STATE STREET ROOM 3040 ROCHESTER, NY 14614 (585) 263-5866 | 100 SOUTH CLINTON ROOM 841 SYRACUSE, NY 13261 (315) 423-5471 | 322 HART SENATE OFFICE BUILDING WASHINGTON, DC 20510 (202) 224-6542 TDD: (202) 224-0420 |

 http://schumer.senate.gov

**EXHIBIT 6**

CAROLYN McCARTHY

WASHINGTON OFFICE:
2346 RAYBURN HOUSE OFFICE BUILDING
WASHINGTON, DC 20515
(202) 225-5516
Fax: (202) 225-5758

DISTRICT OFFICE:
300 GARDEN CITY PLAZA, SUITE 200
GARDEN CITY, NY 11530
(516) 739-3008
Fax: (516) 739-2973

# Congress of the United States
## House of Representatives
### Washington, DC 20515-3204

FINANCIAL SERVICES
SUBCOMMITTEES
RANKING MEMBER, INTERNATIONAL
MONETARY POLICY AND TRADE
FINANCIAL INSTITUTIONS AND
CONSUMER CREDIT

EDUCATION AND THE WORKFORCE
SUBCOMMITTEES
EARLY CHILDHOOD, ELEMENTARY,
AND SECONDARY EDUCATION
HEALTH, EMPLOYMENT, LABOR, AND PENSIONS

March 19, 2014

Mr. Vincent C. Conyers
533 Mitchell Street
Uniondale, NY 11553-3014

Dear Mr. Conyers:

I received correspondence from the VA and have attached their letter for your review. In addition, I regret that I was unable to obtain a favorable response, but I hope that you will keep this information for your records.

Once again, thank you for allowing me the opportunity to assist you.

Sincerely,

Carolyn McCarthy
Member of Congress



**DEPARTMENT OF VETERANS AFFAIRS**
New York Regional Office
245 West Houston Street
New York NY 10014

The Honorable Carolyn Mc Carthy
Member, United States Congress
ATTN: Renzo Castro
300 Garden City Plaza
Suite 200
Garden City, NY 11530

In Reply Refer
To:                          Conyers, Vincent

Dear Congresswoman Mc Carthy:

This letter is in response to your correspondence, dated March 12, 2014, regarding your constituent; Mr. Vincent Conyers. Mr. Conyers is alleging issues with services at the New York Regional Office, Vocational Rehabilitation &Employment Division.

The veteran applied for services on September 24, 2013 and was determined entitled for Chapter 31 services on November 14, 2013. The veteran has a service connected disability of 60% for major depression, interverbral back syndrome, impairment of both knees and eczema. The veteran also has recent issues with alcohol and substance abuse. The veteran is in treatment for all conditions at the Northport VAMC and the East Meadow VA Clinic.

At the initial interview the veteran stated that he has two college degrees and significant administrative skills from the Army. He stated that since he had left the Army in 2012 he has been unsuccessfully looking for work. As he had sufficient education and transferable skills, VR&E offered him job placement assistance, as an initial service.

An examination of his records from Northport VAMC reveals that he had been working with a vocational specialist there on this same goal. She had been sending him job leads, but he had not been responding. There was only one mention of the veteran applying for and being turned down for an inappropriate job as the manager of a fast food restaurant. VR&E has many contacts available to Mr. Conyers for the possibility of obtaining suitable employment, and incentives for employers to hire skilled disabled veterans.

The veteran stated that the only service he would accept from VR&E was that of self-employment towards the goal of opening up a nightclub/cabaret.

VA regulation 38 CFR 21.257 states that self-employment is the option for veterans whose "limitations affecting employability arising from the effects of the service connected disability are so severe as to necessitate selection of self-employment as the only feasible vocational goal for this veteran."



2

Conyers, Vincent

It has not been established that self-employment is the only feasible goal for this veteran.  In addition, the choice of assisting the veteran in opening a nightclub is questionable based on the veteran's service connected and non-service connected disabilities.

I met with Mr. Conyers on January 7, 2014 in an attempt to explain how we could assist Mr. Conyers look for suitable employment.  He was not interested in this service.

Thank you for your interest and concern on behalf of the veteran.  If there are any further questions, please contact Steven Sribnik at 212-807-3135 or by email at Steven.Sribnik@va.gov.


Sincerely yours,

Steven Sribnik, CRC
VR&E Officer

# EXHIBIT 7



**DEPARTMENT OF VETERANS AFFAIRS**
**VA Regional Office**
USDVA Regional Office
245 W Houston St
NY, NY 10014

03/21/2014

**In Reply Refer to:**
RO 306/28
████████████

Mr. Vincent Conyers
533 Mitchell Street
Uniondale, NY 11553

Dear Mr. Vincent Conyers:

Please read this letter carefully, as it contains information related to your request for services under chapter 31 Vocational Rehabilitation and Employment.

You were found entitled to Chapter 31 services on November 13, 2013. We received your request for an Administrative Review on February 21, 2014. A decision has been reached on the issue.

Please see the enclosed copy of the Administrative Review decision that upholds the determination that you are entitled to receive a program of services under Chapter 31 Vocational Rehabilitation and Employment, however self-employment services are not supported at this time.

If you disagree with our decision you may formally appeal. If you want to file a formal appeal, please read the detailed instructions on the attached VA form 4107, Your Rights to Appeal our Decision. Your appeal must be received within one year from the date of the decision. (March 21, 2015)

If you have any questions, please feel free to contact our office during normal business hours at 212 807 3135.

Sincerely,

Steven M. Sribnik
Vocational Rehabilitation and Employment Officer

Enclosures

CC: American Legion

1 of 1

**Department of Veterans Affairs**

# Memorandum

Date: March 20, 2014

From: Steven Sribnik, Vocational Rehabilitation and Employment Officer

Subj: Administrative Review, Vincent Conyers 

To: Christopher Holder, Vocational Rehabilitation Counselor


## ADMINISTRATIVE REVIEW

Mr. Vincent Conyers requested an administrative review via a letter dated January 18, 2014 which was sent to Veterans Affairs Central Office and then received in New York Regional Office, February 21, 2014. Mr. Conyers was found entitled to Vocational Rehabilitation benefits on November 13, 2013.

## QUESTION AT ISSUE:

Self -Employment services under VA Vocational Rehabilitation & Employment benefits (Chapter 31) under US Code Chapter 31.

## STATEMENT OF THE PERTINENT FACTS OF RECORD:

1- Mr. Vincent Conyers applied for VR&E services on September 24, 2013. The veteran has a 60% service connected disability for major depressive disorder, intervertebral disc syndrome, neuralgia of the ulnar nerve, impairment of the knee and eczema. He was seen at New York Regional Office for an entitlement determination on November 13, 2013. He was determined entitled to VR&E services.

2- Mr. Conyers reported that from his depression he feels sad and isolates himself. He is in treatment at the East Meadow Clinic of the Northport VAMC. From the back condition, he has difficulty sitting for long periods, as well bending, lifting and stopping. He has frequent pain radiating from his back into his legs. He also has numbness in his left hand and arm. From his knee condition, he has severe pain if he stays in one position too long and it also tightens up, making it difficult to ambulate. The veteran is seen for pain treatment at the Northport VAMC. The veteran is also being seen by the Compensated Work Therapy program at Northport VAMC, where he has been seen for employment services.

3- Mr. Conyers reported that he has two college degrees. A Bachelors' degree in History from Excelsior College, which he obtained in 1992. He reported that he then went back to school and obtained an Associates' degree in Paramedical Science in 1996.

4- Mr. Conyers was in the Army from June 1986 until January 2012. He retired with an honorable discharge at that time at the E7 grade.  He worked as a flight paramedic and trainer.

5- Based on Mr. Conyers extensive education and transferable skills from the Army, Mr. Conyers was offered direct job placement services.

6- Mr. Conyers refused this service, wanting only self-employment services towards the goal of opening a nightclub/cabaret.

## DISCUSSION OF THE REASONING INFLUENCING THE CONCLUSION REACHED INCLUDING CITATION OF REGULATIONS

### M28R, Part IV, Section C, Chapter 4.04

Self-Employment
This employment track is targeted to Veterans who have limited access to traditional employment, need flexible work schedules, or need a more accommodating work environment due to their disabling conditions or other life circumstances. To ensure success, Veterans must have the interest, financial resources and aptitude to pursue self-employment. After completion of a comprehensive initial evaluation and selection of this track, services are determined by the severity of the disability and limitations to employability.

### CFR 21.257 (b)

(b) *Definition.* For purposes of this subpart, *individuals with the most severe service-connected disability(ies) who require self-employment* means individuals who have been determined by VA to have limitations affecting employability arising from the effects of each individual's service-connected disability(ies), which are so severe as to necessitate selection of self-employment as the only reasonably feasible vocational goal for the individuals. (Authority: 38 U.S.C. 3104

## RECOMMENDATIONS & COMMENTS OF THE VR&E OFFICER:

The veteran was determined entitled to VR&E services on November 13, 2013 because he had an employment handicap which he had not overcome.  He has a 60% service connected disability for depression, back, knee and skin issues.  He is seen for these conditions at the Northport VAMC and the East Meadow VA Clinic.

At the initial interview the veteran stated that he had two college degrees;  a Bachelors' degree and then an Associates' degree.  He stated that he has been unsuccessfully looking for work since retiring from the Army in 2012.

The veteran is also being seen at the Northport VAMC as part of the Compensated Work Therapy Program for vocational counseling. The vocational specialist there describes assisting the veteran with job placement services. There is a mention of the veteran going on an interview was for a job as a manager of a fast food restaurant. As recently as March 4, 2014, the veteran states that he recently went on a job interview, but the interviewer was reluctant to hire him.

On January 7, 2014, I met with Mr. Conyers. At this meeting, I described to him how VR&E could assist him with more suitable employment leads and supports. I also advised him on VR&E regulations concerning self-employment. Throughout the meeting, Mr. Conyers had to stand and then sit, due to back pain. Recent VAMC notes indicate that he is being seen at Northport VAMC for pain management.

As per CFR21.257(b), the selection of self- employment has not been determined to be the only feasible goal for this veteran. The veteran continues to look for work on his own, but will not accept this service from VR&E.

As a comment, if self-employment was determined to be the only feasible choice for this veteran, the choice of opening a cabaret/nightclub is also an issue, based on the veteran's service connected and non-service connected disabilities. When asked how he could run a nightclub when he is in so much pain, he stated that he would get others to do the work. There is also the issue of Mr. Conyers described alcohol and substance abuse problems.

As Mr. Conyers is in treatment for all conditions, VR&E would gladly work with Mr. Conyers towards competitive job placement. He has excellent credentials, transferable skills and makes a very good impression.

Steven Sribnik,
VR&E Officer


CC: American Legion

**EXHIBIT 8**

KIRSTEN E. GILLIBRAND
SENATOR

RUSSELL SENATE OFFICE BUILDING
SUITE 478
WASHINGTON, DC 20510–3205
202–224–4451

ARMED SERVICES
COMMERCE, SCIENCE AND TRANSPORTATION
ENVIRONMENT AND PUBLIC WORKS
AGRICULTURE
SPECIAL COMMITTEE ON AGING

# United States Senate

WASHINGTON, DC 20510–3205

April 25, 2014

Mr. Vincent Conyers
533 Mitchell Street
Uniondale, New York 11553

Dear Mr. Conyers,

Thank you for sharing your concerns with me. I appreciate your taking the time to bring this matter to my attention.

In an effort to be of assistance, I have brought the information you presented to the attention of the appropriate officials. I have requested a review of this matter and a written response from their office.

As soon as I have something further to report, I will contact you again.

Sincerely,

Kirsten Gillibrand
United States Senator

KG/JS_TH
563493

ALBANY/CAPITAL DISTRICT OFFICE
LEO W. O'BRIEN
FEDERAL OFFICE BUILDING
1 CLINTON SQUARE, ROOM 821
ALBANY, NY 12207
TEL: (518) 431–0120
FAX (518) 431–0128

BUFFALO OFFICE
LARKIN AT EXCHANGE
726 EXCHANGE STREET, SUITE 511
BUFFALO, NY 14210
TEL: (716) 854–9725
FAX (716) 854–9731

LONG ISLAND OFFICE
155 PINELAWN ROAD
SUITE 250 NORTH
MELVILLE, NY 11747
TEL: (631) 249–2825
FAX (631) 249–2847

NORTH COUNTRY OFFICE
PO BOX 273
LOWVILLE, NY 13367
TEL: (315) 376–6118
FAX (315) 376–6118

ROCHESTER OFFICE
KENNETH B. KEATING
FEDERAL OFFICE BUILDING
100 STATE STREET
ROOM 4195
ROCHESTER, NY 14614
TEL: (585) 263–6250
FAX (585) 263–6247

SYRACUSE/CENTRAL NY OFFICE
JAMES M. HANLEY FEDERAL BUILDING
100 SOUTH CLINTON STREET
ROOM 1470
P.O. BOX 7378
SYRACUSE, NY 13261
TEL: (315) 448–0470
FAX (315) 448–0476

NEW YORK CITY OFFICE
780 THIRD AVENUE
SUITE 2601
NEW YORK, NY 10017
TEL: (212) 688–6262

HUDSON VALLEY OFFICE
PO BOX 893
MAHOPAC, NY 10541
TEL: (845) 875–4585
FAX (845) 875–9099

**EXHIBIT 9**



**DEPARTMENT OF VETERANS AFFAIRS**
**VA Regional Office**
**USDVA Regional Office**
**245 W Houston St**
**NY, NY 10014**

05/09/2014

Mr. Vincent C. Conyers
533 Mitchell Street
Uniondale, NY 11553

**In Reply Refer to:**
306/28
██████████████

Dear Mr. Conyers:

We have disallowed your claim for Vocational Rehabilitation and Employment (VR&E) benefits effective 05/09/2014.  This letter tells you:

- Why we disallowed your claim
- What you can do to reopen your claim
- How our decision affects your other Department of Veterans Affairs (VA) benefits
- What you can do now
- What you can do if you disagree with our decision
- What to do if you have questions or concerns

**Why did we disallow your claim?**

We disallowed your claim because you refused to participate in any plan that did not fall under self-employment as the owner of a cabaret.

**What do you need to do to reopen your claim?**

You may reopen your case within one year from the date of this letter by contacting me at .  You may also contact a VA regional office by calling 1-800-827-1000 and request that your claim be reopened.  You must complete and send us a new VA Form 28-1900, *Disabled Veterans Application for Vocational Rehabilitation* any time after one year from the date of this letter

**Does this decision affect your other VA benefits?**

No.  This decision only affects your claim for VR&E benefits.

**What if you disagree with our decision?**

1

If you disagree with our decision, either you or your accredited representative, such as a Veterans service organization representative, independent agent, or private attorney, can request an administrative review or file a formal appeal.  You have one year from the date of this letter to take either of these actions.

- Request an Administrative Review

  If you disagree with our decision, you can write to us and ask for an administrative review.  In your letter, please tell us the reason(s) you disagree with our decision.  Send your request to the address at the top of page one.

  In an administrative review, a VR&E program manager will look at your records.  He/she will see if there were errors in our decision-making that would allow us to change our decision.

  You cannot ask for an administrative review after we receive your appeal of our decision.

- File a Formal Appeal

  Your other option is to formally appeal our decision.  If you want to file a formal appeal, please read the detailed instructions on the enclosed VA Form 4107, *Your Rights to Appeal Our Decision*.

## What if you have questions or concerns?

If you have any questions about this letter or need additional verification of VA benefits, please contact me at  or call 1-800-827-1000.  If you use the Telecommunications Device for the Deaf (TDD), the federal number is 711.  Please visit www.vetsuccess.va.gov for information on resume writing, interview techniques, obtaining employment, following up on job leads, and how to perform a successful employment search.

Sincerely yours,

Christopher Holder, M.S.Ed., CRC, LP-MHC
Vocational Rehabilitation Counselor

Enclosure:

VA Form 4107

2

cc:  AMERICAN LEGION

## How can eBenefits assist you?

eBenefits is a web portal that provides resources and self-service capabilities to Veterans, Servicemembers, and their families to research, access and manage their VA and military benefits and personal information.  It is a joint effort between VA and the Department of Defense.  eBenefits uses secure credentials to allow access to personal information and gives users the ability to perform numerous self-service functions.  It also provides a list of links to other sites that provide information about military and Veteran benefits.  It is an essential way for Veterans, Servicemembers, and their families to receive access to services.  To access eBenefits, go to www.ebenefits.va.gov.

**EXHIBIT 10**

533 Mitchell Street
Uniondale, New York  11553-3014

02 June 2014

Director, New York Regional Benefits Office
Veterans Benefits Administration
United States Department of Veterans Affairs
245 West Houston Street
New York, New York 10014-4805

SUBJECT:           Notice of Disagreement

REFERENCES:        Title 38 – *Veterans Benefits*, United States Code (USC) (2012)
                   Title 38 – *Pensions, Bonuses, and Veterans' Relief*, Code of Federal
                   Regulations (CFR) (01 July 2013 Edition)
                   M28R – *Vocational Rehabilitation and Employment Services Manual*
                   (M28R) (08 November 2013)


Pursuant to the provisions set forth within 38 USC §7105 and 38 CFR §21.59, this Notice of Disagreement is submitted to formally initiate the traditional appellate review process in regard to determinations pronounced by the Vocational Rehabilitation and Employment (VR&E) Division of the New York Regional Benefits Office which have been rendered final as of 09 May 2014.

Attached to this Notice is a statement delineating the issues and contentions of the undersigned's disagreements with the reasoning, conclusions, and determinations cited by VR&E as justifying the interruption, discontinuance, and disallowance of the undersigned's claim for a program of VR&E benefits and services under the Self-Employment Track as afforded by Chapter 31, Title 38 of the United States Code.

Moreover, this Notice also serves as an express declination for participating in the Post Decision Review process during the handling of this appellate review request.

Vincent Curtis Conyers

Attachment – **FIFTY-FOUR (54)** Pages

cc:  American Legion, c/o Nassau County Veterans Services Agency, Building Q, 2201 Hempstead Turnpike, East Meadow, New York 11554-1859

*NOTICE OF DISAGREEMENT STATEMENT*

**CONYERS**, Vincent Curtis



*SYNOPSIS*

*SYNOPSIS*

During a 07 November 2013 VR&E group orientation, the undersigned:

> (a) submitted VA Form 28-1902w – *Rehabilitation Needs Inventory* (*RNI*), expressing the vocational goal of "[a]chieving self-employability as an ENTREPRENEUR of a self-sustaining private sector business";

> (b) viewed a video depicting vignettes of the VR&E benefits and services available under the "*5 Tracks to Employment*", including the particular benefits and services under the Self-Employment Track;

> (c) participated in a general "Question & Answer" briefing conducted by a representative from the United States Small Business Administration (SBA) regarding the available resources, services, and assistance SBA provides to Veterans pursuing Self-Employment;

> (d) underwent an entitlement interview with a VR&E staff member; and,

> (e) participated in a *CareerScope*® Assessment Profile Testing session.

Shortly after the 07 November 2013 group orientation, the undersigned:

> (a) received on 16 November 2013 a letter dated 14 November 2013, which provided notice of being found entitled to VR&E benefits and services under Chapter 31, Title 38 of the United States Code;

> (b) received on 21 November 2013 a letter dated 17 November 2013, which provided notice of the identity of the assigned Vocational Rehabilitation Counselor (VRC); and,

> (c) scheduled an 17 December 2013 initial meeting with the VRC.

During the 17 December 2013 initial meeting, after the undersigned:

> (a) requested for more detailed information than that provided during the group orientation as to the specific VR&E benefits and services available under the Self-Employment Track; and,

> (b) expressed the ambition of utilizing a program of VR&E benefits and services that are available under the Self-Employment Track in attaining the vocational goal of Entrepreneurship with the objective of being an Owner-Operator of a Bar/Restaurant,

*NOTICE OF DISAGREEMENT STATEMENT*

**CONYERS**, Vincent Curtis

*SYNOPSIS (continued)*

the VRC stated that a program of VR&E benefits and services under the Self-Employment Track is "not available".

When asked for further clarification about the unavailability of a program of VR&E benefits and services under the Self-Employment Track, the VRC responded by questioning the undersigned about:

    (a) pursuing a career within the medical field given the undersigned's extensive civilian and military experiences as an EMT-Paramedic, Flight Paramedic, and Senior Combat Medical Noncommissioned Officer;

    (b) utilizing a program of VR&E benefits and services under the Employment through Long-Term Services Track in obtaining a degree in another profession/career field after the undersigned explicitly declined remaining within the medical field;

    (c) utilizing a program of VR&E benefits and services under the Rapid Access to Employment Track after the undersigned declined going back to college to pursue a degree due to a previous incident involving a physical altercation with other students; and,

    (d) the reason for selecting the stated objective of a Bar/Restaurant given "the high failure rate" and the high costs and expenses involved in such a venture after the undersigned affirmed the preference for pursuing the stated vocational goal of Entrepreneurship,

resulting in the VRC declaring that the undersigned's pending divorce and then-current financial situation precluded such goal.

Although the VRC continued to:

    (a) assert that a program of VR&E benefits and services under the Self-Employment Track is unavailable to the undersigned;

    (b) emphasize aspects of utilizing a program of VR&E benefits and services under the Employment through Long-Term Services Track; and,

    (c) profess a high probability of success in attaining employment through a program of VR&E benefits and services under the Rapid Access to Employment Track,

the undersigned steadfastly maintained the ambition of pursuing the initial stated vocational goal of Entrepreneurship.

RECEIVED
NYRO (305)
VSC/FC
2014 JUN 2 PM 12 24

## *NOTICE OF DISAGREEMENT STATEMENT*

**CONYERS**, Vincent Curtis

*SYNOPSIS (continued)*

After the 17 December 2013 initial meeting, the undersigned received a Notice of Proposed Adverse Action dated 17 December 2013 (hereinafter, the "NPAA") setting forth the VRC's intention to discontinue the undersigned's claim for VR&E benefits and services for allegedly demonstrating a "Failure to Cooperate", on the basis of determining:

(a) the undersigned's ambition and interest in pursuing a Self-Employment plan is not a "feasible course";

(b) the undersigned "do[es] not have the capital" to pursue the stated vocational goal;

(c) the undersigned's disabilities "are not of the most severe nature that self employment is [the] only feasible opportunity for employment";

(d) the undersigned is "employable in Governmental as well as private industry";

(e) the undersigned's "barriers and handicaps" to employment are "not to the degree of being designated with having a Serious Employment Handicap"; and,

(f) the undersigned was "ineligible" to receive a program of VR&E benefits and services under the Self-Employment Track due to the undersigned having other "legitimate options for suitable employment".

During a 07 January 2014 appointment with the Vocational Rehabilitation and Employment Officer (VREO) that was scheduled in order to review the bases of the contested determinations specified within the NPAA:

(a) the undersigned recounted both the events that transpired during the initial meeting and the subsequent determinations being contested;

(b) the undersigned inquired into the reason(s) why VR&E benefits and service under the Self-Employment Track were "unavailable" and the undersigned "ineligible" for a program of such benefits and services;

(c) the VREO stated VR&E benefits and services under the Self-Employment Track are only intended and available for "severely injured" Veterans;

(d) after a discussion of the undersigned's Service-Connected Disabilities, the VREO stated agreement with the undersigned's contention of the presence of Serious Employment Handicaps that would benefit from an accommodating work environment and flexible work schedule;

*NOTICE OF DISAGREEMENT STATEMENT*

**CONYERS**, Vincent Curtis

*SYNOPSIS (continued)*

(e) after discussing the undersigned's educational background and why the undersigned declined pursuing another degree, the VREO highly recommended utilizing a program of VR&E benefits and services under the Rapid Access to Employment Track in attaining employment;

(f) after the undersigned reaffirmed the ambition to pursue the vocational goal of Entrepreneurship, the VREO stated he would recommend against a program under the Self-Employment Track due to the amount of money needed in obtaining the requisite licenses, fees, equipment, etc., for a Bar/Restaurant; and,

(g) the VREO stated the undersigned needed to pursue other employment options as a program under the Self-Employment Track would not be available except as a "last option".

On 17 January 2014, the undersigned submitted, as afforded by the provisions set forth within 38 USC §3107(c) and 38 CFR §21.59, a request to the VA Central Office for an Administrative Review (hereinafter, the "AR") of:

(a) whether the determination that a program of VR&E benefits and services under the Self-Employment Track were "unavailable" and the undersigned "ineligible" for such a program of benefits and services;

(b) whether the determination that the undersigned's vocational goal of Entrepreneurship was "infeasible";

(c) whether the determination to conduct a premature assessment of the viability of the undersigned's stated vocational goal without the benefit of a review and analysis of a proposed business plan;

(d) whether the failure to utilize the evaluation and planning period as an opportunity for the development and submission of a proposed business plan to assess the economic viability of the undersigned's vocational goal; and,

(e) whether the determination in proposing the discontinuance of the undersigned's VR&E claim for an alleged "Failure to Cooperate",

were rendered in accordance with applicable statutes, regulations, and the M28R Manual.

The undersigned received a 17 January 2014 Notice of Interruption (hereinafter, the "NOI") announcing the interruption of the undersigned's claim for a program of VR&E benefits and services under the Self-Employment Track premised upon VR&E determining that:

*NOTICE OF DISAGREEMENT STATEMENT*

**CONYERS**, Vincent Curtis

██████████                                                *SYNOPSIS (continued)*

(a) the undersigned "do[es] not qualify" for Self-Employment;

(b) the undersigned "refuse[d] to entertain any other plan under VR&E"; and,

(c) the undersigned's persistence in pursuing a program of such benefits and services allegedly demonstrated a "Refusal to Participate".

Within a 19 March 2014 response to **ONE (1)** of the **THREE (3)** congressional inquiries submitted on the undersigned's behalf,[1] the VREO:

(a) recounted that the undersigned "has a service connected disability of 60% for major depression, interverbral [*sic*] back syndrome, impairment of both knees and eczema";[2]

(b) proffered that the undersigned "has recent issues with alcohol and substance abuse";

(c) explained that the undersigned's educational background and "significant administrative skills from the Army" is the reason why VR&E offered job placement assistance "as an initial service";

(d) referenced the unsuccessful employment leads/referrals the undersigned experienced while being rendered employment assistance by a Vocational Specialist at Northport VAMC;

(e) misstated the undersigned's vocational objective as "opening up a nightclub/cabaret" instead of the expressly stated vocational objective of being an Owner-Operator of a Bar/Restaurant;[3]

---

[1] VR&E provided the referenced letter in response to an inquiry submitted by United States Representative Carolyn McCarthy; VR&E has yet to respond as of this date to the inquiries submitted by United States Senators Charles E. Schumer and Kristen Gillibrand.

[2] The dermatologic condition the undersigned is currently service-connected rated for, "Pseudofolliculitis Barbae", has been rated under the same Diagnostic Code as "Eczema". Furthermore, this narration overlooked recounting the Service-Connected Disabilities (SCD) of "Ulnar Nerve Damage due to Electrical Injury" and "Left Foot Injury".

[3] During any discourse concerning the stated objective, it is essential to note that:

(a) within New York State, a "cabaret" is a premise where "any musical entertainment, singing, dancing or other forms of entertainment is permitted", *see e.g.*, State of New York Alcoholic Beverage Control Law §64-D(6), City of New York Administrative Code §27-232, Town of Hempstead (NY) General Code §96-1;

(footnote #3 continues on next page)

Page 5 of **54**

*NOTICE OF DISAGREEMENT STATEMENT*

**CONYERS**, Vincent Curtis

*SYNOPSIS (continued)*

(f) asserted 38 CFR §21.257 specifies "that self-employment is the option for veterans whose 'limitations affecting employability arising from the effects of the service connected disability are so severe as to necessitate selection of self-employment as the only reasonably feasible vocational goal for this veteran'";

(g) opined that "it has not been established that self-employment is the only feasible goal" for the undersigned; and,

(h) declared that "the choice of assisting [the undersigned] in opening a nightclub is questionable based on [the undersigned's] service connected and non-service connected disabilities".

Despite delivering the AR to the Director, Vocational Rehabilitation and Employment Services, the undersigned received a 20 March 2014 Memorandum Response to the AR (hereinafter, the "Memorandum") from the VREO:

(a) apprising that the Central Office forwarded the AR to the New York Regional Office to provide a response;

---

(continuation of footnote #3)

(b) the State of New York applies and utilizes the term "cabaret" to an establishment "whose premises have a capacity for the assemblage of six hundred or more persons", *see e.g.*, State of New York Alcoholic Beverage Control Law §64-D(6);

(c) most local municipalities within New York State defines a "cabaret" as any premise offering live entertainment regardless of the occupancy capacity of the venue, *see e.g.*, New York City Administrative Code §27-232, Town of Hempstead (NY) General Code §96-1;

(d) the State of New York delegates and authorizes local municipalities to approve and license any public premise utilized for dancing, *see* State of New York Town Law §136(6);

(e) most local municipalities within New York State equate a "nightclub" as a "public dance hall" in which dancing is carried on and to which the public may gain admission, either with or without the payment of a fee, *see e.g.*, New York City Administrative Code §20-359(1); Town of Hempstead (NY) General Code §96-1 & §96-3(E); and,

(f) though the objective of being an Owner-Operator of a Bar/Restaurant envisions occasionally offering live entertainment, and thus meeting the statutory definition of "cabaret", the undersigned never contemplated or intended offering amenities commonly found in a "Nightclub" (*i.e.*, a dedicated dance floor; primarily operating for the purpose of offering dancing to patrons; offering food and drinks incidentally to dancing; etc.) nor applying for any requisite licenses to operate as a "public dance hall".

### NOTICE OF DISAGREEMENT STATEMENT

**CONYERS**, Vincent Curtis

*SYNOPSIS (continued)*

(b) recounting that the undersigned has been found entitled to receive a program of VR&E benefits and services under Chapter 31, Title 38 of the United States Code;

(c) narrating that the undersigned "has a 60% service connected disability for major depressive disorder, intervertebral disc syndrome, neuralgia of the ulnar nerve, impairment of the knee and eczema";[4]

(d) delineating some of the impairments resulting from the undersigned's Service-Connected Disabilities (SCD);

(e) explaining that the extension of an offer to the undersigned for "direct job placement services" is premised upon the undersigned's "extensive education and transferable skills";

(f) citing both M28R.IV.C.4.04 and 38 CFR §21.257 as specifying a policy of restricting the availability of a program of VR&E benefits and services under the Self-Employment Track solely to severely injured Veterans;

(g) asserting that 38 CFR §21.257(b) required restricting the availability of a program of VR&E benefits and services under the Self-Employment Track solely to Veterans afflicted with "service-connected disability(ies) which are so severe as to necessitate selection of self-employment as the only reasonably feasible vocational goal";

(h) declaring that "selection of self-employment has not been determined to be the only feasible goal" for the undersigned;

(i) opining that successful achievement of the undersigned's vocational goal is "an issue, based on [the undersigned's] service-connected and non-service connected disabilities";

(j) proffering that "[t]here is also the issue of [the undersigned] describing alcohol and substance abuse problems";

(k) specifying that "VR&E would gladly work with [the undersigned] towards competitive job placement", on the basis of assessing the undersigned as "ha[ving] excellent credentials, transferable skills and makes a very good impression"; and,

---

4   This narration cited "eczema" instead of the actual condition of "Pseudofolliculitis Barbae" and cited "impairment of knee" instead of "Chondromalacia Knee (Bilateral)". It also overlooked citing the Service-Connected Disability for "Left Foot Injury".

*NOTICE OF DISAGREEMENT STATEMENT*

**CONYERS**, Vincent Curtis

*SYNOPSIS (continued)*

   (l) proclaiming within the Memorandum's cover letter that providing the undersigned with a program of VR&E benefits and services under the Self-Employment Track is "not supported at this time".

On 12 May 2014, the undersigned received a 09 May 2014 Notice of Final Action (hereinafter, the "NFA") from the VRC:

   (a) announcing the disallowance of the undersigned's claim for a program of VR&E benefits and services, effective as of 09 May 2014;

   (b) specifying that the decision to disallow the undersigned's claim for a program of VR&E benefits and services is premised upon determining that the undersigned "refused to participate in any plan that did not fall under self-employment as the owner of a cabaret";

   (c) informing the undersigned that the claim for a program of VR&E benefits and services may be reopen within **ONE (1)** year from the date of the NFA by contacting VR&E;

   (d) clarifying that in the event the undersigned files a claim for a program of VR&E benefits and services after **ONE (1)** year from the date of the NFA, a new VA Form 28-1900 – *Disabled Veterans Application for Vocational Rehabilitation* must be submitted;

   (e) apprising that in the event the undersigned disagreed with the decision to disallow the undersigned's claim for a program of VR&E benefits and services, the undersigned has **ONE (1)** year from the date of the NFA to request an administrative review or file a formal appeal;

   (f) emphasizing that the undersigned cannot request for an administrative review once an appeal is filed;

   (g) stating that a VR&E program manager from the New York Regional Office will handle any submitted request for an administrative review;

   (h) providing the undersigned with VA Form 4107 – *Your Rights to Appeal Our Decision*; and,

   (i) providing the undersigned with VA Form 21-4138 – *Statement in Support of Claim.*

On 02 June 2014, the undersigned submitted the instant Notice of Disagreement (hereinafter, the "NOD").

*NOTICE OF DISAGREEMENT STATEMENT*

**CONYERS**, Vincent Curtis

<u>*CONTESTED DETERMINATIONS*</u>

The undersigned contests the reasoning and conclusions cited by VR&E as justifying:

(a) the determination that the undersigned is "ineligible" for a program of VR&E benefits and services under the Self-Employment Track, <u>*see*</u> NPAA;

(b) the determination that the undersigned's vocational goal "is not a feasible course at this time" as it is premised upon a premature assessment presuming that the undersigned "do[es] not have the capital" to accomplish said vocational goal; <u>*see*</u> NPAA;

(c) the determination that though the undersigned has "barriers and handicaps" to employment, they were "not to the degree of being designated with having a Serious Employment Handicap", <u>*see*</u> NPAA;

(d) the determination that VR&E benefits and services under the Self-Employment Track is "unwarranted" since the undersigned is "employable in Governmental as well as the private industry", <u>*see*</u> NPAA;

(e) the restriction of the availability of a program of VR&E benefits and services under the Self-Employment Track premised upon assessing the vocational impairments resulting from the undersigned's SCD as not being "of the most severe nature that self-employment is [the] <u>*only*</u> feasible opportunity for employment" (emphasis added), <u>*see*</u> NPAA;

(f) the restriction of the scope of VR&E benefits and services available to the undersigned to those under either the Rapid Access to Employment Track or the Employment through Long-Term Services Track, <u>*see*</u> NPAA;

(g) interrupting the undersigned's claim for VR&E benefits and services by classifying the undersigned's persistence in pursuing a program under the Self-Employment Track as allegedly demonstrating a "Failure to Cooperate", <u>*see*</u> NPAA;

(h) maintaining and upholding the determination that the undersigned is "ineligible"/"unqualified" for a program of VR&E benefits and services under the Self-Employment Track, <u>*see*</u> NOI and Memorandum; and,

(i) discontinuing and disallowing the undersigned's claim for VR&E benefits and services by classifying the undersigned's persistence in pursuing a program under the Self-Employment Track as allegedly demonstrating a "Refusal to Participate", <u>*see*</u> NOI and NFA.

Page **9** of **54**

*NOTICE OF DISAGREEMENT STATEMENT*

**CONYERS**, Vincent Curtis

██████████

*PRESENTED ISSUES*

The undersigned contends upon information and belief that the aforementioned contested reasoning, conclusions, and determinations pronounced by the VR&E presents the following **SEVEN (7)** issues:

(a) whether the Agency properly construed 38 CFR §21.257 as restricting the availability of a program of Vocational Rehabilitation and Employment benefits and services under the Self-Employment Track solely to Veterans with "service-connected disability(ies) which are so severe as to necessitate selection of self-employment as the only reasonably feasible vocational goal";

(b) whether the Agency properly construed the procedural guidelines within the M28R Vocational Rehabilitation and Employment Services Manual as restricting the availability of a program of Vocational Rehabilitation and Employment benefits and services under the Self Employment Track solely to Veterans with "service-connected disability(ies) which are so severe as to necessitate selection of self-employment as the only reasonably feasible vocational goal";

(c) whether the undersigned complied with applicable criteria in selecting a suitable vocational goal for the purpose of establishing eligibility for a program of Vocational Rehabilitation and Employment benefits and services under the Self-Employment Track;

(d) whether the Agency complied with applicable statutory and regulatory criteria while rendering the determination that the undersigned is "ineligible"/"unqualified" for a program of Vocational Rehabilitation and Employment benefits and services under the Self-Employment Track;

(e) whether the Agency complied with the applicable procedural guidelines set forth within the M28R Vocational Rehabilitation and Employment Services Manual prior to interrupting, discontinuing, and disallowing the undersigned's claim for a program of Vocational Rehabilitation and Employment benefits and services under the Self-Employment Track;

(f) whether the Agency properly omit conducting an extended evaluation of the undersigned's claim for a program of Vocational Rehabilitation and Employment benefits and services under the Self-Employment Track prior to interrupting, discontinuing, and disallowing said claim; and,

(g) whether the Agency properly conducted an Administrative Review that was requested pursuant to the provisions set forth in 38 USC §3107(c) and 38 CFR §21.59.

## NOTICE OF DISAGREEMENT STATEMENT

**CONYERS**, Vincent Curtis

*ISSUE #1*

ISSUE #1    *Whether the Agency properly construed 38 CFR §21.257 as restricting the availability of a program of Vocational Rehabilitation and Employment benefits and services under the Self-Employment Track solely to Veterans with "service-connected disability(ies) which are so severe as to necessitate selection of self-employment as the only reasonably feasible vocational goal".*

Reference:

   38 CFR §21.257

1. As reflected within the current record, VR&E:

  (a) restricts the availability of a program of VR&E benefits and services under the Self-Employment Track solely to Veterans with "service-connected disability(ies) so severe as to necessitate selection of Self-Employment as the only feasible vocational goal", *see* NPAA and Memorandum; and,

  (b) asserts that the foregoing policy is mandated by the regulatory language set forth within 38 CFR §21.257(b), *see* Memorandum.

2. Pursuant to 38 CFR §21.257(a), a program of VR&E benefits and services under the Self-Employment Track is available to an individual in the event it is determined that such an objective is a suitable vocational goal as premised upon:

  (a) the results of an initial evaluation conducted in accordance with 38 CFR §21.50; and,

  (b) the provisions within 38 CFR §21.257.

3. The most natural reading of the language utilized within 38 CFR §21.257(b):

  "*Definition.* For purposes of this subpart, *individuals with the most severe service-connected disability(ies) who require self-employment* means individuals who have been determined by VA to have limitations affecting employability arising from the effects of each individual's service-connected disability(ies), which are so severe as to necessitate selection of self-employment as the only reasonably feasible vocational goal for the individuals" (emphasis in original),

indisputably conveys an unambiguous intent to define a very specific group of individuals who require a program of VR&E benefits and services that are available under the Self-Employment Track due to his/her severe Service-Connected Disabilities.

Page **11** of **54**

**NOTICE OF DISAGREEMENT STATEMENT**

**CONYERS**, Vincent Curtis                                           *ISSUE #1 (continued)*

4.   However, in describing the scope of VR&E benefits and services under the Self-Employment Track, 38 CFR §21.257(c) explicitly sets forth **TWO (2)** clearly separate and distinguishable categories of individuals who may be provided such benefits and services:

>   (a) one category composed of individuals pursuing Self-Employment as a suitable vocational goal, _see_ 38 CFR §21.257(c)(1); and,

>   (b) a second category composed of "individuals with the most severe service-connected disability(ies) who require Self-Employment" as a suitable vocational goal, _see_ 38 CFR §21.257(c)(2).

5.   The most natural reading of the unambiguous language utilized within 38 CFR §21.257(c) clearly expresses an explicit distinction between:

>   (a) Veterans _choosing_ to pursue a vocational goal of Self-Employment; and,

>   (b) Veterans meeting the defined criteria set forth within 38 CFR §21.257(b) who are _required_ to pursue Self-Employment as the only reasonably feasible suitable vocational goal.

6.   Other provisions within 38 CFR §21.257 evidences an intent to clearly distinguish separate levels of disparate VR&E benefits and services that are available under the Self-Employment Track for each of the aforementioned categories of Veterans, _i.e.,_:

>   (a) 38 CFR §21.257(d) delineates the "basic" benefits and services available for all Veterans who chooses to pursue Self-Employment; and,

>   (b) 38 CFR §21.257(e) delineates the "special employment services" available for the most severely Service-Connected Disabled Veterans for whom Self-Employment is the only reasonably feasible vocational goal.

7.  Failing to recognize and acknowledge the explicit distinctions within 38 CFR §21.257:

>   (a) which unambiguously sets forth **TWO (2)** distinguishable categories of Veterans for whom Self-Employment is a suitable vocational goal;

>   (b) which unambiguously sets forth **TWO (2)** disparate levels of VR&E benefits and services available under the Self-Employment Track; and,

>   (c) that clearly defines within 38 CFR §21.257(b) the category of Veterans eligible for the "special employment services" within 38 CFR §21.257(e),

erroneously disregards and renders superfluous or invalid pertinent regulatory language.

### NOTICE OF DISAGREEMENT STATEMENT

**CONYERS**, Vincent Curtis

*ISSUE #1 (continued)*

8. The undersigned contends upon information and belief that the Agency committed clear and unmistakable errors by:

(a) failing to recognize, acknowledge, and comply with the clear and explicit language within 38 CFR §21.257(a) in affording a program of VR&E benefits and services that are available under the Self-Employment Track to all Veterans for whom Self-Employment is a suitable vocational goal;

(b) failing to recognize and acknowledge that 38 CFR §21.257(b) explicitly defines **ONE (1)** of the **TWO (2)** distinguishable categories of Veterans for whom Self-Employment is a suitable vocational goal;

(c) failing to recognize and acknowledge that the clear and explicit language within 38 CFR §21.257(c) differentiates between the **TWO (2)** distinguishable categories of Veterans who may be provided a program of VR&E benefits and services under the Self-Employment Track;

(d) failing to recognize and acknowledge that the clear and explicit language within 38 CFR §21.257(d) delineates the "basic" level of VR&E benefits and services that are available under the Self-Employment Track for all Veterans pursing a suitable vocational goal of Self-Employment;

(e) failing to recognize and acknowledge that the clear and explicit language within 38 CFR §21.257(e) delineates the "special employment services" that are available under the Self-Employment Track for Veterans with "service-connected disability(ies) so severe as to necessitate selection of Self-Employment as the only feasible vocational goal";

(f) misconstruing 38 CFR §21.257(b) as authorizing the development and utilization of an arbitrary and capricious preemptive policy for determining the availability and provision of a program of VR&E benefits and services under the Self-Employment Track;

(g) misconstruing 38 CFR §21.257(b) as authorizing the development and utilization of an arbitrary and capricious preemptive policy for assessing and evaluating a Veteran's claim for a program of VR&E benefits and services under the Self-Employment Track; and,

(h) misconstruing 38 CFR §21.257(b) as authorizing the development and utilization of an arbitrary and capricious preemptive policy that invalidates 38 CFR §21.257(c) explicit delineation of **TWO (2)** distinguishable categories of Veterans who may be provided a program of VR&E benefits and services under the Self-Employment Track.

*NOTICE OF DISAGREEMENT STATEMENT*

**CONYERS**, Vincent Curtis                                                  *ISSUE #2*

ISSUE #2        *Whether the Agency properly construed the procedural guidelines within the <u>M28R Vocational Rehabilitation and Employment Services Manual</u> as restricting the availability of a program of Vocational Rehabilitation and Employment benefits and services under the Self Employment Track solely to Veterans with "service-connected disability(ies) which are so severe as to necessitate selection of self-employment as the only reasonably feasible vocational goal."*

References:

       M28R, Part I, Section A, Chapter 1
       M28R, Part IV, Section C, Chapter 4
       M28R, Part IV, Section C, Chapter 8
       M28R, Part VI, Section A, Chapter 9

1.   The M28R Manual[5] implicitly recognizes distinct categories of Veterans who may be provided a program of VR&E benefits and services under the Self-Employment Track by, *e.g.*:

    (a) describing such benefits and services as being "targeted to Veterans who have limited access to traditional employment, need flexible work schedules, *or* need a more accommodating work environment due to their disabling conditions *or* other life circumstances", <u>*see*</u> M28R.IV.C.4.04(d) (emphases added);

    (b) summarizing that the level of such benefits and services "are determined by the severity of the disability and limitations to employability", <u>*see*</u> M28R.IV.C.4.04(d);

    (c) emphasizing that such benefits and services are not only "designed for Veterans who have the *necessary job skills to start a business*" but that "Self-Employment may *<u>also</u>* be the right track for Veterans who have limited access to traditional employment *or* require a more accommodating work environment due to the effects of a disability", <u>*see*</u> M28R.VI.A.9.01 (emphases added); and,

    (d) promoting Self-Employment as "a viable rehabilitation objective for many Veterans", while specifying that the Agency "encourages Self-Employment as an objective for Veterans who are unlikely to achieve rehabilitation through employment with existing companies, agencies, or organizations", <u>*see*</u> M28R.IV.C.8.03 and M28R.VI.A.9.03.

---

[5]  All citations to the M28R Manual herein this Statement are to those provisions that were effective as of the 17 December 2013 initial meeting.

### *NOTICE OF DISAGREEMENT STATEMENT*

**CONYERS**, Vincent Curtis

*ISSUE #2 (continued)*

2.   Moreover, the M28R Manual explicitly recognizes and acknowledges **TWO (2)** distinguishable categories of Veterans who may be provided a program of VR&E benefits and services under the Self-Employment Track by, *e.g.*:

> (a) stating that a guiding principal for the Agency is to assist Veterans in identifying his/her Self-Employment potential and candidacy based upon the criteria for Category I or Category II levels of service, *see* M28R.VI.A.9.03(a)(2);

> (b) requiring the assignment of a Veteran to "*one* of *two* categories of services when the Self-Employment Track is elected" while specifying that the availability of a program of such benefits and services "is dependent on the *category assignment*" (emphases added), *see* M28R.IV.C.8.04(c) and M28R.VI.A.9.05;

> (c) requiring that a Veteran with the most severe service-connected disabilities is to be classified as "Category I", *see* M28R.IV.C.8.04(c)(1) and M28R.VI.A.9.05(a);

> (d) requiring that a Veteran afflicted with an Employment Handicap (EH) or a Serious Employment Handicap (SEH) not considered most severe is to be classified as "Category II", *see* M28R.IV.C.8.04(c)(2) and M28R.VI.A.9.05(b);

> (e) delineating the specific "special" level of VR&E benefits and services that are available under the Self-Employment Track for a Category I Veteran, *see* M28R.IV.C.8.03(e)(1) and M28R.VI.A.9.05(c)(1); and,

> (f) delineating the specific "basic" level of VR&E benefits and services that are available under the Self-Employment Track for a Category II Veteran, *see* M28R.IV.C.8.03(e)(2) and M28R.VI.A.9.05(c)(2).

3.   The Agency's stated reasoning for restricting the availability of a program of VR&E benefits and services under the Self-Employment Track solely to Veterans with the most severe Service-Connected Disabilities:

> (a) is not supported by the Memorandum's citation of M28R.IV.C.4.04 as said paragraph implicitly recognizes and acknowledges distinct categories of Veterans who may be provided a program of such benefits and services by referencing "Veterans who have limited access to traditional employment, need flexible work schedules, *or* need a more accommodating work environment due to their disabling conditions *or* other life circumstances" (emphases added);

*NOTICE OF DISAGREEMENT STATEMENT*

**CONYERS**, Vincent Curtis

*ISSUE #2 (continued)*

(b) is contrary to the implicit references within M28R.IV.C.8.03(b) and M28R.VI.A.9.01 which summarizes distinct categories of Veterans while stating that not only is the Self-Employment Track "designed for Veterans who have the *necessary job skills to start a business*" but that "Self-Employment may *also* be the right track for Veterans who have limited access to traditional employment *or* require a more accommodating work environment due to the effects of a disability" (emphases added);

(c) erroneously disregards the clear and unambiguous guideline within M28R.VI.A.9.03(a)(2) that explicitly requires VR&E to assist Veterans in identifying his/her Self-Employment potential and candidacy based upon the criteria for Category I *or* Category II levels of service;

(d) erroneously disregards the clear and unambiguous guidelines within M28R.IV.C.8.04(c) and M28R.VI.A.9.05 which explicitly sets forth the requirement for assigning a Veteran to "*one* of *two* categories of services when the Self-Employment Track is elected" (emphases added);

(e) erroneously disregards the clear and unambiguous guidelines within M28R.IV.C.8.04(c)(2) and M28R.VI.A.9.05(b) which sets forth **TWO (2)** distinguishable categories of Veterans who may be provided a program of VR&E benefits and services under the Self-Employment Track; and,

(f) erroneously disregards the clear and unambiguous distinctions outlined within M28R.IV.C.8.03(e) and M28R.VI.A.9.05(c) which explicitly differentiates between the **TWO (2)** disparate levels of VR&E benefits and services that are available under the Self-Employment Track.

4. The undersigned contends upon information and belief that by restricting VR&E benefits and services under the Self-Employment Track solely to Veterans with "service-connected disability(ies) so severe as to necessitate selection of Self-Employment as the only feasible vocational goal", the Agency committed clear and unmistakable errors by:

(a) failing to recognize or acknowledge the implicit procedural guidelines within the M28R Manual that generally sets forth distinct categories of Veterans who may be provided a program of VR&E benefits and services that are available under the Self-Employment Track;

(b) failing to apply, recognize, or acknowledge pertinent procedural guidelines within the M28R Manual which sets forth clear and explicit provisions differentiating the **TWO (2)** distinguishable categories of Veterans who may be provided a program of VR&E benefits and services that are available under the Self-Employment Track;

<u>*NOTICE OF DISAGREEMENT STATEMENT*</u>

**CONYERS**, Vincent Curtis

██████████                                        *ISSUE #2 (continued)*

(c) failing to recognize or acknowledge that the guideline set forth within M28R.IV.C.4.04(d) generally describes distinct categories of Veterans who may be provided a program of VR&E benefits and services that are available under the Self-Employment Track due to "hav[ing] limited access to traditional employment, need[ing] flexible work schedules, <u>or</u> need[ing] a more accommodating work environment due to their disabling conditions <u>or</u> other life circumstances" (emphases added);

(d) failing to recognize or acknowledge that the guideline set forth within M28R.IV.C.4.04(d) implicitly references distinct categories of Veterans who may be provided a program of VR&E benefits and services that are available under the Self-Employment Track by stating that the level of such benefits and services is based upon "the severity of the disability and limitations to employability";

(e) failing to apply, adhere to, or abide by the guideline set forth within M28R.IV.C.8.04(c) which explicitly recognizes and acknowledges separate and distinguishable categories of Veterans who may be provided a program of VR&E benefits and services that are available under the Self-Employment Track by requiring the assignment of a Veteran to "<u>one</u> of <u>two</u> categories of services when the Self-Employment Track is elected" (emphases added);

(f) failing to apply, adhere to, or abide by the guideline set forth within M28R.VI.A.9.05 which explicitly recognizes and acknowledges separate and distinguishable categories of Veterans who may be provided a program of VR&E benefits and services that are available under the Self-Employment Track by requiring the assignment of a Veteran to "<u>one</u> of <u>two</u> categories of services when the Self-Employment Track is elected" (emphases added);

(g) devising, applying, and utilizing an arbitrary and capricious preemptive policy that disregards the aforementioned procedural guidelines of the M28R Manual by restricting the availability of a program of VR&E benefits and services under the Self-Employment Track solely to Veterans with "service-connected disability(ies) so severe as to necessitate selection of Self-Employment as the only feasible vocational goal"; and,

(h) devising, applying, and utilizing an arbitrary and capricious preemptive policy that disregards the clear and unambiguous directive set forth within M28R.I.A.1.03(a) explicitly prohibiting any deviation from the procedural guidelines delineated within the M28R Manual "without prior written authorization from the VR&E Service Director".

**NOTICE OF DISAGREEMENT STATEMENT**

**CONYERS**, Vincent Curtis

*ISSUE #3*

ISSUE #3    *Whether the undersigned complied with applicable criteria in selecting a suitable vocational goal for the purpose of establishing eligibility for a program of Vocational Rehabilitation and Employment benefits and services under the Self-Employment Track.*

References:

    United States Code
        38 USC §3101
        38 USC §3102
        38 USC §3104
        38 USC §3106
        38 USC §5107
    Code of Federal Regulations
        38 CFR §21.35
        38 CFR §21.50
        38 CFR §21.51
        38 CFR §21.52
        38 CFR §21.53
        38 CFR §21.184
        38 CFR §21.257
    M28R Manual
        M28R, Part I, Section A, Chapter 1
        M28R, Part IV, Section B, Chapter 2

RECEIVED
NYRO (306)
VSC/PC
2011 JUN 2 PM 12 25

1. A "vocational goal" is defined as a gainful employment status consistent with a Veteran's abilities, aptitudes, and interests.  *See* 38 USC §3101(8), 38 CFR §21.35(h)(1), 38 CFR §21.53(b), and M28R.IV.B.2.13.

2. Achievement of a vocational goal is deemed reasonably feasible for a Veteran with either an Employment Handicap (EH) or Serious Employment Handicap (SEH) in the event:

    (a) he/she identifies vocational goal(s), *see* 38 CFR §21.53(d)(1) and M28R.IV.B.2.13(a)(2);

    (b) his/her physical and mental conditions permit training for the vocational goal(s) to begin within a reasonable period, *see* 38 CFR §21.53(d)(2) and M28R.IV.B.2.13(a)(2); and,

    (c) he/she possesses the necessary educational skills and background to pursue the vocational goal or will be provided services by the Agency to develop such necessary educational skills as part of a program of VR&E benefits and services, *see* 38 CFR §21.53(d)(3) and M28R.IV.B.2.13(a)(2).

<u>**NOTICE OF DISAGREEMENT STATEMENT**</u>

**CONYERS**, Vincent Curtis

*ISSUE #3 (continued)*

3.  It is indisputable that the undersigned has Service-Connected Disabilities (SCD) evaluated at a compensable rating in excess of **TWENTY (20)** percent:

| | |
|---|---|
| Combined SCD Rating | **60%** |
| *Post Traumatic Stress Disorder - Depressive Disorder* | *30%* |
| *Protruding Disc, Lumbosacral Spine* | *20%* |
| *Chondromalacia, Left Knee* | *10%* |
| *Ulnar Nerve Electrical Injury* | *10%* |
| *Chondromalacia, Right Knee* | *0%* |
| *Left Foot Injury* | *0%* |
| *Pseudofolliculitis Barbae* | *0%* |

4.  The impairments resulting from the undersigned's SCD satisfies the criteria set forth within 38 USC §3101(1), 38 CFR §21.50(a), 38 CFR §21.51, and M28R.IV.B.2.11(f) in establishing a positive finding for the presence of EH:

Physical Limitations
    Impairments resulting from Lower Back SCD
        Reduced Ability to Bend at the Waist
        Reduced Ability to Twist Upper Body at the Waist
        Reduced Ability to Stoop
        Reduced Ability to Climb
        Reduced Capacity in Comfortably Reaching for Items above the Head
        Reduced Capacity in Comfortably Reaching for Items below the Knees
        Reduced Capacity for Standing
            Completely dependent upon Level of Pain being Experienced
        Reduced Capacity for Walking
            Completely dependent upon Level of Pain being Experienced
        Inability to Run/Jog
    Impairments resulting from Bilateral Knee SCD
        Reduced Ability to Crouch
        Reduced Ability to Squat
        Reduced Ability to Kneel
        Reduced Ability to Crawl
        Reduced Ability to Climb
        Reduced Capacity to Repeatedly Bend Knees
        Reduced Capacity for Standing
            Completely dependent upon Level of Pain being Experienced
        Reduced Capacity for Walking
            Completely dependent upon Level of Pain being Experienced
        Inability to Run/Jog
        Weakness of Joint
            More Pronounced on Left

Page **19** of **54**

*NOTICE OF DISAGREEMENT STATEMENT*

**CONYERS**, Vincent Curtis

*ISSUE #3 (continued)*

Impairments resulting from Left Foot Injury
    Intermittent Difficultly in Walking
        Completely dependent upon Level of Pain being Experienced
    Inability to Run/Jog
Must Frequently Change Body Position to Maintain Pain at a Tolerable Level
    Due to Pain resulting from Lower Back SCD
    Due to Pain resulting from Bilateral Knee SCD
Reduced Capacity in Maintaining Body Posture
    Seated Position
        Unable to exceed 5 minutes without Changing Position
            More Pronounced as Pain Increases/Day Progresses
        Intermittent Difficultly in Rising from Seated Position
            Completely Dependent upon Chair/Seat being Utilized
            More Pronounced as Pain Increases/Day Progresses
    Standing Position
        Intermittent Difficulty
        Completely Dependent on Level of Pain being Experienced
    Walking
        Intermittent Difficulty
        Completely Dependent on Level of Pain being Experienced
    While Lifting Weight
        More Pronounced as Pain Level Increases/Day Progresses
    While Carrying Weight
        More Pronounced as Pain Level Increases/Day Progresses
Reduced Capacity in Lifting Weight
    Reduced Capacity in Lifting ≥50 pounds
    Inability to Repeatedly Lift ≥50 pounds
    Reduced Capacity in Repeatedly Lifting ≤50 pounds
Reduced Capacity in Bearing Weight
    Reduced Capacity to Carry Weight ≥30 pounds using Arms
    Reduced Capacity to Bear Weight ≤10 pounds on Back/Shoulders
    Inability to Bear Weight ≥20 pounds on Back/Shoulders
    Inability to Bear Weight >2 pounds around Waist/Hips
Incapable of Performing Mandatory Tasks for Health Care Professionals
    Reduced Capacity in Performing Effective Patient Examinations
        Difficulties in assuming proper position to Conduct Exam
    Reduced Capacity in Performing Patient Interventions
        Difficulties in assuming proper position to perform Procedures
    Unable to Perform Cardiopulmonary Resuscitation (CPR) to Standard
        Airway Management
        Chest Compressions
    Unable to Perform Pre-hospital Manual Patient Carries
    Unable to Render Effective Assistance during Manual Patient Transfers

RECEIVED
HYRO (305)
VSC/PC
2014 JUN 2 PM 12 25

**NOTICE OF DISAGREEMENT STATEMENT**

CONYERS, Vincent Curtis

*ISSUE #3 (continued)*

Psychosocial Limitations
- Post Traumatic Stress Disorder
    - Intrusive Thoughts
        - Triggered by certain Sights
        - Triggered by certain Sounds
        - Sometimes triggered by certain Odors
        - Frequently recalling Treating Casualties/Victims
        - Frequently recalling Losing Casualties/Victims
        - Frequently recalling Deceased Soldiers
    - Constantly attempting to avoid recalling Unpleasant Events
    - Frequently Hyper-Vigilant while outside home
    - Distrustful of Individuals in Supervisory Position
        - Experienced preference for "Expediency" vs. "What's Right"
        - Experienced Extreme Selfish Attitudes and Inclinations
        - Experienced willingness to ignore and disregard Regulations
        - Experienced willingness to disregard Rules of Engagement
        - Experienced willingness to forsake Core Values
        - Experienced willingness to forsake Soldier Care
    - Frequently Feeling Guilty
        - Losing Soliders/Casualties/Victims/Friends
        - Committed Acts and Deeds
        - Not being available for Soldiers
    - Wonder whether could had done more for Soldiers/Casualties/Victims
- Depression
    - Anxiety over Physical Impairments and Limitations
        - Resulting from Lower Back SCD
        - Resulting from Bilateral Knee SCD
    - Anxiety over reduced capacity in Self-Support
    - Anxiety over being Unemployed
    - Anxiety over transitioning into New Career/Profession
    - Anxiety over attaining Proficiency in New Career/Profession
    - Anxiety about "Starting Over" at 50 Years of Age
    - Experienced between February through August 2013
        - Low Self-Esteem
        - Lack of Motivation
    - Unable to Enjoy Previous Hobbies/Activities
        - Unable to Run/Jog
            - Used to Run 2-4 Miles Daily prior to Lower Back Injury
                - Was Primary Form of Relaxation/Stress Relief
        - Unable to Play Basketball
        - Unable to Play Softball
        - Unable to Bowl
        - Unable to go Dancing

Page **21** of **54**

*NOTICE OF DISAGREEMENT STATEMENT*

**CONYERS**, Vincent Curtis

*ISSUE #3 (continued)*

Cognitive Limitations
    Chronic Insomnia
    Distracted Thoughts
        While Recalling Unpleasant Events
            Triggered by certain Sights
            Triggered by certain Sounds
            Sometimes triggered by certain Odors
        During Painful Spasms in Lower Back and Lower Extremities
    Reduced Cognitive Functioning
        Aftereffects of Pain Medication
            Oxycodone
            Most pronounced during the initial 2-3 hours after medicating
Mobility Limitations
    Increasing reliance in utilizing Left Knee Brace
    Increasing reliance in utilizing Back Brace
    Reduced Capacity for Downward Movement on Stairs
    Reduced Capacity for Upward Movement on Stairs
        >2 Flights
    Reduced Capacity in Walking
        Completely dependent on Level of Pain being Experienced
            Distance Decreases as Level of Pain Increases
    Abnormal Gait
        Unable to utilize Natural Stride and Pace
            Shorter Stride
            Slower Pace
        More Pronounced/Noticeable as Level of Pain Increases
            Comments of appearing as "Limping"
            Comments of appearing as "Stooping"
            Comments of appearing as "Slouching"
            Comments of appearing as "Shuffling"
    Unable to Run/Jog
        Used to Run 2-4 Miles Daily prior to Lower Back Injury
Sensory Limitations
    Paresthesia of Left Hand & Wrist
        Reduced Tactile Sensation
Chronic Pain
    Lower Back
    Sciatica
    Bilateral Knee
Education/Training Deficiencies
    Need to obtain Training in a new Profession/Career
    Need to attain Knowledge, Skills, and Abilities in a new Profession/Career
    Need to attain Proficiency in a new Profession/Career

RECEIVED
NYRO (306)
VSC/PC
2014 JUN 2 PM 12 25

Page **22** of **54**

**CONYERS**, Vincent Curtis

*ISSUE #3 (continued)*

   Employer Bias against Persons with Disabilities
     Perceived Stigma due to Observed Body Language/Movement
       Especially after observing
         Inability to remain Seated for ≥5 minutes
         Preference for Standing
         Limping
           Especially during Mid- or Late Afternoon Interviews
         Utilizing a Cane
           No longer utilizing
     Perceived Reluctance in Arranging Accommodations for SCD
       "Undue Hardship" most often Alleged/Claimed
       Concern expressed regarding Pain Medication
     Perceived Reluctance in Accommodating Requisite Clinical Appointments
   Lack of Reliable Transportation
     Current Inability to Afford Car Insurance
     Current Inability to Afford Vehicle Registration Fees
     Current Inability to Afford Repairs for Personal Motor Vehicle
       Engine Tune-Up
       Transmission Tune-Up
       New Tires
   Unstable Work History
     Unemployed since being Released from Active Duty on 12 January 2012
   Incarceration(s)
     ***NOT APPLICABLE***
   Mental Illness Stigma
     Personality Changes as Described/Perceived by Family and Others
       "Withdrawn"
       "Moody"
       "Not as Fun to be Around"
       "Too Quiet"
       "Too Intense"
       "Too Exacting"
       "Inflexible"
       "Intimidating"

5.  The impairments resulting from the undersigned's SCD should reasonably satisfy the criteria set forth within 38 USC §3101(7), 38 CFR §21.50(b), 38 CFR §21.52, and M28R.IV.B.2.12(b) in establishing a positive finding for the presence of SEH:

   Number of Disabling Conditions
    **SIX (6)** SCD
      **FOUR (4)** Musculoskeletal SCD
      **ONE (1)** Psychological SCD

## NOTICE OF DISAGREEMENT STATEMENT

**CONYERS**, Vincent Curtis

*ISSUE #3 (continued)*

Severity of Disabling Condition(s)
    Combined SCD Compensation Rating of **SIXTY (60)** percent
    Impairments resulting from Lower Back SCD Worsening
    Impairments resulting from Bilateral Knee SCD Worsening
Negative Attitudes towards the Disabled
    Reaction of Other People after Observing
        Body Language/Movement while Attempting to Mitigate/Alleviate Pain
            Due to Impairments resulting from Lower Back SCD
            Due to Impairments resulting from Bilateral Knee SCD
            More Pronounced/Noticeable as Pain Increases/Day Progresses
        Body Language/Movement during Pain Spasms
            Due to Impairments resulting from Lower Back SCD
            Due to Impairments resulting from Bilateral Knee SCD
            More Pronounced/Noticeable as Pain Increases/Day Progresses
        Aftereffects of Pain Medications
            Comments of Appearing "Slow"
            Comments of Appearing "Sluggish"
            Comments of Appearing "Sleepy"
            Comments of Appearing "Distant"
        Inability to Remain Seated for an Extended Period
            Usually no longer than **FIVE (5)** Minutes
                Due to Impairments resulting from Lower Back SCD
                Due to Impairments resulting from Bilateral Knee SCD
        Preference for Standing instead of Sitting Down
            Due to Impairments resulting from Lower Back SCD
            Due to Impairments resulting from Bilateral Knee SCD
        Limitations in Range of Motion
            Due to Impairments resulting from Lower Back SCD
            Due to Impairments resulting from Bilateral Knee SCD
        Limitations in Weight Lifting
            Due to Impairments resulting from Lower Back SCD
            Due to Impairments resulting from Bilateral Knee SCD
        Limitations in Weight Bearing
            Due to Impairments resulting from Lower Back SCD
            Due to Impairments resulting from Bilateral Knee SCD
Unstable, Long, or Substantial Periods of Unemployment
    Unemployed since being Released from Active Duty on 12 January 2012
Extent and Complexity of Needed Rehabilitation Services
    Unable to precisely state without Counseling
        Currently Identified Particular Short-Term Training Courses
            Business Management
            Business Administrative
            Marketing

RECEIVED
NYRO (305)
VSC/PC
2014 JUN 2 PM 12 25

<u>**NOTICE OF DISAGREEMENT STATEMENT**</u>

**CONYERS**, Vincent Curtis

*ISSUE #3 (continued)*

  Reliance on Government Support Programs
    Dependent upon SCD Compensation
    Dependent upon VHA for Medical Care
  Other Evidence of Significant Restrictions
    Restrictions due to Narcotic Pain Medication
      Oxycodone
        Restricted in Driving
        Restricted in Operating Machinery
        Reduced Cognitive Functioning
          Impairment of Thought-Processes
          Induces Drowsiness
    Reduced Capacity in enduring Commute via Public Transportation
      Especially during "Rush Hour"
      Climbing Stairs within Subway System Exacerbates SCD
      Being Jousted during the Commute Exacerbates SCD
      Usually standing for majority of Commute
    Reduced Capacity in enduring Traveling by Vehicle
      Unable to ride in Sub-Compact Sedan/Coupe
        Extreme Difficulty in "Climbing Down" into and Sitting in Vehicle
          Due to SCD
          Due to Height (6' 4")
      Unable to ride in Compact Sedan/Coupe
        Extreme Difficulty in "Climbing Down" into and Sitting in Vehicle
          Due to SCD
          Due to Height (6' 4")
      Unable to ride in Mid-Size Sedan/Coupe
        Extreme Difficulty in "Climbing Down" into Vehicle
          Due to SCD
          Due to Height (6' 4")
      Reduced Capacity to ride in Full-Size Sedan
        Difficulty in "Climbing Down" into Vehicle
          Due to SCD
          Due to Height (6' 4")
      Reduced Capacity to Operate a Vehicle with Manual Transmission
        Operating Clutch exacerbates Lower Back Pain
        Operating Clutch exacerbates Left Knee Pain
      Reduced Capacity in tolerating traveling by Vehicle
          Longest Trip without having to stop due to Pain Spasm
          Highway Driving:  ≈ **THIRTY (30)** miles
          City Driving:   **THIRTY (30)** minutes
  Difficulties in Maintaining Physical Fitness
    Due to aggregate of SCD
      Severe loss of overall Muscle Tone and Strength

Page **25** of **54**

## NOTICE OF DISAGREEMENT STATEMENT

**CONYERS**, Vincent Curtis

*ISSUE #3 (continued)*

Other Evidence of Significant Restrictions        *(continued)*
    Perceived Experiences of Age Discrimination
        Especially while abstaining from Shaving Due to PFB SCD
            "Silver" Grey Beard
Record of Current Neuropsychiatric Condition(s)
    Post-Traumatic Stress Disorder
    Depressive Disorder
    Chronic Insomnia
    Nonexistent Sexual Desire/Drive
    Erectile Dysfunction
Alcohol/Substance Usage
    Self-Reported Daily Consumption of Alcohol
        March through August 2013
    Self-Reported Sporadic Marijuana Usage
        Approximately **SIX (6)** times between March through May 2013
Frequent Clinical Visits
    VHA Clinical Psychologist
    Pain Management
    Physical Therapy
Chronic Pain
    Post Traumatic Stress Disorder       *Moderate – Severe*
    Depressive Disorder       *Intermittent – Moderate*
    Protruding Disc, Lumbosacral Spine
        Lower Back Pain       *Moderate – Severe*
            Level of Pain Increases as the Day Progresses
        Sciatica       *Mild – Severe*
            Level of Pain Increases as the Day Progresses
    Chondromalacia, Left Knee       *Mild – Severe*
        Level of Pain Increases as the Day Progresses
    Chondromalacia, Right Knee       *Mild – Moderate*
        Level of Pain Increases as the Day Progresses
    Paresthesia of Left Hand & Wrist       *Intermittent*
Withdrawal from Society
    Undergoing Divorce
    Avoidance of Intimate Relationships
    Avoidance of Close Relationships
    Decreasing Level of Social Contact
    Highly Suspicious of Other People's Intentions
    Highly Suspicious of Other People's Motivations
    Highly Distrustful of Individuals in Supervisory Positions
Insufficient Education/Training for Suitable Employment
    Necessity of learning a New Profession/Career
    Necessity of attaining Proficiency in a New Profession/Career

2014 JUN  2  PM 12 25
RECEIVED
NYRO (306)
VSC/PC

*NOTICE OF DISAGREEMENT STATEMENT*

**CONYERS**, Vincent Curtis

████████████                                            *ISSUE #3 (continued)*

    Difficulties with Communicating
        Avoid Unknown Individuals
        Reluctant in "Opening Up" to Other People
        Distrustful of Other People's Intent and Motivations
        Perceived/Described as being overly Critical of Low-Information Individuals
        Perceived/Described as being intolerant of Inconsiderate Individuals
        Perceived/Described as being "Too Direct"
        Perceived/Described as being "Too Blunt"

6. The impairments resulting from the undersigned's SCD motivated the undersigned in identifying and selecting the vocational goal of Entrepreneurship premised upon:

(a) being unemployed despite steadfastly seeking employment since being honorably discharged on 12 January 2012 from Active Duty after receiving medical treatment while assigned to The Warrior Transition Unit (WTU), United States Army Medical Activity, West Point, New York, for injuries suffered during a tour of duty in Operation IRAQI FREEDOM;

(b) the impairments resulting from the undersigned's SCD precludes attaining employment in a position that is similar/comparable to the one previously held for over 28 years, *i.e.*, EMT-Paramedic, Flight Paramedic, Senior Combat Medical Noncommissioned Officer;

(c) the impairments resulting from the undersigned's SCD precludes attaining employment in a position that prevents the undersigned from unilaterally alternating between sitting, standing, and moving as needed;

(d) the impairments resulting from the undersigned's SCD precludes attaining employment within a majority of positions that are consistent with the undersigned's abilities, aptitudes, and interests;

(e) after having faced obstacles and challenges in identifying suitable employment opportunities within a new profession/career that is fully consistent with the undersigned's SCD, abilities, aptitudes, and interests;

(f) after having faced, and will continue to face, obstacles and stigma in attaining suitable employment during a Mid-Life Career Change (*e.g.*, "Inexperience", "No Recent Experience", "Unqualified", "Over-Qualified");

(g) after having faced, and will continue to face, obstacles and stigma in attaining suitable employment due to the impairments resulting from the undersigned's SCD (*e.g.*, Reluctance in Accommodating Disabilities, Reluctance in Accommodating Clinical Appointments);

**NOTICE OF DISAGREEMENT STATEMENT**

**CONYERS**, Vincent Curtis

*ISSUE #3 (continued)*

(h) after having faced, and will continue to face, obstacles and stigma due to other people's reactions in observing the effects of the impairments resulting from the undersigned's SCD;

(i) after having faced, and will continue to face, perceived obstacles and stigma in attaining suitable employment due to Age (50 years of age);

(j) the undersigned's possession of the requisite level of education, abilities, aptitudes, capacities, interest, and motivation in being an Entrepreneur;

(k) recognizing that Self-Employment will facilitate in mitigating and compensating for the aforementioned impairments by providing the undersigned with the ability to unilaterally devise and modify as necessary an accommodating work environment; and,

(l) recognizing that Self-Employment would afford the undersigned with the ability to unilaterally devise a flexible work schedule to accommodate requisite clinical appointments.

7. The vocational objective of being an Owner-Operator of a Bar/Restaurant is consistent with the undersigned's abilities, aptitudes, and interests as evidenced by:

(a) the undersigned's previous experience of working and assisting in the management of a now-defunct, family-owned bar;

(b) the undersigned's previous experience of managing and supervising unit morale bars;

(c) the undersigned's present educational level;

(d) the undersigned's capacity to quickly benefit from targeted, short-term training courses;

(e) the undersigned's possession of the requisite level of knowledge, skills, abilities, and capacities to plan, coordinate and implement such an endeavor;

(f) the undersigned's possession of the requisite level of knowledge, skills, abilities, and capacities to maintain and sustain such an endeavor; and,

(g) the potential in attaining and maintaining a gainful employment status that is consistent with the undersigned's abilities, aptitude, interests, and capacities.

### NOTICE OF DISAGREEMENT STATEMENT

**CONYERS**, Vincent Curtis

*ISSUE #3 (continued)*

8. As the vocational goal of Entrepreneurship:

   (a) is consistent with the undersigned's abilities, aptitudes, and interests;

   (b) is a reasonable means in attaining a gainful employment status;

   (c) permits training to begin in a reasonable period without being hindered or impeded by the undersigned's physical and mental conditions;

   (d) involves employing the undersigned's existing knowledge, skills, abilities, capabilities, education, and experiences; and,

   (e) proposes utilizing a program of VR&E benefits and services available under the Self-Employment Track in obtaining or developing any necessary additional knowledge, skills, abilities, or other capacities,

said goal should adequately satisfy the criteria set forth within 38 USC §3106, 38 CFR §21.35(h)(2), 38 CFR §21.53(d), and M28R.IV.B.2.13(a)(2) for establishing a positive finding of "reasonably feasible".

9. Moreover, the comments and recommendations rendered during the assessment of the undersigned's claim for a program of VR&E benefits and services incidentally provides material support in establishing a positive finding of "reasonable feasibility" in achieving the undersigned's vocational goal of Entrepreneurship, *e.g.*,:

   (a) the VRC's explicit recommendation for the undersigned to pursue a Hotel and Restaurant Management degree, *see* NPAA, evidences an opinion and belief that the undersigned's physical, psychological, and cognitive functioning permits training to begin within a reasonable time;

   (b) the VRC's explicit opinion that the undersigned is currently "employable in Governmental as well as private industry", *see* NPAA, evidences an opinion and belief that the undersigned's physical, psychological, and cognitive functioning does not preclude the undersigned from attaining a gainful employment status consistent with the undersigned's abilities, aptitudes, and interests;

   (c) the VREO's agreement with the VRC's assessment that the undersigned is suitable for immediate employment, *see* AR at B-3, further evidences an opinion and belief that the undersigned's physical, psychological, and cognitive functioning does not preclude the undersigned from attaining a gainful employment status consistent with the undersigned's abilities, aptitudes, and interests;

## NOTICE OF DISAGREEMENT STATEMENT

**CONYERS**, Vincent Curtis                                         *ISSUE #3 (continued)*

(d) the VREO emphasizing the utilization of a program VR&E benefits and services under the Rapid Access to Employment Track in attaining employment with certain designated employers, *see* AR at B-3 and Memorandum, likewise evidences an opinion and belief that the undersigned's physical, psychological, and cognitive functioning does not preclude the undersigned from attaining a gainful employment status consistent with the undersigned's abilities, aptitudes, and interests;

(e) the VREO's statement that the offer of direct job placement is based upon the undersigned's "extensive educational and transferable skills from the Army", *see* Memorandum, evidences recognition and acknowledgement that the undersigned's aptitudes, abilities, and capabilities are conducive with the intent of attaining a gainful employment status consistent with the undersigned's abilities, aptitudes, and interests;

(f) the VREO's comment on personally observing during a meeting that the undersigned "had to stand and then sit, due to back pain", *see* Memorandum, evidences recognition and acknowledgement of the severity of the impairment resulting from the undersigned's SCD of being unable to remain seated for extended periods;

(g) the VREO questioning whether the undersigned's SCD would hamper the successful achievement of the stated vocational goal, *see* Memorandum, infers recognition and acknowledgement of the severity of the impairments resulting from the undersigned's SCD;

(h) the VREO's recounting of the assistance a Northport VAMC Vocational Counselor rendered during the undersigned's unsuccessful utilization of the Job Bank and Job Placement Services, *see* Memorandum, evidences recognition and acknowledgement of the undersigned's perception of limited access to employment despite utilizing resources that the undersigned was informed mirrored those available with VR&E;

(i) the VREO's recounting one of several instances in which the undersigned perceived a potential employer displaying a not-so-subtle reluctance to hire the undersigned during a job interview, *see* Memorandum, evidences recognition and acknowledgement of the undersigned's perception of experiencing stigma while seeking employment; and,

(j) the VREO's comment that the undersigned "has excellent credentials, transferable skills and makes a very good impression", *see* Memorandum, infers positive recognition, acknowledgement, and confidence of the undersigned's aptitudes, abilities, and capabilities.

2014 JUN 2 PM 12 26
RECEIVED
NYRO (306)
VSC/PC

*NOTICE OF DISAGREEMENT STATEMENT*

**CONYERS**, Vincent Curtis

*ISSUE #3 (continued)*

10.  As the criteria for a positive finding of "reasonable feasibility" of the undersigned's vocational goal of Entrepreneurship is satisfied in this case, the undersigned contends upon information and belief that the Agency committed clear and unmistakable errors by:

(a) failing to apply, abide by, and adhere to the explicit mandate set forth within 38 USC §3106(e) that "[i]n determining whether the achievement of a vocational goal currently is reasonably feasible, the Secretary shall resolve any reasonable doubt in favor of determining that such achievement currently is reasonably feasible" while assessing the feasibility of the undersigned's vocational goal of Entrepreneurship;

(b) failing to apply, abide by, and adhere to the requirement set forth within 38 USC §5107(b) in affording the undersigned the benefit of doubt while assessing the feasibility of the undersigned's vocational goal of Entrepreneurship since there is more positive than negative evidence regarding the undersigned's capacity to achieve said vocational goal;

(c) failing to apply, abide by, and adhere to the explicit mandate set forth within 38 CFR §21.53(c) that any reasonable doubt as to whether the achievement of the undersigned's vocational goal of Entrepreneurship is "reasonably feasible" is to be resolved in favor of a finding of feasibility;

(d) disregarding the directive set forth within 38 CFR §21.53(e)(2) that "[a] finding that achievement of a vocational goal is infeasible without a period of extended evaluation requires compelling evidence which establishes infeasibility beyond any reasonable doubt";

(e) failing to apply, abide by, and adhere to the criteria set forth within 38 CFR §21.58 while assessing and evaluating whether the impairments resulting from the undersigned's SCD constitutes SEH;

(f) disregarding the directive set forth within M28R.IV.B.2.15(b)(9) that if a vocational goal is not currently reasonably feasible and the Veteran meets the criteria for SEH, "there must be compelling evidence that establishes infeasibility beyond any reasonable doubt";

(g) disregarding the explicit directive set forth within M28R.I.A.1.03(a) prohibiting any deviation from the M28R Manual "without prior written authorization from the VR&E Service Director"; and,

(h) misconstruing 38 CFR §21.257(b) as authorizing the application and utilization of an arbitrary and capricious preemptive policy for assessing the feasibility of the undersigned's vocational goal of Entrepreneurship.

NOTICE OF DISAGREEMENT STATEMENT

**CONYERS**, Vincent Curtis

*ISSUE #4*

ISSUE #4    *Whether the Agency complied with applicable statutory and regulatory criteria while rendering the determination that the undersigned is "ineligible"/ "unqualified" for a program of Vocational Rehabilitation and Employment benefits and services under the Self-Employment Track.*

References:

    United States Code
        38 USC §3101
        38 USC §3102
        38 USC §3103
        38 USC §3104
        38 USC §3106
    Code of Federal Regulations
        38 CFR §21.32
        38 CFR §21.35
        38 CFR §21.40
        38 CFR §21.41
        38 CFR §21.42
        38 CFR §21.50
        38 CFR §21.51
        38 CFR §21.52
        38 CFR §21.53
        38 CFR §21.257
    M28R Manual
        M28R, Part IV, Section A, Chapter 3
        M28R, Part IV, Section B, Chapter 2

1.  A Veteran is entitled to participate in a program of VR&E benefits and services that are available under Chapter 31, Title 38 of the United States Code in the event he/she:

    (a) has SCD rated at 20 percent or more and is determined to be in need of rehabilitation because of an EH, *see* 38 USC §3102(a)(1)(i), 38 CFR §21.40(a), and M28R.IV.A.3.04(a);

    (b) has SCD rated at 10 percent or more and is determined to be in need of rehabilitation because of a SEH, *see* 38 USC §3102(a)(2), 38 CFR §21.40(b), and M28R.IV.A.3.04(b); or,

    (c) is a Servicemember awaiting discharge from active military service who is suffering from a SCD which will likely be compensable at a rate of **TWENTY (20)** percent or more, *see* 38 USC §3102(a)(1)(ii), 38 CFR §21.40(c), and M28R.IV.A.3.04(c).

### *NOTICE OF DISAGREEMENT STATEMENT*

**CONYERS**, Vincent Curtis

*ISSUE #4 (continued)*

2.   Normally, a Veteran's eligibility to participate in a program of VR&E benefits and services available under Chapter 31, Title 38 of the United States Code is generally limited to a defined basic period:

> (a) commencing on the date of his/her discharge or release from active military service; and,

> (b) concluding **TWELVE (12)** years after said discharge or release date,

although such period may be deferred or extended under certain specified conditions, *see* 38 USC §3103, 38 CFR §21.41, and M28R.IV.A.3.05.

3.   A Veteran is ineligible for a program of VR&E benefits and services under Chapter 31, Title 38 of the United States Code in the event:

> (a) his/her medical conditions(s) makes it infeasible for him/her to participate in a program of VR&E benefits and services, *see* 38 USC §3103(b)(1), 38 CFR §21.42(c), and M28R.IV.A.3.05(c);

> (b) his/her character of discharge or release from active military service was dishonorable, *see* 38 USC §3103(b)(2), 38 CFR §21.42(b), and M28R.IV.A.3.05(b); or,

> (c) he/she does not have a qualifying compensable SCD rated at **TEN (10)** percent or more, *see* 38 USC §3103(b)(3), 38 CFR §21.42(a), and M28R.IV.A.3.05(a).

4.   Pursuant to 38 CFR §21.257, determining whether a program of VR&E benefits and services under the Self-Employment Track may be provided to a Veteran is premised upon:

> (a) the results of an initial evaluation conducted in accordance with the provisions set forth within 38 CFR §21.50, *see* 38 CFR §21.257(a)(1); and,

> (b) the provisions set forth within 38 CFR §21.257, *see* 38 CFR §21.257(a)(2).

5.   The initial evaluation referenced in 38 CFR §21.257(a)(1) assesses and determines:

> (a) whether a Veteran has an EH, *see* 38 CFR §21.50(a);

> (b) whether a Veteran has a SEH, *see* 38 CFR §21.50(b); and,

> (c) whether achievement of a Veteran's vocational goal of Self-Employment is currently reasonably feasible, *see* 38 CFR §21.50(c).

<u>*NOTICE OF DISAGREEMENT STATEMENT*</u>

**CONYERS**, Vincent Curtis

*ISSUE #4 (continued)*

6. The determinations rendered during the initial evaluation assists in fulfilling the requirement as referenced by 38 CFR §21.257(a)(2) in ascertaining which of the **TWO (2)** disparate levels of VR&E benefits and services under the Self-Employment Track will be made available by differentiating between:

    (a) Veterans choosing to pursue Self-Employment as a suitable vocational goal who may be provided with the "basic" benefits and services available under the Self-Employment Track, <u>*see*</u> 38 CFR §21.257(c)(1) and 38 CFR §21.257(d); and,

    (b) the distinct category of Veterans who are required to pursue Self-Employment as the "only feasible vocational goal" and therefore may be provided with the "special employment services" available under the Self-Employment Track, <u>*see*</u> 38 CFR §21.257(c)(2) and 38 CFR §21.257(e).

7. Premised upon the foregoing, it is evident that the undersigned adequately fulfills the applicable criteria for a positive finding of establishing entitlement, eligibility, and qualification for a program of VR&E benefits and services available under the Self-Employment Track since:

    (a) all of the undersigned's discharges/releases from active military service were under Honorable Conditions;

    (b) the undersigned's SCD have a combined compensable rating of **SIXTY (60)** percent;

    (c) the undersigned is within the initial **TWELVE (12)**-year period of eligibility to participate in a program of VR&E benefits and services that are available under Chapter 31, Title 38 of the United States Code;

    (d) the undersigned satisfies the criteria set forth in 38 USC §3102(a)(1), 38 CFR §21.40(a), and M28R.IV.A.3.04(a) in positively establishing a basic entitlement for a program of VR&E benefits and services that are available under Chapter 31, Title 38 of the United States Code;

    (e) the undersigned satisfies the criteria set forth in 38 USC §3103(a), 38 CFR §21.41(a), and M28R.IV.A.3.05(a) in positively establishing eligibility for a program of VR&E benefits and services that are available under Chapter 31, Title 38 of the United States Code;

    (f) the undersigned's SCD, physical, and medical conditions does not preclude participation in a program of VR&E benefits and services that are available under Chapter 31, Title 38 of the United States Code;

RECEIVED
NYRO (306)
VSC/PC
2014 JUN 2 PM 12 26

### NOTICE OF DISAGREEMENT STATEMENT

**CONYERS**, Vincent Curtis

(g) the impairments resulting from the undersigned's SCD satisfies the specified criteria set forth in 38 USC §3101(1), 38 CFR §21.51, and M28R.IV.B.2.11 in establishing a positive finding of the presence of EH;

(h) the impairments resulting from the undersigned's SCD should adequately satisfy the specified criteria set forth in 38 USC §3101(7), 38 CFR §21.52, and M28R.IV.B.2.12 for establishing a positive finding of the presence of SEH;

(i) the undersigned identified and advanced an suitable vocational goal of "achieving self-employability as an ENTREPRENEUR of a self-sustaining private sector business";

(j) the undersigned further identified and advanced an attainable vocational objective of being an Owner-Operator of a Bar/Restaurant;

(k) the undersigned's vocational goal of Entrepreneurship with the objective of being an Owner-Operator of a Bar/Restaurant satisfies the requirement set forth in 38 USC §3101(8), 38 CFR §21.53(b), and M28R.IV.B.2.13(a)(1) by positively identifying a suitable employment goal consistent with the undersigned's abilities, aptitudes, and interests;

(l) the undersigned's physical, psychological, and cognitive functioning satisfies the specified criteria set forth in 38 USC §3106, 38 CFR §21.35(h)(2), 38 CFR §21.53(d)(2), and M28R.IV.B.2.13(a)(2) in establishing a positive finding that the undersigned's vocational goal of Entrepreneurship with the objective of being an Owner-Operator of a Bar/Restaurant is "reasonably feasible";

(m) the undersigned's knowledge, skills, abilities, capabilities, and experiences provides further corroboration for satisfying the criteria set forth within 38 CFR §21.53(d)(3)(i) and M28R.IV.B.2.13(a)(2) in establishing a positive finding that the undersigned's vocational goal of Entrepreneurship with the objective of being an Owner-Operator of a Bar/Restaurant is "reasonably feasible"; and,

(n) the undersigned's proposal to obtain or develop any additional knowledge, skills, abilities, or other capacities that are necessary in achieving the vocational goal of Entrepreneurship by utilizing a program of VR&E benefits and services under the Self-Employment Track likewise provides corroboration for satisfying the criteria within 38 USC §3106, 38 CFR §21.35(h)(2), 38 CFR §21.53(d)(2), and M28R.IV.B.2.13(a)(2) in establishing a positive finding of "reasonably feasible".

*NOTICE OF DISAGREEMENT STATEMENT*

**CONYERS**, Vincent Curtis

*ISSUE #4 (continued)*

8.  The undersigned contends upon information and belief that the Agency committed clear and unmistakable errors during the assessment and evaluation of the undersigned's claim for a program of VR&E benefits and services under the Self-Employment Track by:

    (a) failing to properly apply, abide by, and adhere to the eligibility criteria set forth within 38 USC §3103 while assessing and evaluating the undersigned's claim for a program of VR&E benefits and services under the Self-Employment Track;

    (b) failing to properly apply, abide by, and adhere to the eligibility criteria set forth within 38 USC §3103 prior to determining that the undersigned is "ineligible"/"unqualified" for a program of VR&E benefits and services under the Self-Employment Track;

    (c) failing to properly apply, abide by, and adhere to the eligibility criteria set forth within 38 USC §3103 prior to interrupting the undersigned's claim for VR&E benefits and services on the basis of presuming the undersigned allegedly demonstrated a "Failure to Cooperate";

    (d) failing to properly apply, abide by, and adhere to the eligibility criteria set forth within 38 USC §3103 prior to discontinuing the undersigned's claim for VR&E benefits and services on the basis of presuming the undersigned allegedly demonstrated a "Refusal to Participate";

    (e) failing to properly apply, abide by, and adhere to the eligibility criteria set forth within 38 USC §3103 prior to disallowing the undersigned's claim for VR&E benefits and services on the basis of presuming the undersigned allegedly demonstrated a "Refusal to Participate";

    (f) failing to apply, abide by, and adhere to the initial evaluation criteria set forth within 38 USC §3104(a)(1) while assessing and evaluating the undersigned's claim for a program of VR&E benefits and services under the Self-Employment Track;

    (g) failing to apply, abide by, and adhere to the initial evaluation criteria set forth within 38 USC §3104(a)(1) prior to determining that the undersigned is "ineligible"/"unqualified" for a program of VR&E benefits and services under the Self-Employment Track;

    (h) failing to apply, abide by, and adhere to the initial evaluation criteria set forth within 38 USC §3104(a)(1) prior to interrupting the undersigned's claim for VR&E benefits and services on the basis of presuming the undersigned allegedly demonstrated a "Failure to Cooperate";

2014 JUN 2 PM 12 25
RECEIVED
NYRO (306)
VSC/PC

Page **36** of **54**

*NOTICE OF DISAGREEMENT STATEMENT*

**CONYERS**, Vincent Curtis

*ISSUE #4 (continued)*

(i) failing to apply, abide by, and adhere to the initial evaluation criteria set forth within 38 USC §3104(a)(1) prior to discontinuing the undersigned's claim for VR&E benefits and services on the basis of presuming the undersigned allegedly demonstrated a "Refusal to Participate";

(j) failing to apply, abide by, and adhere to the initial evaluation criteria set forth within 38 USC §3104(a)(1) prior to disallowing the undersigned's claim for VR&E benefits and services on the basis of presuming the undersigned allegedly demonstrated a "Refusal to Participate";

(k) failing to apply, abide by, or adhere to the requirement set forth within 38 CFR §21.32(a) to accurately provide positive notice of all information and evidence necessary to substantiate the undersigned's claim for a program of VR&E benefits and services under the Self-Employment Track;

(l) failing to apply, abide by, or adhere to the requirement set forth within 38 CFR §21.32(a) to accurately provide positive notice of all information and evidence necessary to substantiate the undersigned's claim for a program of VR&E benefits and services under the Self-Employment Track prior to determining the undersigned "ineligible"/"unqualified" for such program;

(m)   failing to apply, abide by, or adhere to the requirement set forth within 38 CFR §21.32(a) to accurately provide positive notice of all information and evidence necessary to substantiate the undersigned's claim for a program of VR&E benefits and services under the Self-Employment Track prior to interrupting the undersigned's claim for VR&E benefits and services on the basis of presuming the undersigned allegedly demonstrated a "Failure to Cooperate";

(n) failing to apply, abide by, or adhere to the requirement set forth within 38 CFR §21.32(a) to accurately provide positive notice of all information and evidence necessary to substantiate the undersigned's claim for a program of VR&E benefits and services under the Self-Employment Track prior to discontinuing the undersigned's claim for VR&E benefits and services on the basis of presuming the undersigned allegedly demonstrated a "Refusal to Participate";

(o) failing to apply, abide by, or adhere to the requirement set forth within 38 CFR §21.32(a) to accurately provide positive notice of all information and evidence necessary to substantiate the undersigned's claim for a program of VR&E benefits and services under the Self-Employment Track prior to disallowing the undersigned's claim for VR&E benefits and services on the basis of presuming the undersigned allegedly demonstrated a "Refusal to Participate";

Page **37** of **54**

## *NOTICE OF DISAGREEMENT STATEMENT*

**CONYERS**, Vincent Curtis

*ISSUE #4 (continued)*

(p) misconstruing 38 CFR §21.257(b) as invalidating the other applicable provisions within 38 CFR §21.257 that were pertinent in properly assessing and evaluating the undersigned's claim for a program of VR&E benefits and services under the Self-Employment Track;

(q) misconstruing 38 CFR §21.257(b) as authorizing the development and utilization of an arbitrary and capricious preemptive policy that restricts the availability of a program of VR&E benefits and services under the Self-Employment Track solely to Veterans with "service-connected disability(ies) so severe as to necessitate selection of Self-Employment as the *only* feasible vocational goal" (emphasis added);

(r) misconstruing 38 CFR §21.257(b) as authorizing the development and utilization of an arbitrary and capricious preemptive policy which subsequently resulted in determining the undersigned "ineligible"/ "unqualified" for a program of VR&E benefits and services under the Self-Employment Track on the basis of presuming that the undersigned's "barriers and handicaps" to employment are "not to the degree of being designated with having a Serious Employment Handicap";

(s) misconstruing 38 CFR §21.257(b) as authorizing the development and utilization of an arbitrary and capricious preemptive policy which subsequently resulted in determining the undersigned's vocational goal of Entrepreneurship with the objective of being an Owner-Operator of a Bar/Restaurant as being "infeasible";

(t) misconstruing 38 CFR §21.257(b) as authorizing the development and utilization of an arbitrary and capricious preemptive policy which subsequently resulted in the interruption of the undersigned's claim for a program of VR&E benefits and services on the basis of presuming the undersigned allegedly demonstrated a "Failure to Cooperate";

(u) misconstruing 38 CFR §21.257(b) as authorizing the development and utilization of an arbitrary and capricious preemptive policy which subsequently resulted in the discontinuance of the undersigned's claim for a program of VR&E benefits and services on the basis of presuming the undersigned allegedly demonstrated a "Refusal to Participate"; and,

(v) misconstruing 38 CFR §21.257(b) as authorizing the development and utilization of an arbitrary and capricious preemptive policy which subsequently resulted in the disallowance of the undersigned's claim for a program of VR&E benefits and services on the basis of presuming the undersigned allegedly demonstrated a "Refusal to Participate".

RECEIVED
NYRO (360)
VSC/FC

2014 JUN 2 PM 12 26

## NOTICE OF DISAGREEMENT STATEMENT

**CONYERS**, Vincent Curtis

<span style="float:right">*ISSUE #5*</span>

ISSUE #5     *Whether the Agency complied with the applicable procedural guidelines set forth within the <u>M28R Vocational Rehabilitation and Employment Services Manual</u> prior to interrupting, discontinuing, and disallowing the undersigned's claim for a program of Vocational Rehabilitation and Employment benefits and services under the Self-Employment Track.*

References:

     M28R Manual
         M28R, Part I, Section A, Chapter 1
         M28R, Part IV, Section C, Chapter 8
         M28R, Part VI, Section A, Chapter 9

1. The M28R Manual requires that a Preliminary Self-Employment Evaluation is to be conducted in order to:

     (a) assess a Veteran's suitability and readiness to start a business premised upon his/her responses to the Preliminary Self-Employment Evaluation Questions, <u>see</u> M28R.IV.C.8.04(a) and M28R.VI.A.9.04(b);

     (b) ascertain whether the responses to said Questions warrants providing a program of VR&E benefits and services either under the Self-Employment Track or under a more appropriate alternative track, <u>see</u> M28R.IV.C.8.04(b) and M28R.VI.A.9.04(c); and,

     (c) assign a Veteran to **ONE (1)** of the **TWO (2)** disparate levels of VR&E benefits and services that are available under the Self-Employment Track, <u>see</u> M28R.IV.C.8.04(c) and M28R.VI.A.9.05,

prior to the development and finalization of a plan of VR&E benefits and services under the Self-Employment Track.

2. Both M28R.IV.C.8.04(b) and M28R.VI.A.9.04(c) makes it explicitly clear that a Veteran's responses to the Preliminary Self-Employment Evaluation Questions are the essential determining factor regarding whether a program of VR&E benefits and services under the Self-Employment Track:

     (a) are appropriate for him/her, resulting in VR&E assisting him/her in developing a proposed business plan; or,

     (b) are inappropriate for him/her, resulting in VR&E providing him/her with a program of VR&E benefits and services that are available under a more appropriate alternative track.

**_NOTICE OF DISAGREEMENT STATEMENT_**

**CONYERS**, Vincent Curtis

*ISSUE #5 (continued)*

3. Acknowledgment of the significance of the Preliminary Self-Employment Evaluation Questions in determining a Veteran's suitability for a program of VR&E benefits and claims under the Self-Employment Track is evidenced by the guideline within M28R.VI.A.9.04(b):

> "[t]he VRC may consider asking the Veteran to address these questions *before the evaluation and planning meeting*. This will not only be a useful tool to assess the Veteran's motivation and interest, but the responses can guide the meeting and *ensure that a __complete evaluation__ is obtained*." (Emphases added).

4. Even though the Preliminary Self-Employment Evaluation Questions:

> (a) is a major component of the Preliminary Self-Employment Evaluation process;
>
> (b) solicits responses that are essential in properly assessing a Veteran's suitability, motivation, and readiness to start a business;
>
> (c) solicits responses that are the key factors in determining whether a program of VR&E benefits and services under the Self-Employment track are warranted or not; and,
>
> (d) solicits responses that are recognized and acknowledged as being so important that M28R.VI.A.9.04(b) recommends that a Veteran addresses said Questions before the evaluation and planning meeting,

the undersigned was never provided prior notice, nor ever informed, of either the requirement or the importance for providing particularized responses to said Questions.

5. The undersigned contends upon information and belief that the Agency committed clear and unmistakable errors while assessing and evaluating the undersigned's claim for a program of VR&E benefits and services under the Self-Employment Track by:

> (a) failing to apply, abide by, or adhere to the Preliminary Self-Employment Evaluation Process delineated within M28R.IV.C.8.04 and M28R.VI.A.9.04 while assessing and evaluating the undersigned's claim for a program of VR&E benefits and services under the Self-Employment Track;
>
> (b) failing to apply, abide by, or adhere to the Preliminary Self-Employment Evaluation Process delineated within M28R.IV.C.8.04 and M28R.VI.A.9.04 prior to interrupting, discontinuing, and disallowing the undersigned's claim for a program of VR&E benefits and services under the Self-Employment Track;

*NOTICE OF DISAGREEMENT STATEMENT*

**CONYERS**, Vincent Curtis

(c) failing to afford the undersigned with an opportunity to undergo and complete the Preliminary Self-Employment Evaluation Process delineated within M28R.IV.C.8.04 and M28R.VI.A.9.04 during the assessment and evaluation of the undersigned's claim for a program of VR&E benefits and services under the Self-Employment Track;

(d) failing to afford the undersigned with an opportunity to undergo and complete the Preliminary Self-Employment Evaluation Process delineated within M28R.IV.C.8.04 and M28R.VI.A.9.04 prior to determining the undersigned "ineligible"/"unqualified" for a program of VR&E benefits and services under the Self-Employment Track;

(e) failing to afford the undersigned with an opportunity to undergo and complete the Preliminary Self-Employment Evaluation Process delineated within M28R.IV.C.8.04 and M28R.VI.A.9.04 prior to determining the undersigned's vocational goal of Entrepreneurship as being "infeasible";

(f) failing to afford the undersigned with an opportunity to undergo and complete the Preliminary Self-Employment Evaluation Process delineated within M28R.IV.C.8.04 and M28R.VI.A.9.04 prior to determining that the undersigned "do[es] not have the capital" to achieve the objective of being an Owner-Operator of a Bar/Restaurant;

(g) failing to afford the undersigned with an opportunity to undergo and complete the Preliminary Self-Employment Evaluation Process delineated within M28R.IV.C.8.04 and M28R.VI.A.9.04 prior to interrupting the undersigned's claim for a program of VR&E benefits and services under the Self-Employment Track on the basis of presuming the undersigned allegedly demonstrated a "Failure to Cooperate";

(h) failing to afford the undersigned with an opportunity to undergo and complete the Preliminary Self-Employment Evaluation Process delineated within M28R.IV.C.8.04 and M28R.VI.A.9.04 prior to discontinuing the undersigned's claim for a program of VR&E benefits and services under the Self-Employment Track on the basis of presuming the undersigned allegedly demonstrated a "Refusal to Participate";

(i) failing to afford the undersigned with an opportunity to undergo and complete the Preliminary Self-Employment Evaluation Process delineated within M28R.IV.C.8.04 and M28R.VI.A.9.04 prior to disallowing the undersigned's claim for a program of VR&E benefits and services under the Self-Employment Track on the basis of presuming the undersigned allegedly demonstrated a "Refusal to Participate";

### NOTICE OF DISAGREEMENT STATEMENT

**CONYERS**, Vincent Curtis

*ISSUE #5 (continued)*

  (j) failing to apply, abide by, or adhere to the recommendation set forth in M28R.VI.A.9.04(b) to ask the undersigned to "address [the Preliminary Self-Employment Evaluation Questions] before the evaluation and planning meeting" prior to determining the undersigned "ineligible"/"unqualified" for a program of VR&E benefits and services under the Self-Employment Track;

  (k) failing to apply, abide by, or adhere to the recommendation set forth in M28R.VI.A.9.04(b) to ask the undersigned to "address [the Preliminary Self-Employment Evaluation Questions] before the evaluation and planning meeting" prior to determining the undersigned's vocational goal of Entrepreneurship as being "infeasible";

  (l) failing to apply, abide by, or adhere to the recommendation set forth in M28R.VI.A.9.04(b) to ask the undersigned to "address [the Preliminary Self-Employment Evaluation Questions] before the evaluation and planning meeting" prior to determining that the undersigned "do[es] not have the capital" to achieve the objective of being an Owner-Operator of a Bar/Restaurant;

  (m)  devising, applying, and utilizing an arbitrary and capricious policy to disregard the requirement to utilize the Preliminary Self-Employment Evaluation Process within M28R.IV.C.8.04 and M28R.VI.A.9.04 prior to determining the undersigned "ineligible"/"unqualified" for a program of VR&E benefits and services under the Self-Employment Track;

  (n) devising, applying, and utilizing an arbitrary and capricious policy that disregards the requirement to utilize the Preliminary Self-Employment Evaluation Process within M28R.IV.C.8.04 and M28R.VI.A.9.04 prior to determining the undersigned's vocational goal of Entrepreneurship as being "infeasible";

  (o) devising, applying, and utilizing an arbitrary and capricious policy that disregards the requirement to utilize the Preliminary Self-Employment Evaluation Process within M28R.IV.C.8.04 and M28R.VI.A.9.04 prior to determining that the undersigned "do[es] not have the capital" to achieve the objective of being an Owner-Operator of a Bar/Restaurant; and,

  (p) devising, applying, and utilizing an arbitrary and capricious policy that disregards the explicit, unambiguous directive set forth within M28R.I.A.1.03(a) prohibiting any deviation from the procedural guidelines delineated in the M28R Manual "without prior written authorization from the VR&E Service Director".

## *NOTICE OF DISAGREEMENT STATEMENT*

**CONYERS**, Vincent Curtis

<span style="float:right">*ISSUE #6*</span>

ISSUE #6    *Whether the Agency properly omit conducting an extended evaluation of the undersigned's claim for a program of Vocational Rehabilitation and Employment benefits and services under the Self-Employment Track prior to interrupting, discontinuing, and disallowing said claim.*

References:

        United States Code
            38 USC §3106
        Code of Federal Regulations
            38 CFR §21.35
            38 CFR §21.50
            38 CFR §21.52
            38 CFR §21.53
            38 CFR §21.57
            38 CFR §21.58
            38 CFR §21.140
            38 CFR §21.257
        M28R Manual
            M28R, Part IV, Section B, Chapter 2
            M28R, Part IV, Section C, Chapter 8
            M28R, Part VI, Section A, Chapter 9

1.  A comprehensive review and analysis of a proposed business plan:

    (a) as submitted by the Veteran; or,

    (b) as developed with the Agency's assistance,

is required to be conducted prior to developing and approving a program of VR&E benefits and services available under the Self-Employment Track.  *See* 38 CFR §21.257(f), M28R.IV.C.8.05(b), and M28R.VI.A.9.06(b).

2.  The review and analysis of a proposed business plan, which consists of:

    (a) an analysis of the economic viability of the proposed business;

    (b) an cost analysis specifying the amount and type of assistance VA will provide;

    (c) a market analysis for the proposed services or products;

    (d) availability of financing from non-Agency sources;

## NOTICE OF DISAGREEMENT STATEMENT

**CONYERS**, Vincent Curtis

*ISSUE #6 (continued)*

(e) evidence of coordination with the SBA;

(f) the location and cost of proposed business site; and,

(g) an operational plan for the business,

is intended to assess the economic viability of a proposed business. *See* 38 CFR §21.257(f), M28R.IV.C.8.05(b)(1), and M28R.VI.A.9.06(b)(1).

3. Without affording any opportunity for the submission of a proposed business plan for a review and analysis pursuant to foregoing references:

(a) the VRC determined the undersigned's vocational goal of Entrepreneurship with the objective of being an Owner-Operator of a Bar/Restaurant infeasible based on his opinion that the undersigned "do[es] not have the capital for such a venture", *see* NPAA; and,

(b) the VREO opposed said vocational goal of Entrepreneurship with the objective of being an Owner-Operator of a Bar/Restaurant based on his opinion regarding the amount of money needed in obtaining the requisite licenses, fees, equipment, etc., for a Bar/Restaurant, *see* AR at B-3,

even though such determinations and opinions are inconsistent with the primary purpose for requiring a review and analysis of a proposed business plan; *i.e.*, affording a Veteran with an opportunity to positively address any such concerns and establish the economic viability of the proposed business.

4. The feasibility and viability of the undersigned's vocational goal of Entrepreneurship with the objective of being an Owner-Operator of a Bar/Restaurant was determined by the VRC during an initial meeting lasting for less than **ONE (1)** hour that:

(a) assessed and evaluated within **FIVE (5)** minutes into said meeting that the undersigned was "ineligible" for such a program of VR&E benefits and services, *see* NPAA, by utilizing an arbitrary and capricious preemptive policy premised upon misconstruing 38 CFR §21.257(b);

(b) assessed and evaluated that the undersigned was financially incapable of pursuing the stated vocational goal of Entrepreneurship with the objective of being an Owner-Operator of a Bar/Restaurant after being informed of the undersigned's pending divorce, *see* NPAA, despite the fact 38 CFR §21.257(f), M28R.IV.C.8.05(b)(1), and M28R.VI.A.9.06(b)(1) clearly requires that any such financial determination is suppose to be based upon a review and analysis of a submitted proposed business plan;

### NOTICE OF DISAGREEMENT STATEMENT

**CONYERS**, Vincent Curtis

*ISSUE #6 (continued)*

(c) assessed and evaluated the undersigned's stated vocational goal of Entrepreneurship with the objective of being an Owner-Operator of a Bar/Restaurant as not being "a feasible course", *see* NPAA, even though said goal is consistent with the undersigned's abilities, aptitudes, interests, and capabilities and, as such, satisfies the criteria within 38 USC §3106, 38 CFR §21.35(h)(2), 38 CFR §21.53(d), and M28R.IV.B.2.13(a)(2) in establishing a positive finding of "reasonably feasible";

(d) prompted his professional opinion that since the undersigned's SCD "are not of the most severe nature that self-employment is [the] only feasible opportunity for employment", the undersigned was "ineligible"/ "unqualified" for a program of VR&E benefits and services under the Self-Employment Track, *see* NPAA and NOI, notwithstanding the fact such reasoning and conclusion contradicts 38 CFR §21.257(c)(1) explicit delineation of Veterans choosing to pursue Self-Employment as a vocational goal as being **ONE (1)** of the **TWO (2)** distinguishable categories of Veterans who may be provided with such program;

(e) prompted his professional opinion that though the undersigned has "barriers and handicaps" to employment, they are "not to the degree of being designated with having a [SEH]", *see* NPAA, even though the impairments resulting from the undersigned's SCD satisfies the criteria set forth within 38 CFR §21.50(b), 38 CFR §21.52, and M28R.IV.B.2.12(b) in establishing a positive finding for the presence of SEH;

(f) prompted his professional opinion that a program of VR&E benefits and services under the Self-Employment Track was unwarranted because the undersigned's "barriers and handicaps" does not preclude the undersigned from being "employ[ed] in Governmental as well as private industry", *see* NPAA, which, in turn, evidences the application and utilization of a preemptive policy that erroneously restricts the availability of a program of benefits and services under Self-Employment Track solely to Veterans with SCD "so severe as to necessitate selection of self-employment as the *only* reasonably feasible vocational goal"; and,

(g) prompted his professional opinion that a program of VR&E benefits and services under the Self-Employment Track was unwarranted because the undersigned's "barriers and handicaps" does not preclude the undersigned from being "employ[ed] in Governmental as well as private industry", *see* NPAA, although such determination contradicts regulatory provisions and procedure guidelines that clearly provides for a program of VR&E benefits and services under the Self-Employment Track to all Veterans for whom Self-Employment is a suitable vocational goal.

## NOTICE OF DISAGREEMENT STATEMENT

**CONYERS**, Vincent Curtis

*ISSUE #6 (continued)*

5. Moreover, starkly contrasting the VRC's determination that the undersigned's "barriers and handicaps [...] are not to a degree of being designated with having a [SEH]" are the VREO's explicit comments:

> (a) on personally observing that throughout the 07 January 2014 meeting, the undersigned "had to stand and then sit, due to back pain", *see* Memorandum;

> (b) on presuming an issue in the successful achievement of the undersigned's vocational goal of Entrepreneurship due to the undersigned allegedly describing alcohol and substance abuse problems, *see* Memorandum; and,

> (c) opining (while misstating the undersigned's vocational goal of Entrepreneurship with the objective of being an Owner-Operator of a "nightclub"[6]) that such a choice "is also an issue, based upon [the undersigned's] service and non-service connected disabilities", *see* Memorandum,

as such observations and comments evidences recognition and acknowledgement of impairments which reasonably satisfies the criteria set forth within 38 CFR §21.52 in establishing a positive finding for the presence of SEH.

6. Furthermore, the VREO's comments concerning his perception that the successful achievement of the undersigned's vocational goal of Entrepreneurship would be hindered or precluded by:

> (a) the amount of money needed in obtaining the requisite licenses, fees, equipment, etc., for a Bar/Restaurant, *see* AR at B-3;

> (b) the limitations imposed by the undersigned's "service connected and non-service connected disabilities", *see* Memorandum;

> (c) his direct observation of the undersigned's body language and movement during episodes of Lower Back Pain and Sciatica, *see* Memorandum; and,

---

[6] As delineated earlier above within Footnote #3:
(a) the objective of being an Owner-Operator of a Bar/Restaurant envisions occasionally offering live entertainment and, thus, would be considered as a "cabaret" by local municipalities within New York State; and,
(b) notwithstanding having to be locally classified as a "cabaret", at no time has the undersigned envision, contemplated, or intended for (i) such venture to offer any amenities commonly found in a Nightclub, nor (ii) obtaining the requisite licenses to operate or function as a "public dance hall".

RECEIVED
HYRO (306)
VSC/PC
2014 JUN 2 PM 12 26

## *NOTICE OF DISAGREEMENT STATEMENT*

**CONYERS**, Vincent Curtis

*ISSUE #6 (continued)*

(d) a presumed issue of alleged alcohol and substance abuse "problems"[7], *see* Memorandum,

infers an opinion and belief that the undersigned's stated vocational goal is "infeasible".

7. Given:

(a) the inconsistency between the opinions and comments of the VRC and the VREO regarding whether the undersigned's "barriers and handicaps" satisfies the regulatory criteria in establishing a positive finding of SEH;

(b) the determination of the VRC that the undersigned's vocational goal is infeasible is premised upon his presumption that the undersigned "do[es] not have the financial capital to pursue said goal;

(c) the VREO opining that the feasibility of the undersigned's vocational goal is "an issue, based on the [undersigned's] service connected and non-service connected disabilities", *see* Memorandum; and,

(d) the inference that the foregoing "non-service connected disabilities" is premised upon the VREO's presuming the undersigned as having alleged "issues with alcohol and substance abuse", *see* 19 March 2014 Response to a Congressional Inquiry and Memorandum,

---

[7] Although the undersigned self-reported in August 2013 during appointments with Pain Management and Psychological Services of a period of daily alcohol consumption lasting approximately **SIX (6)** months and marijuana usage approximately **SIX (6)** times within the same period, such indulgences resulted from overwhelming life circumstances and situations. In other words, the "problem" was neither alcohol nor drug dependency; the "problem" was that, during a period of perceived absence of purpose and meaning while coping with the impairments resulting from the SCD, the undersigned unfortunately engaged in atypical and uncharacteristic behavior. However, it is important to note that the undersigned, in full recognition and acknowledgement of the situation, self-initiated appropriate measures to rectify the matter before any irreconcilable incident occurred.

Evidence of the aberrant nature of the aforementioned episode is readily ascertainable from information within the undersigned's VHA records, *e.g.*, documented results of several observed toxicology screenings the undersigned completed since August 2013. Moreover, the undersigned is more than willing to voluntarily undergo, on either a random or scheduled basis, any additional observed toxicology screenings or other treatment regime deemed requisite to demonstrate the veracity of the foregoing. As such, the undersigned strongly contests the inference that an inaccurate presumption of alleged alcohol and substance abuse "problems"/"issues" demonstrates the infeasibility, unachievability, or inviability of the stated objective of being an Owner-Operator of a Bar/Restaurant.

## NOTICE OF DISAGREEMENT STATEMENT

**CONYERS**, Vincent Curtis

*ISSUE #6 (continued)*

all such concerns should have been thoroughly assessed and definitively determined during an extended evaluation as afforded within 38 USC §3106(c), 38 CFR §21.53(e), 38 CFR §21.57, and 38 CFR §21.140. *See also* M28R.IV.B.2.13(d)(2) and M28R.V.A.1.06(a).

8.  The undersigned contends upon information and belief that the Agency committed clear and unmistakable errors by:

(a) failing to recognize, acknowledge, apply, abide by, or adhere to the requirement set forth in 38 CFR §21.53(c) to develop all "necessary information" to properly assess and evaluate whether the impairments resulting from the undersigned's SCD satisfies the criteria set forth within 38 CFR §21.52 in establishing a positive finding for the presence of SEH;

(b) failing to apply, abide by, or adhere to the criteria set forth in 38 CFR §21.53(c) requiring the utilization of an extended evaluation in order to develop all "necessary information" to properly assess and evaluate the feasibility of the undersigned's vocational goal of Entrepreneurship with the objective of being an Owner-Operator of a Bar/Restaurant prior to determining that such a goal is not "a feasible course";

(c) failing to apply, abide by, or adhere to the requirement set forth in 38 CFR §21.53(c) to resolve any reasonable doubt of the undersigned's vocational goal of Entrepreneurship with the objective of being an Owner-Operator of a Bar/Restaurant in favor of a finding of feasibility;

(d) failing to apply, abide by, or adhere to the requirement set forth in 38 CFR §21.53(e)(1) to provide the rehabilitation services afforded by 38 CFR §21.35(i)(1)(i) as deemed appropriate to properly assess the feasibility of the undersigned's vocational goal of Entrepreneurship with the objective of being an Owner-Operator of a Bar/Restaurant;

(e) failing to abide by or adhere to the criteria set forth in 38 CFR §21.53(e)(2) specifying that "[a] finding of that achievement of a vocational goal is infeasible without a period of extended evaluation requires compelling evidence which establishes infeasibility beyond any reasonable doubt";

(f) failing to utilize the extended evaluation afforded by 38 CFR §21.57(a) in order to fully develop all of the information necessary for determining the undersigned's ability in achieving the vocational goal of Entrepreneurship with the objective of being an Owner-Operator of a Bar/Restaurant as it could not have been reasonably assessed during a evaluation and planning meeting lasting less than **ONE** (**1**) hour;

RECEIVED
HYRO (306)
VSC/PC
2014 JUN 2 PM 12 26

<u>*NOTICE OF DISAGREEMENT STATEMENT*</u>

**CONYERS**, Vincent Curtis

*ISSUE #6 (continued)*

(g) failing to utilize the extended evaluation as afforded by 38 CFR §21.57(a) in order to provide the undersigned with an opportunity to submit a proposed business plan for a review and analysis pursuant to 38 CFR §21.257, M28R.IV.C.8.05, and M28R.VI.A.9.06 prior to rendering a final determination that the undersigned's vocational goal of Entrepreneurship with the objective of being an Owner-Operator of a Bar/Restaurant was "infeasible";

(h) failing to utilize the extended evaluation as afforded by 38 CFR §21.57(a) in order to fully develop all of the information necessary for assessing and evaluating the feasibility of the undersigned's vocational goal of Entrepreneurship with the objective of being an Owner-Operator of a Bar/Restaurant prior to interrupting the undersigned's claim for a program of VR&E benefits and services under the Self Employment Track;

(i) failing to utilize the extended evaluation as afforded by 38 CFR §21.57(a) in order to fully develop all of the information necessary for assessing and evaluating the feasibility of the undersigned's vocational goal of Entrepreneurship with the objective of being an Owner-Operator of a Bar/Restaurant prior to discontinuing the undersigned's claim for a program of VR&E benefits and services under the Self Employment Track;

(j) failing to utilize the extended evaluation as afforded by 38 CFR §21.57(a) in order to fully develop all of the information necessary for assessing and evaluating the feasibility of the undersigned's vocational goal of Entrepreneurship with the objective of being an Owner-Operator of a Bar/Restaurant prior to disallowing the undersigned's claim for a program of VR&E benefits and services under the Self Employment Track;

(k) failing to apply, abide by, or adhere to the requirement set forth within 38 CFR §21.58(a) to reassess whether the impairments resulting from the undersigned's SCD satisfies the criteria set forth within 38 CFR §21.52 in establishing a positive finding for the presence of SEH, especially given the inconsistencies between the VRC's initial assessment and determinations regarding said SCD and the VREO's subsequent observations, opinions, and beliefs of the undersigned's ability in overcoming the impairments resulting from said SCD;

(l) failing to utilize the extended evaluation set forth within 38 CFR §21.140 in order to fully develop all of the information necessary for determining the undersigned's ability in achieving the vocational goal of Entrepreneurship with the objective of being an Owner-Operator of a Bar/Restaurant as it could not have been reasonably assessed during a evaluation and planning meeting lasting less than **ONE (1)** hour;

<u>**NOTICE OF DISAGREEMENT STATEMENT**</u>

**CONYERS**, Vincent Curtis

*ISSUE #6 (continued)*

(m)   failing to utilize the extended evaluation set forth within 38 CFR §21.140 in order to provide the undersigned with an opportunity to submit a proposed business plan for a review and analysis pursuant to 38 CFR §21.257, M28R.IV.C.8.05, and M28R.VI.A.9.06 prior to rendering a final determination that the undersigned's vocational goal of Entrepreneurship with the objective of being an Owner-Operator of a Bar/Restaurant was "infeasible";

(n) failing to utilize the extended evaluation set forth within 38 CFR §21.140 in order to fully develop all of the information necessary for assessing and evaluating the feasibility of the undersigned's vocational goal of Entrepreneurship with the objective of being an Owner-Operator of a Bar/Restaurant prior to interrupting the undersigned's claim for a program of VR&E benefits and services under the Self Employment Track;

(o) failing to utilize the extended evaluation set forth within 38 CFR §21.140 in order to fully develop all of the information necessary for assessing and evaluating the feasibility of the undersigned's vocational goal of Entrepreneurship with the objective of being an Owner-Operator of a Bar/Restaurant prior to discontinuing the undersigned's claim for a program of VR&E benefits and services under the Self Employment Track;

(p) failing to utilize the extended evaluation set forth within 38 CFR §21.140 in order to fully develop all of the information necessary for assessing and evaluating the feasibility of the undersigned's vocational goal of Entrepreneurship with the objective of being an Owner-Operator of a Bar/Restaurant prior to disallowing the undersigned's claim for a program of VR&E benefits and services under the Self Employment Track;

(q) failing to utilize the extended evaluation set forth within 38 CFR §21.140 in order to fully develop all of the information necessary in reassessing whether the impairments resulting from the undersigned's SCD satisfies the criteria set forth within 38 CFR §21.52 in establishing a positive finding for the presence of SEH, especially given the inconsistencies between the VRC's initial assessment and determinations regarding said SCD and the VREO's subsequent observations, opinions, and beliefs of the undersigned's ability in overcoming the impairments resulting from said SCD; and,

(r) failing to recognize or acknowledge the explicit declaration set forth within M28R.VI.A.9.04(a) counseling that "[t]he intensive nature of the evaluation and planning process [of the Self-Employment Track] is lengthy and *can take several months to complete*" (emphasis added).

RECEIVED
NYRO (306)
VSC/PC
2014 JUN  2 PM 12 26

## NOTICE OF DISAGREEMENT STATEMENT

**CONYERS**, Vincent Curtis

*ISSUE #7*

ISSUE #7     *Whether the Agency properly conducted an Administrative Review that was requested pursuant to the provisions set forth in 38 USC §3107(c) and 38 CFR §21.59.*

References:

> United States Code
>     38 USC §3107
> Code of Federal Regulations
>     38 CFR §21.59

1.   The statutory authority affording Veterans with the right and opportunity for an administrative review of contested determinations involving the availability of a program of VR&E benefits and services under Chapter 31, Title 38 of the United States Code is set forth within 38 USC §3107(c):

> "(2) In any case in which a veteran does not agree to such plan as proposed, to such plan as redeveloped, or to the disapproval of redevelopment of such plan, such veteran may submit to the person described in [38 USC §3106(f)] a written statement containing such veteran's objections and request a review of such plan as proposed or redeveloped, or a review of the disapproval of redevelopment of such plan, as the case may be.
> "(3) The Secretary shall review the statement submitted under paragraph (2) of this subsection and the plan as proposed or as redeveloped, and, if applicable, the disapproval of redevelopment of the plan, and render a decision on such review not later than ninety days after the date on which such veteran submits such statement, unless the case is one for which a longer period for review, not to exceed 150 days after such veteran submits such statement, is allowed under regulations prescribed by the Secretary, in which case the Secretary shall render a decision no later than the last day of the period prescribed in such regulations."

2.   The regulation implementing a 38 USC §3107(c) administrative review of eligibility or entitlement determinations involving a claim for a program of VR&E benefits and services under Chapter 31, Title 38 of the United States Code is set forth within 38 CFR §21.59:

> "A veteran may appeal decisions of the Vocational Rehabilitation and Employment staff on eligibility and entitlement to rehabilitation services to the Board of Veterans Appeals as provided in §19.2 [sic] of Title 38, CFR. *However, the veteran or an accredited representative, on his or her behalf, may request administrative review by Central Office prior to filing an appeal to BVA.* A case already on appeal to BVA may not be referred to Central Office for administrative review or advisory opinion." (Emphases added).

## *NOTICE OF DISAGREEMENT STATEMENT*

**CONYERS**, Vincent Curtis
███████████

*ISSUE #7 (continued)*

3.  The most natural reading of the plain-meaning of the regulatory language, *"may request administrative review by the Central Office"*, conveys an unambiguous intent:

> (a) to afford a Veteran with an opportunity for a *de novo* administrative review of contested eligibility and entitlement determinations rendered in connection with a claim for VR&E benefits and services; and,

> (b) for such review to be conducted by the Central Office.

4.  The undersigned submitted a request for an administrative review of contested determinations that the undersigned was "ineligible"/"unqualified" for a program of VR&E benefits and services under the Self-Employment Track which:

> (a) explicitly cited 38 USC §3107(c) and 38 CFR §21.59;

> (b) set forth the issues and contentions of the undersigned's disagreements with the eligibility determinations rendered during the assessment and evaluation of the undersigned's claim for a program of VR&E benefits and services under the Self-Employment Track;

> (c) was addressed to the Director, Vocational Rehabilitation & Employment Services; and,

> (d) was timely delivered to the Central Office.

5.  Contrary to the clear, plain-meaning of the phrase, *"administrative review by Central Office"*, as utilized within 38 CFR §21.59:

> (a) the Central Office forwarded the AR to the New York Regional Office to provide a response, <u>*see*</u> Memorandum;

> (b) the VREO conducted the administrative review instead of the Central Office performing such review, <u>*see*</u> Memorandum;

> (c) the Memorandum did not address all of the issues and contentions advanced within the submitted AR; and,

> (d) the Agency erroneously denied the undersigned any opportunity for a *de novo* review by the Central Office of the contested eligibility determinations.

6.  The undersigned contends upon information and belief that the Agency committed clear and unmistakable errors in conducting the AR by:

Page <b>52</b> of <b>54</b>

### NOTICE OF DISAGREEMENT STATEMENT

**CONYERS**, Vincent Curtis

*ISSUE #7 (continued)*

(a) arbitrarily and capriciously disregarding the unambiguous intent of the statutory directive set forth within 38 USC §3107(c) to afford a Veteran with a right and opportunity for a *de novo* administrative review of contested determinations rendered during a claim for a program of VR&E benefits and services prior to the filing for an appellate review of said contested determinations;

(b) arbitrarily and capriciously disregarding the unambiguous intent of the statutory directive set forth within 38 USC §3107(c) that the Central Office is to conduct any requested *de novo* administrative review of contested determinations rendered during a claim for a program of VR&E benefits and services;

(c) arbitrarily and capriciously contradicting the foregoing intents of 38 USC §3107(c) as referenced above by allowing the activity which rendered the contested determinations to conduct a self-review of said determinations in lieu of affording an independent *de novo* administrative review;

(d) arbitrarily and capriciously negating the undersigned's right pursuant to 38 USC §3107(c) for an *de novo* administrative review of the contested eligibility determinations rendered during the assessment and evaluation of the undersigned's claim for a program of VR&E benefits and services under the Self-Employment Track;

(e) arbitrarily and capriciously disregarding the unambiguous premise and intent of 38 CFR §21.59 to afford a Veteran with an opportunity for an *de novo* administrative review of contested eligibility and entitlement determinations rendered during an assessment of a claim for a program of VR&E benefits and services prior to the filing of an appellate review;

(f) arbitrarily and capriciously disregarding the unambiguous premise and intent of the regulatory language set forth within 38 CFR §21.59 that the Central Office will conduct any requested *de novo* administrative review of contested eligibility and entitlement determinations regarding a claim for a program of VR&E benefits and services prior to the filing for an appellate review of said contested determinations;

(g) arbitrarily and capriciously disregarding the foregoing unambiguous premise and intents of 38 CFR §21.59 as referenced above by allowing the activity which rendered the contested eligibility and entitlement determinations to conduct a self-review of said contested determinations in lieu of affording an independent *de novo* administrative review;

### NOTICE OF DISAGREEMENT STATEMENT

**CONYERS**, Vincent Curtis

ISSUE #7 (*continued*)

(h) arbitrarily and capriciously negating the undersigned's right pursuant to 38 CFR §21.59 for an independent *de novo* administrative review of the contested eligibility determinations rendered during the assessment and evaluation of the undersigned's claim for a program of VR&E benefits and services under the Self-Employment Track that classified the undersigned "ineligible"/"unqualified" for such a program; and,

(i) arbitrarily and capriciously disregarding and rendering superfluous or invalid the readily ascertainable intent of the unambiguous pertinent regulatory language, "*administrative review by Central Office*", as set forth within 38 CFR §21.59.

### ///END OF STATEMENT///

Vincent Curtis Conyers

### ///NOTHING FOLLOWS///

RECEIVED
NYRO (306)
VSC/PC
2014 JUN 2 PM 12 26

**EXHIBIT 11**

533 Mitchell Street
Uniondale, New York  11553-3014

05 June 2014

Director, New York Regional Benefits Office
Veterans Benefits Administration
United States Department of Veterans Affairs
245 West Houston Street
New York, New York 10014-4805

SUBJECT:        Revocation of Veterans Service Organization as Representative

REFERENCES:     Chapter 59 – *Agents and Attorneys*, Title 38 of the United States Code
                  (USC) (2102)
                Part 14 – *Legal Services, General Counsel, and Miscellaneous Claims*,
                  Title 38 of the Code of Federal Regulations (CFR)
                  (01 July 2013 Edition)
                Section A, Part I, Chapter 3, M28R-1MR *Adjudication Procedures
                  Manual Rewrite* (M28R-1MR) (15 November 2012)

Pursuant to the provisions set forth within the aforementioned references, this letter
hereby formally revokes the previously submitted VA Form 21-22 *Appointment of Veterans
Service Organization as Claimant's Representative*, dated 21 February 2012, which
authorized the American Legion to act on the undersigned's behalf.

This revocation is immediately effective as of the date of this letter.

Your attention in this matter is greatly appreciated.

Sincerely,

Vincent Curtis Conyers

cc:  American Legion, c/o Nassau County Veterans Services Agency, Nassau University
Medical Center, Building Q, 2201 Hempstead Turnpike, East Meadow, New York 11554-
1859

533 Mitchell Street
Uniondale, New York  11553-3014

05 June 2014

Director
Nassau County Veterans Services Agency
Nassau University Medical Center
Building Q
2201 Hempstead Turnpike
East Meadow, New York 11554-1859

SUBJECT:          Revocation of Authorization as Representative

This letter provides positive notice of the revocation of the previously submitted VA Form
21-22 *Appointment of Veterans Service Organization as Claimant's Representative*, dated 21
February 2012, which authorized your agency and the American Legion to act on the
undersigned's behalf regarding matters before the United States Department of the
Veterans Affairs (DVA).

Enclosed please find a copy of a letter that has been delivered to the DVA as of 05 June
2014 to effect the foregoing intent to revoke said authorization.

Moreover, pursuant to Section 14.631(c), Title 38 of the Code of Federal Regulation, which
states in part:

> "[u]pon withdrawing from representation, all property of the claimant must
> be returned to the claimant",

the undersigned requests the following actions:

(a) the return of all information and evidence in the form of documents,
    forms, correspondence, and the like that were provided by either the
    undersigned or DVA in regards to the undersigned's claims for benefits
    and services administered by DVA;

(b) the return of all information and evidence that are not only within the
    possession of your Agency but also within the possession of any/all
    offices of the American Legion and any agent of either entity; and,

(c) the explicit prohibition for either your Agency, the American Legion, and
    any agent to maintain possession of any of the foregoing information or
    evidence regardless whether original or copies thereof.

SUBJECT: Revocation of Authorization as Representative        05 June 2014

Your attention in this matter is greatly appreciated.

Sincerely,

Vincent Curtis Conyers

cc:  The American Legion National Headquarters, 700 North Pennsylvania Street, Post Office Box 1055, Indianapolis, Indiana 46206-1129

-2-

533 Mitchell Street
Uniondale, New York  11553-3014

05 June 2014

National Commander
The American Legion
700 North Pennsylvania Street
Post Office Box 1055
Indianapolis, Indiana 46206-1129

Dear Sir,

The purpose of this letter is to bring to your attention concerns regarding the provision of
veteran services by representatives of the Legion.  Specifically, the undersigned would like
convey to you impressions of unprofessional demeanor displayed by two counselors,
Laurence R. Mansfield and Bill Byrnes, of the Nassau County Veterans Services Agency, East
Meadow, New York (NCVSA), as accredited Legion representatives.

While pursuing Vocational Rehabilitation and Employment (VR&E) benefits and services
from the Department of Veterans Affairs, the undersigned requested assistance from the
Legion through the NCVSA in December 2013 regarding contested determinations
rendered by VR&E of the New York Regional Benefits Office (NYRO).    Although
understanding and acknowledging both Mr. Mansfield's and Mr. Byrnes' candid admission
of not being fully versed in the regulations pertaining to VR&E benefits and services, it was
to the undersigned's understanding that NCVSA would forward the submitted information
and contentions to an appropriate party for review and feedback.

Unfortunately, it appears that not only was the provided documentation never forwarded
but also that no further action was undertaken regarding the undersigned's request for
assistance notwithstanding the fact that VR&E forwarded copies of:

    (a) a 17 December 2013 letter providing notice of the intent to discontinue
        the undersigned's claim for a program of VR&E benefits and services
        under the Self-Employment Track;

    (b) a 17 January 2014 letter providing notice of the interruption of said
        claim;

    (c) a 21 March 2014 memorandum response to the undersigned's request for
        an administrative review of the rendered determination of VR&E
        declaring the undersigned "ineligible"/"unqualified" for a program of
        such benefits and services; and,

    (d) a 09 May 2014 letter providing notice of the disallowance of said claim,

to the Legion's office located at the NYRO.

On 04 June 2014, the undersigned provided Mr. Mansfield with a copy of a Notice of Disagreement (NOD) that the undersigned submitted to the NYRO on 02 June 2014. This resulted in Mr. Mansfield expressing several hostile and disparaging statements, *e.g.,*:

(a) the undersigned was "wasting" his time bringing the NOD to him;

(b) why the undersigned was submitting a NOD without waiting for the Legion to do so;

(c) questioning the undersigned's motives in "bothering" NCVSA and the Legion if the undersigned won't listen to what he is being told; and,

(d) recounting that he "still haven't gotten over getting [his] ass chewed out" regarding the undersigned's attempt to speak to Service Officer at the NYRO.[1]

It was at this point that the undersigned determined to terminate the Legion's representation and rescind the applicable power of attorney. While speaking to NCVSA's secretary, who was attempting to ascertain and mediate the precise disagreement, Mr. Byrnes injected himself into the conversation and told the secretary to "let it go" as the undersigned "was not worth the effort or time".

Moreover, when the undersigned requested the return of all documentation within NCVSA's file regarding the undersigned's claims, Mr. Byrnes asserted that said documentation "doesn't not belong to you; it is the American Legion's property". After the undersigned stated that pursuant to VA regulation such documentation was the undersigned's property, Mr. Byrnes disputed such regulation while making disparaging remarks about the undersigned's intelligence and integrity.

Enclosed, please find copies of letters submitted by the undersigned as of this date to revoke the Legion's power of attorney in representing the undersigned before the VA and request the return of a documentation pursuant to 38 CFR §14.631(c).

---

[1] In late January 2014, the undersigned paid an unprompted visit to the Legion's Service Officer in an unsuccessful attempt to gain information and guidance regarding the aforementioned contested determination rendered by VR&E. After speaking with the Service Officer of the undersigned's request, the receptionist informed the undersigned that the undersigned has to handle all interactions through the NCVSA. However, prior to the receptionist's return, the undersigned overheard the Service Officer's telephone conversation with Mr. Mansfield expressing his displeasure concerning the undersigned's visit to his office.

Even though the undersigned has always admired and supported the Legion, the treatment experienced during the past six months has precipitated serious doubts concerning the candor, commitment, and professionalism of individuals designated to provide veteran services.

Thank you for your time in reading this letter.

Sincerely,

Vincent Curtis Conyers

533 Mitchell Street
Uniondale, New York  11553-3014

05 June 2014

Office of the General Counsel (022D)
United States Department of Veterans Affairs
810 Vermont Avenue, NorthWest
Washington, District of Columbia 20420-0001

SUBJECT:      Violation of the Standards of Conduct for Persons  providing
representation before the Department of Veterans Affairs.

REFERENCE:   Section 14.632, Title 38 of the Code of Federal Regulations (CFR) (01
July 2013)

This letter is submitted to convey a complaint of violations of the standards of conduct set
forth within 38 CFR §14.362 committed by two veteran counselors, Laurence R. Mansfield
and Bill Byrnes, of the Nassau County (NY) Veterans Services Agency, located at Building Q,
2201 Hempstead Turnpike, East Meadow, New York 11554-1859 (NCVSA), while
presenting themselves as accredited representatives of the American Legion.

While pursuing Vocational Rehabilitation and Employment (VR&E) benefits and services
from the Department of Veterans Affairs as afforded by Chapter 31, Title 38 of the United
States Code, the undersigned requested assistance from the American Legion through the
NCVSA in December 2013 regarding contested determinations rendered by VR&E of the
New York Regional Benefits Office (NYRO).  Although understanding and acknowledging
both Mr. Mansfield's and Mr. Byrnes' candid admission of not being fully versed in the VA
regulations pertaining to VR&E benefits and services, it was to the undersigned's
understanding that NCVSA would forward the submitted information and contentions to an
appropriate party within the American Legion for review and feedback.

Unfortunately, it appears that not only was the provided documentation never forwarded
but also appears that no further action was undertaken by NCVSA in regard to the
undersigned's request for assistance notwithstanding the fact that VR&E forwarded copies
of:

(a) a 17 December 2013 letter providing notice of the intent to discontinue
the undersigned's claim for a program of VR&E benefits and services
under the Self-Employment Track;

(b) a 17 January 2014 letter providing notice of the interruption of said
claim;

SUBJECT:  Violation of the Standards of Conduct for Persons providing representation before the Department of Veterans Affairs.

    (c) a 21 March 2014 memorandum response to the undersigned's request for an administrative review of the rendered determination of VR&E declaring the undersigned "ineligible"/"unqualified" for a program of such benefits and services; and,

    (d) a 09 May 2014 letter providing notice of the disallowance of said claim,

to the American Legion's office located within the NYRO.

As such, it is contended upon information and belief that during the undersigned's pursuit of a claim for a program of VR&E benefits and services, Mr. Mansfield, Mr. Brynes, and possibly other unknown individuals:

    (a) violated 38 CFR §14.362(a)(1) by failing to faithfully execute their duties as individuals representing the undersigned during the pursuit of the foregoing VR&E claim;

    (b) violated 38 CFR §14.362(b)(1) by failing to provide competent representation during the undersigned's pursuit of said claim;

    (c) violated 38 CFR §14.362(b)(2) by failing to act with reasonable diligence and promptness in representing the undersigned during the pursuit of said claim;

    (d) violated 38 CFR §14.362(c)(7) by delaying without good cause the administrative process while representing the undersigned during the pursuit of said claim; and,

    (e) violated 38 CFR §14.362(c)(11) by engaging in unethical and unprofessional conduct while representing the undersigned during the pursuit of said claim.

Enclosed please find copies of letters that were delivered to both NCVSA and the American Legion regarding this situation.

Your attention in this matter is greatly appreciated.

Sincerely,

Vincent Curtis Conyers

2



**The American Legion**

★ WASHINGTON OFFICE ★ 1608 "K" STREET, N.W. ★ WASHINGTON, D.C. 20006 ★
★ (202) 861-2700 ★



*For God and Country*

July 14, 2014

Vincent Curtis Conyers
533 Mitchell Street
Uniondale, New York 11553-3014

Dear Mr. Conyers:

Thank you for your contacting The American Legion for assistance. I'm sorry you've had such a disappointing experience with your Department Service Officer. The American Legion takes these claims very serious. I'm forwarding your complaint to the New York Department Adjutant. As the Department Adjutant, they have the ability to investigate these complaints with Department Service Officers within his state. The Adjutant for New York is James W. Casey; he may be contacted at (518) 463-2215, or by email at info@nylegion.org.

I'd like to take this opportunity to thank you for your service and again for contacting The American Legion.  Veterans' service is our top priority!

Sincerely,

Steven J. Henry, Assistant Director for Claims
National Veterans Affairs & Rehabilitation Division



**Office of the General Counsel**
Washington DC 20420

In Reply Refer To: 022D

Mr. Vincent C. Conyers
533 Mitchell Street
Uniondale, NY 11553-3014

AUG 0 7 2014

Dear Mr. Conyers:

This is in response to a complaint you reported regarding the conduct of a Veterans Service Organization (VSO) representative accredited by the Department of Veterans Affairs (VA). VA regulations provide that VA's Office of the General Counsel, upon receipt of credible written information alleging improper conduct by an accredited representative, shall inform the representative of the specific law, regulation, or policy alleged to have been violated and the source of the complaint, and provide the representative with an opportunity to respond to the complaint.

Accordingly, before we can initiate an inquiry into the representative's conduct, we require a completed Privacy Act release by you, without which we cannot disclose your name and information in the complaint to the representative. You may mail this document to the VA Office of the General Counsel (022D), 810 Vermont Ave., NW, Washington, DC 20420, or fax it to (202) 273-6404 to my attention.

I hope this information is useful to you.

Sincerely yours,

Christa A. Shriber
Deputy Assistant General Counsel

Enclosure: VA Form 3288

Gmail - Complaint



V. C. Conyers <vcconyers@gmail.com>

## Complaint

**Winford, Erick** <Erick.Winford@va.gov>
To: "Vcconyers@gmail.com" <Vcconyers@gmail.com>

Tue, Jan 6, 2015 at 10:19 AM

Mr. Conyers,

We have reviewed our system of records and it does not permit us to release information to you regarding the status of the complaint you have pending with our office unless we have a privacy release from the individuals against whom the complaint was made.

Ms. Shriber wanted me to pass this information on to you.

Sincerely,

Erick Winford

Paralegal Specialist

Department of Veterans Affairs

Office of General Counsel, Staff Group II

Office:  (202) 461-7699

Fax:  (202) 273-0197

Erick.Winford@va.gov

*This message may contain information that is confidential and/or protected by law. If it has been sent to you in error, please reply immediately to advise the sender of the error and then destroy this message, any copies of this message and any printout of this message. If you are not the intended recipient of the message, then any unauthorized dissemination, distribution or copying of the material in this message, and any attachments to the message, is strictly forbidden.*

() *Think* <u>*Green*</u>*! Please do not print this email unless it is necessary.*

**EXHIBIT 12**

# DEPARTMENT OF VETERANS AFFAIRS
New York Regional Office
245 West Houston Street
New York, NY 10014

In Reply Refer To:

June 17, 2014

306/28

Mr. Vincent Conyers
533 Mitchell Street
Uniondale, NY 11553

Dear Mr. Conyers:

You have filed a Notice of Disagreement with our action. This is the first step in appealing to the Board of Veterans' Appeals (BVA). This letter and enclosures contain very important information concerning your appeal.

## Statement of the Case

We have enclosed a Statement of the Case, a summary of the law and evidence concerning your claim. This summary will help you to make the best argument to the BVA on why you think our decision should be changed.

## What You Need to Do

To complete your appeal, you must file a formal appeal. We have enclosed VA Form 9, Appeal to the Board of Veterans' Appeals, which you may use to complete your appeal. We will gladly explain the form if you have questions. Your appeal should address:

- the benefit that you want
- the facts in the statement of the case with which you disagree; and
- the errors that you believe we made in applying the law.

## When You Need to Do It

You must file your appeal with this office within 60 days from the date of this letter or within the remainder, if any, of the one-year period from the date of the letter notifying you of the action that you have appealed. **If we do not hear from you within this period, we will close your case.** If you need more time to file your appeal, you should request more time before the time limit for filing your appeal expires. See item 3 of the Instructions in VA Form 9, Appeal to Board of Veterans' Appeals.

Page 2

██████████
Mr. Vincent Conyers

**Hearings**

You may have a hearing before we send your case to the BVA.  If you tell us that you want a hearing, we will arrange a time and a place for the hearing.  VA will provide the hearing room, the hearing official, and a transcript of the hearing for the record.  VA cannot pay any other expenses of the hearing.  You may **also** have a hearing before the BVA, as noted on the enclosed VA Form 9, Appeal to Board of Veterans' Appeals.  **Do not delay filing your appeal if you request a hearing.  Your request for a hearing does not extend the time to file your appeal.**

**Representation**

If you do not have a representative, it is not too late to choose one. An accredited representative of a recognized service organization may represent you in your claim for VA benefits without charge. An accredited attorney or an accredited agent may also represent you before VA, and may charge you a fee for services performed after the filing of a notice of disagreement.  In certain cases, VA will pay your accredited agent or attorney directly from your past due benefits.  For more information on the accreditation process and fee agreements (including filing requirements), you and/or your representative should review 38 U.S.C. § 5904 and 38 C.F.R. § 14.636 and VA's website at http://www.va.gov/ogc/accreditation.asp. You can also find the names of accredited attorneys, agents and service organization representatives on this website.

**What We Will Do**

After we receive your appeal, we will send your case to the BVA in Washington, DC, for a decision.  The BVA will base its decision on an independent review of the entire record, including the transcript of the hearing, if you have a hearing.

Sincerely yours,

Steven Sribnik
Vocational Rehabilitation & Employment Officer

Enclosure(s):  VA Form 9

cc:  Claims Folder

# DEPARTMENT OF VETERANS AFFAIRS
New York Regional Office
245 West Houston Street
New York, New York  10014

## STATEMENT OF THE CASE

IN THE APPEAL OF

**Mr. Vincent C. Conyers**

FROM THE DECISION OF THE
DEPARTMENT OF VETERANS AFFAIRS

**NOTICE TO APPELLANT:**

This is not a decision on the appeal you have initiated.  It is a "Statement of the Case" which the law requires us to furnish to help you in completing your appeal.

Please read the forwarding letter carefully, as well as the instructions on the enclosed appeal form.  These explain your appeal rights and tell you what you must do to complete your appeal.

A copy of this "Statement of the Case" has been furnished to your representative: New York Division of Veterans Affairs

**ISSUE:**

Denial of self-employment services under Chapter 31 VR&E.

**SUMMARY OF EVIDENCE:**

A.  <u>Military Service</u>:            U. S. Army 10/06/86 - 01/12/12 E7 Honorable Discharge

B.  <u>Disability Rating</u>:          60%-  30% major depressive disorder, 20% intervertebral disc disorder, 10% neuralgia of the ulnar nerve, 10% impairment of the

| **Statement of the Case** | *Department of Veterans Affairs*<br>New York Regional Office | Page 2<br>06/17/2014 |
|---|---|---|

| NAME OF VETERAN<br>Conyers, Vincent C. | VA FILE NUMBER<br>████████ | SOCIAL SECURITY NR<br>████████ | POA<br>American Legion |
|---|---|---|---|

knee general, 0% residuals of foot injury, 0% impairment of the knee general.

C. <u>Education</u>:

Excelsior College 1992—Bachelors' Degree History
Associates Degree- 1996 Paramedical Science

D. <u>Work Experience</u>

No civilian work experience since discharge 2012

Extensive military work experience 1986-2012 – medical, aviation, training, security and administrative occupations.

## <u>COUNSELING AND REHABILITATION ACTIONS</u>:

08/12/2013  VONAPP application 28-1900 received in New York VARO

09/11/2013  Veteran scheduled for entitlement determination in New York VARO.

09/23/2013  Veteran's claim disallowed for not reporting for entitlement determination and not responding to follow-up letter.

10/23/2013  Veteran contacted VR&E to reschedule initial appointment. Veteran sent letter to report on 11/13/13.

11/13/2013  Veteran determined entitled to VR&E services. Based on education and current job placement endeavors, veteran was determined entitled to direct job placement services. Veteran requested self-employment services to open nightclub/cabaret.

| **Statement of the Case** | **Department of Veterans Affairs**<br>New York Regional Office | Page 3<br>06/17/2014 |
|---|---|---|

| NAME OF VETERAN<br>Conyers, Vincent C. | VA FILE NUMBER<br>████████ | SOCIAL SECURITY NR<br>████████ | POA<br>American Legion |
|---|---|---|---|

| 01/07/2014 | Veteran seen by VR&E Officer to advocate for VA support for self-employment of opening nightclub/cabaret |
| 02/21/2014 | Veteran requested administrative review of decision. |
| 03/14/2014 | Responded to Congressional inquiry from Congresswoman Carolyn Maloney's office. |
| 03/21/2014 | Responded to request for administrative review, upholding decision to provide job placement services. |
| 05/09/2014 | Discontinued VR&E case, due to refusal to pursue services. |
| 06/02/2014 | Received request from veteran to appeal decision not providing self-employment services of nightclub/cabaret. |

## PERTINENT LAWS AND REGULATIONS:

### §21.40  Basic entitlement to vocational rehabilitation benefits and services.

An individual meets the basic entitlement criteria for vocational rehabilitation benefits and services under this subpart if VA determines that he or she meets the requirements of paragraph (a), (b), (c), or (d) of this section. For other requirements affecting the provision of vocational rehabilitation benefits and services, see §§21.41 through 21.46 (period of eligibility), §21.53 (reasonable feasibility of achieving a vocational goal), and §§21.70 through 21.79 (months of entitlement).

(a) *Veterans with at least 20 percent disability*. The individual is a veteran who meets all of the following criteria:

(1) Has a service-connected disability or combination of disabilities rated 20 percent or more under 38 U.S.C. chapter 11.

(2) Incurred or aggravated the disability or disabilities in active military, naval, or air service on or after September 16, 1940.

(3) Is determined by VA to be in need of rehabilitation because of an employment handicap.

(b) *Veterans with 10 percent disability*. The individual is a veteran who meets all of the following criteria:

(1) Has a service-connected disability or combination of disabilities rated less than 20 percent under 38 U.S.C. chapter 11.

(2) Incurred or aggravated the disability or disabilities in active military, naval, or air service on or after September 16, 1940.

(3) Is determined by VA to be in need of rehabilitation because of a serious employment handicap.

| Statement of the Case | *Department of Veterans Affairs*<br>New York Regional Office | | Page 4<br>06/17/2014 |
|---|---|---|---|
| NAME OF VETERAN<br>Conyers, Vincent C. | VA FILE NUMBER | SOCIAL SECURITY NR | POA<br>American Legion |

(c) *Servicemembers awaiting discharge.* The individual is a servicemember who, while waiting for discharge from the active military, naval, or air service, is hospitalized, or receiving outpatient medical care, services, or treatment, for a disability that VA will likely determine to be service-connected. In addition, VA must have determined that:

(1) The hospital or other medical facility providing the hospitalization, care, service, or treatment is doing so under contract or agreement with the Secretary concerned, or is under the jurisdiction of the Secretary of Veterans Affairs or the Secretary concerned;

(2) The individual is in need of rehabilitation because of an employment handicap; and

(3) The individual has a disability or combination or disabilities that will likely be:

(i) At least 10 percent compensable under 38 U.S.C. chapter 11 and he or she originally applied for assistance under 38 U.S.C. chapter 31 after March 31, 1981, and before November 1, 1990; or

(ii) At least 20 percent compensable under 38 U.S.C. chapter 11 and he or she originally applied for assistance under 38 U.S.C. chapter 31 on or after November 1, 1990.

(d) *Exception for veterans who first applied after March 31, 1981, and before November 1, 1990.* The individual is a veteran who:

(1) Has a service-connected disability or combination of disabilities rated less than 20 percent under 38 U.S.C. chapter 11;

(2) Originally applied for assistance under 38 U.S.C. chapter 31 after March 31, 1981, and before November 1, 1990; and

(3) Is determined by VA to be in need of rehabilitation because of an employment handicap.

Authority: 38 U.S.C. ch. 11, 3102, 3103, 3106; sec. 8021(b), Pub. L. 101-508, 104 Stat. 1388-347; sec. 404(b), Pub. L. 102-568, 106 Stat. 4338, as amended by sec. 602, Pub. L. 103-446, 108 Stat. 4671.

[49 FR 40814, Oct. 18, 1984; 50 FR 9622, Mar. 11, 1985; 56 FR 15836, Apr. 18, 1991; 75 FR 3164, Jan. 20, 2010]

| Statement of the Case | Department of Veterans Affairs<br>New York Regional Office | | Page 5<br>06/17/2014 |
|---|---|---|---|
| NAME OF VETERAN<br>Conyers, Vincent C. | VA FILE NUMBER<br>█████████ | SOCIAL SECURITY NR<br>█████████ | POA<br>American Legion |

Supplement *Highlights* reference:  83(1)

### 21.51  Determining employment handicap.

For the purposes of §21.50, an employment handicap will be found to exist only if a CP or VRC determines that the individual meets each of the following conditions:

(a) *Vocational impairment.* The individual has a vocational impairment; that is, an impairment of the ability to prepare for, obtain, or keep employment in an occupation consistent with his or her abilities, aptitudes, and interests.

(b) *Effects of impairment not overcome.* The individual has not overcome the effects of the individual's impairment of employability through employment in, or qualifying for employment in, an occupation consistent with his or her abilities, aptitudes, and interests. This situation includes an individual who qualifies for a suitable job, but who does not obtain or keep the job for reasons beyond his or her control.  (Authority: 38 U.S.C. 3102)

(c) *Contribution of the service-connected disability(ies) to the individual's overall vocational impairment.*

(1) Except as provided in paragraph (c)(3) of this section, the service-connected disability(ies) must contribute in substantial part to the individual's overall vocational impairment. This means that the disability(ies) must have an identifiable, measurable, or observable causative effect on the overall vocational impairment, but need not be the sole or primary cause of the employment handicap.

(2) When determining the individual's overall vocational impairment, the CP or VRC will consider the factors identified in §21.50(c).

[49 FR 40814, Oct. 18, 1984; 50 FR 9622, Mar. 11, 1985, as amended at 54 FR 21216, May 17, 1989; 66 FR 44053, Aug. 22, 2001; 72 FR 14042, Mar. 26, 2007]

<u>M28R, Part IV, Section C, Chapter 4.04</u>

Self-Employment

| **Statement of the Case** | *Department of Veterans Affairs*<br>New York Regional Office | Page 6<br>06/17/2014 |
|---|---|---|
| NAME OF VETERAN<br>Conyers, Vincent C. | VA FILE NUMBER ████████   SOCIAL SECURITY NR ████████ | POA<br>American Legion |

This employment track is targeted to Veterans who have limited access to traditional employment, need flexible work schedules, or need a more accommodating work environment due to their disabling conditions or other life circumstances. To ensure success, Veterans must have the interest, financial resources and aptitude to pursue self-employment. After completion of a comprehensive initial evaluation and selection of this track, services are determined by the severity of the disability and limitations to employability.

CFR 21.257 (b)

(b) *Definition.* For purposes of this subpart, *individuals with the most severe service-connected disability(ies) who require self-employment* means individuals who have been determined by VA to have limitations affecting employability arising from the effects of each individual's service-connected disability(ies), which are so severe as to necessitate selection of self-employment as the only reasonably feasible vocational goal for the individuals. (Authority: 38 U.S.C. 3104

**DECISION(S):**

The veteran was determined entitled to VR&E services on November 13, 2013 because he had an employment handicap which he had not overcome. He has a 60% service connected disability for depression, back, knee and skin issues. He is seen for these conditions at the Northport VAMC and the East Meadow VA Clinic.

At the initial interview the veteran stated that he had two college degrees; a Bachelors' degree and then an Associates' degree. He stated that he has been unsuccessfully looking for work since retiring from the Army in 2012.

The veteran was also being seen at the Northport VAMC as part of the Compensated Work Therapy Program for vocational counseling. The vocational specialist there described assisting the veteran with job placement services. There is a mention of the veteran going on an interview was for a job as a manager of a fast food restaurant. As recently as March 4, 2014, the veteran stated that he recently went on a job interview, but the interviewer was reluctant to hire him.

On January 7, 2014, I met with Mr. Conyers. At this meeting, I described to him how VR&E could assist him with more suitable employment leads and supports. I also advised him on VR&E regulations concerning self-employment.

| Statement of the Case | *Department of Veterans Affairs*<br>New York Regional Office | Page 7<br>06/17/2014 |
|---|---|---|

| NAME OF VETERAN<br>Conyers, Vincent C. | VA FILE NUMBER ▮▮▮ | SOCIAL SECURITY NR ▮▮▮ | POA<br>American Legion |
|---|---|---|---|

Throughout the meeting, Mr. Conyers had to stand and then sit, due to back pain. Recent VAMC notes indicate that he is being seen at Northport VAMC for pain management.

The veteran is entitled to VR&E services because he has an employment handicap, based on his service connected disabilities, which has not been overcome by suitable employment. He has sufficient education and transferable military experience to seek competitive employment. The veteran had been looking for traditional employment, which the assistance of the staff at Northport VAMC, prior to applying for VR&E services. He now refuses to continue with this plan.

**REASONS FOR DECISIONS**:

The veteran has a 60% service connected disability for Major depressive disorder, intervertebral disc syndrome, neuralgia of the ulnar nerve, (2) impairment of the knee and residuals of foot injury. There is a non-service connected issue of substance and alcohol abuse, in partial remission.

As per CFR 21.51, (b) (1), *"Effects of impairment not overcome. The individual has not overcome the effects of the individual's impairment of employability through employment in, or qualifying for employment in, an occupation consistent with his or her abilities, aptitudes, and interests. This situation includes an individual who qualifies for a suitable job, but who does not obtain or keep the job for reasons beyond his or her control. (Authority: 38 U.S.C. 3102)"*

Mr. Conyers was determined entitled to VR&E services because he has an employment handicap related to his service connected disabilities, which has not been overcome.

As per CFR 21.40 (a) (3) "Is determined by VA to be in need of rehabilitation because of an employment handicap."

CFR 21.257 (b)

(b) *Definition*. For purposes of this subpart, *individuals with the most severe service-connected disability(ies) who require self-employment* means individuals who have been determined by VA to have limitations affecting employability arising from the effects of each individual's service-connected disability(ies), which are so severe as to necessitate selection of self-employment as the only reasonably feasible vocational goal for the individuals. (Authority: 38 U.S.C. 3104

| Statement of the Case | *Department of Veterans Affairs*<br>New York Regional Office | Page 8<br>06/17/2014 |
|---|---|---|

| NAME OF VETERAN<br>Conyers, Vincent C. | VA FILE NUMBER | SOCIAL SECURITY NR | POA<br>American Legion |
|---|---|---|---|

Mr. Conyers was pursuing traditional employment before and during his application for VR&E services. Upon his application for VR&E services, he refused any attempts from VR&E towards traditional employment. It has not been determined as the only feasible vocational goal for the individual.

<u>M28R, Part IV, Section C, Chapter 4.04</u>

Self-Employment
This employment track is targeted to Veterans who have limited access to traditional employment, need flexible work schedules, or need a more accommodating work environment due to their disabling conditions or other life circumstances. To ensure success, Veterans must have the interest, financial resources and aptitude to pursue self-employment. After completion of a comprehensive initial evaluation and selection of this track, services are determined by the severity of the disability and limitations to employability.

It has not been established that Mr. Conyers has meets the above criteria for self-employment services.

SUBMITTED BY:   Christopher Holder
Rehabilitation
Counselor

Date   6/17/14

REVIEWED BY:   Steven Sribnik
Vocational Rehabilitation
& Employment Officer

Date   6/17/14

# EXHIBIT 13

Form Approved: OMB No. 2900-0085
Respondent Burden: 1 Hour

## VA  Department of Veterans Affairs | APPEAL TO BOARD OF VETERANS' APPEALS

**IMPORTANT:** *Read the attached instructions before you fill out this form. VA also encourages you to get assistance from your representative in filling out this form.*

| 1. NAME OF VETERAN *(Last Name, First Name, Middle Initial)* | 2. CLAIM FILE NO. *(Include prefix)* | 3. INSURANCE FILE NO., OR LOAN NO. |
|---|---|---|
| CONYERS, Vincent Curtis | ▓▓▓▓▓▓ | |

**4. I AM THE:**
[X] VETERAN   [ ] VETERAN'S WIDOWER   [ ] VETERAN'S CHILD   [ ] VETERAN'S PARENT
[ ] OTHER *(Specify)*

| 5. TELEPHONE NUMBERS | | 6. MY ADDRESS IS: *(Number & Street or Post Office Box, City, State & ZIP Code)* |
|---|---|---|
| A. HOME *(Include Area Code)* ▓▓▓▓▓▓ | B. WORK *(Include Area Code)* | 533 Mitchell Street<br>Uniondale, New York  11553-3014 |

**7. IF I AM NOT THE VETERAN, MY NAME IS:** *(Last Name, First Name, Middle Initial)*

**8. OPTIONAL BVA HEARING**

**IMPORTANT:** *Read the information about this block in paragraph 6 of the attached instructions. This block is used to request a Board of Veterans' Appeals hearing. DO NOT USE THIS FORM TO REQUEST A HEARING BEFORE VA REGIONAL OFFICE PERSONNEL.*
*Check one (and only one) of the following boxes:*

A. [ ] I DO NOT WANT A BVA HEARING.
B. [ ] I WANT A BVA HEARING BY LIVE VIDEOCONFERENCE.
C. [X] I WANT A BVA HEARING IN WASHINGTON, DC.
D. [ ] I WANT A BVA HEARING AT A LOCAL VA OFFICE.*
*Due to travel requirements for BVA personnel, selecting Option D may result in a lengthier waiting period for the hearing than the other options. (This option is also not available at the Washington, DC, or Baltimore, MD, Regional Offices.)

**9. THESE ARE THE ISSUES I WANT TO APPEAL TO THE BVA:** *(Be sure to read the information about this block in paragraph 6 of the attached instructions.)*

A. [X] I WANT TO APPEAL ALL OF THE ISSUES LISTED ON THE STATEMENT OF THE CASE AND ANY SUPPLEMENTAL STATEMENTS OF THE CASE THAT MY LOCAL VA OFFICE SENT TO ME.

B. [ ] I HAVE READ THE STATEMENT OF THE CASE AND ANY SUPPLEMENTAL STATEMENT OF THE CASE I RECEIVED. I AM ONLY APPEALING THESE ISSUES: *(List below)*

ISSUE AS STATED WITHIN STATEMENT OF CASE (hereinafter, "SOC"):
"Denial of self-employment services under Chapter 31 VR&E"

ISSUES AS ADVANCED WITHIN NOTICE OF DISAGREEMENT WHICH WERE UNADDRESSED WITHIN SOC:
See Attached Sheets, Page 1.

**10. HERE IS WHY I THINK THAT VA DECIDED MY CASE INCORRECTLY:** *(Be sure to read the information about this block in paragraph 6 of the attached instructions.)*

SYNOPSIS

This is an appeal from several determinations rendered by the Vocational Rehabilitation and Employment ("VR&E") division of the Department of Veterans Affairs Regional Office in New York, New York, in declaring the undersigned "ineligible"/"unqualified" for a program of VR&E benefits and services under the Self-Employment Track as premised upon VR&E construing Section 21.257, Chapter 21, Title 38 of the Code of Federal Regulations and Paragraph 4.04, Chapter 4, Section C, Part IV of the M28R Vocational Rehabilitation and Employment Services Manual (hereinafter, the "M28R Manual") as restricting such a program solely to Veterans with "service-connected disability(ies) which are so severe as to necessitate selection of self-employment as the only reasonably feasible vocational goal". The undersigned contends upon information and belief that VR&E misconstrued and failed to properly apply, adhere to, and abide by applicable provisions set forth within (a) Chapter 31, Title 38 of the United States Code; (b) Chapter 21, Title 38 of the Code of Federal Regulations; and, (c) the M28R Manual.

*(Continue on the back, or attach sheets of paper, if you need more space.)*

| 11. SIGNATURE OF PERSON MAKING THIS APPEAL | 12. DATE *(MM-DD-YYYY)* | 13. SIGNATURE OF APPOINTED REPRESENTATIVE, IF ANY *(Not required if signed by appellant. See paragraph 6 of the instructions.)* | 14. DATE *(MM-DD-YYYY)* |
|---|---|---|---|
| *(signature)* | 07/01/2014 | | |

VA FORM
NOV 2009 **9**

CONTINUATION SHEET FOR ITEM 10

OVERVIEW

During a 07 November 2013 VR&E group orientation, the undersigned (a) submitted VA Form 28-1902w - "Rehabilitation Needs Inventory (RNI)" expressing the vocational goal of "[a]chieving self-employability as an ENTREPRENEUR of a self-sustaining private sector business" and (b) attended VR&E briefings, interview, and testing session. *See* Statement Attached to Notice of Disagreement (hereinafter, "SNOD") at 1.  Shortly afterwards, the undersigned received a 14 November 2013 letter from VR&E providing notice of being found entitled to VR&E benefits and services as afforded by Chapter 31, Title 38 of the United States Code.  *See* SNOD at 1.  The undersigned was informed during a 17 December 2013 initial meeting with the assigned Vocational Rehabilitation Counselor ("VRC") that a program of VR&E benefits and services under the Self-Employment Track was "not available".  *See* SNOD at 1-2.  As the proffered information and subsequent discussion in regard to the alleged unavailability of the Self-Employment Track did not coincide with applicable regulations, VR&E literature promulgated by VA, and congressional testimony given by the VR&E Director, the undersigned maintained the ambition of pursuing a vocational goal of Entrepreneurship with the objective of being an Owner-Operator of a Bar/Restaurant. *See* SNOD at 2.

After the initial meeting, the undersigned received a 17 December 2013 Notice of Proposed Action (hereinafter, "NPA") announcing the following determinations:
 (a) the proposed interruption of the undersigned's claim for a program of VR&E benefits and services;
 (b) the undersigned's ambition and interest in pursuing a Self-Employment Plan was not a "feasible course";
 (c) the undersigned "do[es] not have the capital" to pursue the stated vocational goal of Entrepreneurship;
 (d) the undersigned's "barriers and handicaps" to employment are "not to the degree of being designated with having a Serious Employment Handicap";
 (e) the undersigned's "barriers and handicaps" to employment "are not of the most severe nature that self employment is [the] only feasible opportunity for employment";
 (f) the undersigned is "employable in Governmental as well as private industry";
 (g) the undersigned is "ineligible" to receive a program of VR&E benefits and services under the Self-Employment Track due to having "legitimate options for suitable employment"; and,
 (h) the undersigned's persistence in pursuing a program under the Self-Employment Track allegedly demonstrates a "Failure to Cooperate".

The foregoing determinations were subsequently maintained and upheld by VR&E:
 (a) during a 07 January 2014 meeting with the Vocational Rehabilitation and Employment Officer (VREO), *see* SNOD at 3-4;
 (b) within a 17 January 2014 Notice of Interruption (hereinafter, "NOI"), while declaring the undersigned (1) "unqualified" for such a program and (2) allegedly demonstrated a "Refusal to Participate", *see* SNOD at 4-5;
 (c) within a 19 March 2014 Letter Response to a Congressional Inquiry (hereinafter, "Inquiry Response"), while asserting that 38 CFR §21.257 specifies the restriction of a program under the Self-Employment Track solely to severely service-connected disabled Veterans, *see* SNOD 5-6;
 (d) within a 20 March 2014 Memorandum Response (hereinafter, "Memorandum") to a 17 January 2014 Request for Administrative Review (hereinafter, "RAR"), while asserting that 38 CFR 21.§257(b) and M28R.IV.C.4.04 of the M28R Manual specifies the restriction of a program under the Self-Employment Track solely to severely service-connected disabled Veterans, *see* SNOD at 6-8;
 (e) within a 09 May 2014 Notice of Final Action (hereinafter, "NFA"), disallowing the undersigned's claim for a program of VR&E benefits and services, *see* SNOD at 8; and,
 (f) within the 17 June 2014 Statement of the Case (hereinafter, "SOC").
             /////CONTINUED ON ATTACHED SHEETS, PAGES 2-10/////

*(Attach additional sheets, if necessary)*

**EXHIBIT 14**

Form Approved: OMB No. 2900-0028
Respondent Burden: 7.5 minutes

**VA** Department of Veterans Affairs

## REQUEST FOR AND CONSENT TO RELEASE OF INFORMATION FROM INDIVIDUAL'S RECORDS

**PRIVACY ACT STATEMENT:** The execution of this form does not authorize the release of information other than that specifically described below. The information requested on this form is solicited under Title 38, United States Code, and will authorize release of the information you specify. The information may also be disclosed outside VA as permitted by law to include disclosure as stated in the "Notices of Systems of VA Records" published in the Federal Register in accordance with the Privacy Act of 1974.

**RESPONDENT BURDEN:** VA may not conduct or sponsor, and the respondent is not required to respond, to this collection of information unless it displays a valid OMB Control Number. The Privacy Act of 1974 (5 U.S.C. 552a) and VA's confidentiality statute (38 U.S.C. 5701) as implemented by 38 CFR 1.526(a) and 38 CFR 1.576(b) require individuals to provide written consent before documents or information can be disclosed to third parties not allowed to receive records or information under any other provision of law. The information requested is approved under OMB Control Number 2900-0028 and is necessary to ensure that the statutory requirements of the Privacy Act and VA's confidentiality statute are met.

Responding to this collection of information is voluntary. However, if the information is not furnished, we may not be able to comply with your request. Public reporting burden for this collection is estimated to average 7.5 minutes per respondent, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspects of this collection of Information, including suggestions for reducing this burden, to the VA Clearance Officer (005E3), 810 Vermont Avenue, NW, Washington, DC 20420. **Send comments only. Do not send** this form or requests for benefits to this address.

| TO | Department of Veterans Affairs | NAME OF INDIVIDUAL *(Type or print)* |
|---|---|---|
| | New York Regional Benefits Office<br>Veterans Benefits Administration<br>245 West Houston Street<br>New York, New York 10014-4805 | CONYERS, Vincent Curtis |

| | VA FILE NO. *(Include prefix)* | SOCIAL SECURITY NUMBER |
|---|---|---|
| | | ▇▇▇▇▇▇▇ |

NAME AND ADDRESS OF ORGANIZATION OR INDIVIDUAL TO WHOM INFORMATION IS TO BE RELEASED

Vincent Curtis CONYERS
533 Mitchell Street
Uniondale, New York 11553-3014

### VETERAN'S REQUEST

I hereby request and authorize the Department of Veterans Affairs to release the following information from the records identified above to the organization, agency, or individual named hereon:   ▶

NAME

CONYERS, Vincent Curtis

INFORMATION REQUESTED *(Number each item requested and give the dates or approximate dates - period from and to - covered by each.)*

Copies of any/all records and documentation acquired, generated, and maintained within the undersigned's Counseling/Evaluation/Rehabilitation (CER) Folder managed by the Vocational Rehabilitation and Employment Division (VR&E), including, but not limited to:

1 - all VA Forms;

2 - all locally produced/utilized forms and documents;

3 - all Benefits Delivery Network (BDN) and Corporate WINRS (CWINRS) printouts (e.g., Generated Eligibility Determination (GED) processing notes, progress notes, Case Status Changes, etc.);

4 - all records and documentation utilized in assessing the undersigned's claim for VR&E benefits and services (e.g., rating decisions, medical information, counseling and evaluation forms, test results and reports of evaluative procedures, correspondence



PURPOSE(S) FOR WHICH THE INFORMATION IS TO BE USED.

Personal Information

*NOTE: Additional information may be listed on the reverse side of this form.*

SIGNATURE OF INDIVIDUAL OR PERSON AUTHORIZED TO SIGN FOR INDIVIDUAL *(Attach authority to sign, e.g., POA)*

*[signature]*

DATE

03 July 2014

VA FORM **3288**
OCT 1995(R)

Form Approved: OMB No. 2900-0028
Respondent Burden: 7.5 minutes

concerning counseling issues, vocational exploration narratives, etc.) and the identity of the source of any such record or document; and,

5. All written and printed communication (e.g., letters, memorandums, E-mails, notes, etc.) regarding the undersigned's claim for VR&E benefits and services.

///NOTHING FOLLOWS///

RECEIVED
NYRO (30C)
VSC/PC
2017 JUL 3 PM 2 45



**DEPARTMENT OF VETERANS AFFAIRS**

New York Regional Office
245 West Houston Street
New York NY  10014

July 9, 2014                                   In Reply Refer To:  306/pct/pb

**VINCENT C CONYERS**                          CONYERS, Vincent Curtis
533 MITCHELL ST
UNIONDALE, NY 11553


Dear Mr. Conyers:

This acknowledges receipt of your Freedom of Information (FOIA)/ Privacy Act Request.


[ ▉ ]    We are taking action to obtain and review the file and provide the copies requested.

[   ]    We have requested your file from another station and a complete reply will be made as
         soon as the file is received.

[   ]    Your request is being referred to:


              VARO NAME/#
              ADDRESS
              CITY, STATE ZIP


Our Statewide telephone number is 1-800-827-1000.



Sincerely yours,


**FOIA-Privacy Act Officer**





### DEPARTMENT OF VETERANS AFFAIRS

February 17, 2015

**VINCENT C CONYERS**
533 MITCHELL ST
UNIONDALE, NY 11553

In Reply Refer To: 306/pct/pb

CONYERS, Vincent Curtis

Dear Mr. Conyers:

This letter is in response to your Freedom of Information (FOIA)/ Privacy Act Request dated **July 3, 2014.**

**We have enclosed a copy of your VR&E claim folder.**

If you should choose to appeal, your appeal must be in writing and postmarked within sixty (60) calendar days of any initial decision to deny your request. It must state clearly why you disagree with determination to withhold the records. Both the front of the envelope and the appeal letter should contain the notation: "Freedom of Information Act Appeal." Send your appeal to:

Department of Veterans Affairs
General Counsel (024)
810 Vermont Avenue, NW
Washington, DC 20420

Fax: (202) 273-6388
Email: ogcfoiaappeals@va.gov

Our statewide telephone number is: 1-800-827-1000.

Sincerely yours,

FOIA-Privacy Act Officer

**Encl: copy VR&E Folder**



# EXHIBIT 15



**DEPARTMENT OF VETERANS AFFAIRS**
New York Regional Office
**VOCATIONAL REHABILITATION & EMPLOYMENT DIVISION –3rd Fl**
**245 West Houston Street**
**New York, NY 10014**
**TEL 212 807-3008**
**FAX 212 807-4036**

04/09/2014

**In Reply, Refer To:** 306/28

Mr. Vincent C. Conyers
533 Mitchell Street
Uniondale, NY 11553

Dear Mr. Conyers

We have tried to come to a feasible goal with you, without success regarding your vocational rehabilitation program.  You have refused to participate in a feasible goal.  If you do not respond to this contact attempt within 30 days your case will be discontinued.

We are making this opportunity available to you as we feel that the benefits of the program can have a positive effect on your life, providing you with services that are not generally available to other veterans. These include training, medical care for non-service connected disabilities, monetary benefits and job placement assistance.

If you are interested in the above, please contact us to schedule your appointment and avoid your case being discontinued

Sincerely,

Christopher Holder, M.S.Ed., CRC, LP-MHC
Vocational Rehabilitation Counselor

Enclosure:  VA Form  4107

**EXHIBIT 16**

**Participant Name: Conyers, Vincent C.**
**File Number:** ███████████

**Category: Counseling**
**Date: 11/14/2013**
The veteran came in on November 13, 2013 for his entitlement interview.  The veteran is a 49 year old separated BM, with two adult step-children.  The veteran was born on 11/21/1963 in Queens, NY.  The veteran is currently residing with his mother in her house in Long Island, NY.  The veteran stated that he has eight siblings and two of them are in George and two is in NJ and the additional four is in New York.   The veteran stated that he does not have a close relationship with his siblings.  The veteran stated that he does not have a close relationship with his parents.  The veteran stated that his mother works as a consultant with Social Service in Nassau County.  The veteran pointed out that his father is retired from the Phone Company.   The veteran shared that his father lost an arm and a lung in the towers during 9/11.   The veteran stated that he is trying to get a divorce from his wife of six years, but his wife is refusing to sign the paperwork.

The veteran joined the US Army June 1986 and was granted an honorable discharged on January 12, 2012 with a rank of E-7.  The veteran completed basic training in Fort Benning, GA.  The veteran's MOS was Flight Paramedic -68 Bravo.  The veteran completed his training at Fort Sam Houston.

The veteran is currently unemployed.  The veteran reported that he lasted worked in the Civilian Work Force as a Paramedic for HHC from 1982 to 1986.  He stated that he worked for four different hospitals during the above period.  The veteran did not report any other civilian work experience.

The veteran reported that he attended Union Dale HS, in Long Island, NY; where he graduated with his HS in 1981.  The veteran stated that he attended NCC for two semesters majoring in Liberal Arts.  He also attends two years at NY Technical major in Computer Science.  He also attended the University of Maryland he completed 4 college credits.  He then transfers to Excelsior College where he obtained his BA degree in History in 1992.   The veteran then completed an Associate degree in Paramedical Science in 1996.

The veteran denied any history of substance or alcohol abuse or convictions.  The veteran also denied having any suicidal or homicidal ideations.

The veteran reported that he spend his time research how to open his own business during his free time.

MEDICAL INFORMATION/DISABILITY CONDITIONS:
Service Connected Disability Conditions:

Veteran is found to have a combined service connected disability rating of 60% for major Depressive Disorder 30%, Intervertebral Disc Syndrome 20%, Neuralgia of the Ulnar Nerve 10%, Impairment of the Knee, General 10, Eczema 0% and Impairment of the Knee, General 0%.

Non-Service Connected Disability
The veteran did not report any NS conditions.

The veteran reported that his disabilities are not worsening, but he is not able to work as a paramedic due to his SC condition.

The veteran reported that the major depression condition is causing him to feel sad and isolate.  He stated that he is not able to work in the medical field because it brings back memories of him bagging and tagging his friends.  The veteran appears to be extremely sad and depressed.  He

reported that his mother tries to make him feel guilty for serving in the military. The veteran is attending the mental health clinic for his depression.

The veteran stated that he has difficulty sitting for prolong periods of time. He stated that he experience pain radiating down his back into his legs. The veteran stated that he prefers to stand because he feels pressure. The veteran reported that he has difficulty with bending, lifting and stooping. The veteran stated that prolong walking is not a problem, but he is not able to engage in certain movements or positions because it aggravates his back.

The veteran stated that he has numbness in his left hand and arm. The veteran stated that he has some loss of feeling in his fingers which affects his grip. He stated that he has to visually see his hand holding the object before he picks it up.

The veteran stated that he was rated for his left knee. He stated that he underwent surgery to repair his knee. The veteran reported that he experience severe pain in his knee if he is in one position to long. The veteran also pointed out that his knee tends to tighten up which makes it difficult to move. The veteran stated that his knee condition makes it difficult to ambulate.

The veteran stated that he has eczema due to what he was exposed to. The veteran pointed out that he gets rashes across his chest, shoulders and down his back. He stated that he also had rashes on his legs at times. The veteran reported that the rashes are not painful, but irritating. The veteran stated that he is using creams to control the rashes. He stated that he has not had an episode in the past two years.

The veteran reported NSC of

The veteran stated that he is looking to start his own bar and grill restaurant. He pointed out that he is interested in the Self-employment track.

The veteran is being treated by the VAMC at Northport.

Napraxcon - anti-inflammatory
Vicoden - pain

EVIDENCE OF IMPAIRMENTS (CFR 21.51):
The veteran is found to have impairment to employability because the disabilities, SCD, prevent the veteran from maintaining employment in his current field of Medicine. His impairments include range of motion, psychological and emotional limitations.

SUBSTANTIAL CONTRIBUTION OF SCD (CFR 21.50 & Circular 28-97-1):
The above symptoms are directly a result of the veteran service in the military that has occasioned 60% for major Depressive Disorder 30%, Intervertebral Disc Syndrome 20%, Neuralgia of the Ulnar Nerve 10%, Impairment of the Knee, General 10, Eczema 0% and Impairment of the Knee, General 0% which occurred during his service in the Military.

HAS VETERAN OVERCOME IMPAIRMENT (CFR 21.50):
Veteran has not overcome the effects of the impairment through suitable employment. He also does not have enough education or work experience for direct placement in an alternative field other than Medicine. His BA degree in History is not sufficient to obtain employment as a teacher in NYS.

EVIDENCE OF EMPLOYMENT HANDICAP (CFR21.51):
Veteran is found to have an Employment Handicap. This is based upon the finding that veteran's service connected disability inhibits the veteran's ability to obtain and retain employment. The veteran's disabilities present severe symptoms which has limited the veteran's ability to deal with

certain environment. Due to his psychological condition he is no longer able to work as a paramedic because it causes flashbacks and disturbing memories of his time in the military

EVIDENCE OF SERIOUS EMPLOYMENT HANDICAP (Circular 28-97-1, Section 3(b)(4)):
The nature and severity of the veteran's disabilities were carefully considered, as well as his overall circumstances.  He appears to meet the criteria for serious employment handicap based on his SCD and his NON-SCDs.  The veteran's lack of civilian experience, depression, and other conditions were also taken into consideration when awarding him with an S.E.H.

FEASIBILITY (CFR 21.53 or Circular 28-97-1 9.a):
Feasibility will be determined by the CM

Entitlement:
Veteran has been informed both verbally and in writing of his entitlement to chapter 31 program on 11-13-13 receive under chapter 31 vocational rehabilitation services.

W. Richards-Clarke, CRC
VRC

**EXHIBIT 17**

**Department of Veterans Affairs**

# COUNSELING RECORD - NARRATIVE REPORT

| 1. NAME OF COUNSELEE (First name, middle initial, last name) | 2. CLAIM NUMBER | 3. SOCIAL SECURITY NUMBER | 4. REGIONAL OFFICE OR CENTER |
|---|---|---|---|
| Mr. Vincent C. Conyers | ▓▓▓▓ | ▓▓▓▓ | 306 |

## PART I - CERTIFICATION OF ENTITLEMENT/CURRENT FEASIBILITY

*(Complete as required for veterans applying for Chapter 31, Title 38 U.S.C.)* (Check appropriate boxes below and take any action indicated)

| 5. DOES THE VETERAN HAVE A VOCATIONAL IMPAIRMENT? | 6. DOES THE VETERAN'S SERVICE-CONNECTED DISABILITY CONTRIBUTE IN SUBSTANTIAL PART TO THE VOCATIONAL IMPAIRMENT? | 7. HAS THE VETERAN OVERCOME THE EFFECTS OF THE VOCATIONAL IMPAIRMENT? |
|---|---|---|
| ☒ YES   NO | ☒ YES   NO | YES   ☒ NO |

| 8. DOES THE VETERAN HAVE AN EMPLOYMENT HANDICAP? | 9. DOES THE VETERAN HAVE A SERIOUS EMPLOYMENT HANDICAP? | 10. ACHIEVEMENT OF VOCATIONAL GOAL: |
|---|---|---|
| ☒ YES   NO | ☒ YES   NO | IS CURRENTLY REASONABLY FEASIBLE<br>IS NOT CURRENTLY REASONABLY FEASIBLE<br>☒ CANNOT CURRENTLY BE DETERMINED *(Extended evaluation is required if veteran has a serious employment handicap)* |

THIS CERTIFIES THAT - The veteran has received evaluation services to determine his or her entitlement and feasibility for vocational rehabilitation

| 11. SIGNATURE OF COUNSELING PSYCHOLOGIST/VOCATIONAL REHABILITATION COUNSELOR | 12. DATE |
|---|---|
| *[signature]* | 01/07/2014 |

## PART II - COUNSELING NARRATIVE

| 13. NAME OF COUNSELING PSYCHOLOGIST/VOCATIONAL REHABILITATION COUNSELOR | 14. DATE OF DETERMINATION |
|---|---|
| Christopher Holder, M.S.Ed., CRC, LP-MHC | 11013/2013 |

15. TEXT OF NARRATIVE *(Continue in remarks on page 4, if necessary)*

**ELIGIBILITY & ENTITLEMENT DATA** *(M28.IV.iii.4.1.e-f)*
Mr. Vincent C. Conyerswas born on 11/21/1963 and served in the Army from 10/06/1986, 09/29/1988, 06/06/2008 to 03/13/1987, 07/05/1989, 01/12/2012after receiving an honorable discharge. Mr. Vincent C. Conyers's eligibility termination date is 09/02/2014 and the Veteran has        months of remaining entitlement.  The Veteran has previously utilized the following vocational rehabilitation or VA education benefit programs:   (prior Ch31 participation, Ch33, Ch30, state VR, etc.).  The Veteran is requesting VA VR&E assistance for:

The Veteran's disability rating is
60for 9434

| 9434 | 30 | Y | Major depressive disorder |
|---|---|---|---|
| 5243 | 20 | Y | Intervertebral Disc Syndrome |
| 8716 | 10 | Y | Neuralgia of the ulnar nerve |
| 5257 | 10 | Y | Impairment of the knee, general |
| 7806 | 0 | Y | Eczema |
| 5257 | 0 | Y | Impairment of the knee, general |

(SC); (Refresh CWINRS to ensure accuracy of merged fields).

Non-service connected (NSC) disabilities include:
None noted

**Veteran History**
Include information relevant to the Veteran's background (i.e. military history, civilian work history, wages earned, reasons for leaving jobs, gaps in employment, education, criminal convictions, transportation, family, housing, finances, assistance programs, or other pertinent information):

The veteran is a 49 year old separated BM, with two adult step-children.  The veteran was born on 11/21/1963 in Queens, NY.  The veteran is currently residing with his mother in her house in Long Island, NY.  The veteran stated that he has eight siblings and two of them are in George and two is in NJ and the additional four is in New York.  The veteran stated that he does not have a close relationship with his siblings.  The veteran stated that he does not have a close relationship with his parents.  The veteran stated that his mother works as a consultant with Social Service in Nassau County.  The veteran pointed out that his father is retired from the Phone Company.  The veteran shared that his father lost an arm and a lung in the towers during 9/11.  The veteran stated that he is trying to get a divorce from his wife of six years, but his wife is refusing to sign the paperwork.

The veteran joined the US Army June 1986 and was granted an honorable discharged on January 12, 2012 with a rank of E-7.  The veteran completed basic training in Fort Benning, GA.  The veteran's MOS was Flight Paramedic -68 Bravo.  The veteran completed his training at Fort Sam Houston.

The veteran is currently unemployed.  The veteran reported that he lasted worked in the Civilian Work Force as a Paramedic for HHC from 1982 to 1986.  He stated that he worked for four different hospitals during the above period.  The veteran did not report any other civilian work experience.

The veteran reported that he attended Union Dale HS, in Long Island, NY; where he graduated with his HS in 1981.  The veteran stated that he attended NCC for two semesters majoring in Liberal Arts.  He also attends two years at NY Technical major in Computer Science.  He also attended the University of Maryland he completed 4 college credits.  He then transfers to Excelsior College where he obtained his BA degree in History in 1992.   The veteran then completed an Associate degree in Paramedical Science in 1996.

The veteran denied any history of substance or alcohol abuse or convictions.  The veteran also denied having any suicidal or homicidal ideations.

The veteran reported that he spend his time research how to open his own business during his free time.


**ASSESSMENT OF INTERESTS, APTITUDES, AND ABILITIES** *(38 CFR 21.50(c)(4), M28.IV.iii.3.1.c.3.G, Policy Bulletin 99-1, Circular 28-97-01, revised, Par 4)*

List and describe all tests that were used to assess the Veteran's interests, aptitudes, and abilities. If tests were not administered, explain why and indicate what information was used:

## II. Individual Profile Analysis
The table below reports and displays the percentage of "LIKE" responses that you recorded within each of the twelve Interest Areas. The dark vertical line in the chart is your average percentage of "LIKE" responses (28%) across all twelve Interest Areas.
01 Artistic 7
02 Scientific 38
03 Plants/Animals 0
04 Protective 67
05 Mechanical 0
06 Industrial 0
07 Business Detail 50
08 Selling 20
09 Accommodating 50
10 Humanitarian 36
11 Leading/Influencing 57
12 Physical Performing 10
The CareerScope system has analyzed your profile. The following Interest Areas stand out significantly above your average level of interest:
4 Protective 11 Leading/Influencing 9 Accommodating
7 Business Detail


## I. Performance on Tasks
The table below reports the number of correct answers and the number of questions you attempted in each assessment task.
Object Identification 15 15
Abstract Shape Matching 13 14
Clerical Matching 16 17
Pattern Visualization 13 17
Computation 14 15
Numerical Reasoning 17 20
Word Meanings 20 20
The table below reports and graphically displays your aptitudes as standard scores and as percentile scores. Both types of scores involve the comparison of your performance against the performance of other adults. An aptitude score of 100 is exactly average. Scores between 80 and 120 can be thought of as "in the average range." Percentile (%tile) scores report the percentage of people who score below you. The graph displays your relative strengths. Different combinations of aptitudes (listed on the left) are important in different Work Groups.

## II. Aptitude Profile

Aptitude Score %tile Average Range
General Learning 108 66
Verbal Aptitude 102 54
Numerical Aptitude 102 54
Spatial Aptitude 100 50
Form Perception 101 52
Clerical Perception 123 87
Motor Coordination 100 50
Finger Dexterity 100 50
Manual Dexterity 100 50

•Your aptitude profile may include Motor Coordination, Finger Dexterity and Manual Dexterity scores. The sources of these scores are listed below. If "Counselor" is listed as the source of information, an assumption has been made regarding the score. If "None" is listed as the source, the performance factor will not be considered when making Work Group recommendations. Motor Coordination: Counselor; Finger Dexterity: Counselor; Manual Dexterity: Counselor.

What is the vocational significance of the test results, transferable skills analysis or other objective data?

confident that you qualify for a Work Group when it is marked with a • symbol.)
**Work Group I A**
01.01 Literary Arts
01.02 Visual Arts
01.03 Performing Arts: Drama
01.04 Performing Arts: Music
01.05 Performing Arts: Dance
01.06 Craft Arts
02.01 Physical Sciences
02.02 Life Sciences
02.03 Medical Sciences
02.04 Laboratory Technology
03.01 Mgr Work: Plants/Animals
03.03 Animal Training & Service
03.04 Elem Work: Plants/Animals
04.01 Safety & Law Enforcement 1
04.02 Security Services 1
05.01 Engineering
05.02 Mgr Work: Mechanical
05.03 Engineering Technology
05.04 Air/Water Vehicle Operation
05.05 Craft Technology
**Work Group I A**
05.07 Quality Control
05.08 Land/Motor Vehicle Operation
05.09 Materials Control
05.10 Crafts
05.11 Equipment Operation
05.12 Elemental Work: Mechanical
06.01 Production Technology
06.02 Production Work
06.03 Quality Control
06.04 Elemental Work: Industrial
07.01 Administrative Detail 3
07.02 Mathematical Detail 3
07.03 Financial Detail 3
07.04 Oral Communications 3
07.05 Records Processing 3
07.06 Clerical Machine Operation 3
07.07 Clerical Handling 3
08.01 Sales Technology
08.02 General Sales
08.03 Vending
**Work Group I A**
09.01 Hospitality Services 3
09.02 Barber & Beauty Services 3
09.03 Passenger Services 3
09.05 Attendant Services 3
10.01 Social Services
10.02 Nursing, Therapy & Specialized
10.03 Child & Adult Care
11.01 Mathematics & Statistics 2
11.02 Educational & Library Svcs 2

11.03 Social Research 2
11.04 Law 2
11.05 Business Administration 2
11.06 Finance 2
11.07 Services Administration 2
11.08 Communications 2
11.09 Promotion 2
11.10 Regulations Enforcement 2
11.11 Business Management 2
11.12 Contracts & Claims 2

15. Text of Narrative (continued)

**VOCATIONAL IMPAIRMENT** *(38 CFR 21.51(a), M28.IV.iii.2.1.b-g)*

List and describe each service-connected (SC) and non-service connected (NSC) disability (ies). Document all functional limitations associated with each disability and how it affects employment. Indicate if each limitation/disability is substantiated by medical documentation:

Service Connected Disability Conditions:

Veteran is found to have a combined service connected disability rating of 60% for major Depressive Disorder 30%, Intervertebral Disc Syndrome 20%, Neuralgia of the Ulnar Nerve 10%, Impairment of the Knee, General 10, Eczema 0% and Impairment of the Knee, General 0%.

Non-Service Connected Disability
The veteran did not report any NS conditions.

The veteran reported that his disabilities are not worsening, but he is not able to work as a paramedic due to his SC condition.

The veteran reported that the major depression condition is causing him to feel sad and isolate. He stated that he is not able to work in the medical field because it brings back memories of him bagging and tagging his friends. The veteran appears to be extremely sad and depressed. He reported that his mother tries to make him feel guilty for serving in the military. The veteran is attending the mental health clinic for his depression.

The veteran stated that he has difficulty sitting for prolong periods of time. He stated that he experience pain radiating down his back into his legs. The veteran stated that he prefers to stand because he feels less pressure. The veteran reported that he has difficulty with bending, lifting and stooping. The veteran stated that prolong walking is not a problem, but he is not able to engage in certain movements or positions because it aggravates his back.

The veteran stated that he has numbness in his left hand and arm. The veteran stated that he has some loss of feeling in his fingers which affects his grip. He stated that he has to visually see his hand holding the object before he picks it up.

The veteran stated that he was rated for his left knee. He stated that he underwent surgery to repair his knee. The veteran reported that he experience severe pain in his knee if he is in one position to long. The veteran also pointed out that his knee tends to tighten up which makes it difficult to move. The veteran stated that his knee condition makes it difficult to ambulate.

The veteran stated that he has eczema due to what he was exposed to. The veteran pointed out that he gets rashes across his chest, shoulders and down his back. He stated that he also had rashes on his legs at times. The veteran reported that the rashes are not painful, but irritating. The veteran stated that he is using creams to control the rashes. He stated that he has not had an episode in the past two years.

The veteran reported NSC of

The veteran stated that he is looking to start his own bar and grill restaurant. He pointed out that he is interested in the Self-employment track.

The veteran is being treated by the VAMC at Northport.

Napraxcon - anti-inflammatory
Vicoden - pain

List and describe other impairments to employability (i.e. transportation, family issues, criminal history, finances, housing, willingness to relocate, etc.):

No other impairments appear evident at this time.

**CONTRIBUTION OF SERVICE CONNECTED DISABILITY (IES) TO VOCATIONAL IMPAIRMENT** *(38 CFR 21.51(c), M28.IV.iii.2.1.h)*

Describe how the service-connected disability (ies) does or does not impair the Veteran's ability to prepare for, obtain or retain employment:

EVIDENCE OF IMPAIRMENTS (CFR 21.51):
The veteran is found to have impairment to employability because the disabilities, SCD, prevent the veteran from maintaining employment in his current field of Medicine.  His impairments include range of motion, psychological and emotional limitations.

SUBSTANTIAL CONTRIBUTION OF SCD (CFR 21.50 & Circular 28-97-1):
The above symptoms are directly a result of the veteran service in the military that has occasioned 60% for major Depressive Disorder 30%, Intervertebral Disc Syndrome 20%, Neuralgia of the Ulnar Nerve 10%, Impairment of the Knee, General 10, Eczema 0% and Impairment of the Knee, General 0% which occurred during his service in the Military.

**OVERCOMING THE EFFECTS OF IMPAIRMENT** *(38 CFR 21.51(b), M28.IV.2.1.k)*

Select the Veteran's employment status and explain **how** the Veteran has or has not overcome the effect of impairment to employability:

☒ Employed (Describe specifically how the employment impacts the Veteran having overcome or not overcome the impairment):

☐ Unemployed (Significant justification required if Veteran is not employed yet found to have overcome):

15. Text of Narrative (continued)

**EMPLOYMENT HANDICAP** *(38 CFR 21.51, M28.IV.iii.2.1)*

Select the appropriate box below that synthesizes the employment handicap decision based on the components outlined on page 2:

☒ The Veteran meets the criteria for an employment handicap due to the fact that the SCD(s) contribute in substantial part to the vocational impairment and the Veteran has not overcome the effects of the impairment through further education, transferable skills, or obtaining and maintaining suitable work.

☐ The Veteran does not meet the criteria for an employment handicap due to not presenting with any impairment(s) to employability.

☐ The Veteran does not meet the criteria for an employment handicap due to the SCD not contributing in substantial part to the impairment to employability.

☐ The Veteran does not meet the criteria for an employment handicap due to having overcome the impairments to employability as he/she is currently employed or qualifies for employment that is consistent with his/her abilities, aptitudes, and interests.

**SERIOUS EMPLOYMENT HANDICAP** *(38 CFR 21.52, M28.IV.2.2)*

The decision regarding a serious employment handicap is defined by consideration of the combination of all the effects on the individual and the extent of the vocational impairments and their significance.

Select each circumstance that exists for the Veteran that could contribute to a significant impairment.

☒ Number of disabling condition(s)
☒ Record of or current neuropsychiatric condition(s)
☐ Alcohol/Substance abuse
☒ Severity of disabling condition(s)
☐ Negative attitudes towards the disabled
☐ Frequent hospitalizations
☐ Unstable work history
☒ Chronic pain
☐ Long or substantial periods of unemployment
☐ Withdrawal from society
☐ Extent and complexity of needed rehabilitation services
☒ Lack of education/training for suitable employment
☐ A pattern of reliance on government support programs (e.g. -
welfare, worker's compensation, social security, etc.)
☐ Difficulties with communicating
☐ Other evidence of significant restrictions to employability
(e.g. - high unemployment; age, race, and gender discrimination
issues; etc.)
☐ Criminal record
☐ Other (list) _____

If the Veteran was found to have a serious employment handicap, describe how each of the existing circumstances contributes. If the Veteran was not found to have a serious employment handicap, describe how the identified circumstances above did not contribute:

Section above did contribute:

EVIDENCE OF IMPAIRMENTS (CFR 21.51):
The veteran is found to have impairment to employability because the disabilities, SCD, prevent the veteran from maintaining employment in his current field of Medicine.  His impairments include range of motion, psychological and emotional limitations.

SUBSTANTIAL CONTRIBUTION OF SCD (CFR 21.50 & Circular 28-97-1):
The above symptoms are directly a result of the veteran service in the military that has occasioned 60% for major Depressive Disorder 30%, Intervertebral Disc Syndrome 20%, Neuralgia of the Ulnar Nerve 10%, Impairment of the Knee, General 10, Eczema 0% and Impairment of the Knee, General 0% which occurred during his service in the Military.

Does the Veteran have a serious employment handicap?   ☒ Yes   ☐ No

**ENTITLEMENT DETERMINATION** (38 CFR 21.40, Circular 28-97-1, revised, Par 4)

Select the entitlement determination below that synthesizes the components of the decision, as documented above, and indicate the date the Veteran was notified of the entitlement decision:

☒ **Entitled**

☐ **Not Entitled:  No Employment Handicap**

☐ **Not Entitled:  No Serious Employment Handicap-10% SCD**

☐ **Not Entitled: No Serious Employment Handicap-ETD expired**

Date Veteran notified of entitlement decision: 11/13/2013 (match CWINRS claim processing tab)

Indicate the referrals to other resources the Veteran was provided, if found **not entitled**:

15. Text of Narrative (continued)

**FEASIBILITY DETERMINATION** (38 CFR 21.53, M28.IV.2.3)

Is the achievement of a vocational goal currently reasonably feasible?

☐ Yes   ☐ No   ☒ Uncertain

Describe the factors taken into account that support this decision:

Veteran is only interested in pursuing a Self-Employment goal.  As he is unwilling to entertain other discussion, feasibility cannot be determined at this time.

No level of supervision is assigned at this time.

Date of feasibility determination: **Undetermined  at this time.**

If Feasible: Proceed with Vocational Exploration.

If Not Feasible: Proceed with Independent Living Needs assessments.

If Uncertain: Proceed with Extended Evaluation Planning.

Use VA Form 28-8606, Notes from Counseling and Next Steps to document next steps.

| | |
|---|---|
| _(signature)_ | **01/07/2014** |
| Signature of Counseling Psychologist or Vocational Rehabilitation Counselor | Date |

**REMARKS:**

**EXHIBIT 18**

**Participant Name: Conyers, Vincent C.**
**File Number:** ████████████

**Category: Counseling**
**Date: 01/07/2014**

met with veteran in NYRO.  Veteran wants VR&E sponsorship to open a Cabaret- self employment. The veteran states he has looked for hundreds of jobs since 1/12 and has been turned down. The veteran has  been known to VRE  only since 11/13.  He has 2 BA degrees, but no recent civilian work history. He is in treatment for back and depression.  As per CAPRI veteran has also been recommended for Alcohol treatment and had suicide attempt early 2013.

During course of meeting veteran had to stand up and stretch due to severe back pain.

Veteran states that he will be just managing the cabaret but other family members will be involved. There appears to be pressure from family for plan.

VRE has never helped this veteran look for employment.  However Mr. Conyers was firm that all he wants is assistance with the cabaret.  He is not willing to accept any other services from VRE.  As per CAPRI the veteran has been looking for work on his own recently but is not willing to see if VRE can help.

The veteran makes an excellent impression and speaks well. Has a calm demeanor.

The session ended with the veteran stating that he will ask for an appeal of this decision.

Steven Sribnik, CRC
VREO

**EXHIBIT 19**

**Department of Veterans Affairs**

## SPECIAL REPORT OF TRAINING
(UNDER CHAPTER 31, TITLE 38, U.S.C.)

| | |
|---|---|
| 1. NAME OF VETERAN (First, middle initial, last)<br>Mr. Vincent C. Conyers | 2. FILE NUMBER |
| 3. NAME OF TRAINING FACILITY | 4. CONTACT BY<br>☐  DIRECT SUPERVISION<br>☒  OTHER (Specify below)<br><br>Phone, e-mail & USPS         05/09/2014 |

**REPORT**

5. MORE THAN ONE REPORT FOR THE SAME VETERAN MAY BE MADE ON THIS SHEET WHEN APPROPRIATE.  EACH CONTACT REPORTED SHOULD BE DATED AND SIGNED AND ANY FURTHER ACTION TO BE TAKEN NOTED

## <u>Discontinued</u>

Veteran has refused to participate in any evaluation and planning activities that do not include a plan of self-employment – to own a cabaret.  Veteran has been deemed not to be eligible for a plan of self-employment, as he has been deemed employable by typical employment standards.

VA FORM **28-1905d**

**EXHIBIT 20**



DEPARTMENT OF VETERANS AFFAIRS
Veterans Benefits Administration
Washington DC  20420

March 10, 2015

Mr. Vincent Curtis Conyers
533 Mitchell Street
Uniondale, New York 11553-3014

RE:  FOIA Request: **14-03433-F**

Dear Mr. Conyers:

This letter is in response to your Freedom of Information Act (FOIA) request received in
our office on March 10, 2014, seeking information regarding the provision of services
pursuant to the Self-Employment Track of the Vocational Rehabilitation and Employment
(VR&E) Program.

The Veterans Benefits Administration (VBA) conducted a thorough search for the
information you are requesting and have provided data on the Veteran population in the
Self-Employment track, broken down by Regional Office.  Please see attached document.

This concludes our response.

Your request was processed by the undersigned.  You may appeal the determination
made in this response to:

> General Counsel (024)
> Department of Veterans Affairs
> 810 Vermont Avenue, N.W.
> Washington, D.C.  20420

If you should choose to make an appeal, your appeal must be postmarked no later than
sixty (60) calendar days after the date of the adverse determination.  It must clearly identify
the determination being appealed and must include any assigned request number

The appeal should include:

1. The name of the FOIA Officer
2. The address of the component
3. The date of the component's determination, if any
4. The precise subject matter of the appeal

1

If you choose to appeal only a portion of the determination, you must specify which part of the determination you are appealing.

The appeal should include a copy of the request and VA's response, if any.  The appeal should be marked "Freedom of Information Act Appeal".

Thank you for your interest in the Department of Veterans Affairs.  Customer service is very important to us.  If you have questions regarding this letter, please contact VR&E Service at (202) 461-9600.

Sincerely,

Jack Kammerer
Director, Vocational Rehabilitation
and Employment Service

Enclosure

2

In compliance with the Freedom of Information Act (FOIA), the VA Vocational Rehabilitation & Employment (VR&E) Service submits the following information regarding the provision of services pursuant to the Self-Employment Track of the Vocational Rehabilitation & Employment (VR&E) Program.

The data provided is grouped together based on similar data points to provide a coordinated and consolidated response to the requested information.

Please note that as with many phases of training, Veterans participating in the Self-Employment Track may do so over the boundaries of multiple fiscal years. Numbers of participants cited below for any given fiscal year are those who began their training within that specific year. This was the only way to isolate historical populations into distinct groups. Total Veteran population in 5-year study = 376.

The Veteran population across the 5-year study by Regional Office is listed below.

### # of Veterans in a Self-Employment Track by Fiscal Year and Regional Office

| Station | Fiscal Year | | | | | |
|---|---|---|---|---|---|---|
| | 2010 | 2011 | 2012 | 2013 | 2014 | Total |
| Albuquerque Regional Office | 0 | 0 | 0 | 0 | 1 | 1 |
| Anchorage Regional Office | 0 | 0 | 1 | 0 | 0 | 1 |
| Atlanta Regional Office | 3 | 2 | 0 | 2 | 3 | 10 |
| Baltimore Regional Office | 1 | 0 | 1 | 2 | 2 | 6 |
| Boise Regional Office | 0 | 0 | 0 | 0 | 0 | 0 |
| Boston Regional Office | 0 | 0 | 1 | 0 | 0 | 1 |
| Buffalo Regional Office | 0 | 1 | 0 | 0 | 1 | 2 |
| Chicago Regional Office | 0 | 0 | 0 | 1 | 0 | 1 |
| Cleveland Regional Office | 4 | 4 | 5 | 2 | 1 | 16 |
| Columbia Regional Office | 0 | 0 | 1 | 1 | 2 | 4 |
| Denver Regional Office | 1 | 4 | 3 | 3 | 2 | 13 |
| Des Moines Regional Office | 4 | 4 | 4 | 1 | 0 | 13 |
| Detroit Regional Office | 8 | 14 | 7 | 16 | 4 | 49 |
| Fargo Regional Office | 0 | 3 | 0 | 2 | 2 | 7 |
| Ft. Harrison Regional Office | 0 | 0 | 0 | 1 | 0 | 1 |
| Hartford Regional Office | 0 | 0 | 1 | 1 | 2 | 4 |
| Honolulu Regional Office | 2 | 2 | 3 | 4 | 3 | 14 |
| Houston Regional Office | 0 | 2 | 1 | 1 | 4 | 8 |
| Huntington Regional Office | 0 | 4 | 0 | 0 | 1 | 5 |
| Indianapolis Regional Office | 1 | 1 | 2 | 0 | 2 | 6 |
| Jackson Regional Office | 0 | 2 | 1 | 1 | 1 | 5 |
| Lincoln Regional Office | 0 | 3 | 0 | 0 | 0 | 3 |
| Little Rock Regional Office | 0 | 0 | 1 | 0 | 0 | 1 |

# of Veterans in a Self-Employment Track by Fiscal Year and Regional Office

| Station | Fiscal Year | | | | | |
|---|---|---|---|---|---|---|
| | 2010 | 2011 | 2012 | 2013 | 2014 | Total |
| Los Angeles Regional Office | 3 | 0 | 1 | 2 | 2 | **8** |
| Louisville Regional Office | 3 | 0 | 0 | 2 | 1 | **6** |
| Manchester Regional Office | 1 | 0 | 1 | 0 | 1 | **3** |
| Manila Regional Office | 3 | 4 | 5 | 3 | 5 | **20** |
| Milwaukee Regional Office | 1 | 0 | 0 | 0 | 0 | **1** |
| Montgomery Regional Office | 0 | 0 | 0 | 2 | 4 | **6** |
| Muskogee Regional Office | 1 | 1 | 3 | 0 | 2 | **7** |
| Nashville Regional Office | 1 | 1 | 1 | 5 | 4 | **12** |
| New Orleans Regional Office | 0 | 0 | 1 | 1 | 1 | **3** |
| New York Regional Office | 1 | 2 | 0 | 1 | 0 | **4** |
| Newark Regional Office | 0 | 1 | 1 | 0 | 1 | **3** |
| Oakland Regional Office | 0 | 0 | 1 | 3 | 2 | **6** |
| Philadelphia Regional Office | 0 | 0 | 1 | 3 | 2 | **6** |
| Phoenix Regional Office | 3 | 2 | 0 | 2 | 0 | **7** |
| Pittsburgh Regional Office | 0 | 0 | 1 | 0 | 0 | **1** |
| Portland Regional Office | 0 | 2 | 0 | 2 | 1 | **5** |
| Providence Regional Office | 0 | 0 | 0 | 1 | 1 | **2** |
| Reno Regional Office | 0 | 1 | 0 | 4 | 1 | **6** |
| Roanoke Regional Office | 0 | 1 | 0 | 0 | 1 | **2** |
| Salt Lake City Regional Office | 1 | 2 | 3 | 0 | 0 | **6** |
| San Diego Regional Office | 1 | 2 | 3 | 3 | 5 | **14** |
| San Juan Regional Office | 0 | 1 | 0 | 0 | 1 | **2** |
| Seattle Regional Office | 3 | 1 | 6 | 0 | 3 | **13** |
| Sioux Falls Regional Office | 0 | 0 | 3 | 1 | 0 | **4** |
| St. Louis Regional Office | 1 | 0 | 4 | 3 | 3 | **11** |
| St. Paul Regional Office | 0 | 0 | 0 | 0 | 2 | **2** |
| St. Petersburg Regional Office | 1 | 2 | 1 | 3 | 3 | **10** |
| Togus Regional Office | 3 | 6 | 3 | 2 | 2 | **16** |
| Waco Regional Office | 1 | 0 | 0 | 0 | 2 | **3** |
| Washington Regional Office | 0 | 0 | 0 | 1 | 1 | **2** |
| White River J. Regional Office | 1 | 2 | 2 | 0 | 1 | **6** |
| Wichita Regional Office | 1 | 0 | 3 | 2 | 0 | **6** |
| Wilmington Regional Office | 0 | 0 | 0 | 0 | 0 | **0** |
| Winston-Salem Regional Office | 0 | 1 | 1 | 0 | 0 | **2** |
| *Total* | 54 | 78 | 77 | 84 | 83 | **376** |

2

**_Request_:**

(a) The number of veterans by key demographic characteristics of age, gender, and race/ethnicity who requested participation in the Self Employment Track during Fiscal Years 2010, 2011, 2012, 2013, and 2014.

**_Response_:**

**Age of Veteran**

| Fiscal Year | 20s | 30s | 40s | 50s | 60s | 70s | 80s | Total |
|---|---|---|---|---|---|---|---|---|
| 2010 | 1 | 7 | 14 | 15 | 13 | 3 | 1 | 54 |
| 2011 | 1 | 13 | 24 | 22 | 14 | 4 | 0 | 78 |
| 2012 | 4 | 18 | 22 | 10 | 21 | 2 | 0 | 77 |
| 2013 | 6 | 20 | 25 | 13 | 18 | 2 | 0 | 84 |
| 2014 | 10 | 20 | 26 | 12 | 13 | 2 | 0 | 83 |
| Total | 22 | 78 | 111 | 72 | 79 | 13 | 1 | **376** |

**Gender of Veteran**

| Fiscal Year | Male | Female | Total |
|---|---|---|---|
| 2010 | 51 | 3 | 54 |
| 2011 | 74 | 4 | 78 |
| 2012 | 68 | 9 | 77 |
| 2013 | 75 | 9 | 84 |
| 2014 | 64 | 19 | 83 |
| Total | 332 | 44 | **376** |

**Ethnicity**

| Fiscal Year | White/Not Hispanic | Black/Not Hispanic | American Indian | Hispanic | Asia/Pacific Islander | Undisclosed | Total |
|---|---|---|---|---|---|---|---|
| 2010 | 7 | 3 | 1 | 0 | 0 | 43 | 54 |
| 2011 | 13 | 1 | 0 | 2 | 0 | 62 | 78 |
| 2012 | 8 | 2 | 0 | 0 | 1 | 66 | 77 |
| 2013 | 7 | 2 | 0 | 1 | 1 | 73 | 84 |
| 2014 | 8 | 1 | 0 | 0 | 1 | 73 | 83 |
| Total | 43 | 9 | 1 | 3 | 3 | 317 | 376 |

*Race/Ethnicity is an optional field and not available for the entire population.

3

***Request***:

(b) the number of veterans referenced in subparagraph (a) above who possessed a Service Connected Disability (SCD) combined rating of TEN (10) percent at the time of initial application for Chapter 31 benefits;

(c) the number of veterans referenced in subparagraph (a) above who possessed a SCD combined rating of TWENTY (20) percent at the time of initial application for Chapter 31 benefits;

(d) the number of veterans referenced in subparagraph (a) above who possessed a SCD combined rating between THIRTY (30) and FIFTY (50) percent at the time of initial application for Chapter 31 benefits;

(e) the number of veterans referenced in subparagraph (a) above who possessed a SCD combined rating between FIFTY (50) and SEVENTY (70} percent at the time of initial application for Chapter 31 benefits;

(f) the number of veterans referenced in subparagraph (a) above who possessed a SCD combined rating between SEVENTY (70) and ONE HUNDRED (100) percent at the time of initial application for Chapter 31 benefits;

***Response***:

### Service Connected Disability Rating at Time of Initial Application

| Fiscal Year | 10% | 20% | 30% - 40% | 50% - 60% | 70% - 100% | N/A | Total |
|---|---|---|---|---|---|---|---|
| 2010 | 3 | 4 | 9 | 10 | 27 | 1 | 54 |
| 2011 | 0 | 4 | 12 | 15 | 46 | 1 | 78 |
| 2012 | 1 | 4 | 12 | 14 | 43 | 3 | 77 |
| 2013 | 5 | 0 | 13 | 14 | 50 | 2 | 84 |
| 2014 | 2 | 6 | 16 | 15 | 41 | 3 | 83 |
| Total | 11 | 18 | 62 | 68 | 207 | 10 | **376** |

*SCD does not come in percentages other than in increments of ten. The range of 30% to 50% as requested in section D, would include, if they existed, all percentages from 30% to 59.9%. In this instance, the requestor presumably is seeking 30% to 49.9%. To avoid duplication, requested parameters have been adjusted.*

4

***Request***:

(g) the number of veterans referenced in subparagraphs (a) through (f) above classified as being afflicted with a Serious Employment Handicap;

***Response***:

### Number of Veterans with an Employment Handicap/Serious Employment Handicap

| Fiscal Year | # of Veterans with an EH in the Self-Employment Track | # of Veterans with a SEH in the Self-Employment Track | Total |
|---|---|---|---|
| 2010 | 10 | 44 | 54 |
| 2011 | 8 | 70 | 78 |
| 2012 | 13 | 64 | 77 |
| 2013 | 14 | 70 | 84 |
| 2014 | 20 | 63 | 83 |
| *Total* | **65** | **311** | **376** |

***Request***:

(h) the expenses associated with services provided to the veterans referenced in subparagraphs (a) through (g) above;

***Response***:

### Expenses Associated With Services Provided to Veterans in the Self-Employment Track

| Fiscal Year | # of Veterans in a Self-Employment Track | Associated Expenses |
|---|---|---|
| 2010 | 54 | $2,269,589.38 |
| 2011 | 78 | $2,756,764.37 |
| 2012 | 77 | $2,750,815.25 |
| 2013 | 84 | $2,546,797.98 |
| 2014 | 83 | $1,233,890.75 |
| *Total* | **376** | **$11,557,857.73** |

*FY14 final expenses have not been finalized.*

5

***Request***:

(i) the number of veterans referenced in subparagraphs (a) through (g) above with an approved business plan;

***Response***:

All Veterans placed in a Self-Employment Track should have an approved business plan.

***Request***:

(j) the number of veterans referenced in subparagraphs (a) through (g) above whose VR&E claim status is currently classified as "Active";

(k) the number of veterans as referenced in subparagraphs (a) through (g) above whose VR&E claim status is currently classified as "Rehabilitated";

(l) the number of veterans as referenced in subparagraphs (a) through (g) above whose VR&E claim status is currently classified as "Interrupted";

(m) the number of veterans as referenced in subparagraphs (a) through

(g) above whose VR&E claim status is currently classified as "Discontinued" "Disallowed"; and,

***Response***:

**Number of Veterans in a Self-Employment Track by Case Status**

| Fiscal Year | Active | Rehabilitated | Interrupted | Discontinued | Total |
|---|---|---|---|---|---|
| 2010 | 6 | 33 | 4 | 11 | 54 |
| 2011 | 16 | 46 | 7 | 9 | 78 |
| 2012 | 36 | 28 | 8 | 5 | 77 |
| 2013 | 63 | 11 | 8 | 2 | 84 |
| 2014 | 78 | 0 | 3 | 2 | 83 |
| *Total* | 199 | 118 | 30 | 29 | 376 |

* When compiling the database for this request, it was not possible to take an end-of-year snapshot of Self-Employment status for each year within the study. The record is a fluid entity, moving through time, and no such data were taken at the conclusion of successive fiscal years. The current study could only determine the current (September, 2014) case status of all the cases within the study, and it is from these data that the categories are filled in below. Under such a measurement, the older the year, the fewer the cases which remain classified as 'Active'.

6

*Request*:

(n) the number of veterans as referenced in subparagraphs (a) through (g) above whose VR&E claim status is currently classified as "Terminated";

*Response*:

There are only two possible outcomes to departure from the VR&E program of services – Rehabilitated, and Discontinued.  The category of 'Terminated' does not exist within VR&E nomenclature.  Please refer to the response above for the number of Veterans in the Rehabilitated and Discontinued case status.