UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
VINCENT CURTIS CONYERS,

                     Plaintiff,         **REPORT AND**

  -against-                        **RECOMMENDATION**
                                   16-CV-00013 (JFB) (SIL)
UNITED STATES DEPARTMENT OF
VETERANS AFFAIRS,

                   Defendant.
------------------------------------------------------------x
**LOCKE, Magistrate Judge:**

      Presently before the Court, on referral from the Honorable Joseph F. Bianco

for Report and Recommendation, is Defendant United States Department of Veterans

Affairs' ("Defendant" or the "Department") motion to dismiss Plaintiff *pro se* Vincent

Curtis Conyers' ("Plaintiff" or "Conyers") Complaint for lack of subject matter

jurisdiction and failure to state a claim pursuant to Rules 12(b)(1) and 12(b)(6) of the

Federal Rules of Civil Procedure ("Fed. R. Civ. P."). *See* Docket Entry ("DE") [24]. By

way of Complaint filed January 4, 2016, Plaintiff commenced this action alleging

claims under the Privacy Act, 5 U.S.C. § 552a *et seq.*, the Freedom of Information Act

("FOIA"), 5 U.S.C. § 552 *et seq.* and its implementing regulations, and Title 38 of the

United States Code which sets forth laws for Veterans' Benefits, 38 U.S.C. § 101 *et

seq*. *See* Complaint ("Compl."), DE [1]. On August 24, 2016, Defendant moved to

dismiss Conyers' Complaint for lack of subject matter jurisdiction and failure to state

a claim, DE [24], which Plaintiff opposes. *See* DE [28].

      For the reasons set forth herein, the Court respectfully recommends that

Conyers' Complaint be dismissed in its entirety. However, it is also recommended

that Plaintiff be granted leave to amend his Complaint:  (1) to add causes of action

for injunctive relief pursuant to 5 U.S.C. 552a(g)(1)(A)-(B); and (2) to re-plead his

Privacy Act claims under causes of action one, two, three, four, five, six, eight, nine,

and ten, but not claim seven pursuant to 38 U.S.C. § 7332.

## I.   BACKGROUND

Unless otherwise noted, the following facts are taken from Conyers' Complaint

and accompanying exhibits, which total 290 pages.  All allegations are presumed true

for the purposes of this motion.  The crux of this action centers on Plaintiff's attempt

to receive self-employment assistance from the Department and the purported

Privacy Act violations he endured while pursuing this request.

### A.   **Plaintiff's Pursuit of Chapter 31 Benefits**

Plaintiff Vincent Conyers is an honorably discharged veteran of the United

States Army having served as a flight paramedic and trainer from 1986 through 2012.

Compl. ¶ 20; Ex. 7 ("3.21.14 DVA Letter").  As an unfortunate result of his service to

this country, he suffers from numerous disabilities, including numbness in his left

hand and arm, pain radiating from his back into his legs, and other, non-physical

concerns, such as depression.  *See* 3.21.14 DVA Letter.  He now aspires to open up his

own bar and grill, and has sought assistance from Defendant, a federal agency that

offers Vocational Rehabilitation and Employment ("VR&E") benefits to veterans.  *See*

Compl. ¶ 58.  He seeks benefits pursuant to Chapter 31 of Title 38 of the United

States Code, which aims at training and rehabilitation for veterans with service-

connected disabilities, and, more specifically, he desires these benefits pursuant to

the "self-employment track" of the Chapter.  *Id.* at ¶ 1; *see also* 38 U.S.C. § 3100 *et seq.* ("Chapter 31").

In August 2013, Conyers initiated a Chapter 31 benefits claim with the Department.  Compl. ¶ 1.  In November 2013, he attended an initial evaluation with the New York Vocational Rehabilitation and Employment Division ("New York Regional Office") to assess his qualification for these benefits.  *Id.* at ¶ 58.  While at the orientation, he indicated that he was seeking assistance pursuant to the "self-employment track" of Chapter 31 and sat for an initial evaluation by a "DVA Counseling Psychologist," Dr. Wanda E. Richards-Clarke ("Richards-Clarke").  *Id.* After the evaluation, Richards-Clarke verbally told Plaintiff that he qualified for Chapter 31 benefits and he received a letter three days later certifying the same. *See id.* at ¶ 59; Ex. 1 ("Entitlement to Benefits Under 38 USC Chapter 31").  At this point, Conyers was not provided with a copy of Richards-Clarke's report (the "Counseling Report").  Compl. ¶ 4.

On December 17, 2013, Plaintiff met with Christopher Holder ("Holder"), a Vocational Rehabilitation Counselor at the New York Regional Office, to discuss his Chapter 31 benefits.  *Id.* at ¶¶ 60-61; Ex. 2 ("11.19.13 Letter from Christopher Holder").  Conyers requested assistance pursuant to the self-employment track to open up his own bar, but Holder immediately informed Plaintiff that he did not qualify for those benefits.  Compl. ¶ 61(b).  Rather, the counselor suggested other options including going back to school for a business degree.  *Id.* at ¶ 61(k).  Conyers refused to accept any other career path besides opening up his own restaurant,

dismissing Holder's concerns of the high rate of failure of restaurants and Plaintiff's financial situation, and refusing to go back to college due a previous physical altercation at Nassau Community College.  *Id.* at 61(e)-(h).  Two days later, Conyers received a letter from Holder which explained that "in my professional opinion as a Certified Rehabilitation Counselor, [Conyers' disabilities] are not of the most severe nature that self-employment is [the] only feasible opportunity for employment" and that he proposed to discontinue Plaintiff's case "for failure to cooperate in any plan that does not fall within the Self-Employment Track."  *Id.* at Ex. 3 ("12.17.13 Letter from Christopher Holder").

Disagreeing with Holder's findings, Conyers requested an informal hearing.  Compl. ¶ 63.  This hearing occurred on January 7, 2014, before VR&E Officer Steven Sribnik ("Sribnik").  *Id.* at ¶ 64.  Plaintiff advocated for self-employment benefits, noting his educational background and that he had assisted family members in operating other small businesses.  *Id.* at ¶ 64; 3.21.14 DVA Letter at 4.  Nonetheless, Sribnik rejected Conyers' request, citing the necessary money it would take to open the bar-restaurant and again concluding that the self-employment track was not a viable option for Plaintiff.  Compl. ¶ 64.  As a result, Conyers requested administrative review from the "VR&E Services."  *Id.* at ¶ 65.

While the request for administrative review was pending, Plaintiff received another letter from Holder, this time informing that his benefits were "interrupted" due to his refusal to accept any other plan than self-employment.  *Id.* at Ex. 4 ("1.17.14 Letter from Christopher Holder").  Conyers then sought recourse from other

sources. He reached out to Senators Charles Schumer and Kristen Gillibrand, as well as then-Representative Carolyn McCarthy. *Id.* at ¶ 66. He also submitted to the "VR&E Services" a FOIA request "for statistical data regarding the DVA's provisioning of programs of Chapter 31 services and assistance under the *Self-Employment Track* to Veterans during Fiscal Years 2010 through 2015." *Id.* at ¶ 68.

On March 21, 2014, Plaintiff received a letter from Representative McCarthy which regretfully informed him that she was unable to receive a favorable result on his behalf. *Id.* at ¶ 70. She also attached a letter she received from the Department's New York Regional Office, signed by Sribnik, which explained its rationale in denying self-employment benefits. *See* Ex. 6 ("DVA Letter to Representative McCarthy"). This letter, addressed to Representative McCarthy, outlined Plaintiff's disabilities, explained that he has issues with alcohol and substance abuse, and indicated that he is in treatment at the Northport Veterans Affairs Medical Center and East Meadow Veterans Affairs Clinic. *See id.* This disclosure of information forms the basis for certain Privacy Act claims that Conyers alleges here.

On March 24, 2014, Plaintiff received a response to his request for administrative review from the United States Department of Veterans Affairs Regional Office. *See* 3.21.14 DVA Letter. Like the New York Regional Office, it similarly upheld the previous determinations, indicating that Conyers is not entitled to self-employment benefits. *Id.* The report explained that self-employment is not "the only feasible goal" for him, and, in any event, he would not be able to run a restaurant with the amount of pain he experiences. *Id.* Subsequently, Plaintiff

5

received another letter from Holder, indicating that his VR&E benefits were disallowed as of May 9, 2014. *See id.* at Ex. 9 ("5.9.14 DVA Letter").

Conyers then commenced the process for appealing the determination to the Board of Veterans' Appeals ("BVA"). He first submitted a "Notice of Disagreement" to the New York Regional Office, expressing his dispute with the Department's determination in a fifty-four page letter. *Id.* at Ex. 10 ("Notice of Disagreement"). Defendant confirmed on June 17, 2014 that it received the Notice of Disagreement, and provided Conyers with an overview of his case and the relevant law. *Id.* at Ex. 12 ("Statement of the Case"). Plaintiff submitted a formal appeal dated July 1, 2014 to the BVA. *See* Ex. 13 ("Appeal to Board of Veterans' Appeals").

### B. Subsequent Privacy Act Request and Purported Violations

While the appeal to the BVA was pending, Conyers requested information from the Department pursuant to the Privacy Act. He requested "[c]opies of any/all records and documentation acquired, generated, and maintained within the undersigned's Counseling/Evaluation/Rehabilitation (CER) Folder managed by the Vocational Rehabilitation and Employment Division (VR&E) . . . ." *Id.* at Ex. 14 ("Request For and Consent to Release of Information from Individual's Records"). On February 18, 2015, which Plaintiff points out is 229 days after the initial request, he received a copy of these documents. Compl. ¶ 80. According to him, the folder was missing crucial materials including the letters that the New York Regional Office sent to Conyers, as well as other, hypothetical documents, including failing "to provide any documentation of the reasoning or bases for VR&E Services delegating the [New York

6

Regional Office] VR&E Division to respond to the 17 January 2014 [Administrative Review] request." *Id.*

More critical, according to Plaintiff, is not what the folder was missing, but what it contained. Conyers highlights four specific documents included in his record: (1) the Counseling Report by Dr. Richards-Clarke, which initially determined that he is entitled to Chapter 31 benefits, *see id.* at Ex. 16 ("Counseling Report"); (2) a "Counseling Record – Narrative Report" created and signed by Holder on January 7, 2014 documenting Plaintiff's disabilities and stating that he is entitled to Chapter 31 benefits, *see id.* at Ex. 17 ("Counseling Record-Narrative Report"); (3) notes prepared by Sribnik in connection with the January 7, 2014 informal hearing with Plaintiff, where Sribnik affirmed that he is not entitled to self-employment benefits, *see id.* at Ex. 18 ("1.7.14 Notes"); and (4) a May 9, 2014 form by the Department titled "Special Report of Training," indicating that Plaintiff's benefits were discontinued, *see id.* at Ex. 19 ("5.9.14 Report").

Conyers claims that upon review, he discovered that the decisions by Defendant throughout the pendency of his claim are inconsistent with the information in these documents. For example, he asserts that the December 17, 2013 letter sent to him by Holder states that he is employable, and although he is handicapped, "it is not to the degree of being designated with having a Serious Employment Handicap." 12.17.13 Letter from Christopher Holder. However, the Counseling Report on November 14, 2013 by Dr. Richards-Clarke, which he received by virtue of his request, states that he has evidence of a "serious employment

handicap." *See* Counseling Report.  Similarly, the Counseling Report and Counseling Record – Narrative Report indicate that Plaintiff required an "extended evaluation," which was never provided or recognized in any subsequent findings by the Department.  *See* Compl. ¶¶ 86(a)-(b).  He also claims that the December 17, 2013 letter stated that he has "legitimate options for suitable employment," but that the Counseling Report and Counseling Record-Narrative Report alike explained that he does not have enough experience for direct placement in any other field besides medicine.  *Id.* at ¶¶ 85(b); 86(a)-(b).

Plaintiff relies on these purported differences, amongst others, as evidence that Defendant failed to maintain its records and rely on necessary information.  He argues that the New York Regional Office's "acts and omissions . . . throughout the pendency of [his] claim for Chapter 31 benefits and services were inconsistent with the material and highly relevant information expressly documented in the [] Counseling Report."  *Id.* at ¶ 91.  As a result, he asserts that the information in the Counseling Report was not "utilized for the statutory purpose it was collected for," *id.* at ¶ 105, that "classifying" it as irrelevant violates the Privacy Act, *id.* at ¶ 109, and that relying on Holder's opinions as the "reasoning and bases" for determining Plaintiff's rights under Chapter 31 "caused adverse determinations."  *Id.* at ¶ 110.  These discrepancies form the basis of this lawsuit.

### C. <u>Hearing Before BVA</u>

Conyers attended a hearing before the BVA on August 5, 2015.  *Id.* at ¶ 83.  There, he noted his grievances regarding his record, arguing that it was missing

documents including letters to the congressional representatives, documentation supporting certain determinations by the Department, and "did not contain any documentation recounting the reasoning or bases for the NYRO VR&E Division disregarding, ignoring, and not utilizing the information collected from Plaintiff as reported within the [] Counseling Report . . . ." *Id.* Although Conyers does not elaborate further, it appears that this appeal remains pending.

### D. Dispute with the American Legion

In addition to Plaintiff's allegations regarding his challenge to Defendant's determination, occasionally referenced within his Complaint is a dispute with the American Legion. Conyers mentions that in June 2014, he notified the New York Regional Office that he was "revoking the VA Form 21-22 – Appointment of Veterans Service Organization as Claimant's Representative." *Id.* at ¶ 75. Although seemingly out of context, the documents Plaintiff attaches to his Complaint reveal that Conyers authorized the American Legion to act on his behalf, revoked this authorization due to a dispute, and subsequently brought the revocation to the attention of the New York Regional Office. *Id.* at Ex. 11 ("American Legion Correspondence"). Nonetheless, Plaintiff claims that the New York Regional Office continued to include the American Legion on correspondence regarding Conyers' Chapter 31 benefits, forming the basis of certain Privacy Act violations concerning the unauthorized disclosure of personal information.

### E.  <u>The Current Action</u>

As a result of these grievances, Plaintiff commenced this action on January 4, 2016.  He pleads violations of seven different sections of the Privacy Act, each a separate cause of action, alleging a total of 222 counts.  Specifically, he asserts that Defendant violated:

1. Section 552a(e)(1), which requires that an agency "maintain in its records only such information about an individual as is relevant and necessary," due to the Department's failure to "utilize, recognize, or acknowledge" the Counseling Report, Compl. ¶¶ 113-116;

2. Section 552a(e)(2), which mandates that the agency "collect information to the greatest extent practicable," by failing to collect evidence directly from Conyers, *id.* at ¶¶ 117-123;

3. Section 552a(e)(5), which provides that records must be maintained with "accuracy, relevance, timeliness, and completeness as is reasonably necessary," by not including the Counseling Report in Plaintiff's folder prior to meetings and not "discern[ing] the discrepancies" between documents in the record, *id.* at ¶¶ 124-131;

4. Section 552a(e)(6), which insures the accuracy, relevancy, timeliness, and completeness prior to disclosure to another person, by disseminating the folder in its alleged deficient state to Representative McCarthy, the American Legion, the Department of Veterans Affairs, and Plaintiff himself, *id.* at ¶¶ 132-137;

5. Section 552a(e)(9), which states that an agency shall establish rules of conduct for persons who maintain records, as he believes the personnel of the New York Regional Office were not familiar with the "regulatory codes of conduct," *id.* at ¶¶ 138-144;

6. Section 552a(b), which prohibits the improper disclosure of records, due to the Department's disclosure of information to the American Legion and New York Division of Veteran Affairs, *id.* at ¶¶ 145-166; and

7. Section 552a(v), which requires the Director of the Office of Management and Budget to, *inter alia*, develop regulations in implementing the provisions of the Privacy Act, *id.* at ¶¶ 212-220.

Outside the Privacy Act, Plaintiff additionally claims that Defendant violated:

8. 38 U.S.C. § 7332, which prohibits revelation of confidential medical information, by disclosing his medical records to Representative McCarthy, the American Legion, and the New York Division of Veteran Affairs, *id.* at ¶¶ 167-188;

9. 38 C.F.R. § 1.556, the federal regulation mandating that documents be produced in accordance with the timeline under the FOIA, because Defendant took 229 days to produce documents requested by Plaintiff, *id.* at ¶¶ 189-203; and

10. Directives and handbooks issued by the Department, because the New York Regional Office violated agency-wide rules and regulations regarding maintenance of records, *id.* at ¶¶ 204-211.

Defendant filed a pre-answer motion to dismiss, arguing that the Court lacks subject matter jurisdiction over Plaintiff's claims and the Complaint fails to state a claim in any event. For the reasons set forth below, the Court agrees.

## II.   LEGAL STANDARD

### A.  Fed. R. Civ. P. 12(b)(1)

Pursuant to Article III, Section 2 of the United States Constitution, "the jurisdiction of the federal courts is limited to 'Cases' and 'Controversies,' which 'restricts the authority of the federal courts to resolving 'the legal rights of litigants in actual controversies.'" *Amityville Mobile Home Civic Ass'n v. Town of Babylon*, No. 14-CV-2369, 2015 WL 1412655, at *2 (E.D.N.Y. Mar. 26, 2015) (quoting *Genesis Healthcare Corp. v. Symczyk*, --- U.S. ---, 133 S. Ct. 1523, 1528 (2013)). In the absence of a case or controversy, Fed. R. Civ. P. 12(b)(1) "provides that a party may move to

dismiss a case for lack of subject matter jurisdiction." *Amityville Mobile Home*, 2015 WL 1412655, at *3; *see also Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000) ("A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."). The Second Circuit has held that, "[t]he hallmark of a case or controversy is the presence of adverse interests between parties who have a substantial personal stake in the outcome of the litigation." *Evans v. Lynn*, 537 F.2d 571, 591 (2d Cir. 1975); *see also Ayazi v. N. Y. C. Bd. of Educ.*, No. 98-CV-7461, 2006 WL 1995134, at *2 (E.D.N.Y. July 14, 2006), *vacated on other grounds*, 315 F. App'x 313 (2d Cir. 2009) ("Without standing, this court does not have jurisdiction to hear the claim."). Therefore, to survive a defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), "a plaintiff must allege facts 'that affirmatively and plausibly suggest that it has standing to sue.'" *Brady v. Basic Research, L.L.C.*, 101 F. Supp. 3d 217, 227 (E.D.N.Y. 2015) (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)).

In deciding a motion to dismiss for lack of subject matter jurisdiction, "a court must accept as true all material factual allegations in the complaint and refrain from drawing inferences in favor of the party contesting jurisdiction." *U.S. ex rel. Phipps v. Comprehensive Cmty. Dev. Corp.*, 152 F. Supp. 2d 443, 449 (S.D.N.Y. 2001). However, "[w]here subject matter jurisdiction is challenged, . . . a court may consider materials outside the pleadings, such as affidavits, documents and testimony." *Id.*; *see also All. For Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 89, n. 8

(2d Cir. 2006) ("The presentation of affidavits on a motion under Rule 12(b)(1) . . . does not convert the motion into a motion for summary judgment under Rule 56.").

### B. **Fed. R. Civ. P. 12(b)(6)**

In order to survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1940 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1960 (2007)). A claim is considered plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678, 129 S. Ct. at 1949. In deciding a motion to dismiss, "a court must 'accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor.'" *U.S. ex rel. Siegel v. Roche Diagnostics Corp.*, 988 F. Supp. 2d 341, 343 (E.D.N.Y. 2013) (quoting *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009)). In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court's consideration is limited to:

> (1) the factual allegations in the complaint, which are accepted as true; (2) documents attached to the complaint as an exhibit or incorporated . . . by reference; (3) matters of which judicial notice may be taken; and (4) documents upon whose terms and effect the complaint relies heavily, *i.e.,* documents that are "integral" to the complaint.

*Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 498 (S.D.N.Y. 2003) (internal citation omitted).

### C. *Pro Se* <u>Pleadings</u>

It is well-established that pleadings by *pro se* plaintiffs are held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S. Ct. 173 (1980); *see also Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal citations omitted).   The Second Circuit has held that a court reviewing a *pro se* complaint must "construe the complaint broadly, and interpret it to raise the strongest arguments that it suggests." *Weixel v. Bd. of Educ. of the City of New York*, 287 F.3d 138, 146 (2d Cir. 2002) (internal alterations omitted); *see also Rene v. Citibank N.A.*, 32 F. Supp. 2d 539, 541 (E.D.N.Y. 1999) (holding that a court must "make reasonable allowances so that . . . *pro se* plaintiffs do not forfeit their rights by virtue of their lack of legal training."). However, the court "need not argue a *pro se* litigant's case nor create a case for the *pro se* which does not exist." *Ogunmokun v. Am. Educ. Servs./PHEAA*, No. 12-CV-4403, 2014 WL 4724707, at *3 (E.D.N.Y. Sept. 23, 2014) (quoting *Molina v. New York*, 956 F. Supp. 257, 259 (E.D.N.Y. 1995)).

## III.   DISCUSSION

### A. <u>The Privacy Act</u>

The bulk of Plaintiff's claims focus on purported violations of the Privacy Act, specifically the Department's maintenance, collection, and disclosure of his record. Defendant argues that these claims should be dismissed pursuant to rules 12(b)(1)

and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim.  For the reasons set forth below, the Court agrees.

### 1. Civil Remedies Under the Privacy Act

As an initial matter, the Court addresses whether the Department of Veterans Affairs, a federal agency, is immune from suit.  It is well settled that the United States and its agencies are immune from lawsuits in the absence of an express statutory waiver.  *See Lehman v. Nakshian*, 453 U.S. 156, 160, 101 S. Ct. 2698, 2701 (1981) ("Moreover, the Court has recognized the general principle that the United States, as sovereign, 'is immune from suit save as it consents to be sued ... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.") (internal quotation marks omitted); *Arjent LLC v. U.S. S.E.C.*, 7 F. Supp. 3d 378, 383 (S.D.N.Y. 2014) ("Absent an express waiver, government agencies . . . are protected from suit by sovereign immunity.").  Any waiver must be "strictly construed."  *See Rose v. Rose*, 481 U.S. 619, 635, 107 S. Ct. 2029, 2038 (1987).  By its express terms, the Privacy Act, the purpose of which is to "prohibit[] disclosure of certain records by governmental agencies," *Germosen v. Cox*, No. 98 CIV. 1294, 1999 WL 1021559, at *18 (S.D.N.Y. Nov. 9, 1999), "expressly authorizes recovery from the government . . . ."  *F.A.A. v. Cooper*, --- U.S. ---, 132 S. Ct. 1441, 1448 (2012); *see also McCain v. U.S.*, No. 2:14-CV-92, 2015 WL 1221257, at *24 (D. Vt. Mar. 17, 2015) ("The Privacy Act provides a limited waiver of sovereign immunity . . . .").  Indeed, subsection (g)(1) of the Privacy Act explicitly provides for civil remedies against an agency for four different categories of harm.  *See Doe v. Chao*, 540 U.S. 614, 618, 124

15

S. Ct. 1204, 1207 (2004) (providing an overview of the civil remedies of the Privacy Act).

The first two categories of conduct warranting relief are in subsections g(1)(A) and g(1)(B), which provide for redress where an agency either decides not to amend an individual's record in accordance with a request under the Privacy Act, or refuses to allow an individual access to review his or her record. *See* 5 U.S.C. § 552a(g)(1)(A)-(B). The remedy for either violation is strictly injunctive, with a Court ordering the agency to amend its record or enjoin it from improperly withholding records. *Id.* at (g)(2)-(3).

The other two categories of harm prohibited include the failure to maintain records "with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination" pursuant to subsection (g)(1)(C), and the "catchall provision" of subsection (g)(1)(D), which prevents a failure "to comply with any other provision of this section . . . in such a way as to have an adverse effect on an individual." *Id.* at (g)(1)(C)-(D). Breach of either of these two sections warrants damages, not injunctive relief. Specifically, section 552a(g)(4) states:

> (4) In any suit brought under the provisions of subsection (g)(1)(C) or (D) of this section in which the court determines that the agency acted in a manner which was intentional or willful, the United States shall be liable to the individual in an amount equal to the sum of—
>
> (A) actual damages sustained by the individual as a result of the refusal or failure, but in no case shall a person entitled to recovery receive less than the sum of $1,000; and
>
> (B) the costs of the action together with reasonable attorney fees as determined by the court.

5 U.S.C. § 552a(g)(4).  The term "actual damages" applies to "proven pecuniary or economic harm," and does not encompass damages for mental or emotional distress. *See Cooper*, --- U.S. ---, 132 S. Ct. at 1453 ("As a consequence, we adopt an interpretation of 'actual damages' limited to proven pecuniary or economic harm."); *see also Oslzly v. Mendlewicz*, No. 15CIV5681, 2015 WL 7575902, at *3 (E.D.N.Y. Nov. 25, 2015) ("The Privacy Act, codified at 5 U.S.C. § 552a, permits recovery for actual damages, meaning pecuniary or economic harm, caused by a federal agency's disclosure of confidential records held by that agency.") (internal quotation marks omitted).  Accordingly, the Court concludes that the Department is not immune from suit under the Privacy Act.

Here, Conyers' seven Privacy Act causes of action center on issues regarding the maintenance, collection, and disclosure of his records, and the record-keeping obligations of the agency.  As no cause of action appears to request an amendment of the file or lack of access, the seven Privacy Act causes of action are deemed alleged pursuant to either subsection g(1)(C) or g(1)(D) for "actual damages."[1]

2.  Subject Matter Jurisdiction

At the outset, the United States argues the Court lacks subject matter jurisdiction over Plaintiff's Privacy Act claims.  *See* Memorandum of Law in Support of Defendant's Motion to Dismiss ("Def.'s Mem. Law"), DE [27], 13.  It labels Conyers' Privacy Act allegations as "carefully veiled claims," noting that although "Plaintiff

---

[1] Plaintiff does, in his motion papers, request leave to amend his Complaint to add claims for injunctive relief, which the Court addresses below.

characterizes this action on the surface as one invoking liability" under the Privacy Act, it is merely a rhetorical cover for the actual dispute that has left Conyers disgruntled—the determination that he is not entitled to self-employment benefits. *Id.* The Department insists that challenges to its determinations are exclusively left to the Secretary of Veteran Affairs, and, therefore, this Court lacks subject matter jurisdiction over these claims. *Id.* The Court agrees as to the Privacy Act causes of action one through five, but not causes of action six and ten, all brought pursuant to the Privacy Act.

As set forth above, injunctive relief is only proper under the Privacy Act to remedy an inaccurate or incomplete document or a violation of an individual's right of access. *See* 5 U.S.C. § 552a(g)(1)(A)-(B); *Tarullo v. Def. Contract Audit Agency*, 600 F. Supp. 2d 352, 358 (D. Conn. 2009) ("The Privacy Act, however, expressly provides for injunctive relief only when an agency either wrongful[ly] withholds a plaintiff's documents or wrongful[ly] refuses to amend a plaintiff's record."). Thus, "[t]he Privacy Act . . . cannot be used as a vehicle to 'correct' a substantive decision unfavorable to an individual's interest." *Melvin v. U.S. Dep't of Veterans Affairs*, 70 F. Supp. 3d 350, 357 (D.D.C. 2014), *aff'd,* No. 14-5263, 2015 WL 3372292 (D.C. Cir. May 6, 2015); *see also Philippeaux v. U.S.*, No. 10 CIV. 6143, 2011 WL 4472064, at *4 (S.D.N.Y. Sept. 27, 2011) ("To the extent that plaintiff is seeking review of the VA's decision, the law does not permit this Court to hear his claim."); *Douglas v. Agric. Stabilization & Conservation Serv.*, 33 F.3d 784, 785 (7th Cir. 1994) ("We join many other circuits in holding that the Privacy Act does not authorize relitigation of the

substance of agency decisions."). To that end, Courts have dismissed Privacy Act claims, and others, for want of jurisdiction where the causes of action were merely a collateral attack on the Department's decision. *See Philippeaux*, 2011 WL 4472064, at *9 (finding no jurisdiction to the extent a "Privacy Act claim is another version of [plaintiff's] effort to review the VA's denial of benefits"); *Brown v. U.S.*, No. 10CV497, 2011 WL 4439314, at *1 (W.D.N.Y. Sept. 23, 2011), Report and Recommendation *adopted by* 2011 WL 4809138 (W.D.N.Y. Oct. 11, 2011) ("The fact that the plaintiff brings the action under the FTCA does not provide the Court with jurisdiction over a benefits claim."); *Walker v. U.S.*, No. CIV. A. 93-2728, 1998 WL 637360, at *14 (E.D. La. Sept. 16, 1998), *aff'd,* 184 F.3d 816 (5th Cir. 1999) ("Courts have routinely disapproved of the use of the Privacy Act as a vehicle for collateral attacks on judicial or quasi-judicial determinations recorded in agency records."); *Di Silvestro v. U.S.*, 181 F. Supp. 860, 861 (E.D.N.Y. 1960) ("Although the plaintiff asserts that those claims are based on the Federal Tort Claims Act, and are ostensibly for damages, this is, in reality, another attempt to obtain a review of the decision of the Veterans' Administration . . . .").

Moreover, Chapter 38 of the United States Code limits the ability to challenge a determination by the Department. 38 U.S.C. § 511 expressly states that:

> The Secretary [of Veteran Affairs] shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans. Subject to subsection (b), the decision of the Secretary as to any such question shall be final and conclusive and may not be reviewed by any other official or by any court, whether by an action in the nature of mandamus or otherwise.

38 U.S.C. § 511(a). Subsection (b) contains four exceptions, which, notably here, include "matters subject to section 502 of this title." *Id.* at 511(b). Although section 502 relates to judicial review of sections 552(a)(1) and 553, related to the Privacy Act and the FOIA, "502 review is available only in the Court of Appeals for the Federal Circuit." *Sugrue v. Derwinski*, 26 F. 3d 8, 10 (2d Cir. 1994); *see also* 38 U.S.C. § 502 (stating that judicial review "may be sought only in the United States Court of Appeals for the Federal Circuit").

Instead of judicial review of the Secretary of Veteran Affairs' decisions, Congress enacted the Veterans' Judicial Review Act ("VJRA") which provides for a "multi-tiered review of veteran's benefits claims . . . ." *Philippeaux*, 2011 WL 4472064, at *4. This review begins with an appeal to the BVA, the decision of which is solely reviewed by the Court of Appeals for Veterans Claims. *See* 38 U.S.C. §§ 7104(a); 7252(a). Those decisions are then appealable only to the United States Court of Appeals for the Federal Circuit, which "is then subject to review in the United States Supreme Court by writ of certiorari." *See Philippeaux*, 2011 WL 4472064, at *4; *see also Ramnarain v. U.S. Veterans Admin.*, No. 11 CIV. 4988, 2012 WL 1041664, at *1 (E.D.N.Y. Mar. 28, 2012) (setting forth the procedure for challenging the denial of benefits). As such, "the statutory scheme forecloses the possibility of review for disputed veterans benefits claims in any federal district court." *Odonoghue v. U.S. Dep't of the Army*, No. 12-CV-5338, 2012 WL 5959979, at *2 (E.D.N.Y. Nov. 26, 2012).

Consistent with this paradigm, the Second Circuit has addressed, and dismissed, the use of the Privacy Act as a disguised collateral attack on a benefits

determination.   In *Sugrue v. Derwinski*, the plaintiff, an honorably discharged veteran, challenged his disability rating provided by the Veterans' Administration and which was affirmed by the BVA.  26 F. 3d 8, 10 (2d Cir. 1994).  He commenced an action alleging violations of the Fifth Amendment, the FOIA, and the Privacy Act due to the agency's failure to maintain his records with "accuracy, relevance, timeliness, and completeness."  *Id.*  The District Court dismissed the case for lack of subject matter jurisdiction.  *Id.*  On appeal, and after analyzing 38 U.S.C. § 511, the Second Circuit noted that Plaintiff's claims amounted merely to a "challenge [of] the VA's denial of a certain level of benefits to Sugrue based upon a disputed disability rating."  *Id.* at 11.  It affirmed the District Court, reasoning that: "[a]lthough Sugrue's complaints invoke provisions of the Fifth Amendment and are styled in part as constitutional actions, the courts do not acquire jurisdiction to hear challenges to benefits determinations merely because those challenges are cloaked in constitutional terms. . . .  Similarly, neither the Privacy Act nor the FOIA may be used as a rhetorical cover to attack VA benefits determinations."  *Id.* at 11.

*Sugrue* is squarely applicable here.  Plaintiff's first cause of action is pursuant to section 552a(e)(1), which mandates that an agency "maintain in its records only such information about an individual as is relevant and necessary to accomplish a purpose of the agency . . . ."  5 U.S.C. § 552a(e)(1).  He argues that the Department violated this section by failing "to utilize, recognize or acknowledge the relevance of the material information contained of," and "supplanting the findings, conclusions, and determinations reported in" the Counseling Report.  *See* Compl. ¶¶ 114 (a)-(gg).

These allegations merely attack what information Defendant chose to rely on and how it processes different evidence, and makes no mention as to what information was actually included in the record. This, in short, is an attack on Defendant's analysis behind its determination, and therefore, consistent with *Sugrue*, is merely a "rhetorical cover" for Plaintiff's challenge with the determination.

The same is true for the second, third, and fourth causes of action. The second claim is pursuant to section 552a(e)(2) for failure to collect information "to the greatest extent practicable" directly from Conyers. In alleging this claim, Conyers argues that the Department intentionally and willfully failed to collect information directly from him when compiling the December 17, 2013 letter and the Counseling Record – Narrative Report on January 7, 2014 and thereafter "[u]tiliz[ed] the opinions and decisions" in the December 17, 2013 letter in making its determinations. *See id.* at ¶ 121. For the third and fourth causes of action, he claims that Defendant failed to maintain accurate, relevant, timely, and complete records by first not ensuring that the Counseling Report was always included in his record and also failing to "discern the discrepancies" between the Counseling Report and the other documents in his folder, and by disseminating the record in this deficient state, to third parties. *See id.* at ¶¶ 125, 133. These allegations, particularly those regarding Plaintiff's displeasure with how the Department "utilize[ed]" and "discern[ed]" information, ultimately attack Defendant's decision-making, which is outside the purview of this Court. *See Melvin*, 70 F. Supp. 3d at 358 ("The law is settled that this Court may not hear claims attempting to challenge impermissibly the underlying VA benefits

decisions; to allow such Privacy Act claims would require this Court to intrude impermissibly on the province of the Secretary of Veterans Affairs.").

The fifth cause of action focuses on the conduct by agency employees, and similarly is a collateral attack on Defendant's determination.  Claim five is pursuant to section 552a(e)(9), which requires that rules of conduct be established for persons involved in the maintenance of records.  Conyers believes that the agency violated this section by failing to ensure that relevant personnel were "trained in, familiar with, and complied" with certain regulations.  *See* Compl. ¶ 140.  This failure, according to him, resulted in an impairment of his rights to due process and the loss of professional opportunities.  *Id.* at ¶ 143.  Considering that Plaintiff challenges the actions and omission by the employees as it relates to his "loss of professional opportunities," such cause of action is an attack on the decisions by Holder and other employees, which are an impermissible "attempt[] to circumvent 38 U.S.C. § 511(a)" by seeking redress of the Board's determination as a veiled attempt under the Privacy Act.  *See Sugrue v. Derwinski*, 808 F. Supp. 946, 950 (E.D.N.Y. 1992).

That Conyers is utilizing this action to collaterally attack the Department's determination is further verified by the "Contentions" section in his Complaint.  For approximately twenty pages in the middle of his pleading, Plaintiff lists, *inter alia*, the discrepancies between the Counseling Report and Defendant's determinations throughout the pendency of his claim.  *See* Compl. ¶¶ 84-112.  He ultimately concludes that the Counseling Report had determined that he was "eligible for and entitled to Chapter 31 benefits," but, due to the intentional and willful acts of the

Board, he suffered many injuries including a lack of "meaningful" process to obtain Chapter 31 benefits, "adverse determinations in implementing an appropriate program of Chapter 31 services," and a prolonging of "unemployment unnecessarily," amongst others. *Id.* at ¶ 112. These allegations similarly attack the appropriateness of the determination, reflecting his discontent with the decision, outside the scope of this Court's review. Accordingly, the Court lacks subject matter jurisdiction over the Complaint's first, second, third, fourth and fifth causes of action.

In reaching this conclusion, the Court acknowledges that in advocating for his claims, Plaintiff argues that he only alleges "non-benefit determinations" which are reviewable by District Courts. He cites to *Johnson v. Robison*, 415 U.S. 361, 94 S.Ct. 1160 (1974) and *Disabled American Veterans v. U.S. Dep't of Veterans Affairs*, 962 F.2d 136 (2d Cir. 1992) in support of his position that "Federal courts have long recognized the distinction between a DVA benefit determination and a DVA non-benefit determination." Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Pl.'s Mem. Law"), DE [28], 3. Conyers' application of the law to this case overstates the holdings of *Johnson* and *Disabled American Veterans* alike, which apply to constitutional challenges to the legislation. For example, in *Johnson*, the plaintiff sought a declaratory judgment that sections of Title 38 violate the First Amendment. *Johnson*, 415 U.S. at 364, 94 S.Ct. at 1164. The Court rejected the claim that the Court lacked jurisdiction to review the matter, reasoning that the limited judicial review process "does not extend the prohibitions . . . to actions challenging the constitutionality of laws providing benefits to veterans . . . ." *Id.* at

373, 94 S.Ct. at 1169.  Similarly, in *Disabled American Veterans*, the Court held that "since the Veterans neither make a claim for benefits nor challenge the denial of such a claim, but rather challenge the constitutionality of a statutory classification drawn by Congress, the district court had jurisdiction to consider their claim." *Disabled American Veterans*, 962 F.2d at 141.  Here, Conyers does not claim that any section of the Privacy Act is unconstitutional, and hence, these cases do not support his position.

Nor does Plaintiff's attempt to distinguish his allegations as "non-benefit determinations" persuade the Court to adopt a different outcome.  For his part, Plaintiff argues that he is only seeking "forms of relief as afforded under the Privacy Act," and that he has not pleaded the loss of Vocational and Rehabilitation benefits as damages.  Pl.'s Mem. Law at 7, 9.  The Court disagrees, as Conyers overtly pleads in the Complaint that he has suffered, due to the purported violations of the Privacy Act, "the lost [*sic*] of benefits . . .the lost [*sic*] of professional opportunities, and the lost [*sic*] of past, current, and future economic opportunities."  *See* Compl. ¶¶ 115; 122; 130; 136; 143.  Moreover, even if not blatantly seeking a reversal of Defendant's decision, Plaintiff nonetheless challenges the decision-making of the Department, including how it chose and weighed evidence before it, components of Defendant's thought process which is outside the scope of this Court's judicial review.  *See Sugrue*, 26 F.3d at 12 (finding no subject matter jurisdiction where the plaintiff's claim "is based solely upon [the VA Employee's] acts or omissions concerning the assigning of a disability rating, and hence a benefit level, to [plaintiff].").

25

On the other hand, the Court finds that Conyers' sixth and tenth causes of action should not be dismissed for want of jurisdiction.  The sixth claim is brought pursuant to section 552a(b), which prohibits the unauthorized disclosure of information. 5 U.S.C. § 552a(b).  In alleging this claim, Plaintiff believes that the New York Regional Office disclosed his "personally identifiable information" without his consent to outside parties.  Compl. ¶ 164.  This assertion does not attack the determination by the Department, but rather a potential unauthorized disclosure of his information, which can lead to potential harms outside the scope of his denial of self-employment benefits.  He also asserts a claim pursuant to section 552a(v) which provides guidelines for the Office of Management and Budget.  Regarding this claim, he states that the New York Regional Office did not follow these rules in responding to his request for documents, touching upon a FOIA claim.  *Id.* at ¶ 217(b).  As such, the Court recommends that they not be dismissed for want of jurisdiction.

Accordingly, for the reasons set forth above, the Court recommends that Plaintiff's first, second, third, fourth, and fifth causes of action under the Privacy Act be dismissed for lack of subject matter jurisdiction, but not the sixth and tenth claims.

### 3. Failure to State a Claim

The Court next turns to the remaining two Privacy Act claims—the sixth and tenth causes of action pursuant to 5 U.S.C. § 552a(b) and (v).  Although the Court has jurisdiction to hear these claims, for the reasons set forth below, the Court respectfully recommends that they be dismissed pursuant to Rule 12(b)(6) for failure to state a cause of action.

In establishing a claim under the Privacy Act, "a plaintiff must show that: (1) the information at issue is a record contained within a system of records; (2) the agency violated the Act with respect to that record; (3) the disclosure had an adverse effect on the plaintiff; and (4) the violation was willful or intentional." *Philippeaux*, 2011 WL 4472064, at *8 (S.D.N.Y. Sept. 27, 2011) (internal quotation marks omitted); *see also Int'l Union, Sec., Police, & Fire Professionals of Am. (SPFPA) v. U.S. Marshal's Serv.*, 350 F. Supp. 2d 522, 528 (S.D.N.Y. 2004) (citing same factors). The "plaintiff [] bears the burden of proof for each element of his claim." *Tarullo*, 600 F. Supp. 2d at 358 (citing *Krieger v. U.S. Dep't of Justice,* 529 F.Supp.2d 29, 40 (D.D.C.2008)).

The "adverse effect" prong is satisfied by a showing of "actual damages." *Foncello v. U.S. Dep't of Army*, No. 3:04-CV-604, 2005 WL 2994011, at *4 (D. Conn. Nov. 7, 2005). In 2012, the Supreme Court clarified that "actual damages" is equivalent to pecuniary damages, and does not include emotional and mental distress. *See Cooper*, --- U.S. ---, 132 S. Ct. at 1453, 1456 ; *Young v. Tryon*, No. 12-CV-6251, 2013 WL 2471543, at *5 (W.D.N.Y. June 7, 2013) ("Thus, to properly state a claim for a violation of the Privacy Act, a plaintiff must allege some pecuniary harm."). Additionally, in interpreting the "adverse effect" element, the Supreme Court explained in *Chao* that it is "a term of art identifying a potential plaintiff who satisfies the injury-in-fact and causation requirements of Article III standing, and who may consequently bring a civil action without suffering dismissal for want of standing to sue." *Chao*, 540 U.S. at 624, 124 S. Ct. at 1211; *see also Tarullo*, 600 F.

Supp. 2d at 359; *Int'l Union, Sec., Police, & Fire Professionals of Am. (SPFFPA)*, 350 F.Supp.2d at 528.  To establish the requisite causation, "a plaintiff must demonstrate a close nexus between the disclosure and the adverse effects alleged." *Mandel v. U.S. Office Pers. Mgmt.*, 79 F. App'x 479, 481 (2d Cir. 2003).

Furthermore, as expressed above, in order to pursue damages a plaintiff "must plead an 'intentional or willful' violation of the Privacy Act." *Foncello*, 2005 WL 2994011, at *4.  This standard is "somewhat greater than gross negligence." *Dowd v. I.R.S.*, 776 F.2d 1083, 1084 (2d Cir. 1985) (per curiam).  It is also connected to the requirement of an adverse effect, which "must stem from a willful violation of the Act, and not from mere administrative error." *Miller v. McHugh*, 814 F. Supp. 2d 299, 315 (S.D.N.Y. 2011) (internal quotation marks omitted); *see also Hills v. Liberty Mut. Ins.*, No. 14-CV-0328S, 2015 WL 1243337, at *3 (W.D.N.Y. Mar. 18, 2015) ("[A]dministrative error . . . is insufficient to state a claim under the Privacy Act.").

Applying these principles, Plaintiff's sixth cause of action fails to state a claim for which relief can be granted.  Section 552a(b) of the Privacy Act mandates that an agency not disclose any record without a person's consent.  *See* 5 U.S.C. § 552a(b) ("No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains . . . .").  Conyers pleads that the Department wrongfully disclosed his "personally identifiable information" to the American Legion, the New York State Division of Veterans Affairs, and "to any other person or agency" without his consent.

28

Compl. ¶ 164.  However, he also alleges that it is "unknown and impossible to state conclusively" whether the information was shared, either by the New York Regional Office, American Legion, or New York State Division of Veterans Affairs, and that the "possibility of further disclosure" has left him "highly anxious."  *Id.* at ¶¶ 154-160.  The speculation as to the sharing of information and potential harm is insufficient to constitute an "adverse effect" under the statute.  For example, in *Philippeaux*, the Court dismissed a similar claim of potential future harm stemming from an unauthorized disclosure, reasoning that the plaintiff's "assertions are insufficient to support a plausible claim under the Privacy Act because he fails to adequately show that he was adversely affected by any disclosure."  2011 WL 4472064, at *9.  Moreover, to the extent Conyers' claim is based upon the fear that his information may be shared in the future, this allegation is not ripe for review.  *See Sutera v. Transp. Sec. Admin.*, 708 F. Supp. 2d 304, 318 (E.D.N.Y. 2010) ("To the extent plaintiff's [Privacy Act] claim is premised on a speculative fear that prospective employers will find out that his termination was based upon the alleged use of illegal drugs and thereby tarnish his reputation, his claim is not ripe.") (internal quotations and alterations omitted).

Plaintiff's tenth claim, pursuant to section 552a(v), is perplexing.  This statutory section states that the Director of the Office of Management and Budget shall:  "(1) develop and, after notice and opportunity for public comment, prescribe guidelines and regulations for the use of agencies in implementing the provisions of this section; and (2) provide continuing assistance to and oversight of the

implementation of this section by agencies." 5 U.S.C. § 552a(v).  Plaintiff claims that
the New York Regional Office violated this section by failing to comply with
guidelines set by the Office of Management and Budget.  Compl. ¶ 217.  This
allegation does not state a claim under section 552a(v), which does not elaborate on
conduct by the New York Regional Office, or any other office, but only sets forth
responsibilities of the Office of Management and Budget.  As Conyers does not plead
that the Office of Management and Budget failed to develop or implement any
required regulations, this claim also fails pursuant to Fed. R. Civ. P. 12(b)(6).

Accordingly, for the reasons set forth above, the Court respectfully
recommends that Plaintiff's sixth and tenth causes of action be dismissed for failure
to state a claim.

### B. Confidentiality of Medical Records, 38 U.S.C. § 7332

Plaintiff's seventh cause of action is for a violation of 38 U.S.C. § 7332, which
bars the disclosure of medical records for patients treated for drug or alcohol abuse,
HIV infection, or sickle cell anemia.  *See* 38 U.S.C. § 7332(a)(1).  He particularly
focuses on the Department's revelation of his alcohol and marijuana use, "self-
report[ed] to his health care provider," which Defendant allegedly and improperly
shared with Representative McCarthy, the American Legion, and the New York State
Division of Veteran Affairs.  *See* Compl. ¶¶ 167-188.

This claim by Conyers is barred by the doctrine of sovereign immunity.  As set
forth above, governmental agencies are immune from suit unless there is an express
statutory waiver.  *See Odonoghue*, 2012 WL 5959979, at *2 ("Short of a statutory

waiver, claims against the United States, its agencies and employees [functioning in their official capacities] are barred under the principle of sovereign immunity."). 38 U.S.C. § 7332 does not contain an express waiver; indeed, the only remedy outlined by the statute is for damages against "[a]ny person."  38 U.S.C. § 7332(g); *Schuett v. Veterans Admin.*, No. 2:14-CV-216, 2015 WL 4459399, at *2 (D. Vt. July 21, 2015) ("[Plaintiff] cannot overcome the jurisdictional exclusion established under Title 38, nor can he establish a waiver of sovereign immunity necessary to bring suit against a federal government agency."); *Ramnarain*, 2012 WL 1041664, at *1 ("With regard to claims against the VA, Congress has held fast to the doctrine of sovereign immunity but has created an alternative channel for review of veterans' claims."); *Grant v. U.S.*, No. 2:11-CV-00360, 2011 WL 5554878, at *7 (E.D. Cal. Nov. 15, 2011), Report and Recommendation *adopted by* 2012 WL 218959 (E.D. Cal. Jan. 23, 2012) ("In regards to plaintiff's proposed claims asserted pursuant to 38 U.S.C. § 7332, that statutory section provides no express waiver of the federal government's sovereign immunity."); *Morris v. Nicholson*, No. CIV. 1:05-0041, 2007 WL 2905346, at *3 (M.D. Tenn. Sept. 26, 2007) (finding a section 7332 claim barred by sovereign immunity "[t]o the extent that Plaintiff seeks damages against the VA or the Secretary . . . ."). Further, the statute does not provide for a private right of action, as 38 C.F.R. § 1.463 provides for a *criminal* penalty against "any person" pursuant to 38 U.S.C. § 7332(g). *See* 38 C.F.R. § 1.463; *Jackson v. Shinseki*, No. 10-CV-02596, 2010 WL 5246572, at *1 (D. Colo. Dec. 16, 2010) ("Nothing in section 7332 suggests a congressional purpose of providing a private cause of action.").

31

Based on the foregoing, the Court respectfully recommends that Plaintiff's claim under 38 U.S.C. § 7332, his seventh cause of action, be dismissed.

## C. <u>Freedom of Information Act</u>

Plaintiff's eighth claim relates to his FOIA request and the Department's untimely response.  Specifically, he claims that Defendant violated 38 C.F.R. § 1.556 and the FOIA by taking 229 days to respond to his application.  Compl. ¶¶ 189-203. Upon review, the Court finds that, even though Defendant's response was untimely under the statute, this cause of action is moot.

Pursuant to regulation 38 C.F.R. § 1.556(a), a request for records from an agency should be responded to "in their order of receipt and within the time frames established under the FOIA."  38 C.F.R. § 1.556(a).  Pursuant to the FOIA, each agency shall respond to the request "within 20 days," explaining whether it chose to comply or deny the request.  5 U.S.C. § 552(a)(6)(A).  This timeframe may be extended "[i]n unusual circumstances . . .  by written notice to the person making such request . . . ."  *Id.* at § 552(a)(6)(B).  However, the remedy for a plaintiff under the FOIA who has not received requested records "is limited to 'access to the documents to which he is entitled under the law' whether the search is completed before or after a requestor files a lawsuit."  *See Ivey v. U.S. Dep't of Justice Exec. Office for U.S. Atty.*, No. 7:13-CV-00917, 2015 WL 507219, at *3 (N.D.N.Y. Feb. 6, 2015) (quoting *Hainey v. U.S. Dep't of Interior,* 925 F.Supp.2d 34, 42 (D.D.C. 2013) (alterations omitted); *see also Diamond v. Fed. Bureau of Investigation*, 532 F. Supp. 216, 233 (S.D.N.Y. 1981), *aff'd sub nom. Diamond v. F.B.I.*, 707 F.2d 75 (2d Cir. 1983) ("However, the FOIA does not

provide for damages for defendant's failure to produce documents."). To that end, "if the agency either complies or agrees to comply with the request, even if its reply is late or after litigation has begun, the requester's claim for relief under the FOIA is moot." *Sussman v. U.S. Dep't of Justice*, No. 03 CIV.3618, 2006 WL 2850608, at *6 (E.D.N.Y. Sept. 30, 2006); *see also Fisher v. F.B.I.*, 94 F. Supp. 2d 213, 217 (D. Conn. 2000) ("With or without an extension of time, once the requester receives the requested documents, the claim for relief under FOIA becomes moot.") (internal citations omitted).

Here, Plaintiff pleads that he requested records on July 3, 2014, Compl. ¶ 78, received confirmation of this demand on July 12, 2014, *id.* at ¶ 79, but did not receive a response until 229 days later. *Id.* at ¶ 80. As a result, he claims the untimely response hindered his ability "to timely ascertain the accuracy, relevance, timeliness, and completeness" of the information as well as seek out correction or amendment. *Id.* at ¶¶ 198-199. However, as it is undisputed that Plaintiff received the requested folder, albeit late, he does not have a remedy under the FOIA. *See Ivey*, 2015 WL 507219, at *3 ("Untimely responses, in and of themselves, do not entitle a plaintiff to judgment in his favor.") (citations and internal alterations omitted); *Andersen v. Leavitt*, No. CIV A 03-6115, 2007 WL 2874838, at *16 (E.D.N.Y. Sept. 27, 2007) (finding a FOIA claim for untimeliness moot where defendant had produced documents). As such, the claim is moot, and the Court recommends that it be dismissed for lack of subject matter jurisdiction. *See Aleman v. Innovative Elec.*

*Servs. L.L.C.*, No. 14-CV-868, 2014 WL 4742726, at *2 (S.D.N.Y. Sept. 15, 2014) ("Federal courts lack subject matter jurisdiction over a moot action.").

Moreover, to the extent that Plaintiff seeks redress pursuant to the Privacy Act, this allegation fails to state a claim upon which relief may be granted. In pleading this cause of action, the last allegation states that the Department is liable for "intentional and willful acts" pursuant to the catchall provision of the Privacy Act, which provides for civil remedies where an agency "fails to comply with any other provision of this section, or any rule promulgated thereunder . . . ." Compl. ¶ 203; 5 U.S.C. § 552a(g)(1)(D). However, he does not elaborate on any specific violation of the Privacy Act, and therefore, even construing the pleading liberally, the Court cannot decipher the alleged harm under that statute. Further, Courts have dismissed similar Privacy Act claims that are premised on a delay in production of records. *See*, *e.g.*, *Fisher*, 94 F. Supp. 2d at 216 (finding no jurisdiction under the Privacy Act where "[t]he fact that the records came after some delay is not necessarily tantamount to an improper denial of the records . . . .").

As such, the Court recommends that Plaintiff's tenth cause of action be dismissed.

**D. <u>Veterans Affair Directives and Handbooks</u>**

Conyers further alleges his ninth cause of action for Defendant's violation of "agency rules implementing the requirement of the [Privacy Act] and [FOIA] in multiple instances." *See* Compl. ¶¶ 204-211. Specifically, he claims that the New York Regional Office violated provisions of Veterans Affair Directive 3600, titled

"Records and Information Management," by failing to ensure that all records be maintained in accordance with applicable laws and that information only be collected and disclosed when authorized. *Id.* at ¶¶ 206(a)-(c). He also asserts violations of Veterans Affairs Handbooks 6300.1-6300.5 for failure to protect, maintain, and disclose information in accordance with applicable laws and regulations, timely respond to FOIA requests, and ensure that offices maintain documents as prescribed by the Privacy Act. *Id.* at ¶¶ 206(d)-(p). The Court is unaware of any private right of action that exists by virtue of Defendant's violation of the directive or handbooks. *See, e.g.*, *Santos v. Reverse Mortg. Sols., Inc.*, No. 12-3296-SC, 2013 WL 5568384, at *6 (N.D. Cal. Oct. 9, 2013) (finding that an HUD handbook does not create a private right of action). Further, to the extent this cause of action incorporates the requirements of the Privacy Act and the FOIA, these claims are duplicative of his other causes of action, and are subject to dismissal for the same reasons expressed above. Accordingly, the Court recommends that Plaintiff's ninth cause of action be dismissed for failure to state a claim.

## IV.   LEAVE TO AMEND

Finally, the Court turns to whether Conyers should be granted leave to amend. In general, leave may be granted "when justice so requires." Fed. R. Civ. P. 15(a)(2). If "dismissal is based on a *pro se* plaintiff's failure to comply with pleading conventions, a district court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Henriquez-Ford v. Council of Sch. Supervisors &*

*Administrators*, No. 14-CV-2496, 2016 WL 93863, at *2 (S.D.N.Y. Jan. 7, 2016) (quoting *Crisci-Balestra v. Civil Serv. Employees Ass'n, Inc.*, 2008 WL 413812, at *6 (E.D.N.Y. Feb. 13, 2008)). A *pro se* litigant should be given one opportunity to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Vlad-Berindan v. MTA New York City Transit*, No. 14-CV-675, 2014 WL 6982929, at *12 (S.D.N.Y. Dec. 10, 2014) (quoting *Gomez v. USAA Federal Savings Bank,* 171 F.3d 794, 796 (2d Cir. 1999) (per curiam)).

Initially, Plaintiff requests leave to amend his complaint to add causes of action pursuant to 5 U.S.C. § 552a(g)(1)(A)-(B), which provides for injunctive relief. Pl.'s Mem. Law at 10. He argues that the Department has still neither provided him with an accurate copy of his record nor amended it as he requested. *Id.* Given the liberal standard of Rule 15, the Court recommends that leave to amend the Complaint be granted to add such causes of action related to injunctive relief. *See Amaya v. Roadhouse Brick Oven Pizza, Inc.*, 285 F.R.D. 251, 253 (E.D.N.Y. 2012) ("A court should freely give leave [to amend] when justice so requires and such leave is in the court's discretion.") (internal quotation marks omitted); *Assam v. Deer Park Spring Water, Inc.*, 163 F.R.D. 400, 404 (E.D.N.Y. 1995) ("Federal Rule of Civil Procedure 15(a) dictates that motions to amend complaints be liberally granted absent a good reason to the contrary . . . .").

Further, the Court recommends that leave be granted to re-plead causes of action one, two, three, four, five, six, eight, nine, and ten, which either allege or touch

upon the Privacy Act. *See Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) ("When the court chooses to dismiss, it normally grants leave to file an amended pleading that conforms to the requirements of Rule 8."). However, the Court recommends that leave not be granted to amend cause of action seven, which seeks redress pursuant to 38 U.S.C. § 7332, because this claim is barred by the doctrine of sovereign immunity. This flaw is fatal, and therefore amendment would be futile. *See Smith v. U.S.*, 554 F. App'x 30, 32 (2d Cir. 2013) (summary order) (affirming denial of leave to amend where claim was dismissed on the grounds of sovereign immunity, a "fatal substantive defect[]"); *Davison v. N.Y. City Transit Auth.*, No. 07-CV-3225, 2008 WL 3334078, at *2 (E.D.N.Y. Aug. 8, 2008) ("If repleading would be futile, however, courts should deny leave to amend.").

## V.   CONCLUSION

For the reasons set forth above, the Court recommends that Plaintiff's Complaint be dismissed in its entirety, and that he be granted leave to amend the Complaint to add causes of action for injunctive relief pursuant to 5 U.S.C. 552a(g)(1)(A)-(B) and re-plead causes of action one, two, three, four, five, six, eight, nine, and ten, but not claim seven.

## VI.   OBJECTIONS

A copy of this Report and Recommendation is being served on Defendant by electronic filing on the date below. Defendant is directed to serve a copy of this Report and Recommendation on Plaintiff and promptly file proof of service by ECF. Any objections to this Report and Recommendation must be filed with the Clerk of the

Court within fourteen (14) days of receipt of this report.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72; *Ferrer v. Woliver*, No. 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).


Dated:     Central Islip, New York
         January 10, 2017

                            s/ Steven I. Locke
                            STEVEN I. LOCKE
                            United States Magistrate Judge