UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
VINCENT CURTIS CONYERS,

                          Plaintiff,

     -against-

UNITED STATES DEPARTMENT OF
VETERANS AFFAIRS,

                         Defendant.
-------------------------------------------------------------x

**REPORT AND
RECOMMENDATION**
16-CV-00013 (JFB) (SIL)

**LOCKE, Magistrate Judge:**

      Presently before the Court, on referral from the Honorable Joseph F. Bianco

for Report and Recommendation, is Defendant United States Department of Veterans

Affairs' ("Defendant" or the "Department") motion to dismiss *pro se* Plaintiff Vincent

Curtis Conyers's ("Plaintiff" or "Conyers") Amended Complaint for lack of subject

matter jurisdiction and failure to state a claim pursuant to Federal Rules of Civil

Procedure ("Fed. R. Civ. P.") 12(b)(1) and 12(b)(6). *See* Docket Entry ("DE") [45]. By

way of Complaint filed January 4, 2016 and amended on February 1, 2017, Plaintiff

commenced this action alleging claims under the Privacy Act of 1974 ("Privacy Act"),

5 U.S.C. § 552a *et seq*. *See* Amended Complaint ("Am. Compl."), DE [36]. On May

19, 2017, Defendant moved to dismiss the Amended Complaint for lack of subject

matter jurisdiction and failure to state a claim, DE [45], which Plaintiff opposes. *See*

DE [51]. On October 18, 2017, Judge Bianco referred the motion to this Court for

Report and Recommendation as to whether it should be granted. *See* DE [54]. For

the reasons set forth herein, the Court respectfully recommends that Conyers's

Complaint be dismissed in its entirety.   However, it is also recommended that Plaintiff be granted leave to re-plead his Sixth, Seventh, and Eighth Causes of Action.

## I.    BACKGROUND

Unless otherwise noted, the following facts are taken from Conyers's Amended Complaint and accompanying exhibits, which total 403 pages.   All allegations are presumed true for the purposes of this motion.  This action centers around purported Privacy Act violations perpetrated by the Department against Conyers while he pursued self-employment assistance benefits.  *See generally* Am. Compl.

### A.  **Plaintiff's Pursuit of Chapter 31 Benefits**

Plaintiff Vincent Conyers is an honorably discharged veteran of the United States Army having served as a flight paramedic and trainer from 1986 through 2012. Am. Compl. ¶ 20; Ex. 7 ("3.21.14 DVA Letter").   As an unfortunate result of his service, he suffers from numerous disabilities, including numbness in his left hand and arm, pain radiating from his back into his legs, and other, non-physical concerns, such as depression.  *See* 3.21.14 DVA Letter.   Plaintiff seeks assistance from Defendant, a federal agency that offers Vocational Rehabilitation and Employment ("VR&E") benefits to veterans, to open a bar and grill.  *See*, *e.g.*, Am. Compl. ¶ 21(a). Specifically, Conyers seeks benefits pursuant to the "self-employment track" of Chapter 31 of Title 38 of the United States Code, which aims at training and rehabilitation for veterans with service-connected disabilities.  *Id.* ¶ 61(a); *see also* 38 U.S.C. § 3100 *et seq.* ("Chapter 31").

2

In August 2013, Conyers initiated a Chapter 31 benefits claim with the Department. *See* Am. Compl. ¶ 61(a)-(d). In November 2013, he attended an initial evaluation with the New York Vocational Rehabilitation and Employment Division ("New York Regional Office") to assess his qualification for these benefits. *Id*. While at the orientation, he indicated that he was seeking assistance pursuant to the "self-employment track" of Chapter 31 and sat for an initial evaluation by a "DVA Counseling Psychologist," Dr. Wanda E. Richards-Clarke. *Id*. After the evaluation, Dr. Richards-Clarke told Plaintiff that he qualified for Chapter 31 benefits and he received a letter three days later certifying the same. *See id*.

On December 17, 2013, Plaintiff met with Christopher Holder, a Vocational Rehabilitation Counselor at the New York Regional Office, to discuss his Chapter 31 benefits. *Id*. ¶ 64; Ex. 2. Conyers requested assistance pursuant to the self-employment track to open his own bar and grill, but Holder immediately informed Plaintiff that he did not qualify for those benefits. *See* Am. Compl. ¶ 64(b). Rather, the counselor suggested other options including going back to school for a business degree. *Id*. ¶ 64(k). Conyers refused to accept any other career path besides opening his own restaurant, dismissing Holder's concerns of the high rate of failure of restaurants, Plaintiff's financial situation, and his refusing to go back to college. *Id*. ¶ 64(e)-(h). Two days later, Conyers received a letter from Holder which explained that "in my professional opinion as a Certified Rehabilitation Counselor, [Conyers's disabilities] are not of the most severe nature that self-employment is [the] only feasible opportunity for employment." *Id*. Ex. 3. To that end, Holder proposed to

3

discontinue Plaintiff's case "for failure to cooperate in any plan that does not fall within the Self-Employment Track."

Disagreeing with Holder's findings, Conyers requested an informal hearing. *See* Am. Compl. ¶ 66. This hearing occurred on January 7, 2014, before VR&E Officer Steven Sribnik ("Sribnik"), where Plaintiff advocated for self-employment benefits, noting his educational background and that he had assisted family members in operating other small businesses. *Id.* ¶ 67(a)-(i); 3.21.14 DVA Letter at 4. Nonetheless, Sribnik rejected Conyers's request, citing the necessary money it would take to open the bar-restaurant and again concluding that the self-employment track was not a viable option for Plaintiff. *See* Am. Compl. ¶ 67(a)-(i). As a result, Conyers requested administrative review from the Vocational Rehabilitation and Employment Services ("VR&E Services"). *Id.* ¶ 68.

While the request for administrative review was pending, Plaintiff received another letter from Holder, this time informing that his benefits were "interrupted" due to his refusal to accept any other plan than self-employment. *Id.* ¶ 70; Ex. 4. Conyers then sought recourse from other sources, reaching out to Senators Charles Schumer and Kristen Gillibrand, as well as then-Representative Carolyn McCarthy. *See* Am. Compl. ¶ 68. He also submitted to VR&E Services, a Freedom of Information Act ("FOIA") request "for statistical data regarding the DVA's provisioning of programs of Chapter 31 services and assistance under the *Self-Employment Track* to [v]eterans during Fiscal Years 2010 through 2015." *Id.* ¶ 68.

On March 21, 2014, Plaintiff received a letter from Representative McCarthy which regretfully informed him that she was unable to receive a favorable result on his behalf.  *Id.* ¶ 71.  She also attached a letter she received from the Department's New York Regional Office, signed by Sribnik, which explained its rationale in denying self-employment benefits.  *See* Ex. 6.  This letter, addressed to Representative McCarthy, outlined Plaintiff's disabilities, explained that he has issues with alcohol and substance abuse, and indicated that he is in treatment at the Northport Veterans Affairs Medical Center and East Meadow Veterans Affairs Clinic.  *See id.*  This alleged unauthorized disclosure of information forms the basis for certain Privacy Act claims that Conyers alleges here.[1]

On March 24, 2014, Plaintiff received a response to his request for administrative review from the United States Department of Veterans Affairs Regional Office.  *See* 3.21.14 DVA Letter.  Like the New York Regional Office, it similarly upheld the previous determinations, indicating that Conyers is not entitled to self-employment benefits.  *Id.*  The report explained that self-employment is not "the only feasible goal" for him, and, in any event, he would not be able to run a restaurant with the amount of pain he experiences.  *Id.*  Subsequently, Plaintiff

---

[1] Conyers also alleges that in June 2014, he notified the New York Regional Office that he was "revoking the VA Form 21-22 – Appointment of Veterans Service Organization as Claimant's Representative."  *See* Am. Compl. ¶ 78.  The documents Plaintiff attaches to his Complaint reveal that Conyers initially authorized the American Legion to act on his behalf, subsequently revoked this authorization due to a dispute, and brought the revocation to the attention of the New York Regional Office.  *Id.* Ex. 11.  Plaintiff claims that the New York Regional Office continued to include the American Legion on correspondence regarding Conyers's Chapter 31 benefits, and also alleges certain Privacy Act violations concerning this unauthorized disclosure of personal information.  *See* Am. Compl. ¶ 79.

received another letter from Holder, indicating that his VR&E benefits were disallowed as of May 9, 2014. *See id.* ¶ 76(a); Ex. 9 ("5.9.14 DVA Letter").

Conyers then commenced the process for appealing the determination to the Board of Veterans' Appeals ("BVA"). He first submitted a "Notice of Disagreement" to the New York Regional Office, expressing his dispute with the Department's determination in a fifty-four page letter. *Id.* Ex. 10 ("Notice of Disagreement"). Defendant confirmed on June 17, 2014 that it received the Notice of Disagreement, and provided Conyers with an overview of his case and the relevant law. *Id.* at Ex. 12 ("Statement of the Case"). Plaintiff submitted a formal appeal dated July 1, 2014 to the BVA. *See* Ex. 13 ("Appeal to Board of Veterans' Appeals").

While the appeal to the BVA was pending, on July 3, 2014, Conyers requested information from the Department pursuant to the Privacy Act. He requested "[c]opies of any/all records and documentation acquired, generated, and maintained within the undersigned's Counseling/Evaluation/Rehabilitation (CER) Folder [("CER Folder")]managed by the Vocational Rehabilitation and Employment Division (VR&E) . . . ." *Id.* at Ex. 14 ("Request For and Consent to Release of Information from Individual's Records"). On February 18, 2015, 229 days after the initial request, he received a copy of these documents. *See* Am. Compl. ¶ 83(a). According to him, the folder was missing crucial materials including the letters that the New York Regional Office sent to Conyers, as well as other, hypothetical documents, and failed "to provide any documentation of the reasoning or bases for VR&E Services

delegating the [New York Regional Office] VR&E Division to respond to the 17 January 2014 [Administrative Review] request." *Id.* ¶ 83(a)(1)-(19).

## B. Hearing Before BVA

Conyers attended a hearing before the BVA on August 5, 2015. *Id.* ¶ 83. There, he noted his grievances regarding his record, arguing that it was missing documents including letters to the congressional representatives, documentation supporting certain determinations by the Department, and "did not contain any documentation recounting the reasoning or bases for the NYRO VR&E Division disregarding, ignoring, and not utilizing the information collected from Plaintiff as reported within the [ . . . ] Counseling Report . . . ." *Id.* Although Conyers does not elaborate further, it appears that this appeal remains pending.

## C. The Current Action

As a result of these grievances, Plaintiff commenced this action on January 4, 2016. *See* Complaint, DE [1]. The Complaint pleaded violations of seven different sections of the Privacy Act, each a separate cause of action, alleging a total of 222 counts. *See id.* On August 24, 2017, Defendant filed a pre-answer motion to dismiss, arguing that the Court lacks subject matter jurisdiction over Plaintiff's claims and the Complaint fails to state a claim in any event. *See* DE [24]. On October 7, 2016, Judge Bianco referred that motion to this Court for Report and Recommendation. *See* DE [30]. On January 10, 2017, the Court recommended that Plaintiff's Complaint be dismissed in its entirety, and that he be granted leave to amend the Complaint to add causes of action for injunctive relief pursuant to 5 U.S.C. 552a(g)(1)(A)-(B) and

re-plead certain causes of action.  *See* DE [34].  On February 22, 2017, Judge Bianco

adopted the Court's Report and Recommendation.  *See* DE [37].

On January 10, 2017, prior to Judge Bianco adopting the Court's Report and

Recommendation, Plaintiff filed an Amended Complaint.  *See* DE [36]. The Amended

Complaint asserts that Defendant violated:

1.  5 U.S.C. § 552a(d)(l) (First Cause of Action), which provides that
    the VA "shall upon request by an individual [allow him] to gain
    access to his record or to any information pertaining to him which
    is contained in the system [of records]," *see* Am. Compl. ¶¶ 101-30;

2.  5 U.S.C. § 552a(d)(2) ("Second Cause of Action"), which mandates
    that the VA "shall permit the individual to request amendment of
    a record pertaining to him," *id.* ¶¶ 131-47;

3.  5 U.S.C. § 552a(e)(l) ("Third Cause of Action"), which requires that
    an agency "maintain in its records only such information about an
    individual as is relevant and necessary," due to the Department's
    failure to "utilize, recognize, or acknowledge" the Counseling
    Report, *id.* ¶¶ 148-66;

4.  5 U.S.C. § 552a(e)(2) ("Fourth Cause of Action"), which mandates
    that the agency "collect information to the greatest extent
    practicable," by failing to collect evidence directly from Conyers,
    *id.* ¶¶ 167-87;

5.  5 U.S.C. § 552a(e)(5) ("Fifth Cause of Action"), which provides that
    records must be maintained with "accuracy, relevance, timeliness,
    and completeness as is reasonably necessary," by not including the
    Counseling Report in Plaintiff's folder prior to meetings and not
    "discern[ing] the discrepancies" between documents in the record*,
    id.*, ¶¶ 188-208;

6.  5 U.S.C. § 552a(e)(6) ("Sixth Cause of Action"), which insures the
    accuracy, relevancy, timeliness, and completeness prior to
    disclosure to another person, by disseminating the folder in its
    alleged deficient state to Representative McCarthy, the American
    Legion, the Department of Veterans Affairs, and Plaintiff himself,
    *id.*,¶¶ 209-60;

8

7. 5 U.S.C. § 552a(e)(9) ("Seventh Cause of Action"), which mandates that the VA "establish rules of conduct for persons involved in the design, development, operation, or maintenance of any system of records[,]" *id.* ¶¶ 261-87; and

8. 5 U.S.C. § 552a(e)(10) ("Eighth Cause of Action"), which directs the VA to "establish appropriate administrative, technical, and physical safeguards to insure the security and confidentiality of records and to protect against any anticipated threats or hazards to their security or integrity which could result in substantial harm, embarrassment, inconvenience, or unfairness to any individual on whom information is maintained[,]" *id.* 288-346.

Further, Plaintiff alleges that he suffered "actual damages" under the Privacy Act in the form of expenses incurred during his challenge to the Department's benefit determination, including:  local bus and rail fare, postage, copying, telephone calls and faxes, and fees for internet access.  *See id.* ¶ 87; *see also* Ex. 21. On May 19, 2017, Defendant moved to dismiss the Amended Complaint for lack of subject matter jurisdiction and failure to state a claim, *see* DE [45], which Plaintiff opposes.  *See* DE [51].  On October 18, 2017, Judge Bianco referred the motion to this Court for Report and Recommendation as to whether it should be granted.  *See* DE [54].

## II.   LEGAL STANDARD

### A.  <u>Fed. R. Civ. P. 12(b)(1)</u>

Pursuant to Article III, Section 2 of the United States Constitution, "the jurisdiction of the federal courts is limited to 'Cases' and 'Controversies,' which 'restricts the authority of the federal courts to resolving 'the legal rights of litigants in actual controversies.'"  *Amityville Mobile Home Civic Ass'n v. Town of Babylon*, No. 14-CV-2369, 2015 WL 1412655, at *2 (E.D.N.Y. Mar. 26, 2015) (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71, 133 S. Ct. 1523, 1528 (2013)).  In the

absence of a case or controversy, Fed. R. Civ. P. 12(b)(1) "provides that a party may move to dismiss a case for lack of subject matter jurisdiction." *Amityville Mobile Home*, 2015 WL 1412655, at *3; *see also Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ("A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."). The Second Circuit has held that, "[t]he hallmark of a case or controversy is the presence of adverse interests between parties who have a substantial personal stake in the outcome of the litigation." *Evans v. Lynn*, 537 F.2d 571, 591 (2d Cir. 1975); *see also Ayazi v. N. Y. C. Bd. of Educ.*, No. 98-CV-7461, 2006 WL 1995134, at *2 (E.D.N.Y. July 14, 2006), *vacated on other grounds*, 315 F. App'x 313 (2d Cir. 2009) ("Without standing, this court does not have jurisdiction to hear the claim."). Therefore, to survive a defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), "a plaintiff must allege facts 'that affirmatively and plausibly suggest that it has standing to sue.'" *Brady v. Basic Research, L.L.C.*, 101 F. Supp. 3d 217, 227 (E.D.N.Y. 2015) (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)).

In deciding a motion to dismiss for lack of subject matter jurisdiction, "a court must accept as true all material factual allegations in the complaint and refrain from drawing inferences in favor of the party contesting jurisdiction." *U.S. ex rel. Phipps v. Comprehensive Cmty. Dev. Corp.*, 152 F. Supp. 2d 443, 449 (S.D.N.Y. 2001). However, "[w]here subject matter jurisdiction is challenged, . . . a court may consider materials outside the pleadings, such as affidavits, documents and testimony." *Id.*;

*see also All. For Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 89, n. 8 (2d Cir. 2006) ("The presentation of affidavits on a motion under Rule 12(b)(1) . . . does not convert the motion into a motion for summary judgment under Rule 56.").

### B. Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1940 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1960 (2007)). A claim is considered plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678, 129 S. Ct. at 1949. In deciding a motion to dismiss, "a court must 'accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor.'" *U.S. ex rel. Siegel v. Roche Diagnostics Corp.*, 988 F. Supp. 2d 341, 343 (E.D.N.Y. 2013) (quoting *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009)). In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court's consideration is limited to:

> (1) the factual allegations in the complaint, which are accepted as true; (2) documents attached to the complaint as an exhibit or incorporated . . . by reference; (3) matters of which judicial notice may be taken; and (4) documents upon whose terms and effect the complaint relies heavily, *i.e.,* documents that are "integral" to the complaint.

*Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 498 (S.D.N.Y. 2003) (internal citation omitted).

### C. *Pro Se* **Pleadings**

It is well-established that pleadings by *pro se* plaintiffs are held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S. Ct. 173 (1980); *see also Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal citations omitted).  The Second Circuit has held that a court reviewing a *pro se* complaint must "construe the complaint broadly, and interpret it to raise the strongest arguments that it suggests." *Weixel v. Bd. of Educ. of the City of New York*, 287 F.3d 138, 146 (2d Cir. 2002) (internal alterations omitted); *see also Rene v. Citibank N.A.*, 32 F. Supp. 2d 539, 541 (E.D.N.Y. 1999) (holding that a court must "make reasonable allowances so that . . . *pro se* plaintiffs do not forfeit their rights by virtue of their lack of legal training."). However, the court "need not argue a *pro se* litigant's case nor create a case for the *pro se* which does not exist." *Ogunmokun v. Am. Educ. Servs./PHEAA*, No. 12-CV-4403, 2014 WL 4724707, at *3 (E.D.N.Y. Sept. 23, 2014) (quoting *Molina v. New York*, 956 F. Supp. 257, 259 (E.D.N.Y. 1995)).

### D. **The Privacy Act**

The Privacy Act of 1974, codified in part at 5 U.S.C. § 552a, "contains a comprehensive and detailed set of requirements for the management of confidential records held by Executive Branch agencies." *F.A.A. v. Cooper*, 566 U.S. 284, 287, 132 S.Ct. 1441, 1446 (2012).  By its terms, the Privacy Act "expressly authorizes recovery

12

from the government" for certain violations. *Id.* at 290, 132 S. Ct. at 1448; *see also McCain v. U.S.*, No. 2:14-CV-92, 2015 WL 1221257, at *24 (D. Vt. Mar. 17, 2015) ("The Privacy Act provides a limited waiver of sovereign immunity . . . ."). Indeed, subsection (g)(1) of the Privacy Act explicitly provides for civil remedies against an agency for four different categories of harm. *See Doe v. Chao*, 540 U.S. 614, 618, 124 S. Ct. 1204, 1207 (2004) (providing an overview of the civil remedies of the Privacy Act).

The first two categories of conduct warranting relief are in subsections g(1)(A) and g(1)(B), which provide for redress where an agency either decides not to amend an individual's record in accordance with a request under the Privacy Act, or refuses to allow an individual access to review his or her record. *See* 5 U.S.C. § 552a(g)(1)(A)-(B). The remedy for either violation is strictly injunctive, with a Court ordering the agency to amend its record or enjoin it from improperly withholding records. *Id.* at (g)(2)-(3).

The other two categories of prohibited harm include the failure to maintain records "with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination" pursuant to subsection (g)(1)(C), and the "catchall provision" of subsection (g)(1)(D), which prevents a failure "to comply with any other provision of this section . . . in such a way as to have an adverse effect on an individual." *Id.* at (g)(1)(C)-(D). Breach of either of these two sections warrants damages, not injunctive relief. Specifically, Section 552a(g)(4) states:

(4) In any suit brought under the provisions of subsection (g)(1)(C) or

13

> (D) of this section in which the court determines that the agency acted in a manner which was intentional or willful, the United States shall be liable to the individual in an amount equal to the sum of—
>
> (A) actual damages sustained by the individual as a result of the refusal or failure, but in no case shall a person entitled to recovery receive less than the sum of $1,000; and
>
> (B) the costs of the action together with reasonable attorney fees as determined by the court.

5 U.S.C. § 552a(g)(4). The term "actual damages" applies to "proven pecuniary or economic harm," and does not encompass damages for mental or emotional distress. *See Cooper*, 566 U.S. at 287, 132 S. Ct. at 1453 ("As a consequence, we adopt an interpretation of 'actual damages' limited to proven pecuniary or economic harm."); *see also Oslzly v. Mendlewicz*, No. 15-cv-5681, 2015 WL 7575902, at *3 (E.D.N.Y. Nov. 25, 2015) ("The Privacy Act, codified at 5 U.S.C. § 552a, permits recovery for actual damages, meaning pecuniary or economic harm, caused by a federal agency's disclosure of confidential records held by that agency.") (internal quotation marks omitted). Here, Conyers's Privacy Act claims center on issues regarding the maintenance, collection, and disclosure of his records, and the record-keeping obligations of the agency. The First and Second Causes of Action appear to request injunctive relief in the form of an amendment and access to the file, while the remaining six claims appear to be made pursuant to either subsection g(1)(C) or g(1)(D) for "actual damages."

14

## III.    DISCUSSION

Plaintiff's claims focus on purported violations of the Privacy Act, specifically the Department's maintenance, collection, and disclosure of his record.  Defendant argues that these claims should be dismissed pursuant to Rules 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim.  The Court considers each argument in turn.

### A. <u>Subject Matter Jurisdiction</u>

At the outset, the Department argues that the Court lacks subject matter jurisdiction as Plaintiff's claims are rhetorical cover for his actual dispute—the determination that he is not entitled to self-employment benefits.  *See* Memorandum of Law in Support of Defendant's Motion to Dismiss ("Def.'s Mem."), DE [48], at 13. The Department insists that challenges to its determinations are exclusively left to the Secretary of Veteran Affairs, and, therefore, this Court lacks subject matter jurisdiction over these claims.  *Id.*  The Court agrees as to Plaintiff's First, Second, Third, Fourth, and Fifth Causes of Action, but disagrees as to the Sixth, Seventh, and Eighth.

"The Privacy Act . . . cannot be used as a vehicle to 'correct' a substantive decision unfavorable to an individual's interest."  *Melvin v. U.S. Dep't of Veterans Affairs*, 70 F. Supp. 3d 350, 357 (D.D.C. 2014), *aff'd,* No. 14-5263, 2015 WL 3372292 (D.C. Cir. May 6, 2015); *see also Douglas v. Agric. Stabilization & Conservation Serv.*, 33 F.3d 784, 785 (7th Cir. 1994) ("We join many other circuits in holding that the Privacy Act does not authorize relitigation of the substance of agency decisions.");

15

*Philippeaux v. U.S.*, No. 10-cv-6143, 2011 WL 4472064, at *4 (S.D.N.Y. Sept. 27, 2011) ("To the extent that plaintiff is seeking review of the VA's decision, the law does not permit this Court to hear his claim.").  To that end, courts have dismissed Privacy Act claims, and others, for want of jurisdiction where the causes of action were merely a collateral attack on the Department's decision.  *See Philippeaux*, 2011 WL 4472064, at *9 (finding no jurisdiction to the extent a "Privacy Act claim is another version of [plaintiff's] effort to review the VA's denial of benefits"); *Brown v. U.S.*, No. 10CV497, 2011 WL 4439314, at *1 (W.D.N.Y. Sept. 23, 2011), *Report and Recommendation adopted by* 2011 WL 4809138 (W.D.N.Y. Oct. 11, 2011) ("The fact that the plaintiff brings the action under the FTCA does not provide the Court with jurisdiction over a benefits claim."); *Walker v. U.S.*, No. 93-cv-2728, 1998 WL 637360, at *14 (E.D. La. Sept. 16, 1998), *aff'd,* 184 F.3d 816 (5th Cir. 1999) ("Courts have routinely disapproved of the use of the Privacy Act as a vehicle for collateral attacks on judicial or quasi-judicial determinations recorded in agency records."); *Di Silvestro v. U.S.*, 181 F. Supp. 860, 861 (E.D.N.Y. 1960) ("Although the plaintiff asserts that those claims are based on the Federal Tort Claims Act, and are ostensibly for damages, this is, in reality, another attempt to obtain a review of the decision of the Veterans' Administration . . . .").

Moreover, Chapter 38 of the United States Code limits the ability to challenge a determination by the Department.  38 U.S.C. § 511 expressly states that:

> The Secretary [of Veteran Affairs] shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or

16

> survivors of veterans. Subject to subsection (b), the decision of the Secretary as to any such question shall be final and conclusive and may not be reviewed by any other official or by any court, whether by an action in the nature of mandamus or otherwise.

38 U.S.C. § 511(a).  Subsection (b) contains four exceptions, which, notably here, include "matters subject to [S]ection 502 of this title." *Id.* at 511(b).  Although Section 502 confers judicial review of sections 552(a)(1) and 553, related to the Privacy Act and the FOIA, "502 review is available only in the Court of Appeals for the Federal Circuit." *Sugrue v. Derwinski*, 26 F. 3d 8, 10 (2d Cir. 1994); *see also* 38 U.S.C. § 502 (stating that judicial review "may be sought only in the United States Court of Appeals for the Federal Circuit").

Instead of judicial review of the Secretary of Veteran Affairs' decisions, Congress enacted the Veterans' Judicial Review Act ("VJRA") which provides for a "multi-tiered review of veteran's benefits claims . . . ." *Philippeaux*, 2011 WL 4472064, at *4.  This review begins with an appeal to the BVA, the decision of which is solely reviewed by the Court of Appeals for Veterans Claims.  *See* 38 U.S.C. §§ 7104(a); 7252(a).  Those decisions are then appealable only to the United States Court of Appeals for the Federal Circuit, which "is then subject to review in the United States Supreme Court by writ of certiorari." *See Philippeaux*, 2011 WL 4472064, at *4; *see also Ramnarain v. U.S. Veterans Admin.*, No. 11-cv-4988, 2012 WL 1041664, at *1 (E.D.N.Y. Mar. 28, 2012) (setting forth the procedure for challenging the denial of benefits).  As such, "the statutory scheme forecloses the possibility of review for disputed veterans benefits claims in any federal district court." *Odonoghue v. U.S. Dep't of the Army*, No. 12-CV-5338, 2012 WL 5959979, at *2 (E.D.N.Y. Nov. 26, 2012).

17

Simply, "courts do not acquire jurisdiction to hear challenges to benefits determinations merely because those challenges are cloaked in constitutional terms [and] the Privacy Act [ . . . ] may [not] be used as a rhetorical cover to attack VA benefits determinations." *Sugrue v. Derwinski*, 26 F.3d 8, 11 (2d Cir. 1994).

Applying these standards, the Court lacks subject matter jurisdiction over Plaintiff's First and Second Causes of Action. The First Cause of Action, seeks injunctive relief in the form of access to agency records pursuant to 5 U.S.C. § 552a(d)(1). Here, Conyers concedes that the Department fulfilled its statutory obligation by conducting a search of its system or records and providing access to agency documents in the form of his CER Folder. *See* Am. Compl. ¶¶ 15, 83, 87. Plaintiff's argument that the response is deficient because additional documents should be maintained in Defendant's system of records misses the mark because the statute only requires an agency to provide for access to records kept in that system. *See* 5 U.S.C. § 552a(d)(1); *see also Bechhoefer*, 312 F.3d at 567 (collecting cases on the Privacy Act's obligations regarding documents maintained in a system of records). Therefore, this claim is moot. *See Boyd v. Chertoff*, 540 F. Supp. 2d 210, 216 (D.D.C. 2008) (denying claim for access to records as moot after agency disclosure of records). Conyers's Second Cause of Action, which seeks injunctive relief to amend his agency record pursuant to 5 U.S.C. § 552a(d)(2), also should be dismissed for lack of subject matter jurisdiction for failure to exhaust his administrative remedies. Here, Conyers concedes that he has not yet requested that the Department amend his record, and therefore, has failed to exhaust his administrative remedies. *See* Am. Compl. ¶ 141;

18

*see also* Pl.'s Opp. at 22.  Accordingly, the Court lacks subject matter jurisdiction over the First and Second Causes of Action.

The Court similarly lacks subject matter jurisdiction over Plaintiff's Third Cause of Action as it improperly engages in a collateral attack on the Department's benefits determination.   Conyers's third claim is brought pursuant to Section 552a(e)(1), which mandates that an agency "maintain in its records only such information about an individual as is relevant and necessary to accomplish a purpose of the agency . . . ."  5 U.S.C. § 552a(e)(1).  Plaintiff argues that the Department violated this statute by failing "to utilize the information documented" in the Counseling Report in its benefit determination.  *See* Am. Compl. ¶ 156.  However, these allegations merely attack what information Defendant chose to rely on and how it processed different evidence in the record.   This, in short, is an attack on Defendant's analysis behind its determination, and therefore, an impermissible "rhetorical cover" for Plaintiff's challenge to his benefits determination.  Accordingly, the Court lacks subject matter jurisdiction over this cause of action.

The same is true for the Fourth and Fifth Causes of Action.  The Fourth Cause of Action is pursuant to Section 552a(e)(2) for failure to collect information "to the greatest extent practicable" directly from Conyers.  *See* Am. Compl. ¶¶ 167-87.  In alleging this claim, Conyers argues that the Department intentionally and willfully failed to collect information directly from him when compiling the December 17, 2013 letter and the Counseling Record – Narrative Report on January 7, 2014 thus rendered the information collected by Richards-Clarke "irrelevant and unnecessary."

19

*See id.* ¶¶ 171-73. For the Fifth Cause of Action brought pursuant to 5 U.S.C. § 552a(e)(5), Plaintiff claims that Defendant failed to maintain accurate, relevant, timely, and complete records by first not confirming that the Counseling Report was always included in his record and failing to "discern the improper maintenance of the purportedly irrelevant and unnecessary information." *Id.* ¶¶ 192-98. According to Conyers, this deficiency resulted in "a failure to ensure fairness in the benefit determination. *Id.* These allegations, particularly those regarding Plaintiff's displeasure with how the Department "discern[ed]" information regarding his benefits determination, ultimately attack Defendant's decision-making, which is outside the purview of this Court. *See Melvin*, 70 F. Supp. 3d at 358 ("The law is settled that this Court may not hear claims attempting to challenge impermissibly the underlying VA benefits decisions; to allow such Privacy Act claims would require this Court to intrude impermissibly on the province of the Secretary of Veterans Affairs."). Accordingly, this claim should be dismissed as well.

In reaching this conclusion as to the Third, Fourth, and Fifth Causes of Action, the Court acknowledges Plaintiff's continued attempt to distinguish his allegations as unrelated to his benefits determination but is unable to adopt a different outcome. For his part, Conyers argues that he is only seeking relief as afforded under the Privacy Act, and that he has not pleaded the loss of Vocational and Rehabilitation benefits as damages. Pl.'s Opp. at 12. Nevertheless, as Conyers's allegations essentially challenge the decision-making of the Department, including how it chose and weighed evidence before it, his claims are beyond the scope of this Court's judicial

20

review.  *See Sugrue*, 26 F.3d at 12 (finding no subject matter jurisdiction where the plaintiff's claim "is based solely upon [the VA Employee's] acts or omissions concerning the assigning of a disability rating, and hence a benefit level, to [plaintiff].").

In the absence of subject matter jurisdiction, Conyers also requests to stay this case pending a final decision from the BVA on his VR&E benefits appeal pursuant to the primary jurisdiction doctrine. *See* Pl.'s Opp. at 25-27.  "Primary jurisdiction applies where a claim is originally cognizable in the courts, but enforcement of the claim requires, or is materially aided by, the resolution of threshold issues, usually of a factual nature, which are placed within the special competence of the administrative body." *Golden Hill Paugussett Tribe v. Weicker*, 39 F.3d 51, 59 (2d Cir. 1994).  Primary jurisdiction's central aim "is to allocate initial decision-making responsibility between courts and agencies and to ensure that they "do not work at cross-purposes." *Fulton Cogeneration Assocs. v. Niagara Mohawk Power Corp.*, 84 F.3d 91, 97 (2d Cir.1996).  "As a threshold matter, of course, a court must find that the agency has jurisdiction over the issue presented." *Fulton Cogeneration Assocs.*, 84 F.3d at 97.  As set forth above, the Court lacks jurisdiction to review the Department's benefits determination.  Therefore, a final agency decision on Plaintiff's appeal cannot resolve viable threshold issues in the instant action.  Accordingly, the Court recommends that the primary jurisdiction doctrine not be invoked to stay this case pending a final decision from the BVA on Plaintiff's VR&E benefits appeal.

On the other hand, the Court finds that Conyers's Sixth, Seventh and Eighth

Causes of Action should not be dismissed for want of jurisdiction. The Sixth Cause of Action is brought pursuant to Section 552a(e)(6), which prohibits the unauthorized disclosure of information. 5 U.S.C. § 552a(e)(6). In alleging this claim, Plaintiff believes that the New York Regional Office disclosed his "personally identifiable information" without his consent to outside parties. *See*, *e.g.*, Am. Compl. ¶ 210. This assertion does not attack the determination by the Department, but rather a potential unauthorized disclosure of his information, which can lead to potential harms outside the scope of his denial of self-employment benefits. The Seventh and Eighth Causes of Action are brought pursuant to Sections 552a(e)(9) and (10) which direct the Department to establish rules of conduct for persons involved in the maintenance of records and "appropriate administrative, technical, and physical safeguards to insure the security and confidentiality of records," respectively. Regarding these claims, he states that the New York Regional Office did not follow these rules in responding to his request for documents, touching upon a FOIA claim. *Id.* ¶ 217(b). As such, the Court recommends that they not be dismissed for want of jurisdiction. Accordingly, for the reasons set forth above, the Court recommends that Plaintiff's First, Second, Third, Fourth, and Fifth Causes of Action be dismissed for lack of subject matter jurisdiction, but not the Sixth, Seventh, and Eighth.

### B. <u>Failure to State a Claim</u>

The Court next turns to the remaining three claims—the Sixth, Seventh, and Eighth Causes of Action brought pursuant to 5 U.S.C. § 552a(e)(6), (e)(9), and (e)(10), respectively. Although the Court has jurisdiction to hear these claims, for the reasons

set forth below, the Court respectfully recommends that they be dismissed pursuant to Rule 12(b)(6) for failure to state a cause of action.

In establishing a claim under the Privacy Act, "a plaintiff must show that: (1) the information at issue is a record contained within a system of records; (2) the agency violated the Act with respect to that record; (3) the disclosure had an adverse effect on the plaintiff; and (4) the violation was willful or intentional." *Philippeaux*, 2011 WL 4472064, at *8 (S.D.N.Y. Sept. 27, 2011) (internal quotation marks omitted); *see also Int'l Union, Sec., Police, & Fire Professionals of Am. (SPFPA) v. U.S. Marshal's Serv.*, 350 F. Supp. 2d 522, 528 (S.D.N.Y. 2004) (citing same factors). The "plaintiff [] bears the burden of proof for each element of his claim." *Tarullo*, 600 F. Supp. 2d at 358 (citing *Krieger v. U.S. Dep't of Justice,* 529 F.Supp.2d 29, 40 (D.D.C.2008)).

The "adverse effect" prong is satisfied by a showing of "actual damages." *Foncello v. U.S. Dep't of Army*, No. 3:04-CV-604, 2005 WL 2994011, at *4 (D. Conn. Nov. 7, 2005). In 2012, the Supreme Court clarified that "actual damages" is equivalent to pecuniary damages, and does not include emotional and mental distress. *See Cooper*, 566 U.S. at 303, 132 S. Ct. at 1453, 1456; *Young v. Tryon*, No. 12-CV-6251, 2013 WL 2471543, at *5 (W.D.N.Y. June 7, 2013) ("Thus, to properly state a claim for a violation of the Privacy Act, a plaintiff must allege some pecuniary harm."). Additionally, in interpreting the "adverse effect" element, the Supreme Court explained in *Chao* that it is "a term of art identifying a potential plaintiff who satisfies the injury-in-fact and causation requirements of Article III standing, and

who may consequently bring a civil action without suffering dismissal for want of standing to sue." *Chao*, 540 U.S. at 624, 124 S. Ct. at 1211; *see also Tarullo*, 600 F. Supp. 2d at 359; *Int'l Union, Sec., Police, & Fire Professionals of Am. (SPFFPA)*, 350 F.Supp.2d at 528.  To establish the requisite causation, "a plaintiff must demonstrate a close nexus between the disclosure and the adverse effects alleged." *Mandel v. U.S. Office Pers. Mgmt.*, 79 F. App'x 479, 481 (2d Cir. 2003).

Further, as expressed above, to pursue damages a plaintiff "must plead an 'intentional or willful' violation of the Privacy Act." *Foncello*, 2005 WL 2994011, at *4.  This standard is "somewhat greater than gross negligence." *Dowd v. I.R.S.*, 776 F.2d 1083, 1084 (2d Cir. 1985) (per curiam).  It is also connected to the requirement of an adverse effect, which "must stem from a willful violation of the Act, and not from mere administrative error." *Miller v. McHugh*, 814 F. Supp. 2d 299, 315 (S.D.N.Y. 2011) (internal quotation marks omitted); *see also Hills v. Liberty Mut. Ins.*, No. 14-CV-0328S, 2015 WL 1243337, at *3 (W.D.N.Y. Mar. 18, 2015) ("[A]dministrative error . . . is insufficient to state a claim under the Privacy Act.").

Applying these principles, Plaintiff's Sixth Cause of Action fails to state a claim for which relief can be granted.  Section 552a(e)(6) of the Privacy Act mandates that, prior to the dissemination of a record, an agency must make reasonable efforts to assure that such records are accurate, complete, timely, and relevant.  *See* 5 U.S.C. § 552a(e)(6).  Conyers pleads that the Department wrongfully disclosed his personally identifiable information to the American Legion and the New York State Division of Veterans Affairs without his consent.  Am. Compl. ¶¶ 232, 244, 246.  However,

24

Conyers fails to satisfy the willfulness requirement because the Amended Complaint fails to set forth allegations that the Department personnel with whom he had contact with dealt, acted, or failed to act, in such a "patently egregious and unlawful [manner]" so as to have 'known the "conduct ... [was] unlawful." *Deters v. U.S. Parole Comm'n*, 85 F.3d 655, 660 (D.C. Cir. 1996). Plaintiff, at best, alleges "administrative error" for which the Privacy Act does not provide relief. *Germosen v. Cox*, No. 98-cv-1294, 1999 WL 1021559, at *18 (S.D.N.Y. Nov. 9, 1999) (internal citations omitted).

Plaintiff's Seventh and Eighth Causes of Action, made pursuant to Sections 552a(e)(9) and (10), should also be dismissed. The former statute requires an agency to establish rules of conduct for the "design, development, operation, or maintenance of any system of records[,]" 5 U.S.C. § 552a(e)(9), while the latter requires an agency to "establish appropriate administrative, technical and physical safeguards to insure the security and confidentiality of records." 5 U.S.C. § 552a(e)(10). To maintain a civil action under these sections, a "plaintiff must identify a rule or safeguard . . . that [the agency] should have established but did not." *Doe v. DOJ*, 660 F.Supp.2d 31, 43 (D.D.C. 2009) (internal citation and quotation omitted); *see also Chambers v. Dep't of Interior*, 568 F.3d 998, 1007 n. 7 (D.C. Cir. 2009) (holding that plaintiff's § 552a(e)(10) claim failed because he "has not identified any rule or safeguard ... that [the defendant-agency] should have established but did not"). As Conyers fails to identify any specific rule or regulation that the Department failed to develop or implement, these claims also fail pursuant to Fed. R. Civ. P. 12(b)(6). Accordingly, for the reasons set forth above, the Court respectfully recommends that Plaintiff's Sixth, Seventh,

and Eighth Causes of Action be dismissed for failure to state a claim.

## IV.    LEAVE TO AMEND

Although Conyers did not request leave to amend, the Court may grant such leave "when justice so requires." Fed. R. Civ. P. 15(a)(2).  The Second Circuit has held that "a *pro se* litigant in particular 'should be afforded every reasonable opportunity to demonstrate that he has a valid claim.'"  *Dluhos v. Floating & Abandoned Vessel, Known as New York*, 162 F.3d 63, 69 (2d Cir. 1998) (quoting *Satchell v. Dilworth*, 745 F.2d 781, 785 (2d Cir. 1984)); *see also Thompson v. Carter,* 284 F.3d 411, 419 (2d Cir. 2002) ("The liberal pleading standards applicable to *pro se* civil rights complaints in this circuit require that the district court give [plaintiff] an opportunity to flesh out his somewhat skeletal complaints before dismissing them").  Nevertheless, "a district court may deny leave to amend when, as here, amendment would be futile because the problem with the claim 'is substantive ... [and] better pleading will not cure it.'"  *Reynolds v. City of Mount Vernon*, 14-CV-1481, 2015 WL 1514894, at *5 (S.D.N.Y. Apr. 1, 2015) (quoting *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir. 2000)).

Here, the Court recommends that leave to re-plead be denied as to the the First, Second, Third, Fourth, and Fifth Causes of Action because the Court lacks subject matter jurisdiction over these claims, and therefore, amendment would be futile.  *Ackerman v. Doyle*, 43 F. Supp. 2d 265, 275 (E.D.N.Y. 1999) ("The Court declines to *sua sponte* afford the plaintiff leave to amend on the ground of futility. In the Court's view, granting leave to amend would be unproductive and dismissal with prejudice is appropriate."); *Davison v. N.Y. City Transit Auth.*, No. 07-CV-3225, 2008

26

WL 3334078, at *2 (E.D.N.Y. Aug. 8, 2008) ("If repleading would be futile, however, courts should deny leave to amend."). However, amendment to the Sixth, Seventh, and Eighth Causes of Action may establish a cause of action. As such, the Court recommends that Plaintiff be granted leave to file a second amended complaint to include allegations that would satisfy the standards addressed above as to these claims.

## V.   CONCLUSION

For the reasons set forth above, the Court recommends that Plaintiff's Complaint be dismissed in its entirety, and that he be granted leave to re-plead the Sixth, Seventh, and Eighth Causes of Action.

## VI.   OBJECTIONS

A copy of this Report and Recommendation is being served on Defendant by electronic filing on the date below. Defendant is directed to serve a copy of this Report and Recommendation on Plaintiff and promptly file proof of service by ECF. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of receipt of this report. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72; *Ferrer v. Woliver*, No. 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:      Central Islip, New York
             January 29, 2018

                                        s/ Steven I. Locke
                                     STEVEN I. LOCKE

United States Magistrate Judge