UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
VINCENT CURTIS CONYERS,

                                Plaintiff,                    **MEMORANDUM AND ORDER**

    -against-                                      16-CV-13 (RRM) (JMW)

UNITED STATES DEPARTMENT OF
VETERANS AFFAIRS,

                                Defendant.
------------------------------------------------------------x
ROSLYNN R. MAUSKOPF, United States District Judge.

       Plaintiff Vincent Curtis Conyers ("Plaintiff"), a disabled Army veteran, brings this *pro se*

action against the United States Department of Veterans Affairs ("Defendant," "the VA," or "the

DVA"), alleging violations of the Privacy Act of 1974 ("the Privacy Act"), 5 U.S.C. § 552a *et*

*seq.*  Judge Bianco, who presided over this case until May 2019, twice dismissed Plaintiff's

pleadings; he dismissed the original complaint with leave to amend, then dismissed the amended

complaint with leave to amend three of eight causes of action.  Although Judge Bianco provided

specific guidance regarding what Plaintiff would have to plead in order to state a claim, Plaintiff

has filed a Second Amended Complaint ("SAC") that 1) includes a cause of action which was

previously dismissed with prejudice, 2) fails to establish Plaintiff's standing to sue under the

Privacy Act, and 3) fails to state a claim as to the three causes of action which he was granted

leave to amend.  Defendant now moves for a third time to dismiss this action.  For the reasons set

forth below, the motion is granted and this action is dismissed with prejudice.

## BACKGROUND

       The complex procedural history of this case is explained at length in two reports and

recommendations issued by Magistrate Judge Steven I. Locke:  one dated January 10, 2017 (the

"First R&R") (Doc. No. 34) and the second dated January 29, 2018 (the "Second R&R") (Doc.

No. 55).  The Court assumes that the reader is familiar with these two reports and

recommendations; with Judge Bianco's February 22, 2017, order adopting the First R&R (the

"First Order"); and with Judge Bianco's February 26, 2018, Order adopting the Second R&R

(the "Second Order") (Doc. No. 59).

This case and a related case now pending before this Court – *Conyers v. United States*,

No. 16-CV-2816 (RRM) (JMW) – arise from Plaintiff's unsuccessful application for benefits

under the VA's Vocational Rehabilitation and Employment program, now known as the Veteran

Readiness and Employment program ("VR&E").  VR&E provides five "support-and-services

tracks" to assist veterans with a service-connected disability to learn new skills, find a new job,

start a business, get educational counseling, or return to a former job.  Plaintiff, who wanted to

start a bar/restaurant, applied for benefits under the track which helps disabled veterans start a

business – the "Self-Employment Track."

Not all veterans are eligible for VR&E benefits – sometimes called "Chapter 31 benefits"

because the statutory provisions relating to the program are contained in Chapter 31 of Title 38

of the United States Code.  The Secretary of Veterans Affairs must "provide any veteran who has

a service-connected disability rated at 10 percent or more and who applies for benefits … with an

initial evaluation … as … necessary (1) to determine whether such veteran is entitled to and

eligible for benefits under [Chapter 31], and (2) in the case of a veteran who is determined to be

entitled to and eligible for such benefits, to determine … (A) whether such veteran has a serious

employment handicap, and (B) whether the achievement of a vocational goal currently is

reasonably feasible for such veteran …."  38 U.S.C. § 3106(a).  As explained in more detail

below, Plaintiff was determined to be ineligible for Self-Employment Track.

2

The Relevant Facts

Unless otherwise indicated, the following facts are drawn from the SAC, the allegations

of which are assumed to be true for purposes of this Memorandum and Order.  On August 12,

2013, Plaintiff – who has various service-related disabilities rated at 80 percent – submitted an

application for VR&E benefits to the VA.  (SAC (Doc. No. 68-1) ¶¶ 16(a), 36.)  On November

13, 2013, Plaintiff went to the VR&E Division of the VA's New York Regional Office (the

"NYRO") for an initial evaluation by a Counseling Psychologist, Dr. Wanda E. Richards-Clarke.

(*Id.* ¶¶ 17(h), 37.)  In the course of that evaluation, Richards-Clarke collected Personally

Identifiable Information ("PII") from Plaintiff, including information about his medical history,

psychological impairments, and vocational limitations.  (*Id.* ¶ 37.)  She concluded that Plaintiff

was eligible for VR&E benefits and memorialized her findings in two documents dated

November 14, 2013:  a notice letter, which noted Plaintiff's eligibility for benefits, and a

comprehensive, narrative report, which detailed her findings, conclusions, and determination.

(*Id.* ¶¶ 38–39.)

On December 17, 2013, after Richards-Clarke certified that Plaintiff was eligible for

VR&E benefits, Plaintiff returned to the NYRO to meet with Christopher Holder, a Vocational

Rehabilitation and Employment Counselor.  (*Id.* ¶ 40.)   The SAC does not allege precisely what

occurred at that meeting, though it states that Holder ultimately concluded that Plaintiff was

ineligible for Chapter 31 benefits.  (*Id.* ¶ 42.)  Like Richards-Clarke, Holder prepared two

documents which memorialized his determination:  a notice letter and a narrative report.  (*Id.* ¶¶

43–44.)

The SAC does not attach a copy of Holder's notice letter or allege what it said.  Rather, it

simply alleges that Holder's notice letter was inconsistent with his narrative report, and that both

of Holder's documents were inconsistent with Richards-Clarke's findings.  (*Id.*)  However, the notice letter itself was attached as Exhibit 3 to Plaintiff's original pleading and is incorporated by reference in the SAC.  In it, Holder opined that Plaintiff's self-employment plan was not feasible in light of Plaintiff's lack of capital.  Noting that Plaintiff had rejected his suggestion that Plaintiff pursue benefits under another track, Holder proposed to discontinue Plaintiff's case "for failure to cooperate in any plan that does not fall within the Self-Employment Track." (Compl., Ex. 3.)  The notice letter provided Plaintiff with various courses of action he could take if he disagreed with the proposed course of action, including requesting a meeting with another staff member, seeking administrative review, or filing an appeal with the Board of Veterans Affairs (the "BVA").  Plaintiff ultimately pursued all three courses of action.

Plaintiff initially elected the first option and received an informal hearing before VR&E Officer Steven Sribnik, the Vocational Rehabilitation and Employment Officer at the NYRO, on January 7, 2014.  (SAC ¶¶ 17(f), 45.)  The SAC does not allege precisely what occurred at this hearing.  But it implies that Sribnik concurred with Holder, stating that Sribnik failed to acknowledge the inconsistencies between Holder's and Richards-Clarke's narrative reports and the internal inconsistencies in Holder's documents.  (*Id.* ¶ 45.)

On January 17, 2014, Plaintiff requested administrative review.  (*Id.* ¶ 49.)  While that administrative review was pending, Plaintiff sought the assistance of his federal officials:  then-Representative Carolyn McCarthy and Senators Charles Schumer and Kirsten Gillibrand.  On March 12, 2014, McCarthy's office wrote to the VA, requesting information about the dispute over Plaintiff's VR&E benefits.  (*Id.* ¶ 47.)  One week later, she received a response from Sribnik. (*Id.*)  The SAC does not describe that letter in any detail, except to allege 1) that it failed to mention, among other things, the inconsistencies between Holder's and Richards-Clarke's

narrative reports and the internal inconsistencies in Holder's documents and 2) that it disclosed confidential medical information without Plaintiff's permission.  (*Id.* ¶¶ 47–48.)   The SAC alleges, upon information and belief, that the senators received similar correspondence from personnel at the NYRO.  (*Id.* ¶¶ 50–51, 56–57.)

In late March 2014, about the same time that Plaintiff received McCarthy's letter, Plaintiff received notice that the administrative review had upheld the denial of the self-employment benefits.  On June 2, 2014, Plaintiff commenced the process of appealing to the BVA by filing a "Notice of Disagreement" with the Director of the NYRO.  (*Id.* ¶ 58.)  Although Plaintiff himself sent a copy of that notice to the American Legion, (Compl., Ex. 11), he mailed another letter to the Director of the VA on June 5, 2014, revoking his appointment of the American Legion as his representative.  (SAC ¶ 59.)  Nonetheless, the VA continued to mail information regarding his case to the American Legion thereafter.  (*Id.* ¶ 60.)  Plaintiff alleges that information Holder and Sribnik filed during the appeals process was incomplete or inaccurate.  (*Id.*)

While the appeal to the BVA was pending, Plaintiff requested a copy of all documents contained in his VA record.  (*Id.* ¶ 62.)  When he belatedly received a response to his request, he discovered that his record contained some documents that had not been previously disclosed to him and was missing other documents that should have been included.  (*Id.* ¶¶ 63–65.)

The Procedural History of this Case

On January 4, 2016, Plaintiff commenced this action by filing a *pro se* complaint.  That pleading contained ten causes of action, each of which alleged numerous counts.  The first seven causes of action each alleged a violation of a different provision of the Privacy Act; the first five alleged violations of subsections of 5 U.S.C. § 552a(e), the sixth alleged a violation of 5 U.S.C. §

552a(b), and the seventh alleged a violation of 5 U.S.C. § 552a(v). The eighth cause of action alleged a violation of 38 U.S.C. § 7332, which prohibits revelation of confidential medical information; the ninth cause of action alleged a violation of 38 C.F.R. § 1.556, the federal regulation mandating that documents be produced in accordance with the timeline under the FOIA; and the tenth cause of action alleged that the NYRO had violated directives and handbooks issued by the VA regarding maintenance of records.

Defendant moved to dismiss the original complaint and Judge Bianco, to whom the case was then assigned, referred the motion to Magistrate Judge Locke for a report and recommendation. On January 10, 2017, Judge Locke recommended dismissing the first five causes of action for lack of subject-matter jurisdiction on the ground that these were disguised collateral attacks on Defendant's benefits determination. (First R&R at 26.) He further recommended that the remaining five causes of action be dismissed for failure to state a cause of action. (*Id.* at 30, 32, 34, 35.) However, he recommended that Plaintiff be granted leave to amend all causes of action other than the seventh and to add claims for injunctive relief pursuant to 5 U.S.C. § 552a(g)(1)(A)–(B). (*Id.* at 36–37.)

Plaintiff did not object to the report and recommendation. Rather, in early February 2018, he filed an Amended Complaint. (Doc. No. 36.) In an order dated February 22, 2018, Judge Bianco adopted the First R&R and accepted the February 2018 submission as the amended pleading. (Doc. No. 37.)

The Amended Complaint contained eight multi-count causes of action, which alleged violations of eight different provisions of the Privacy Act. The first cause of action alleged violations of 5 U.S.C. § 552a(d)(1), a subsection which requires the VA, upon request, to permit an individual to "gain access to his record or to any information pertaining to him which is

contained in the system [of records]." (*See* Am. Compl. ¶¶ 101–30.) The second cause of action alleged violations of 5 U.S.C. § 552a(d)(2), a subsection which mandates that the VA "permit the individual to request amendment of a record pertaining to him." (*See id.* ¶¶ 131–47.) The third cause of action alleged that the VA violated 5 U.S.C. § 552a(e)(1), which requires an agency to "maintain in its records only such information about an individual as is relevant and necessary," by failing to "utilize, recognize, or acknowledge" Richards-Clarke narrative report. (*See id.* ¶¶ 148–66.) The fourth cause of action claimed that the VA violated 5 U.S.C. § 552a(e)(2) – a subsection which mandates that the agency "collect information to the greatest extent practicable" – by failing to collect evidence directly from Plaintiff. (*See id.* ¶¶ 167–87.) The fifth cause of action alleged that the VA violated 5 U.S.C. § 552a(e)(5), a subsection which mandates that records be maintained with "accuracy, relevance, timeliness, and completeness as is reasonably necessary," by not including Richards-Clarke's narrative report in Plaintiff's folder prior to meetings and not "discern[ing] the discrepancies" between documents in the record. (*See id*. ¶¶ 188–208.)

The sixth cause of action alleged that the NYRO violated 5 U.S.C. § 552a(e)(6) – a subsection which ensures the accuracy, relevancy, timeliness, and completeness of records prior to their disclosure to another person – when it disseminated Plaintiff's folder in any allegedly deficient state to McCarthy, the American Legion, the VA, and Plaintiff himself. (*See id.* ¶¶ 209–60.) The seventh cause of action alleged that VA violated 5 U.S.C. § 552a(e)(9), which mandates that the VA "establish rules of conduct for persons involved in the design, development, operation, or maintenance of any system of records, or in maintaining any record, and instruct each such person with respect to such rules …." (*See id.* ¶¶ 261–87.) Finally, the eighth cause of action alleged that the VA violated 5 U.S.C. § 552a(e)(10), which directs the VA

to "establish appropriate administrative, technical, and physical safeguards to insure the security and confidentiality of records and to protect against any anticipated threats or hazards to their security or integrity which could result in substantial harm, embarrassment, inconvenience, or unfairness to any individual on whom information is maintained …." (*See id.* 288–346.)

Defendant moved to dismiss the amended complaint and Judge Bianco again referred the motion to dismiss to Judge Locke for a report and recommendation. On January 29, 2018, Judge Locke issued the Second R&R, in which he recommended dismissing the first five causes of action for lack of subject-matter jurisdiction. Judge Locke found that the first cause of action was moot, and that Plaintiff had failed to exhaust his administrative remedies with respect to the second cause of action. (Second R&R at 18–19.) He held that the third, fourth, and fifth causes of action, though couched as Privacy Act claims, were essentially collateral attacks on the VA's determination that Plaintiff was not entitled to self-employment benefits. (*Id.* at 19.) Noting that the Veterans' Judicial Review Act ("VJRA") – the statutory scheme for reviewing VA determinations – "forecloses the possibility of review for disputed veterans benefits claims in any federal district court," (*id.* at 17 (quoting *Odonoghue v. U.S. Dep't of the Army*, No. 12-CV-5338, 2012 WL 5959979, at *2 (E.D.N.Y. Nov. 26, 2012)), Judge Locke reasoned that the Court lacked subject-matter jurisdiction over these collateral attacks.

Although Defendant argued that the Court lacked subject-matter jurisdiction over the remaining three causes of action for the same reason stated above, (*id.* at 21–22), Judge Locke recommended rejecting that argument. With respect to the sixth cause of action, he opined that the § 552a(e)(6) claim did not attack the VA's determination regarding VR&E benefits but sought to redress "potential unauthorized disclosure of … information, which can lead to potential harms outside the scope of his denial of self-employment benefits." (Second R&R at

22.)  With respect to the seventh and eighth causes of action, he opined that Plaintiff was

alleging that the NYRO violated §§ 552a(e)(9) and (10) by failing to establish and follow rules

of conduct for persons involved in the maintenance of records and "appropriate administrative,

technical, and physical safeguards to insure the security and confidentiality of records" in

responding to his FOIA request.

     While Judge Locke did not recommend that these three causes of action be dismissed

pursuant to Fed. R. Civ. P. 12(b)(1), he recommended that they be dismissed pursuant to Fed. R.

Civ. P. 12(b)(6) for failure to state a claim.  With respect to the sixth cause of action, Judge

Locke stated that to establish a claim under the Privacy Act, Plaintiff had to "show that: (1) the

information at issue is a record contained within a system of records; (2) the agency violated the

Act with respect to that record; (3) the disclosure had an adverse effect on the plaintiff; and (4)

the violation was willful or intentional."  (*Id.* at 23 (citing cases).)  Judge Locke held that

Plaintiff failed to satisfy the willfulness requirement because the Amended Complaint did not

"set forth allegations that the Department personnel with whom he had contact with dealt, acted,

or failed to act, in such a patently egregious and unlawful [manner] so as to have known the

'conduct ... [was] unlawful."  (*Id.* at 25 (internal quotation marks and citation omitted).)  Judge

Locke held that the Amended Complaint, at best, alleged "administrative error" for which the

Privacy Act did not provide relief." (*Id.*)

     With respect to the seventh and eighth causes of action, Judge Locke opined that in order

to maintain an action under 5 U.S.C. §§ 552a(e)(9) and 552a(e)(10), a plaintiff had to "identify a

rule or safeguard . . . that [the agency] should have established but did not."  (Second R&R at 25

(quoting *Doe v. DOJ*, 660 F. Supp. 2d 31, 43 (D.D.C. 2009) (ellipses in *Doe*; alteration in

Second R&R).  Since Plaintiff had not identified any specific rule or regulation that the VA

failed to develop or implement, Judge Locke recommended dismissing these two claims. However, he recommended that Plaintiff be granted leave to amend his sixth, seventh, and eighth causes of action.

Both parties filed objections to the Second R&R.  Plaintiff objected only to the recommendation that the first five causes of action be dismissed with prejudice; he did not object to the dismissal without prejudice of the remaining three causes of action.  (*See* Doc. No. 58.) Conversely, Defendant objected only to the recommendation that Plaintiff be granted leave to amend those three causes of action.  (*See* Doc. No. 57.)

As required by 28 U.S.C. § 636(b)(1), Judge Bianco conducted a *de novo* review of those portions of the Second R&R to which objections had been made.  In an order dated February 26, 2018 – the Second Order – Judge Bianco concurred with Judge Locke's reasoning with respect to the first five causes of action and with his decision to grant leave to replead the remaining three causes of action.  (Second Order at 3–5, 7.)  Although he did not conduct a *de novo* review of Judge Locke's decision to dismiss the sixth, seventh, and eighth causes of action – to which no objection had been made – Judge Bianco nonetheless reviewed portions of Judge Locke's analysis relating to these causes of action.  With respect to the seventh and eighth cause of action, he noted that Judge Locke had "correctly stated" that in order to plead a violation of §§ 552a(e)(9) and 552a(e)(10), "a complaint must 'identify a rule or safeguard ... that [the agency] should have established but did not.'"  (Second Order at 7 (citing *Dick v. Holder*, 61 F. Supp. 3d 167, 186 (D.D.C. 2014)).)  And with respect to all three causes of action, Judge Bianco stated: "As Magistrate Judge Locke correctly notes, to state a claim for monetary damages under the Privacy Act, a complaint must allege, *inter alia*, that the violation was 'intentional or willful,' *e.g.*, *Miller v. McHugh*, 814 F. Supp. 2d 299, 315 (S.D.N.Y. 2011) (quoting *Dowd v. IRS*, 776

10

F.2d 1083, 1084 (2d Cir. 1985)), and that the plaintiff suffered an 'adverse effect' meaning some

'pecuniary harm,' *e.g.*, *FAA v. Cooper*, 566 U.S. 284, 303–04 (2012)."  (Second Order at 6.)

At the end of this statement, Judge Bianco dropped a footnote which contained advice

relating to the drafting of the second amended complaint.  The footnote read:

> Although Magistrate Judge Locke's recommendations that the sixth, seventh, and
> eighth causes of action should be dismissed focus on specific elements of each
> alleged statutory subsection, plaintiff is reminded that these pleading requirements
> apply to all claims for money damages under the Privacy Act.  Plaintiff's second
> amended complaint must therefore allege that the VA intentionally or willfully
> violated Sections 552a(e)(6), (9), and (10) of the Privacy Act and that he suffered
> an adverse effect as a result of those violations in order to survive a motion to
> dismiss.

(Second Order at 6, n. 5.)  Judge Bianco gave Plaintiff 45 days from the date the Second Order in

which to file his second amended complaint.  (Id. at 8.)

<u>The Second Amended Complaint</u>

Although Plaintiff did not file his second amended pleading until December 2018, Judge

Bianco elected to accept it for filing.  (12/11/2018 Order (Doc. No. 69).)  The SAC contains

three claims, not all of which were authorized by the Second Order.  Claim I alleges that the VA

violated 5 U.S.C. § 552a(e)(5) on multiple occasions, even though Plaintiff's claims pursuant to

this section were dismissed without leave to replead in the Second Order.  Claim II alleges that

the VA violated § 552a(e)(6) on over one hundred occasions.  And Claim III, despite being

entitled "DVA Violated 5 USC 552a(e)(9) on Multiple Occasions," appears to allege violations

of 5 U.S.C. § 552a(e)(10) as well.

The 181-page SAC, like Plaintiff's first two pleadings, is so prolix as to defy easy

description.  The Court will only discuss those sections that are salient to the instant motion to

dismiss, rather than attempting to summarize the hundreds of paragraphs in the SAC.

In setting forth the basis for jurisdiction, the SAC states that "[t]his action arises under 5 U.S.C. § 552a(g)(1)(D)," and notes, in a parenthetical, that this subsection provides a cause of action against federal agencies for violations of the Privacy Act that "have an adverse effect on an individual." (SAC ¶ 13.) At paragraph 107, the SAC lists a dozen "adverse and harmful effects" that Plaintiff allegedly suffered as a result of the Privacy Act violations alleged in his pleading. The first four of the twelve adverse effects are violations of Plaintiff's "due process" and "fair process" rights. (*Id.* ¶ 107(a)–(d).) The next four relate to Plaintiff's financial condition. Specifically, the SAC accuses the VA of "(e) causing Plaintiff to forego several entrepreneurial opportunities; (f) unnecessarily prolonging Plaintiff's period of unemployment; (g) unnecessarily prolonging and compounding Plaintiff's financial insufficiency; and (h) causing Plaintiff to experience an **EIGHT (8)**-month period of homelessness resulting in the lost [*sic*] of Household Goods/Household Items …." (*Id.* ¶ 107(e)–(h) (emphasis in original).)

As a ninth adverse effect, the SAC alleges that the VA's actions "caused Plaintiff to incur costs and expenses related to pursuing the disclosure, amendment, and correction of the information and records DVA maintains in Plaintiff's … record …." (*Id.* ¶ 107(i).) The remaining three adverse effects are psychological: exacerbating Plaintiff's stress and anxiety over his financial condition, severely exacerbating Plaintiff's distrust of authority figures and those in supervisory position, and severely exacerbating Plaintiff's insomnia. (*Id.* ¶ 107(j)–(l).)

The SAC makes an attempt to allege that the various violations of the Privacy Act were intentional and willful. For example, it alleges that personnel at the NYRO and its VR&E Division "knew, should have known, or were willfully ignorant" of the provisions of the Privacy Act, the regulations and rules pertaining to its provisions, and their obligations under the Act and those rules and regulations. (*Id.* ¶¶ 88–91, 97, 99.) It further alleges personnel at the NYRO and

12

its VR&E Division "knew, should have known, or were willfully ignorant" of various deficiencies in Holder's and Sribnik's reports.  (*Id.* ¶¶ 100–05.)  However, while the SAC alleges that Holder's and Sribnik's acts were "purposeful" and that the NYRO personnel evinced "conscious indifference" to their actions, (*id.* ¶¶ 100–06), the SAC does not allege specific facts that demonstrate that the VA's action were patently egregious or unlawful.

Similarly, the causes of action themselves contain conclusory allegations of intentional and willful violations of the Privacy Act.  For example, in Claim II, the SAC alleges that personnel at the NYRO and its VR&E Division "knowingly, intentionally, and deliberately" committed the acts and omissions alleged in paragraphs 89–106, (*id.* ¶ 122), that the personnel "knew and intentionally disregarded or willfully disregarded" 1) their obligations under 5 U.S.C. § 552a(e)(6), related regulations, and rules, and 2) "facts" relating to, among other things, the deficiencies in various documents.  (SAC ¶¶ 124–60.)  Claim II alleges that the "conscious and purposeful acts and omissions" of the personnel at the NYRO and its VR&E Division constituted 154 separate violations of 5 U.S.C. § 552a(e)(6).

Claim III alleges that personnel at the NYRO and its VR&E Division "knew or should have known" of their obligations to comply with various laws, regulations, and rules.  (SAC ¶¶ 169–78.)   The cause of action then lists 32 instances in which the personnel "knew and intentionally ignored or willfully disregarded" the standard of conduct or practices required by the laws, rules, and regulations, (*id.* ¶ 180), and asserts that these 32 "deliberate and conscious acts and omissions" shows that NYRO personnel are "inadequately trained," (*id.* ¶¶ 181–84.) This cause of action does not allege that the VA failed to establish rules of conduct for persons involved in the design, development, operation, or maintenance of records; rather, it alleges that the inadequate training constitutes a violation of § 552a(e)(9).  (*Id.* ¶ 185.)

Claim III also alleges violations of 5 U.S.C. § 552a(e)(10).  The SAC concedes that

Plaintiff executed a "general written consent," enabling his elected representatives to gain access

to his VA records.  (*Id.* ¶¶ 209, 214, 219.)  However, it maintains that his consent only

authorized the disclosure of the records relating to the application for Chapter 31 benefits, that

the medical information disclosed to the representatives was not contained in those records, and

that he never executed the "special written consent" required for the disclosure of these records.

(*Id.* ¶¶ 198–207, 210, 215, 220.)   Claim III also alleges that personnel at the NYRO and its

VR&E Division "knew and intentionally ignored or willfully disregarded" Plaintiff's revocation

of the American Legion's power to act as his representative and provided Plaintiff's medical

records to that organization without authorization.  (*Id.* ¶¶ 225–31.)  Similarly, Claim III alleges

that Plaintiff never authorized the State of New York Division of Veterans Affairs to receive his

information, making disclosure to that organization improper.  (*Id.* ¶¶ 232–39.)  In light of these

many allegedly unauthorized disclosures of his records, Plaintiff asserts that adequate safeguards

could not have been in place and that § 552a(e)(10) was violated.  (SAC ¶¶ 240–45.)

The SAC principally seeks declaratory and injunctive relief.  (SAC pp. 168–80.)

However, it also requests damages pursuant to 5 U.S.C. § 552a(g)(4)(A) and reasonable costs

and fees pursuant to 5 U.S.C. § 552a(g)(4)(B).  (SAC p. 181.)

The Instant Motion to Dismiss the SAC

Defendant now moves to dismiss the SAC pursuant to Rule 12(b)(1) and 12(b)(6) of the

Federal Rules of Civil Procedure.  Defendant's Memorandum of Law in Support of its Motion

("Defendant's Memo") recounts the factual and legal discussions contained in Judge Locke's

reports and recommendations and Judge Bianco's orders adopting them.  With respect to Claim

I, Defendant notes that Judge Bianco already dismissed with prejudice Plaintiff's claims pursuant

to 5 U.S.C. § 552a(e)(5).  Since Defendant is correct in this regard, the Court need not discuss Defendant other arguments for dismissing Claim I and will not discuss Claim I below.

Defendant advances three arguments with respect to Claim II.  First, Defendant argues that this § 552a(e)(6) claim "should be dismissed for lack of subject matter jurisdiction because each and every alleged violation of that section … attempts to 'circumvent [the VJRA] by seeking damages and equitable relief premised on a constitutional claim arising out of a … denial of [self-employment] benefits,' which the law does not permit."  (Defendant's Memo at 17 (quoting *Pappanikoloaou v. Adm'r of Veterans Admin.*, 762 F.2d 8, 9 (2d Cir. 1985)).)  Second, citing to Judge Bianco's Second Order, Defendant argues that the SAC "fails to allege … that Plaintiff sustained proven pecuniary or economic harm, as is his burden to meet the Privacy Act's actual damages standard."  (Defendant's Memo at 19 (internal quotation marks and citations omitted).)  Third, Defendant argues that the SAC does not adequately allege that the violations of the Privacy Act were intentional and willful because the acts alleged were not "patently egregious," but were, at most, "'administrative error' for which the Act does not provide relief."  (*Id.* at 21 (quoting *Germosen v. Cox*, No. 98-CV-1294 (BSJ), 1999 WL 1021559, at *18 (S.D.N.Y. Nov. 9, 1999)).)

With respect to Claim III, Defendant argues that the SAC does not comply with the Second Order's directive that  Plaintiff "identify a rule or safeguard … that the [VA] should have established but did not."  (Defendant's Memo at 22.)  Although Defendant construes Claim III as alleging only violations of § 552a(e)(9), (*see* Defendant's Memo at 11), this argument also applies to alleged violations of § 552a(e)(10).  Finally, Defendant argues that Plaintiff's requests for injunctive and declaratory relief must be denied because such relief is not available under the Privacy Act.

**STANDARD OF REVIEW**

Defendant's Motion seeks to dismiss the SAC pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  Rule 12(b)(1) permits a defendant to move to dismiss an action for "lack of subject-matter jurisdiction."  Dismissal of an action under Rule 12(b)(1) "is proper when the district court lacks the statutory or constitutional power to adjudicate it."  *Doyle v. Midland Credit Mgmt., Inc.*, 722 F.3d 78, 80 (2d Cir. 2013) (quoting *Ford v. D.C. 37 Union Local 1549*, 579 F.3d 187, 188 (2d Cir. 2009) (*per curiam*)); Fed. R. Civ. P. 12(b)(1).  When a jurisdictional challenge under Rule 12(b)(1) is addressed to the complaint, "a court accepts as true all the factual allegations in the complaint and must draw all reasonable inferences in favor of the plaintiff."  *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003).  The burden of proving subject matter jurisdiction is on the plaintiff.  *Id.*

Rule 12(b)(6) permits a party to move to dismiss causes of action for "failure to state a claim upon which relief can be granted."  Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  To survive a motion to dismiss pursuant Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  A complaint need not contain "detailed factual allegations," but it must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555).  A complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Twombly*, 550 U.S. at 557.

The standards for reviewing motions to dismiss under Rule 12(b)(1) and 12(b)(6) differ with respect to the documents the Court may consider. "In determining the adequacy of a claim under Rule 12(b)(6), consideration is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991). In contrast, in adjudicating a Rule 12(b)(1) motion, a court "may refer to evidence outside the pleadings." *Libertarian Party of Erie Cty. v. Cuomo*, 970 F.3d 106, 121 (2d Cir. 2020) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

In applying these standards, the Court is cognizant that Plaintiff is not represented by counsel. *Pro se* litigants are to be "afforded extra leeway in meeting the procedural rules governing litigation, and trial judges must make some effort to protect a party so appearing from waiving a right ... because of his or her lack of legal knowledge." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). "To give such 'extra leeway,' courts are, for example, to construe a *pro se* litigant's pleadings and motions liberally, ... and to allow amendments to a *pro se* litigant's pleadings more freely...." *In re Sims*, 534 F.3d 117, 133 (2d Cir. 2008) (internal citations omitted). However, "[t]he right of self-representation is not a license ... not to comply with relevant rules of procedural and substantive law." *Faretta v. California*, 422 U.S. 806, 834 n. 46 (1975); *see also Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (right to self-representation "does not exempt a party from compliance with relevant rules of procedural and substantive law").

**DISCUSSION**

I.      Subject Matter Jurisdiction

Before addressing Defendant's arguments relating to Plaintiff's three claims, the Court must address the question of whether it has jurisdiction to entertain these Privacy Act claims. "It is well established that in any suit in which the United States is a defendant, a waiver of sovereign immunity with respect to the claim asserted is a prerequisite to subject matter jurisdiction." *Up State Fed. Credit Union v. Walker*, 198 F.3d 372, 374 (2d Cir. 1999); *see United States v. Mitchell*, 463 U.S. 206, 212 (1983)). Accordingly, to establish the Court's jurisdiction in this case, Plaintiff "must demonstrate that the government has waived its immunity to suit in district court with respect to the claims asserted here." *Up State Fed. Credit Union*, 198 F.3d at 374.

A. Applicable Statutory Provisions

Since "waivers of sovereign immunity must be strictly construed and limited in scope in favor of the sovereign," *Cooke v. United States*, 918 F.3d 77, 82 (2d Cir. 2019), the Court's analysis must begin with an examination of the applicable statutory provisions. This action is brought pursuant to the Privacy Act, which is "codified in part at 5 U.S.C. § 552a [and] … contains a comprehensive and detailed set of requirements for the management of confidential records held by Executive Branch agencies." *F.A.A. v. Cooper*, 566 U.S. 284, 287 (2012). "The Act gives agencies detailed instructions for managing their records and provides for various sorts of civil relief to individuals aggrieved by failures on the Government's part to comply with the requirements." *Doe v. Chao*, 540 U.S. 614, 618 (2004). The available civil remedies are set forth in § 552a(g)(1), which "recognizes a civil action for agency misconduct fitting within any of four categories." *Doe*, 540 U.S. at 618 (2004).

18

The SAC specifically alleges that "this action arises under 5 U.S.C. § 552a(g)(1)(D)," the fourth of the four categories.  Subsection D is a catchall provision, permitting an individual to bring a civil action against a federal agency whenever the agency fails to comply with any provision of § 552a (other than those provisions specified in subsections A, B, and C) or any rule promulgated thereunder.  However, subsection D provides that a civil action is authorized only if the agency "fails to comply with those requirements 'in such a way as to have an adverse effect'" on the plaintiff.  *Cooper*, 566 U.S. at 287 (quoting § 552a(g)(1)(D)).

The remedies available in each of the four categories of permissible actions are specified in § 552a(g)(2)–(4).  The remedies available in actions brought under the catchall provision are set forth in § 552a(g)(4), which provides:

> In any suit brought under the provisions of subsection (g)(1)(C) or (D) of this section in which the court determines that the agency acted in a manner which was intentional or willful, the United States shall be liable to the individual in an amount equal to the sum of—
>
> (A) actual damages sustained by the individual as a result of the refusal or failure, but in no case shall a person entitled to recovery receive less than the sum of $1,000; and
>
> (B) the costs of the action together with reasonable attorney fees as determined by the court.

B.  Case Law Interpreting the Statute

In light of these statutory provisions, Court have held that "a plaintiff has a cause of action under § 552a(g)(1)(D) only if he can show that the defendant's violation of the Privacy [Act] had an 'adverse effect' on him."  *Tarullo v. Def. Cont. Audit Agency*, 600 F. Supp. 2d 352, 358–59 (D. Conn. 2009).  "[T]he adverse effect requirement of (g)(1)(D) is, in effect, a standing requirement."  *Quinn v. Stone*, 978 F.2d 126, 135 (3d Cir. 1992).  As the Supreme Court explained in *Doe v. Chao*, "the 'adverse effect' requirement 'acts as a term of art identifying a potential plaintiff who satisfies the injury-in-fact and causation requirements of Article III

19

standing, and who may consequently bring a civil action without suffering dismissal for want of standing to sue.'" *Tarullo*, 600 F. Supp. 2d at 359 (quoting *Doe*, 540 U.S. at 624).  "If plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005) (internal quotation marks and citations omitted).  Because constitutional standing implicates the subject matter jurisdiction of the Court, it can be raised *sua sponte*.  *See In re Clinton Nurseries, Inc.*, 998 F.3d 56, 63 (2d Cir. 2021); *Cent. States*, 433 F.3d at 198.

"Allegations of mental distress, emotional trauma, or embarrassment have been held sufficient to confer standing." *Quinn v. Stone*, 978 F.2d 126, 135 (3d Cir. 1992) (citing *Albright v. United States*, 732 F.2d 181, 186 (D.C. Cir. 1984); *Parks v. IRS*, 618 F.2d 677, 683 (10th Cir. 1980)).  Indeed, the dissenting opinion in *Doe v. Chao* noted that the adverse effect of a Privacy Act violation is "typically … emotional anguish."  *Doe*,  540 U.S. at 628.  However, to establish standing, "the plaintiff must also allege causal connection between the agency violation and the adverse effect."  *Quinn*, 978 F.2d at 135 (citing *Hewitt v. Grabicki*, 794 F.2d 1373, 1379 (9th Cir.1986); *Albright*, 732 F.2d at 186 (D.C.Cir.1984); *Edison v. Department of the Army*, 672 F.2d 840, 845 (11th Cir. 1982).  "[T]his requirement gives substance to the language of the Act requiring the agency to fail to comply 'in such a way as to have an adverse effect.'"  *Quinn*, 978 F.2d at 135 (quoting 5 U.S.C. § 552a(g)(1)(D)).

Although the prior opinions in this action have not expressly addressed standing, Judge Bianco's Second Order expressly advised Plaintiff that the SAC had to "allege that the VA intentionally or willfully violated Sections 552a(e)(6), (9), and (10) of the Privacy Act and that he suffered an adverse effect as a result of those violations in order to survive a motion to

dismiss." Second Order at 6, n. 5. Plaintiff attempted to heed that advice; paragraph 107 of the SAC lists a dozen "adverse and harmful effects" that Plaintiff allegedly suffered. However, the SAC does not allege that these adverse effects were caused by the purported Privacy Act violations.

First, the deprivations of "due process" and "fair process" alleged in subsections (a) through (d) of paragraph 107 occurred during the adjudication and review of Plaintiff's Chapter 31 claim. Even assuming that the information on which the VA made its decisions was inaccurate, irrelevant, incomplete, and/or untimely and that these defects resulted in the denial of Plaintiff's Chapter 31 claim, these adverse effects are not attributable to violations of § 552a(e)(6), (9), and/or (10). Subsection (e)(6) requires that, "prior to disseminating any record about an individual to any person *other than an agency*, unless the dissemination is made pursuant to subsection (b)(2) of this section, [an agency that maintains a system of records] make reasonable efforts to assure that such records are accurate, complete, timely, and relevant for agency purposes …." 5 U.S.C. § 552a(e)(6) (emphasis added). This subsection, by its terms, does not apply to the VA's own internal use of the records. Accordingly, even if the records used by the VA in adjudicating the Chapter 31 claim were inaccurate, irrelevant, incomplete, and/or untimely, this would not make out a violation of subsection (e)(6).

The SAC also does not establish that a violation of subsection (e)(9) caused any of the deprivations of "due process" and "fair process." Subsection (e)(9) requires an agency that maintains a system of records to "establish rules of conduct for persons involved in the design, development, operation, or maintenance of any system of records, or in maintaining any record, and instruct each such person with respect to such rules and the requirements of this section, including any other rules and procedures adopted pursuant to this section and the penalties for

21

noncompliance." The SAC, like the Amended Complaint, does not identify any rules of conduct the VA failed to establish. And while it alleges that NYRO personnel were "inadequately trained," (SAC ¶ 181), it also specifically alleges that the NYRO personnel nonetheless "knew and intentionally ignored and willfully disregarded" these standards of conduct and practices. (SAC ¶ 180).

Similarly, the SAC does not establish that a violation of subsection (e)(10) caused any adverse effects. Subsection (e)(10) requires an agency that maintains a system of records to "establish appropriate administrative, technical, and physical safeguards to insure the security and confidentiality of records and to protect against any anticipated threats or hazards to their security or integrity which could result in substantial harm, embarrassment, inconvenience, or unfairness to any individual on whom information is maintained." The SAC, like the Amended Complaint, does not identify any "administrative, technical, and physical safeguards" that the VA failed to establish. To the contrary, it lists many statutes, rules, regulations, and guidelines which were allegedly disregarded by NYRO employees.

The four adverse effects listed in subsections (e) through (h) of paragraph 107 are attributable solely to the adverse decision on Plaintiff's Chapter 31 claim. The SAC alleges that the VA's actions caused him to "forego several entrepreneurial opportunities," thereby "unnecessarily prolonging Plaintiff's period of unemployment" and his "financial insufficiency" and causing him to be homeless for eight months. (SAC ¶¶ 107(e)–(h).) These adverse effects are not related to the alleged violations of the Privacy Act.

Similarly, the adverse effect alleged in subsection (i) of paragraph 107 was not caused by a violation of §§ 552a(e)(6), (9), and/or (10). This subsection alleges that Plaintiff was adversely affected by having to incur "costs and expenses related to pursuing the disclosure, amendment,

and correction of the information and records" the VA maintains relating to Plaintiff.  Subsection

(i) does not specify these "costs and expenses" but cites to Exhibit 14 of the Amended

Complaint, which contains three documents relating to Plaintiff's FOIA request.  Even if these

costs and expenses could be characterized as "adverse effects," they are not attributable to a

violations of the Privacy Act.

The three adverse effects alleged in subsections (j) through (l) of paragraph 107 relate to

psychic injuries which Plaintiff allegedly sustained.  While allegations of mental distress or

emotional trauma may constitute adverse effects, *see Quinn*, 978 F.2d at 135; *Albright*, 732 F.2d

at 186; *Parks*, 618 F.2d at 683, the SAC does not allege facts suggesting that Plaintiff's mental

distress was caused by violations of the Privacy Act.  The first of the three alleged adverse

effects – "exacerbating Plaintiff's anxiety and stress" over his financial situation, (SAC ¶ 107(j))

– appears attributable to the adverse decision on Plaintiff's Chapter 31 claim.  And the SAC does

not allege what caused Plaintiff's "extreme distrust of individuals in supervisory or authoritative

positions" or "exacerbated [his] chronic insomnia" – the adverse effects alleged in SAC ¶¶

107(k) and (l).

II.     Failure to State a Claim

Even if Plaintiff could establish standing to sue under § 552a(g)(1)(D), the SAC fails to

state a claim for relief under the Privacy Act.  "[I]n order to bring a claim for damages under the

Privacy Act, [plaintiffs] must demonstrate that the [agency's] actions had an 'adverse effect' on

them in a way that caused 'actual damages,' and that the [agency's] actions were 'intentional or

willful.'"  *Flock*, 840 F.3d at 54.  The SAC does not allege "actual damages" and does not allege

facts to suggest that the alleged violations of the Privacy Act were "intentional or willful."

In *F.A.A. v. Cooper*, the Supreme Court construed "'actual damages' in the unique context of the Privacy Act as the equivalent of special damages." 566 U.S. at 299. Special damages "are limited to actual pecuniary loss, which must be specially pleaded and proved." *Id.* at 295 (citing 1 D. Haggard, Cooley on Torts § 164, p. 580 (4th ed. 1932)). Accordingly, the Court held that "the Privacy Act does not … authorize an award of damages for mental or emotional distress [and] … does not waive the Federal Government's sovereign immunity from liability for such harms." *Id.* at 304.

The SAC does not allege that Plaintiff suffered any actual pecuniary loss as a result of violations of the Privacy Act. The SAC's list of "adverse and harmful effects" does describe in general terms the financial consequences that Plaintiff allegedly suffered because he was unable to open his own business. However, these allegations do not describe actual pecuniary loss, much less loss attributable to Privacy Act violations. Rather, they speculate about improvements to Plaintiff's financial condition that might have occurred had he been awarded benefits under Chapter 31's Self-Employment Track.

In addition, the SAC also does not allege facts suggesting the NYRO personnel engaged in intentional or willful violations of the Privacy Act. "An agency acts in an intentional or willful manner 'either by committing the act without grounds for believing it to be lawful, or by flagrantly disregarding others' rights under the Act.'" *Deters v. U.S. Parole Comm'n*, 85 F.3d 655, 660 (D.C. Cir. 1996) (quoting *Albright*, 732 F.2d at 189). "[T]he violation must be so patently egregious and unlawful that anyone undertaking the conduct should have known it unlawful." *Deters*, 85 F.3d at 660 (quoting *Laningham v. United States Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987)).

24

The SAC repeatedly uses the terms "willful" and "intentional" in describing the NYRO employees' acts and omissions that allegedly violated the Privacy Act.  However, these conclusory labels are insufficient to plead intentional or willful violations of the Privacy Act. The SAC does not contain any factual allegations that suggest the alleged acts and omissions were "so patently egregious and unlawful that anyone undertaking the conduct" would have known it was unlawful."  *See Deters*, 85 F.3d at 660; *Laningham*, 813 F.2d at 1242.  Rather, the facts suggest, at most, administrative errors.

Although the SAC demands relief other than money damages and costs, the various forms of injunctive and declaratory relief it seeks are unavailable under § 552a(g)(4).  Unlike other subsections of  § 552a(g), subsection (4) makes no reference to these types of relief.  Based on this omission, many courts have reasoned that the Act does not authorize declaratory or injunctive relief for violations of § 552a(g)(1)(D).  *See, e.g.*, *Doe v. Stephens*, 851 F.2d 1457, 1463 (D.C. Cir. 1988); *Hastings v. Judicial Conference of the United States*, 770 F.2d 1093, 1104 (D.C. Cir. 1985), *cert. denied*, 477 U.S. 904  (1986); *Clarkson v. IRS*, 678 F.2d 1368, 1375 n. 11 (11th Cir. 1982); *Hanley v. Department of Justice*, 623 F.2d 1138, 1139 (6th Cir.1980); *Parks v. IRS*, 618 F.2d 677, 684 (10th Cir. 1980); *Cell Associates, Inc. v. NIH*, 579 F.2d 1155, 1160–61 (9th Cir. 1978); *Tarullo*, 600 F. Supp. 2d at 358.  Thus, even if Plaintiff could establish a violation of § 552a(g)(1)(D), the Court could not award such injunctive relief as "requiring return of the medical records … or a ban on disclosure" of the records.  *Doe*, 851 F.2d at 1463.

III.    <u>Leave to Amend</u>

"Generally, leave to amend should be freely given, and a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Matima v. Celli*, 228 F.3d 68, 81 (2d

Cir. 2000)).  Thus, a *pro se* action "should not be dismissed without granting leave to replead at least once when such a reading 'gives any indication that a valid claim might be stated.'"  *Barnes v. United States*, 204 F. App'x 918, 919 (2d Cir. 2006) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)).  However, even in *pro se* cases, "'leave to amend a complaint may be denied when amendment would be futile.'"  *Nielsen*, 746 F.3d at 62 (quoting *Tocker v. Philip Morris Cos.*, 470 F.3d 481, 491 (2d Cir. 2006)).

In this case, Plaintiff has already been given two chances to amend his pleading.  Judge Locke wrote two lengthy reports and recommendations explaining the defects in the prior pleadings and Judge Bianco's orders adopting those reports and recommendations provided additional guidance regarding what Plaintiff needed to plead.  Collectively, the reports and recommendations and Judge Bianco's orders advised Plaintiff of the elements of a Privacy Act claim under §§ 552a(e)(6), (9), and (10); the need to allege facts suggesting that the VA intentionally or willfully violated these provisions; and the need to allege that Plaintiff suffered an adverse effect as a result of those Privacy Act violations.  Indeed, much of the legal discussion above borrows heavily from these thorough prior opinions.

A careful reading the SAC establishes that the intelligent and articulate Plaintiff fully understood the guidance contained in these prior opinion.  The SAC evinces a valiant effort to meet the pleading requirements.  For example, the SAC alleges a dozen adverse effects and repeatedly alleges that the NYRO employees acted intentionally and willfully.  Nonetheless, as explained above, the SAC still fails to establish a basis for subject matter jurisdiction or to state a claim upon which relief may be granted.

Given the extraordinary prolixity of the SAC, this failure appears to be based on a lack of facts to support the Privacy Act claims.  There is no reason to believe that Plaintiff will succeed

in establish a basis for waiving sovereign immunity or in stating a cause of action under the Privacy Act if given a chance to replead.  Accordingly, leave to amend the SAC is denied as futile.

## CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is granted and the SAC is dismissed without leave to amend.  The Clerk of Court is directed to enter judgment against Plaintiff; to mail a copy of that judgment and this Memorandum and Order to Plaintiff, to note that mailing on the docket sheet, and to close this case.  Although Plaintiff paid the filing fee to commence this action, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum and Order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

Dated: Brooklyn, New York
      March  29, 2022

           *Roslynn R. Mauskopf*
           ROSLYNN R. MAUSKOPF
           United States District Judge